Lincoln Financial Group®

Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 427-1866

| | |
|---|---|
| Date: | January 29, 2021 |
| To: | D. SETH HOLLIDAY<br>MCMAHAN LAW FIRM, LLC<br>700 S THORNTON AVENUE<br>PO BOX 1607<br>DALTON GA 30722 |
| Attn: | |
| Fax: | (706) 217-6880 |
| From: | Jennifer Dimaggio<br>Appeal Consultant<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 427-1866 |
| Total Pages<br>(Including Cover): | 11 |
| RE:<br><br>Claim #: 7259041<br>Claimant: Darrell Russell<br><br>Chart Industries, Inc. | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

EXHIBIT

**2**

Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 427-1866

January 29, 2021

D. Seth Holliday
McMahan Law Firm, LLC
700 S THORNTON AVENUE
PO BOX 1607
DALTON, GA 30722

RE: Long Term Disability (LTD) Benefits
Chart Industries, Inc.
Claim #: 7259041
Claimant: Darrell Russell

Dear D. Seth Holliday:

We have completed our review of Darrell Russell's appeal for Long Term Disability Benefits and the original determination to deny benefits beyond May 8, 2020 is being maintained.

***Initial Claim Decision***

Darrell Russell filed a claim for his absence from work as of November 8, 2016 as a result of back pain. LTD benefits were approved from November 8, 2016 through May 8, 2020. Benefits beyond May 8, 2020 were denied as the evaluation concluded Mr. Russell was no longer disabled as defined by the Policy.

The basis for the decision was outlined in a letter dated March 11, 2020. Mr. Russell was provided an opportunity to request an appeal review of the denial, stating the reasons why he felt that his claim should not have been denied, and submit additional information to support his claim. Specifically, Mr. Russell was advised to submit the following information: *Any and all office notes, phone notes, consultations/evaluations, diagnostic test results, operative/procedure reports, treatment plans, restrictions and limitations, out of work/return to work notes and/or prescribed medications from all of your treating providers.*

***Appeal***

In your letter dated August 20, 2020 you indicated you were appealing the decision to deny Darrell Russell's claim as of May 8, 2020.

In support of Mr. Russell's, you submitted the following information:

- Medical records from Georgia Pain and Wellness Center dated February 10, 2020 through May 26, 2020
- Medical records from Georgia Mountain Dermatology dated May 28, 2020 through June 17, 2020
- Medical records from Georgia Renew Clinic dated May 7, 2019 through February 6, 2020

We subsequently received the following information in support of Mr. Russell's claim:

- Medical records, MRI report, and new patient intake form from Georgia Pain and Wellness Center dated February 2, 2020 through May 26, 2020
- Physical Medical Source Statement from Dr. Anne Todd, MD, dated August 25, 2020
- Lincoln National Corporation Financial Conflict of Interest Report
- Request to Admit

In a telephone conversation on October 29, 2020 we spoke to your assistant, Julie, who confirmed Mr. Russell's appeal was complete.

***Appeal Evaluation***

During the claim evaluation of ongoing benefits, Mr. Russell's claim was reviewed by Dr. Arlen Green, DO, an independent physician who is Board Certified in Physical Medicine and Rehabilitation. Dr. Green indicated Mr. Russell was a forty-one-year-old male with a history of reflex sympathetic dystrophy of the arm. MRI of the cervical, lumbar and thoracic spine dated March 11, 2017 showed cervical spondylosis with advanced C5-C6 and C6-C7 diskovertebral degeneration, C5-C6 left sided mild spinal canal and moderate to severe neural foramina stenosis, and C6-C7 right-sided mild spinal canal and severe neural foramina stenosis. There was mild thoracic spondylosis with T9-T10 moderate spinal canal and severe right neural foramina stenosis. The imaging additionally documented L4-L5 disc degeneration without significant spinal canal or neural foramina stenosis. Dr. Green noted Mr. Russell was previously deemed a candidate for two-level anterior cervical discectomy and fusion at C5-6 and C6-7 for his right arm symptoms. Mr. Russell underwent a L4-5 microdiscectomy for cauda equina on September 5, 2019. In the office visit on December 19, 2019, Mr. Russell continued to have neuropathic pain in his right leg and foot with hypersensitivity in the right leg and foot. At that time, it was noted Mr. Russell was taking gabapentin and Cymbalta for chronic pain. On examination, Mr. Russell had right foot drop. Gait and station were normal. He had full motor strength in the upper extremities. Sensation was intact throughout all dermatomes. Dr. Weaver referred him to pain management and noted a trial of spinal cord stimulation was a considered treatment.

Dr. Green attempted to contact both Dr. Todd and Dr. Weaver to discuss Mr. Russell's case, however, contact was not established with either provider.

Taking into consideration the entire clinical picture, Dr. Green determined that based on Mr. Russell's lumbar surgery with ongoing pain and foot drop identified in the December 19, 2019 office visit, he should be capable of sustaining full-time employment within the following restrictions and limitations:

- Lifting, carrying, pushing and pulling 40 pounds occasionally--up to 1/3 of the day and 20 pounds frequently--1/3 to 2/3 of the day.

- Sitting is not restricted.
- Walking and standing combined 30 minutes at one time up to 5 hours out of an 8-hour day.
- The claimant would require a 5-10-minute break from standing and walking before resuming this activity again.
- Occasionally twisting, bending, kneeling, crouching, squatting, and climbing stairs.
- No climbing ladders or poles, working at heights or operating heavy machinery.
- No restrictions reaching overhead, at the waist/desk level and below the waist.
- Fingering, handling, feeling, and grasping is unrestricted.

Mr. Russell's claim was reviewed by a vocational consultant for a transferrable skills analysis based on his prior work history, educational background, and/or life experience and capacity within the restrictions and limitations outlined above. The analysis showed Mr. Russell had the following skills:

***Skills & Abilities:*** *Following oral and written instructions to set up and operate production-type machines; using hands, eyes, and fingers to adjust machine controls, manipulate hand tools, or assemble objects; directing work of others; staying within prescribed standards and guidelines; identifying variations in size, shape, and texture of objects; and working in hazardous or noisy conditions. Applying math skills to read and interpret business and statistical reports and records; analyzing and interpreting administrative policy and procedure; planning and organizing work of others; making decisions based on business reports or similar data; speaking and writing clearly; preparing budgets, keeping records, and inventorying stock and dealing tactfully and courteously with the public, employees, or government officials. Using common sense and basic language and math skills to carry out instructions, total costs, make change, and complete forms; moving hands, eyes, and fingers to handle items or drive vehicle; standing and walking for extended periods; and lifting and carrying items of varying weights.*

The transferrable skills analysis identified the following occupations that were within Mr. Russell's physical abilities and within his identified skill level:

| **Occupation** | **National Monthly Wage** |
|---|---|
| Manager, Machinery-or-Equipment, Rental | $3,302 |
| Order Caller | $2,727 |
| Supervisor, Order Takers | $4,650 |
| Supervisor, Customer Services | $4,650 |
| Surveillance System Monitor | $2,723 |

During the claim evaluation for Mr. Russell's appeal, the claim was reviewed by Dr. John Zheng, DO, an independent physician who is board certified in Physical Medicine and Rehabilitation and Pain Medicine. Two attempts were made to reach Dr. An Do, MD, however, no contact was established.

Based on his review of the medical records, Dr. Zheng supported the diagnoses of cervical radiculopathy, cervical and lumbar degenerative disc disease, congenital lumbar stenosis, complex regional pain syndrome of the right upper limb, functional hyperkinesia causing lower extremity tremors, peripheral neuropathy, right arm pain, post-laminectomy syndrome, and right foot drop. Dr. Zheng noted comorbid diagnoses of hypertension, anxiety, insomnia, and GERD.

Dr. Zheng noted on February 10, 2020 Mr. Russell treated with Dr. Amit Patel, MD, for right arm pain and bilateral leg pain. Exam of his right upper extremity showed 4/5 handgrip, 4/5 triceps, 4/5 biceps, 4/5 deltoid. Exam of his right lower extremity showed 4-/5 hip flexors, 4-/5 quadriceps, 4/5 hamstrings, 4/5 DF, and 4/5 PF. There was right greater than left lower extremity decreased sensation to light touch/pinprick along L4-S1 dermatomes, decreased range of motion of the lumbar spine, and TTP along the bilateral lowest three segments of the lumbar facet joints. Pain was reproduced with bilateral facet loading maneuvers and positive SLR was noted.

On March 31, 2020 Mr. Russell treated with Dr. Do for right arm pain, bilateral leg pain, and low back pain. Exam of his right lower extremity showed 4/5 hip flexors, 4/5 quadriceps, 4/5 hamstrings, 4-/5 DF, and decreased sensation to light touch along L5-S1 dermatomes. On examination of his right upper extremity, allodynia, edema, color changes, and decreased temperature compared to the contralateral extremity are noted. On lumbosacral exam there was positive facet loading, decreased range of motion, tenderness to palpation bilaterally along the lowest three segments of lumbar joints, and a positive SLR on the right.

An MRI of the lumbar spine on May 12, 2020 showed mild disc desiccation and degenerative disc space narrowing of L4-L5. There was mild disc bulge with superimposed left-sided disc protrusion which minimally extended along the posterior superior margin of L5. There was mild effacement of the ventral thecal sac as well as encroachment of the left lateral recess. The left neural foramen and right neural foramen demonstrated mild encroachment. There was a small right paracentral disc protrusion of L5-S1 without significant central canal encroachment.

On May 26, 2020 Dr. Do saw Mr. Russell for right arm pain, bilateral leg pain, and low back pain. Examination of his right lower extremity showed 4/5 hip flexors, 4/5 quadriceps, 4/5 hamstrings, and 4/5 DF. Decreased sensation to light touch/pinprick along L5-S1 was noted. Exam of his right upper extremity noted allodynia, edema, color changes, and decreased temperature compared to his contralateral extremity. A lumbosacral exam showed positive facet loading, decreased range of motion, tenderness to palpation bilaterally along the lowest three segments of the lumbar facet joints, and a positive SLR on the right.

On June 11, 2020 Mr. Russell was seen for a follow-up with Dr. Carlton Faulk, MD for neoplasm of uncertain behavior on the right proximal radial dorsal forearm. On May 28, 2020 a biopsy by shave method was performed. The pathology showed melanoma in situ on the right proximal radial dorsal forearm and Mr. Russell underwent an excision.

On June 25, 2020 Mr. Russell was seen for follow-up of a malignant melanoma in situ on his right proximal radial dorsal forearm. The pathology showed no residual melanoma.

On August 25, 2020 Dr. Anne Todd, MD completed a Physical Medical Source Statement that stated Mr. Russell's diagnoses included reflex sympathetic dystrophy, insomnia, HTN, and anxiety. Restrictions were listed and noted Mr. Russell would likely be off task twenty-five percent or more of the time.

Dr. Zheng concluded Mr. Russell had a long-standing history of right upper extremity pain since a melanoma resection in 2016 and associated with complex regional pain syndrome of his left upper limb. Mr. Russel also had chronic low back pain due to lumbar stenosis and lumbar degenerative disc disease and he is status post L4-5 microdiscectomy for cauda equina. There was an EMG/nerve

conduction study dated February 16, 2017 that revealed findings consistent with mild, probable, distal, axonal peripheral neuropathy, a chronic possibly active right C8 radiculopathy, and chronic probably inactive right L5-S1 radiculopathy. Mr. Russel also suffered from bilateral lower extremity pain, weakness, and right foot drop as well as lower limb tremulousness and functional hyperkinesia causing lower extremity tremors and peripheral neuropathy. Given Mr. Russell's medical history involving multiple musculoskeletal conditions impacting his functionality, Dr. Zheng opined Mr. Russell would require the following activity restrictions from May 8, 2020 with a re-assessment on or around May 8, 2021:

- Sitting: Constantly, up to 30 minutes at a time, up to 6 hours per day
- Standing: Occasionally, up to 20 minutes at a time, up to 2 hours per day
- Walking: Occasionally, up to 20 minutes at a time, up to 2 hours per day
- Lifting: Occasionally up to 10 lbs. BUE
- Carrying: Occasionally up to 10 lbs. BUE
- Pushing: Occasionally up to 10 lbs. BUE
- Pulling: Occasionally up to 10 lbs. BUE
- Stooping: Occasionally
- Kneeling: Occasionally
- Crouching: Occasionally
- Crawling: Never
- Climbing stairs: Occasionally
- Climbing ladders: Never
- Reaching: Occasionally overhead; constantly desk and waist levels BUE's
- Using lower extremity for foot controls: occasionally RLE; unrestricted LLE
- Fine manipulation: occasionally RUE; unrestricted LUE
- Simple and firm grasping: occasionally RUE; unrestricted LUE

A transferrable skills analysis addendum was completed by a vocational consultant with the above supported restrictions and limitations. It was determined that other than Surveillance System Monitor, the occupations identified in the initial analysis would be eliminated, however, the following top two occupations were added and identified as viable:

| **Occupation** | **National Monthly Wage** |
|---|---|
| Order Department Supervisor | $6,230 |
| Information Clerk | $2,505 |
| Surveillance System Monitor | $2,850 |

On November 20, 2020 we sent you a letter via e-mail and fax which included a copy of the clinical review performed in connection with your request for Mr. Russell's appeal. You were given an opportunity to review and respond with any additional information that you would like considered before a final determination was made on the appeal. A deadline for response was given of December 10, 2020.

On December 2, 2020 we received your letter dated December 1, 2020 requesting an extension to the December 10, 2020 deadline with a new deadline date of January 9, 2021. We agreed to grant the extension.

On December 16, 2020 we sent you a letter via e-mail which included a copy of the transferrable

skills analysis for your review.

We received your response to the transferrable skills analysis on December 29, 2020, dated December 21, 2020, and response to the clinical review on January 7, 2021, dated December 21, 2020.

In a telephone conversation on January 14, 2021, Julie confirmed the response was complete.

Regarding your argument that Dr. Zheng is not "independent" given his relationship with "Lincoln" and the disability insurance industry, we respectfully disagree. We utilize third party vendors to facilitate the selection of providers who produce the clinically supported and evidenced based assessments.

You additionally noted Dr. Zheng did not address Mr. Russell's work reliability, consistency, substantial capacity and steady attendance. Dr. Zheng did address these items as noted in his review as follows:

*…the medical documentation does not support that any medical condition alone, or in combination would preclude the claimant from sustained occupational functioning on a full-time basis. The claimant is capable of sustaining full-time employment within the restrictions and limitations outlined above.*

Regarding your response that Dr. Zheng's has a differing opinion from Mr. Russell's family practitioner, Dr. Todd, and that Dr. Zheng's opinion is not credible, we respectfully disagree. Dr. Zheng is a board-certified physician in Physical Medicine and Rehabilitation and Pain Management, and our position stands that a board-certified physician within this specialty and sub-specialty is the most qualified physician to review Mr. Russell's conditions. However, we do acknowledge Dr. Zheng did not specifically comment on the restrictions and limitations outlined by Dr. Todd and therefore, an addendum review was completed by Dr. Zheng who opined the following:

On August 25, 2020 Dr. Anne Todd completed a questionnaire noting the claimant's diagnoses included reflex sympathetic dystrophy, insomnia, hypertension, and anxiety. The claimant's prognosis was fair. Restrictions were listed and it was noted that the claimant would likely be off task twenty five percent or more of the time. Dr. Todd noted the claimant was incapable of even "low stress" work. Dr. Todd noted the claimant would likely be absent from work as a result of impairments more than four days per month;

In a letter from Mr. D. Seth Holliday dated December 21, 2020, it is noted that the claimant suffers from radiculopathy, low back pain, cervicalgia, pain radiating to his legs, CRPS, post-laminectomy syndrome, and myalgia. Mr. Holliday noted there had been no meaningful change in the claimant's condition from the period in which Lincoln paid him LTD benefits. Mr. Holliday noted his condition continued to deteriorate and the decision to deny benefits should be overturned and benefits reinstated.

In a letter from Mr. Holliday dated December 21, 2020 it is noted that the restrictions and limitations set forth in the TSA were not credible. Mr. Holliday stated Dr. Toddy's August 25, 2020 medical source statement was ignored as was the November 4, 2020 Social Security decision to grant benefits. Additionally, Mr. Holliday noted the TSA did not factor into the analysis the

claimant's chronic pain, fatigue, and diminished concentration and how this affects his work reliability.

Dr. Zheng concluded the additional information did not alter his prior assessment. Dr. Zheng respectfully disagreed with the restrictions listed by Dr. Todd and disagreed with your opinion that the Mr. Russell is unable to work due to his conditions described in your letter's. Despite repeated claims of chronic pain, fatigue, diminished concentration and listed conditions, the clinical evidence from various visits did not identify deficits of such a severity to preclude functionality completely. Therefore, the previous restrictions continued to apply.

Regarding the medical records that were submitted on appeal, Dr. Zheng did review the information received to include Exhibits 1-5.

Regarding your argument that Dr. Zheng did not review Exhibit 8, Lincoln Financial Group did fully consider the Social Security Administration's ruling to approve Mr. Russell's Social Security Disability Income benefits. It should be noted, however, that while we fully considered the Social Security Administration's ruling, the decision by the Social Security Administration does not determine entitlement to benefits under the terms and conditions of the Chart Industries, Inc.'s Group Disability Income Policy. Moreover, Lincoln Financial Group has obtained and considered medical and vocational assessments that were not considered by the Social Security Administration in its determination process.

In regards to your argument that there has been no change in Mr. Russell's condition from the period in time in which Lincoln paid him LTD benefits, we understand the supported restrictions and limitations precluded Mr. Russell from performing his Own Occupation (defined below), however, as of May 8, 2020 the definition of disability changed and we are evaluating whether or not Mr. Russell would be precluded from performing Any Occupation (defined below).

Regarding your argument that the transferrable skills analysis did not use credible restrictions or limitations we respectfully disagree. The restrictions and limitations used were those opined by Dr. Zheng. Regarding the analysis not considering the Social Security Administration's ruling, as noted above, the decision by SSA does not determine LTD benefit eligibility. The analysis did factor all of Mr. Russell's conditions as Dr. Zheng considered all conditions and was responsible for outlining the supported restrictions and limitations. We decline your request to have a transferrable skills analysis completed with the restrictions and limitations outlined by Dr. Todd, Mr. Russell's family physician, as they were not deemed supported by the medical evidence.

***<u>Conclusion</u>***

We conducted a thorough and independent review of Mr. Russell's entire claim. In summary, we acknowledge he may have continued to experience symptoms associated with his conditions beyond May 8, 2020. However, the information did not contain exam findings, diagnostic test results or other forms of medical documentation to support that his symptoms and impairments remained of such a severity, frequency and duration they resulted in restrictions or limitations that would have rendered him unable to perform the duties of the occupations identified as being within his functional capacity and vocational skills after that date.

Having carefully considered all the information submitted in support of Mr. Russell's claim, our

position remains that proof of his continued disability in accordance with the Policy provisions after May 8, 2020 has not been provided. Therefore, no further benefits are payable.

This claim determination reflects an evaluation of the claim facts and the Policy provisions.

***Policy Provisions***

In order to continue receiving benefits, you must satisfy the requirements of all Policy provisions that state, in part:

> ***"Disability"*** *or* ***"Disabled"*** *means:*
> *1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:*
> *i.* ***"Disability"*** *or* ***"Disabled"*** *means that during the Elimination Period and the next 36 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*
> *ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*
>
> ***"Own Occupation"*** *means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is normally performed in the national economy.*
>
> ***"Any Occupation"*** *means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.*
>
> ***"Material and Substantial Duties"*** *means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.*
>
> ***"Proof"*** *means the evidence in support of a claim for benefits and includes, but is not limited to, the following:*
> *1. a claim form completed and signed (or otherwise formally submitted) by the Covered Person claiming benefits;*
> *2. an attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending Physician; and*
> *3. the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits.*
>
> *Proof must be submitted in a form or format satisfactory to Liberty.*
>
> ***Discontinuation of the Long Term Disability Benefit***
> *The Monthly Benefit will cease on the earliest of:*
> *1. the date the Covered Person fails to provide Proof of continued Disability or Partial Disability and Regular Attendance of a Physician; …*
> *8. the date the Covered Person is no longer Disabled according to this policy; …*

***Mental Illness, Substance Abuse and/or Non-Verifiable Symptoms Limitation***
*The benefit for Disability due to Mental Illness, Substance Abuse and/or Non-Verifiable Symptoms will not exceed a combined period of 24 months of Monthly Benefit payments while the Covered Person is insured under this policy.*

*If the Covered Person is in a Hospital or Institution for Mental Illness and/or Substance Abuse at the end of the combined period of 24 months, the Monthly Benefit will be paid during the confinement.*

*If the Covered Person is not confined in a Hospital or Institution for Mental Illness and/or Substance Abuse but is fully participating in an Extended Treatment Plan for the condition that caused Disability, the Monthly Benefit will be payable to a Covered Person for up to a combined period of 36 months.*

*In no event will the Monthly Benefit be payable beyond the Maximum Benefit Period shown in the Schedule of Benefits.*

Under the Employee Retirement Income Security Act (ERISA) Appeal guidelines, you were entitled to appeal the determination made by Lincoln Financial Group and to submit any additional information wished to be considered as part of the appeal. Lincoln Financial Group has conducted a full and fair review of Darrell Russell's appeal and accompanying materials and has determined that the denial of benefits will be maintained.

At this time, Mr. Russell's administrative right to review has been exhausted and no further review will be conducted by Lincoln Financial Group and his claim will remain closed. You may request to receive, free of charge, copies of all documents relevant to Mr. Russell's claim.

The Chart Industries, Inc.'s Group Disability Income Policy contains the below provision:

***Legal Proceedings***

*A claimant or the claimant's authorized representative cannot start any legal action:*
*1. until 60 days after Proof of claim has been given; or*
*2. more than three years after the time Proof of claim is required.*

If Mr. Russell's plan is subject to ERISA, he may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact his local U.S. Department of Labor Office or his state insurance regulatory agency. In addition, once all required reviews of his claim have been completed, he has the right to bring a civil action under applicable law. Mr. Russell's employer's plan has a contractual limitations period of three year(s), which means that a lawsuit must be brought within three year(s) after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is April 28, 2024.

This information is provided for purposes of this claim only, as the time proof of claim is required may differ based on claim specifics and applicable policy language.

Nothing in this letter should be construed as a waiver of any Lincoln Financial Group rights and

defenses under the above captioned policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Determinations made by Lincoln Financial Group are based on the provisions outlined in Chart Industries, Inc.'s Disability Policy. These provisions are not contingent on decisions made by either the Social Security Administration or the Workers' Compensation Carrier. No internal rules, guidelines, protocols, standards or other similar criteria were relied upon in rendering the claim determination.

If you require language translation assistance, please contact Lincoln Financial Group to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata' hane'go shíká a'doowoł nínízingo saad hosíníłį́į' dóó ná'ookąąh nííní'ą́ągo naaltsoos nííníłtsoozígií hazho'ó bik'idi'deeshtį́įł nínízingo doo bą́ąh ílínígóó níká a'doowoł éí biniiyé shił hodíílnih áko ákwe'égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If you have any questions regarding this matter, please contact me.

Sincerely,

Jennifer Dimaggio
Appeal Consultant
Phone No.: (888) 437-7611 Ext. 59238
Secure Fax No.: (603) 427-1866