**Claim Coversheet Report**

Find | Clear | Print | Save | New | Help

Admin Notes Claim Class Correspond Doc List Medical SPELL Letters

Claim Number 7259041 Claim Last Updated 01/29/2021 Printed On 3/15/2021

Claimant Information

| | | | | | |
|---|---|---|---|---|---|
| Name | DARRELL W RUSSELL | SSN | | Birth Date | |
| Address | | Salary Amount $ | 4023.07 | Mode | M |
| | | Date of Hire | 09/12/2011 | | |
| | | Last Work Date | 11/07/2016 | | |
| | | Federal Tax | Employee Option | State Tax | No |
| Phone | | Phys Demands | Light | | |

JobDesc PRODUCTION SUPERVISOR-- LIGHT OCC

| | | | | | |
|---|---|---|---|---|---|
| Claim Status | Closed | Status Reason | Not TD Any Occ | Received Date | 03/13/2017 |
| Disability Date | 11/08/2016 | Close Date | 05/09/2020 | Reopen Date | 05/09/2020 |
| Sick Days Left | 182 | Max Ben Date | 05/27/2043 | RTW FT / PT | |
| Ben Begin Date | 05/09/2017 | Apprv Thru Date | 05/08/2020 | Gross Ben $ | |

Diagnosis 1 Code/Desc M79.2 Neuralgia and neuritis, unspecified

Diagnosis 2 Code/Desc G90.511 Complex regional pain syndrome I of right upper limb

Policyholder Information

Customer ID 08 - 034785 CHART INDUSTRIES, INC.

Subsidiary YSZ0 CANTON, GA - CHART

Location 00000000 CANTON, GA - CHART

Symb GF Numeral 01 Product LTD Funding CON Bank Y Calcs Y Cntr Eff 08/01/2008

Class 02 ALL FULL-TIME HOURLY EMPLOYEES IN SAN JOSE, CA; NEW PRAGUE, MN; CANTC

Waiting Period: New/Mode-Current/Mode 60 Day 60 Day Days in WRKWK

Elimination Period: Days/Type 180 Sickness COLA: Mode/Duration

Successive Period: Period/Mode 6 Month SS Integration:Type/Value FSS

Partial Disability Type/Pct QRP+ 7.00 Survivor Ben Months/Wait Period 3 180

Non-Verifiable Symptoms Limit 24 Own Occupation Definition Limit 36 M/N Limit 24

Benefit % Max Benefit $ Min Benefit $ Employer Contr % 100.00 Subro Ind Y

Selected Benefits

| Symbol | Numeral | Product Type | Class | Eligibility Date |
|---|---|---|---|---|
| GF | 01 | LTD | 02 | 12/01/2011 |
| PD | 01 | STD | 03 | 04/01/2012 |

Additional Information:

EXHIBIT

3, part 1

**Claim Coversheet Report**

Find | Clear | Print | Save | New | Help

Admin Notes Claim Class Correspond Doc List Medical SPELL Letters

Claim Number 3719712 Claim Last Updated 04/28/2017 Printed On 3/15/2021

Claimant Information

| | | | | | |
|---|---|---|---|---|---|
| Name | DARRELL W RUSSELL | SSN | | Birth Date | |
| Address | | Salary Amount $ | 928.40 | Mode | W |
| | | Date of Hire | 09/12/2011 | | |
| | | Last Work Date | 11/07/2016 | | |
| | | Federal Tax | None | State Tax | No |
| Phone | | Phys Demands | Light | | |

JobDesc PRODUCTION SUPERVISOR-- LIGHT OCC

| | | | | | |
|---|---|---|---|---|---|
| Claim Status | Closed | Status Reason | Max Dur/To LTD | Received Date | 11/18/2016 |
| Disability Date | 11/08/2016 | Close Date | 05/09/2017 | Reopen Date | |
| Sick Days Left | | Max Ben Date | 05/08/2017 | RTW FT / PT | |
| Ben Begin Date | 11/15/2016 | Apprv Thru Date | 05/08/2017 | Gross Ben $ | |

Diagnosis 1 Code/Desc G90.511 Complex regional pain syndrome I of right upper limb

Diagnosis 2 Code/Desc B97.4 Respiratory syncytial virus causing diseases classd elswhr

Policyholder Information

Customer ID 08 - 034785 CHART INDUSTRIES, INC.

Subsidiary YSZ0 CANTON, GA - CHART

Location 00000000 CANTON, GA - CHART

Symb PD Numeral 01 Product STD Funding ASO Bank N Calcs Y Cntr Eff 01/01/2009

Class 03 ALL ACTIVE HOURLY EMPLOYEES IN SAN JOSE, CA, PLAINFIELD, IN; TULSA, OK; C

Waiting Period: New/Mode-Current/Mode 6 Month 6 Month Days in WRKWK 5

Elimination Period: Days/Type 7 Sickness COLA: Mode/Duration

Successive Period: Period/Mode 14 SS Integration:Type/Value

Partial Disability Type/Pct Survivor Ben Months/Wait Period

Non-Verifiable Symptoms Limit Own Occupation Definition Limit M/N Limit

Benefit % Max Benefit $ Min Benefit $ Employer Contr % Subro Ind Y

Selected Benefits

| Symbol | Numeral | Product Type | Class | Eligibility Date |
|---|---|---|---|---|
| GF | 01 | LTD | 02 | 12/01/2011 |
| PD | 01 | STD | 03 | 04/01/2012 |

Additional Information:

ote Report

Report Clear Print Help

AS Accom AS Event Add Note Appeal Claim Coord Claim Note Correspond Doc List Employee Leave Life Claim Lve Addtl Info Lve Correspondence Lve Program Lve Work Sched Medical Medical History Note SPELL Letters Scheduled Pmt Task Print Task Rpt Tasks

Claim

**Claim ve t eave m er** 7259041 **ommo atio m er**

**ote t pe**

Primary Sort Order

Note Type

Note Number

● Note Date/Time

Accm. No.

Sec

●

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Legal
Other Subject : LAWSUIT FILED
Text: [03/12/2021 - ODGAARD, EDITH]CLAIMANT HAS FILED A LAWSUIT. PLEASE DIRECT ANY FURTHER INQUIRY ON THIS CLAIM TO THE LITIGATION MANAGER.

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [03/11/2021 - MITCHELL, CATHERINE]INVOICE DATED 3/4/2020 FROM RRS INV #48224-1 IN THE AMT OF $787.50 FOR PMR PEER REVIEW INVOICE PAID IN FULL.

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [02/05/2021 - DEVLIN, TAMIE]INVOICE RECEIVED FROM VENDOR ECN, INV #BOCA100471, DATED 1/27/2021, IN THE AMOUNT OF $200.00, FOR PEER REVIEW: PMR/PAIN MGMT. INVOICE PAID IN FULL.

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Appeal
Other Subject : OUT/UPHOLD
Text: [01/29/2021 - DIMAGGIO, JENNIFER]THE DETERMINATION TO DENY BENEFITS IS MAINTAINED. THE INFORMATION RECEIVED AND REVIEWED ON APPEAL DOES NOT OFFER FINDINGS TO ALTER THE PRIOR DECISION TO DENY BENEFITS BEYOND 5/8/2020. DETAILED UPHOLD LETTER SENT TOCLAIMANT.

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Appeal
Other Subject : MANAGER REVIEW
Text: [01/29/2021 - ARVENITIS, KERRY]I AGREE WITH UPHOLD. BASED ON ADDITIONAL MEDICAL RECEIVED ON APPEAL, ALONG WITH A PM&R/PAIN PEER REVIEW AND ADDENDUM, THE CLAIMANT IS NOT PRECLUDED FROM WORKING IN THE IDENTIFIED OCCUPATIONS.

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : LTR to Atty
Other Subject : EXT
Text: [01/28/2021 - DIMAGGIO, JENNIFER]EXTENSION LETTER TO ATTNY SETH HOLLIDAY VIA E-MAIL

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Appeal
Other Subject : STATUS
Text: [01/20/2021 - DIMAGGIO, JENNIFER]PMR ADDENDUM PEER REQUESTED IN RESPONSE TO ATTNY LETTER

**ote**

Claim/Event/Leave: 7259041
NoteSubject : Called Other
Other Subiect : ATTNY

Text: [01/14/2021 - DIMAGGIO, JENNIFER]CALLED ATTNY SETH HOLIDAY TO CONFIRM IF RESPONSE COMPLETE, JULIE ANSWERED PHONE AND ADVISED IS ATTNY ASSISTANT, ARC ADVISED RECEIVED TWO LETTERS, ONE RESPONDING TO TSA AND ONE TO CLINICAL REVIEW, JULIE CONFIRMED RESPONSE IS COMPLETE, ARC ADVISED WILL PROCEED WITH REVIEW AND WILL R/C WITH FINAL DETERMINATION, JULIE THANKED, C/E

**ote**

Claim/Event/Leave: 7259041
NoteSubject : Called Other
Other Subject : ATTNY
Text: [01/12/2021 - DIMAGGIO, JENNIFER]R/C TO JULIE HOWARD AT 706-217-6118, RECEPTIONIST ADVISED JULIE IS WORKING FROM HOME OFFICE, WILL GIVE HER MESSAGE FOR R/C, ARC THANKED, C/E

**ote**

Claim/Event/Leave: 7259041
NoteSubject : Called Other
Other Subject : ATTNY
Text: [01/11/2021 - DIMAGGIO, JENNIFER]ARC CALLED ATTNY TO ADVISE OF 1/9/21 RTR DL, PLEASE CONFIRM IF RESPONSE COMPLETE, RECEPTIONIST CONFIRMED MR. HOLIDAY IS OUT OF THE OFFICE TODAY AND TOOK MESSAGE FOR PARALEGAL TO R/C, ARC THANKED, C/E

**ote**

Claim/Event/Leave: 7259041
NoteSubject : Other Called
Other Subject : ATTY OFFICE
Text: [12/31/2020 - AGUIRRE, MARIA]4235950406 ATTY R/C TO ARC - CALLER CONFIRMED THAT THEY NEED MORE TIME TO RESPOND TO THE PEER REVIEW AND ARE AWARE OF EXTENSION/DEADLINE 1/9. LCE WILL NOTE FILE AND EMAIL ARC REP TO NOTIFY, THANKED FOR CALL.

**ote**

Claim/Event/Leave: 7259041
NoteSubject : Called Other
Other Subject : ATTNY
Text: [12/31/2020 - DIMAGGIO, JENNIFER]CALLED ATTNY SETH HOLLIDAY TO ADVISE RECEIVED RESPONSE LETTER DATED 12/21/2020, ARC WOULD LIKE TO CONFIRM IF RESPONSE TO COMPLETE, RECEPTIONIST CONFIRMED MR. HOLLIDAY IS OUT OF THE OFFICE BUT TOOK CONTACT INFO FOR PARALEGAL TO R/C. ARC THANKED, C/E

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : LTR to Atty
Other Subject : RTR/TOLLING
Text: [12/02/2020 - DIMAGGIO, JENNIFER]RTR DEADLINE EXTENDED TO 1/9/2021 PER ATTNY REQUEST

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Appeal
Other Subject : STATUS
Text: [12/02/2020 - DIMAGGIO, JENNIFER]BASED ON ATTNY REQUEST REVIEW AND RESPONSE TO COMPLETED VCP REPORT DEADLINE HAS BEEN EXTENDED TO 1/9/2021

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : LTR FROM ATTNY
Text: [12/02/2020 - DIMAGGIO, JENNIFER]REQUEST FOR RTR EXTENSION TO 1/9/2021

**ote**

Claim/Event/Leave: 7259041
NoteSubject : Called Other
Other Subject : ATTNY
Text: [11/20/2020 - DIMAGGIO, JENNIFER]ARC CALLED ATTNY TO ADVISE FAXED AND EMAILED RTR LETTER WITH PEER, ADVISED OF 12/10/20 DEADLINE FOR RESPONSE, ADVISED TO PLEASE R/C IF EXTENSION WILL BE NEEDED, LVM

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : LTR to Atty
Other Subject : RTR/TOLLING
Text: [11/20/2020 - DIMAGGIO, JENNIFER]RTR WITH PEER TO CLAIMANT, NOTIFIED OF TOLLING DUE 12/10/2020

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Appeal
Other Subject : STATUS
Text: [11/20/2020 - DIMAGGIO, JENNIFER]ICP REPORT AND TSA COMPLETE AND REVIEWED, ARC HAS FAXED COPY OF ICP REPORT TO ATTNY FOR REVIEW AND RESPONSE, DEADLINE 12/10/2020[11/20/2020 - DIMAGGIO, JENNIFER]LETTER WAS

ADDITIONALLY EMAILED TO ATTNY

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Voc Rehab
Other Subject : TSA
Text: [11/19/2020 - MILLER, JASON]THIS TRANSFERABLE SKILLS ANALYSIS IDENTIFIED OCCUPATIONS WITHIN THE INSURED S PHYSICAL ABILITIES AND THEIR IDENTIFIED SKILL LEVEL. THE OCCUPATIONS MEET THE INSURED S GAINFUL AMOUNT OF $2,413.84 PER MONTH IN THE NATIONALECONOMY.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [11/19/2020 - HERTERICH, KIMBERLY]INVOICE DATED 11/11/2020 FROM EXAM COORDINATORS NETWORK . INV #BOCA 95365 IN THE AMT OF $660.00 FOR PEER REVIEW BY JOHN ZHENG WITH A SPECIALTY IN PMR/PAIN MANAGEMENT. INVOICE PAID IN FULL.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Voc Rehab
Other Subject : CLAIM/EVENT TO VCM
Text: 11/18/2020-REFERRAL RECEIVED BY VCM AND ASSIGNED TO MILLER, JASON. CLAIM/AS EVENT IS PENDING REVIEW.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Ref to Voc Rehab
Other Subject : SCORE REFERRAL
Text: 11/12/2020 - REFERRED TO THE VOC UNIT FOR TRANSFERABLE SKILLS ANALYSIS.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : COPY JOB
Text: [10/30/2020 - ROSZELLE, MICHAEL]REQUEST HAS BEEN COMPLETED TO INCLUDE ATTACHED ZIP FILE OF MEDICAL VIA ONE DRIVE TO THE EMAIL ADDRESS PROVIDED LEGACY@ECNIME.COM.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Ref to Other
Other Subject : SCORE REFERRAL
Text: 10/29/2020 - REFERRED TO EXAM COORDINATORS - ECN FOR PEER REVIEW.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Appeal
Other Subject : STATUS
Text: [10/29/2020 - DIMAGGIO, JENNIFER]ARC COMPLETED INITIAL REVIEW AND DETERMINED PHYSICIAN LEVEL REVIEW W/ AP CONTACT REQUESTED IS REASONABLE. REFERRAL SUBMITTED VIA CRT.

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called Other
Other Subject : ATTNY
Text: [10/29/2020 - DIMAGGIO, JENNIFER]CALLED ATTNY D. SETH HOLLIDAY TO CONFIRM IF APPEAL COMPLETE AS TOLLING DL WAS 10/28/2020, ARC ADVISED RECEIVED 10/21/2020 LETTER WITH EXHIBITS 4-7, SPOKE TO JULIE, CONFIRMED APPEAL IS COMPLETE, ARC ADVISED WILL MOVE FORWARD WITH REVIEW ACCORDINGLY AND WILL R/C ONCE DETERMINATION MADE, ATTNY THANKED, C/E

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : LTR to EE
Other Subject : EXT/TOLLING
Text: [09/15/2020 - DIMAGGIO, JENNIFER]SENT ERISA EXT/TOLLING FOR INFO. DEADLINE 10/28/2020

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Appeal
Other Subject : STATUS
Text: [09/15/2020 - DIMAGGIO, JENNIFER]PER LETTER FROM ATTNY SETH HOLLIDAY AT MCMAHAN LAW FIRM DATED 8/30/2020 ADDITIONAL INFORMATION BEING SUBMITTED AND A 60 DAY EXTENSION HAS BEEN REQUESTED. TOLLING EFFECTIVE TODAY, DEADLINE IS 60 DAYS FROM 8/30/2020 LETTER, 10/28/2020. TOLLING LETTER SENT VIA FAX AND REGULAR MAIL TO MCMAHAN LAW FIRM.

**C ote**

C ote
Claim/Event/Leave: 7259041
NoteSubject : Appeal
Other Subject : INITIAL REVIEW
Text: [09/15/2020 - DIMAGGIO, JENNIFER]FI, ERISA. LTD CLAIM FILED 3/13/2017. AUTH/JD IN DOC LIST. DISABILITY CODING CORRECT. APPEAL CODING UPDATED. LTD CLAIM CLOSED NOT TD-LETTER DATED 3/10/2020. 180 DAY APPEAL TIMELINE. APPEAL DUE 9/5/2020. APPEAL LETTER DATED 8/30/2020 AND RECEIVED 9/7/2020 ***ACTION PLAN: PENDING COMPLETE REVIEW BY ARC. ACK LETTER FAXED TO ATTNY. GIVEN APPEAL LETTER DATED PRIOR TO 180 APPEAL TIMELINE AND DOL ERISA RULING REGARDING COVID, APPEAL ACCEPTED.

C ote
Claim/Event/Leave: 7259041
NoteSubject : Appeal
Other Subject : REFERRAL RECVD
Text: [09/15/2020 - AVERILL, REBECCA]ASSIGNED TO JEN DIMAGGIO

C ote
Claim/Event/Leave: 7259041
NoteSubject : Ref to Appeals
Other Subject : SCORE REFERRAL
Text: 9/14/2020 - REFERRED TO APPEALS UNIT FOR CLAIM REVIEW AND DETERMINATION.

C ote
Claim/Event/Leave: 7259041
NoteSubject : Med Records Rcvd
Other Subject : GA PAIN AND WELLNESS
Text: [09/14/2020 - HENNESSY, MEGHAN]MEDICAL RECORDS RCVD FROM GEORGIA PAIN AND WELLNESS

C ote
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : MANAGER REVIEW
Text: [09/13/2020 - GIBSON, KRISTA]AGREE W/ ARU REFERRAL.

C ote
Claim/Event/Leave: 7259041
NoteSubject : Appeal
Other Subject : REFER TO MANAGER
Text: [09/09/2020 - HENNESSY, MEGHAN]40 YOM PRODUCTION SUPERVISOR (LIGHT OCC)- LDW 11/7/16, DOD 11/8/16, LTD BBD 5/9/17, CID 5/6/20 (36 MOS) DXS PER PEER: CERVICAL RADICULOPATHY (M54.12); CERVICAL DEGENERATIVE DISC DISEASE (M50.30); CONGENITAL LUMBAR STENOSIS (Q76.49); LUMBAR DEGENERATIVE DISC DISEASE (M51.36); COMPLEX REGIONAL PAIN SYNDROME OF THE RIGHT UPPER LIMB (G90.511); FUNCTIONAL HYPERKINESIA CAUSING LOWER EXTREMITY TREMORS (R25.1); AND PERIPHERAL NEUROPATHY (G64), PSYCH CO-MORBIDS. PM&R PEER REVIEW COMPLETED ON 03/04/2020 AND PROVIDED THE FOLLOWING R/L'S: LIFTING, CARRYING, PUSHING AND PULLING 40 POUNDS OCCASIONALLY--UP TO 1/3 OF THE DAY AND 20 POUNDS FREQUENTLY--1/3 TO 2/3 OF THE DAY. SITTING IS NOT RESTRICTED. WALKING AND STANDING COMBINED 30 MINUTES AT ONE TIME UP TO 5 HOURS OUT OF AN 8 HOUR DAY. THE CLAIMANT WOULD REQUIRE A 5-10 MINUTE BREAK FROM STANDING AND WALKING BEFORE RESUMING THIS ACTIVITY AGAIN. OCCASIONALLY TWISTING, BENDING, KNEELING, CROUCHING, SQUATTING, AND CLIMBING STAIRS. NO CLIMBING LADDERS OR POLES, WORKING AT HEIGHTS OR OPERATING HEAVY MACHINERY. NO RESTRICTIONS REACHING OVERHEAD, AT THE WAIST/DESK LEVEL AND BELOW THE WAIST. FINGERING, HANDLING, FEELING, AND GRASPING IS UNRESTRICTED. TSA REPORT COMPLETED USING THE RECENT R/L'S GIVEN AND GROSS BENEFIT PROVIDED. UPON RCPT OF THE TSA REPORT, THERE WERE SEVERAL OTHER OCCUPATIONS IDENTIFIED THAT EE WOULD BE ABLE TO SUSTAIN ON FULL-TIME BASIS. ATTY HAS SINCE SUBMITTED WRITTEN REQUEST TO APPEALCLAIM DECISION. CLAIM RECOMMENDED FOR REFERRAL TO ARU

C ote
Claim/Event/Leave: 7259041
NoteSubject : LTR to ER
Other Subject : EMAIL
Text: [06/08/2020 - HENNESSY, MEGHAN]GOOD AFTERNOON, WE ARE NOT REVIEWING FURTHER DOCUMENTATION. THE CLAIM WAS BRIEFLY REOPENED TO ADJUST DATES IN THE CLAIM. BUT AT THIS TIME, CLAIM IS NOT UNDER ANY FORM OF REVIEW. PLEASE LET ME KNOW IF YOU NEED ANYADDITIONAL INFORMATION. THANK YOU, MEGHAN HENNESSY

C ote
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : EMAIL FROM ER
Text: [06/08/2020 - HENNESSY, MEGHAN]HI MEGHAN I M HOPING YOU CAN HELP ME OUT. WE RECEIVED A LEGAL REQUEST FOR SOME DOCUMENTS RELATED TO THE LTD CLAIM FOR DARRELL RUSSELL. HIS LTD CLAIM INITIALLY STATES IT WAS APPROVED THROUGH 5/8/2020. IT NOW HASA RE-OPEN DATE OF 5/9/2020. DOES THIS MEAN THAT YOU ARE IN THE PROCESS OF REVIEWING FURTHER DOCUMENTATION TO POTENTIALLY EXTEND BENEFITS, OR HAS IT BEEN DETERMINED THAT BENEFITS WON T BE EXTENDED ANY LONGER? THANKS,

C ote
Claim/Event/Leave: 7259041

NoteSubject : LTR to Atty
Other Subject : EMAIL
Text: [06/03/2020 - HENNESSY, MEGHAN]HELLO, I HAVE RESENT THE LINK WITH THE FOLLOWING PASSWORD REQUIREMENTS. TO ACCESS AND DOWNLOAD THE DOCUMENT VIA THE LINK BELOW. ENTER SECURE PASSWORD: FIRST TWO LETTERS OF THE CLAIMANT S FIRST NAME FOLLOWED BY DATEOF BIRTH IN THE FORMAT MMDDYYYY. THE FIRST LETTER OF THE CLAIMANT NAME IS A CAPITAL. EX: JA08101920. THIS LINK WILL EXPIRE IN 24 HOURS. WITH QUESTIONS, PLEASE CONTACT YOUR CLAIMS EXAMINER. THANK YOU, CATHY

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : ADMIN
Text: [06/03/2020 - NILES, CATHY]PER EMAIL REQUEST RESENT THE LINK TO EMAIL JHOWARD@MCMAHANFIRM.COM

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : ADMIN
Text: [05/28/2020 - NILES, CATHY]REQUEST TO SEND A COPY OF THE COMPLETE CLAIM FILE AND POLICY TO ATTY COMPLETED. SENT TO EMAIL SHOLIDAY@MCMAHANFIRM.COM THRU ONEDRIVE[05/28/2020 - NILES, CATHY]**THE EMAIL CAME BACK AS UNDELIVERABLE. REACHED OUT TO THE DCM FOR CORRECT EMAIL[05/28/2020 - NILES, CATHY]--RESENT LINK TO EMAIL SHOLLIDAY@MCMAHANFIRM.COM

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject :
Text: [05/28/2020 - HENNESSY, MEGHAN]INFORMATION RCVD FROM EE'S ATTY REQUESTING COMPLETE COPY OF CLAIM FILE. CLAIM REFERRED FOR FILE TO BE SENT

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : AP&C
Text: [03/16/2020 - SPRINGMEIER, KRISTEN]REFERRAL RECEIVED AND MANUAL PAYMENT ISSUED FROM 02/24/20 THRU 05/08/20 FOR $5,825.07 AS REQUESTED BY DCM SINCE CLAIM IS BEING ADVANCE PAID AND CLOSED. COPY OF CALC WORKSHEET HAS BEEN SAVED TO THE DOC LIST.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [03/13/2020 - MITCHELL, CATHERINE]INVOICE RECEIVED ON 3/4/2020 FROM RELEASEPOINT. INVOICE# 711442-79 IN THE AMOUNT $51.04 INVOICE PAID.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Ref to Other
Other Subject : PMNT
Text: THE SCORE REFERRAL FOR PAYMENT SERVICES REFERRAL AND PAYMENT ADJUSTMENT AND A REASON OF ADVANCE PAY AND CLOSE HAS BEEN RECEIVED AND ASSIGNED TO KRISTEN SPRINGMEIER.

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject :
Text: [03/11/2020 - HENNESSY, MEGHAN]DCM MADE PHONE CONTACT WITH EE TO ADVISE OF CLAIM CLOSURE. DCM ADVISED RECORDS WERE RCVD, CLAIM WAS REVIEWED FOR ANY OCC AND THERE WERE ALTERNATIVE OCCUPATIONS IDENTIFIED. DCM ADVISED THAT DE TO ALTERNATIVE OCCS FOUND,CLAIM HAS BEEN CLOSED. DCM ADVISED THAT LETTER IS BEING SENT THAT WILL OUTLINE ALL THE MEDICAL DOCUMENTATION ON FILE, THE R/L'S GIVEN BY PEER REVIEW AND THE ALTERNATIVE OCCUPATIONS FOUND. DCM ADVISED REST OF BENEFIT THRU MAY WILL BE PAID IN A LUMP SUM PAYMENT BUT NO BENEFITS ARE PAYABLE BEYOND 05/08/2020. DCM ADVISED EE CAN APPEAL DECISION AND WRITTEN REQUEST TO APPEAL WILL BE NEEDED. DCM WILL FOLLOW UP IF CHECK IS TO BE ISSUED FOR HIM TO RCVD PAYMENT AROUND THE 17TH AS USUALLY PLANNED. EE DID NOT HAVE ANY ADDITIONAL QUESTIONS AND THEN ENDED PHONE CALL.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Ref to Other
Other Subject : PMT SVC
Text: FOR ADVANCE PAY AND CLOSE. COMMENTS: CLAIM CLOSED FOR NOT TD ANY OCC. AP&C THRU 05/08/2020

**C ote**
Claim/Event/Leave: 7259041

NoteSubject : Other
Other Subject : MDS NOTATION
Text: [03/10/2020 - SCHERER, MARK]NO MDS ACTION NEEDED AT THIS TIME AFTER TARGETED REVIEW AS CLAIM WAS SENT TO VOC AND PEER REVIEW.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : FORMS
Text: [03/10/2020 - HENNESSY, MEGHAN]TEE, AQ, CIF, CSS RCVD

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : LTR to EE
Other Subject : CLOSURE
Text: [03/10/2020 - HENNESSY, MEGHAN]CLOSURE LETTER SENT TO EE

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : MANAGER REVIEW
Text: [03/10/2020 - GIBSON, KRISTA]AGREE W/ AO CLOSURE. BASED ON AVAILABLE RECORDS, CP REVIEW, AND ER POLICY- EE NO LONGER MEETS THE DEFINITION OF DISABILITY.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Closed
Other Subject : NOT TD ANY OCC
Text: [03/10/2020 - HENNESSY, MEGHAN]40 YOM PRODUCTION SUPERVISOR (LIGHT OCC)- LDW 11/7/16, DOD 11/8/16, LTD BBD 5/9/17, CID 5/6/20 (36 MOS) DXS PER PEER: CERVICAL RADICULOPATHY (M54.12); CERVICAL DEGENERATIVE DISC DISEASE (M50.30); CONGENITAL LUMBAR STENOSIS (Q76.49); LUMBAR DEGENERATIVE DISC DISEASE (M51.36); COMPLEX REGIONAL PAIN SYNDROME OF THE RIGHT UPPER LIMB (G90.511); FUNCTIONAL HYPERKINESIA CAUSING LOWER EXTREMITY TREMORS (R25.1); AND PERIPHERAL NEUROPATHY (G64), PSYCH CO-MORBIDS. PM&R PEER REVIEW COMPLETED ON 03/04/2020 AND PROVIDED THE FOLLOWING R/L'S: LIFTING, CARRYING, PUSHING AND PULLING 40 POUNDS OCCASIONALLY--UP TO 1/3 OF THE DAY AND 20 POUNDS FREQUENTLY--1/3 TO 2/3 OF THE DAY. SITTING IS NOT RESTRICTED. WALKING AND STANDING COMBINED 30 MINUTES AT ONE TIME UP TO 5 HOURS OUT OF AN 8 HOUR DAY. THE CLAIMANT WOULD REQUIRE A 5-10 MINUTE BREAK FROM STANDING AND WALKING BEFORE RESUMING THIS ACTIVITY AGAIN. OCCASIONALLY TWISTING, BENDING, KNEELING, CROUCHING, SQUATTING, AND CLIMBING STAIRS. NO CLIMBING LADDERS OR POLES, WORKING AT HEIGHTS OR OPERATING HEAVY MACHINERY. NO RESTRICTIONS REACHING OVERHEAD, AT THE WAIST/DESK LEVEL AND BELOW THE WAIST. FINGERING, HANDLING, FEELING, AND GRASPING IS UNRESTRICTED. TSA REPORT COMPLETED USING THE RECENT R/L'S GIVEN AND GROSS BENEFIT PROVIDED. UPON RCPT OF THE TSA REPORT, THERE WERE SEVERAL OTHER OCCUPATIONS IDENTIFIED THAT EE WOULD BE ABLE TO SUSTAIN ON FULL-TIME BASIS. DUE TO ALTERNATIVE OCC BEING FOUND, CLAIM RECOMMENDED FOR CLOSURE FOR NOT TD ANY OCC

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Voc Rehab
Other Subject : TSA
Text: [03/06/2020 - NASH, ANGELLE]TSA RSH AND RPT COMPLETED AND UPLOADED. THE TRANSFERABLE SKILLS ANALYSIS IDENTIFIED OCCUPATIONS THAT ARE WITHIN MR. RUSSELL S PHYSICAL ABILITIES AND WITHIN HIS IDENTIFIED SKILL LEVEL. THE FOLLOWING ARE EXAMPLES OF OCCUPATIONS MR. RUSSELL COULD PERFORM: MACHINERY OR EQUIPMENT RENTAL MANAGER, ORDER CALLER, ORDER TAKER SUPERVISOR, CUSTOMER SERVICES SUPERVISOR AND SURVEILLANCE SYSTEM MONITOR. ALL OF THE OCCUPATIONS IDENTIFIED MEET THE GAINFUL AMOUNT OF $2,413.84. I HAVE NOT MET WITH MR. RUSSELL FOR THE PURPOSE OF THIS REVIEW. ALL OPINIONS ARE BASED ON REVIEW OF VOCATIONAL INFORMATION, MEDICAL RECORDS AND RESOURCES NOTED.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Voc Rehab
Other Subject : CLAIM/EVENT TO VCM
Text: 3/5/2020-REFERRAL RECEIVED BY VCM AND ASSIGNED TO NASH, ANGELLE. CLAIM/AS EVENT IS PENDING REVIEW.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Ref to Voc Rehab
Other Subject : SCORE REFERRAL
Text: 3/5/2020 - REFERRED TO THE VOC UNIT FOR TRANSFERABLE SKILLS ANALYSIS.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [03/05/2020 - HERTERICH, KIMBERLY]INVOICE DATED 3/4/2020 FROM RELIABLE REVIEW SERVICES INV # 48224-1 IN THE AMT OF $787.50 FOR PEER REVIEW BY ARLEN GREEN WITH A SPECIALTY IN PM&R. INVOICE PAID IN FULL

AMT OF $787.50 FOR PEER REVIEW BY ARLEN GREEN WITH A SPECIALTY IN PM&R. INVOICE PAID IN FULL.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Ref to Other
Other Subject : SCORE REFERRAL
Text: 2/27/2020 - REFERRED TO RELIABLE REVIEW SERVICES FOR PEER REVIEW.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject :
Text: [02/24/2020 - HENNESSY, MEGHAN]CLAIM SUBMITTED FOR PM&R PEER REVIEW

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : MANAGER REVIEW
Text: [02/24/2020 - GIBSON, KRISTA]AGREE W/ CP REVIEW.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Medical Status
Other Subject : MANAGER REVIEW
Text: [02/24/2020 - HENNESSY, MEGHAN]41 YOM PRODUCTION SUPERVISOR (LIGHT OCC)- LDW 11/7/16, DOD 11/8/16, LTD BBD 5/9/17, CID 5/6/20 (36 MOS) DXS PER PEER: CERVICAL RADICULOPATHY (M54.12); CERVICAL DEGENERATIVE DISC DISEASE (M50.30); CONGENITAL LUMBAR STENOSIS (Q76.49); LUMBAR DEGENERATIVE DISC DISEASE (M51.36); COMPLEX REGIONAL PAIN SYNDROME OF THE RIGHT UPPER LIMB (G90.511); FUNCTIONAL HYPERKINESIA CAUSING LOWER EXTREMITY TREMORS (R25.1); AND PERIPHERAL NEUROPATHY (G64), PSYCH CO-MORBIDS. UPDATED MEDICAL RECORDS REQUESTED FOR UPCOMING CID DATE. PARTIAL RECORDS RECEIVED AND RECORDS REQUEST EXPIRED FROM DR. TODD. CID FORMS NEVER RETURNED FROM EE. CLAIM RECOMMENDED FOR PM&R PEER REVIEW WITH AP CONTACT DUE TO UPCOMING CID DATE/

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Med Records Rcvd
Other Subject : GA RENEW
Text: [02/13/2020 - HENNESSY, MEGHAN]PLEASE BE ADVISED THAT THE REQUEST LISTED ABOVE HAS EXCEEDED THE AGE OUR LIMIT SPECIFIED IN YOUR ACCOUNT SETUP WITH RELEASEPOINT, AND WE WILL NOT PURSUE FURTHER RETRIEVAL ACTIVITIES. IF YOU STILL REQUIRE THESE RECORDS,PLEASE PLACE A NEW REQUEST.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Med Records Rcvd
Other Subject : TODD
Text: [02/11/2020 - HENNESSY, MEGHAN]PLEASE BE ADVISED THAT THE REQUEST LISTED ABOVE HAS EXCEEDED THE AGE OUR LIMIT SPECIFIED IN YOUR ACCOUNT SETUP WITH RELEASEPOINT, AND WE WILL NOT PURSUE FURTHER RETRIEVAL ACTIVITIES. IF YOU STILL REQUIRE THESE RECORDS,PLEASE PLACE A NEW REQUEST.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Med Records Rcvd
Other Subject : GA RENEW
Text: [01/31/2020 - HENNESSY, MEGHAN]MEDICAL RECORDS RCVD FROM GEORGIA RENEW CLINIC

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : DAY 45
Text: [01/23/2020 - HENNESSY, MEGHAN]DCM MADE ATTEMPT TO SPEAK WITH EE REGARDING CID FORMS. NO ANSWER AT THIS TIME. DCM PROVIDED CONTACT INFORMATION AND REQUESTED A RETURN PHONE CALL.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : DAY 45
Text: [01/23/2020 - HENNESSY, MEGHAN]BENEFITS NOT BEING SUSPENDED AS OF DAY 45. PARTIAL MEDICAL RECORDS RCVD AND ADDITIONAL RECORDS REQUESTED FOR CID DATE. WILL CONTINUE TO FOLLOW UP ON MED RECORDS AND CID FORMS. IF INFORMATION NOT RCVD BY DAY 75, CLAIM WILL BE EVALUATED FOR CLOSURE

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Med Records Rcvd
Other Subject : WEAVER
Text: [01/14/2020 - HENNESSY, MEGHAN]MEDICAL RECORDS RCVD FROM DR. WEAVER 09/16/2019-01/09/2020

**ote**

Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : DAY 30
Text: [01/09/2020 - HENNESSY, MEGHAN]DCM MADE ATTEMPT TO SPEAK WITH EE REGARDING MED RECORDS REQUEST AND TO CONFIRM THAT EE GOT LETTER AND FORMS THAT WERE SENT. NO ANSWER AT THIS TIME. DCM PROVIDED CONTACT INFORMATION AND ADVISED EE TO CALL WITH ANY QUESTIONS OR CONCERNS.

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Action Plan
Other Subject : RTW OO MAY 2020
Text: [01/08/2020 - HENNESSY, MEGHAN]40 YOM PRODUCTION SUPERVISOR (LIGHT OCC)- LDW 11/7/16, DOD 11/8/16, LTD BBD 5/9/17, CID 5/6/20 (36 MOS) DXS PER PEER: CERVICAL RADICULOPATHY (M54.12); CERVICAL DEGENERATIVE DISC DISEASE (M50.30); CONGENITAL LUMBAR STENOSIS (Q76.49); LUMBAR DEGENERATIVE DISC DISEASE (M51.36); COMPLEX REGIONAL PAIN SYNDROME OF THE RIGHT UPPER LIMB (G90.511); FUNCTIONAL HYPERKINESIA CAUSING LOWER EXTREMITY TREMORS (R25.1); AND PERIPHERAL NEUROPATHY (G64), PSYCH CO-MORBIDS** SEE PM&R W/PAIN PEER REVIEW OUTLINED R&L'S THAT SUPPORT EE'S IMPAIRMENTS FROM HIS OWN OCC, SPEC FOR LIFTING CARRYING PUSHING STANDING WALKING AND CRAWLING FOR 2 MOS (JUNE 2019) MDS REVIEW COMPLETED AND SUPPORTED PREVIOUS PEER REVIEW THRU 12/2019. UPDATEDMEDICAL RECORDS HAVE BEEN REQUESTED FOR UPCOMING CID DATE. UPON RCPT OF MEDICAL RECORDS, CLAIM TO BE SENT FOR PEER REVIEW AND TSA TO DETERMINE ANY OCC APPROVAL.

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Ref to Other
Other Subject : RP
Text: [12/10/2019 - HENNESSY, MEGHAN]UPDATED MEDICAL RECORDS REQUESTED FROM DR. TODD, GA RENEW AND DR. WEAVER

**ote**

Claim/Event/Leave: 7259041
NoteSubject : EE Called
Other Subject :
Text: [12/10/2019 - HENNESSY, MEGHAN]EE RETURNED PHONE CALL TO DCM. DCM ADVISED REASON FOR CALL WAS TO OBTAIN MED UPDATE. EE NOTED THAT HE DID HAVE BACK SURGERY WITH DR. CHARLES WEAVER (770-664-9600) AND HAS HAD A FEW IN HOME PHYSICAL THERAPY APPOINTMENT.EE DID NOT HAVE THE CONTACT INFORMATION FOR THE PHYSICAL THERAPY GROUP AT THE TIME BUT ADVISED THAT HE WOULD CALL DCM BACK WITH INFORMATION. EE NOTED THAT HE HAS ONLY SEEN DR. TODD ONE TIME SINCE THE LAST TIME EE SPOKE WITH DCM. EE NOTED THAT HE IS STILL WAITING ON A HEARING DATE FOR SSDB. DCM ADVISED CLAIM IS APPROACHING CID DATE AND THAT UPDATED MEDICAL RECORDS ARE GOING TO BE REQUESTED. DCM ADVISED THAT UPON RCPT OF UPDATED MEDICAL RECORDS, CLAIM WILL BE SENT FOR A MEDICAL REVIEW TO DETERMINER/L'S EE ADVISED THAT WITH R/L'S, DCM WILL REFER CLAIM AND SEE IF THER ARE ALTERNATIVE OCCUPATIONS THAT EE WOULD BE ABLE TO PERFORM AND IF THERE ARE NOT, CLAIM CAN CONTINUE TO BE APPROVED AND BENEFITS PAYABLE TO EE. EE NOTED THAT AT THIS TIME THEREIS NOTHING THAT HE WOULD BE ABLE TO DO AND THAT HEIS BACK HAS RUPTURED AND THAT AT THIS TIME HE IS NOT EVEN ABLE TO WALK. DCM UNDERSTOOD AND AGAIN ADVISED THAT THIS WAS WHY UPDATED MEDICAL DOCUMENTATION IS NEEDED. DCM AGAIN ENCOURAGED EE TO OPBTAIN THE CONTACT INFORMATION FRO THE PHYSICAL THERAPY GROUP IN ORDER TO DCM TO OBTAIN RECORDS. EE UNDERSTOOD AND DID NOT HAVE ANY ADDITIONAL QUESTIONS. DCM THANKED EE AND THEN ENDED PHONE CALL.

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : LTR to EE
Other Subject : CID FORMS
Text: [12/10/2019 - HENNESSY, MEGHAN]LETTER OUTLINING CID INVESTIGATION WITH FORMS SENT TO EE

**ote**

Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject :
Text: [12/10/2019 - HENNESSY, MEGHAN]DCM MADE ATTEMPT TO SPEAK WITH EE FOR CLAIM UPDATE AS WELL AS ADVISED OF UPCOMING CID INVESTIGATION AND SS STATUS. NO ANSWER AT THIS TIME. DCM PROVIDED CONTACT INFORMATION AND REQUESTED A RETURN PHONE CALL.

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [11/14/2019 - MASON, TAMMY]INVOICE RECEIVED ON 10/10/19 FROM RELEASEPOINT . INVOICE # 710535-260 IN THE AMOUNT OF $ 48.01 FOR MEDICAL RECORDS. INVOICE PAID IN FULL.

**ote**

Claim/Event/Leave: 7259041
NoteSubject : EE Called
Other Subject : ESCALATED CALL

Other Subject : ESCALATED CALL
Text: [09/12/2019 - THOMAS, JASON]EE CALLED BACK WITH CONCERNS ON HIS CLAIM. ADV EE THAT MEDICAL WAS RCVD AND BENEFITS REINSTATED TO PROCESS ONGOING. EE NOTED THAT HE DOESN'T KNOW WHY THEY HAD TO BE SUSPENDED IN THE FIRST PLACE AND WAS TOLD BY HIS AP OFFICE THAT THE RECORDS WEREN'T PAID FOR. ADV EE THAT PER THE NOTES IN THE FILE AND DOC LIST THERE WAS NO INVOICE FURNISHED BY HIS AP OFFICE TO PAY FOR THE MEDICAL RECORDS. EE NOTED HE DOESN'T SEE HOW THAT'S HIS PROBLEM. ASKED EE IF HE WAS TOLD TO PAY MONEY BLINDLY AND WASN'T GIVEN ANY INVOICE OR BILL FOR WHAT WAS OWED AND WHAT HE WAS RECEIVING WOULD HE JUST SEND MONEY TO THEM WITHOUT THE INVOICE? EE NOTED THAT HE WOULDN'T. ASKED EE WHY HE THINKS WE OR ANYONE FOR THAT MATTER WOULD BLINDLY SEND MONEYLIKE THAT EITHER. EE NOTED HE SHOULDN'T EVEN HAVE TO KNOW ABOUT ANY OF THIS STUFF. ADV EE THAT PER HIS EMPLOYER'S POLICY THE BURDEN OF PROOF IS ON HIM TO ENSURE THAT THE MEDICAL INFO IS PROVIDED TO US TO SUPPORT HIS CLAIM. ADV EE THAT WE CAN ONLY DOSO MUCH IN OUR DUE DILIGENCE TO TRY AND OBTAIN THEM BUT THAT WE ULTIMATELY CAN'T MAKE ANYONE SEND THEM TO US SO IN SOME CASES WE WILL NEED THE CLAIMANT TO ASSIST AND MAKE SURE IT IS SENT. EE NOTED THAT IT SOUNDS LIKE SR IS TAKING NO RESPONSIBILITY FOR THE MATTER AND IT'S NOT OUR FAULT. ADV EE THAT WE CAN ONLY DO SO MUCH TO TRY AND OBTAIN THEM AND AT THE END OF THE DAY IF WE DON'T HAVE AN INVOICE FOR WHAT IS OWED AND WHAT IT'S FOR THEN WE AREN'T SENDING MONEY TO SOMEONE FOR THAT. ASKED IF EE NEEDED EXPLANATION OF THE BENEFITS FOR WHY THE DATES CHANGED. ADV EE OF REASON AFTER SUSPENSION FOR MONTHLY PAID THRU DATE CHANGING AND ADV THAT DCM GOT THE RECORDS NOW.. EE INTERRUPTED AND NOTED HE GOT THE RECORDS. ADV EE THAT'S IRRELEVANT AT THIS POINTBUT THEY WERE RCVD AND THAT THE CLAIM HAS SINCE BENE UPDATED. EE NOTED HE HAD NO FURTHER QUESTIONS AND CALL ENDED.

**ote**

Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject :
Text: [09/12/2019 - THOMAS, JASON]CALLED EE ABOUT CONCERNS ON CLAIM AND PAY SCHEDULE. NO ANSWER AND LEFT VM WITH CONTACT INFO TO CALL BACK

**ote**

Claim/Event/Leave: 7259041
NoteSubject : EE Called
Other Subject :
Text: [09/10/2019 - HENNESSY, MEGHAN]EE CALLED ASKING WHY HE HAS NOT RCVD HIS CHECK FOR SEPTEMBER. DCM ADVISED THAT DUE TO BENEFITS RECENTLY BEING REINSTATED, BENEFITS WERE BEING PAID ON NEW CYCLE. EE EXPRESSED FRUSTRATION AS IT WAS NOT HIS FAULT THAT THEBENEFITS WERE SUSPENDED AND THAT THE INVOICE WAS NOT PAID ON TIME IN ORDER FOR THE MEDICAL RECORDS TO BE RCVD. DCM ADVISED THAT SHE DOES NOT HAVE THE AUTHORITY TO PROCESS A CHECK ANY SOONER AND THAT HIS NEXT CHECK IS GOING TO BE ISSUED ON 9/17/19. DCM ADVISED SHE WILL BE HAPPY TO REACH OUT TO PSU TO SEE IF THERE IS ANYTHING THAT CAN BE DONE BUT AT THIS TIME HIS PAYMENTS ARE ON A NEW SCHEDULE. EE EXPLAINED THAT WA SRECNTLY IN SURGERY AND HAS EMERGENCY SURGERY ON HIS BACK AT NORTHSIDE HOSPITAL. EEEXPLAINED THAT HE WAS RELEASED ON SATURDAY AND THAT DR. WEAVER DID THE SURGERY. EE EXPLAINED THAT HE WILL HAVE A FOLLOW UP APPOINTMENT WITH DR. BUT DID NOT HAVE THE NAME OF THE FACILITY AT THIS TIME. DCM AGAIN EXPLAINED SHE WILL CONTACT PSU AND WILLADVISE EE WITH ANY UPDATED INFORMATION. EE CONTINUED TO EXPRESS FRUSTRATION BUT DID NTO HAVE ANY QUESTIONS AT THIS TIME. DCM THANKED EE AND THEN ENDED PHONE CALL.

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Action Plan
Other Subject : RTW OO DEC 2019
Text: [09/05/2019 - HENNESSY, MEGHAN]40 YOM PRODUCTION SUPERVISOR (LIGHT OCC)- LDW 11/7/16, DOD 11/8/16, LTD BBD 5/9/17, CID 5/6/20 (36 MOS) DXS PER PEER: CERVICAL RADICULOPATHY (M54.12); CERVICAL DEGENERATIVE DISC DISEASE (M50.30); CONGENITAL LUMBAR STENOSIS (Q76.49); LUMBAR DEGENERATIVE DISC DISEASE (M51.36); COMPLEX REGIONAL PAIN SYNDROME OF THE RIGHT UPPER LIMB (G90.511); FUNCTIONAL HYPERKINESIA CAUSING LOWER EXTREMITY TREMORS (R25.1); AND PERIPHERAL NEUROPATHY (G64), PSYCH CO-MORBIDS** SEE PM&R W/PAIN PEER REVIEW OUTLINED R&L'S THAT SUPPORT EE'S IMPAIRMENTS FROM HIS OWN OCC, SPEC FOR LIFTING CARRYING PUSHING STANDING WALKING AND CRAWLING FOR 2 MOS (JUNE 2019) MDS REVIEW COMPLETED AND SUPPORTED PREVIOUS PEER REVIEW THRU 12/2019 ACTION PLAN: REQUEST UPDATED MED RECORDS IN DECEMBER 2019 AND REFER TO MDS AS NEEDED

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Med Records Rcvd
Other Subject : TODD
Text: [09/04/2019 - HENNESSY, MEGHAN]ADDITIONAL MED RECORDS RCVD FROM DR. TODD

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : NURSING MEMORANDUM
Text: [08/27/2019 - MOORE, TRISHA]AP ENDORSED INDEFINITE R/LS AND PENDING PLACEMENT OF SPINAL CORD STIMULATOR IS NOTED AS WELL AS FURTHER REFERRALS TO SPECIALIST PROVIDERS. R/LS AS OUTLINED IN PRIOR PEER REVIEW ON 4/17/19 ARE REASONABLY SUPPORTED ONGOING THROUGH 4 MONTHS AROUND 12/2019. THIS IS TO ALLOW FOR ONGOING TREATMENT WITH INFUSIONS AS WELL AS POSSIBLE SPINAL CORD STIMULATOR PLACEMENT AND FURTHER EVALUATION WITH ADDITIONAL PROVIDERS. POSSIBLE NON-MEDICAL ASSESSMENT MAY BE CONSIDERED. UPDATED RECORDS SHOULD BE SECURED FROM AP TODD WITH UPDATED R/LS FORM AT THIS TIME. IT IS ALSO ADVISED

UPDATED RECORDS SHOULD BE SECURED FROM AP TODD WITH UPDATED R/LS FORM AT THIS TIME. IT IS ALSO ADVISED
THAT CCM CONFIRM TREATMENT WITH ANY ADDITIONAL PROVIDERS AND SECURE RECORDS AS WELL FOR FURTHER CLINICAL REVIEW PRIOR TO 5/2020 CID FOR POSSIBLE CHANGE IN EES CONDITION. CCM UPDATED.

**ote**

Claim/Leave: 7259041
Episode #: 1
Nurse Name: GRAY, TASHIA
Service #: 16820027
Service Date: 08/27/2019
Activity: NURSE REVIEW, FILE REVIEW
Contact Information: CLAIMS, MEGHAN, HENNESSY
Note Type: INFORMATION OBTAINED DESC
Text: SEE NURSE MEMORANDUM IN DOC LIST

**ote**

Claim/Event/Leave: 7259041
NoteSubject : EE Called
Other Subject :
Text: [08/21/2019 - HENNESSY, MEGHAN]EE CALLED AND LEFT V/M ON 8/20/19 ASKING WHEN HE WILL BE RCVING HIS DISABILITY CHECK. DCM RETURNED PHONE CALL ON AND LEFT V/M ON 8/21/19 STATING THAT CHECK WAS ISSUED ON 8/19 AND NOTIFIED EE OF AMOUNT. DCM ADVISED EE TOCALL BACK WITH ANY ADDITIONAL QUESTIONS.

**ote**

Claim/Event/Leave: 7259041
NoteSubject : EE Called
Other Subject :
Text: [08/16/2019 - HENNESSY, MEGHAN]EE RETURNED CALL TO DCM. DCM AGAIN EXPLAINED THAT BENEFITS HAVE BEEN REINSTATED DCM ADVISED THAT EE WILL BE NOTIFIED THE NEXT TIME MEDICAL RECORDS ARE GOING TO BE REQUESTED. EE DID NOT HAVE ANY ADDITIONAL QUESTIONS. DCMTHANKED EE AND THEN ENDED PHONE CALL.

**ote**

Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject :
Text: [08/16/2019 - HENNESSY, MEGHAN]DCM LEFT V/M FOR EE TO NOTIFY THAT THE MED RECORDS HE SENT WERE RCVD FROM DR. TODD. DCM ABLE TO REINSTATE BENEFITS. DCM ADVISED EE TO CALL WITH ANY ADDITIONAL QUESTIONS

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Ref to Managed Care
Other Subject : LEVEL 2
Text: [08/16/2019 - HENNESSY, MEGHAN]40YOM PRODUCTION SUPERVISOR LDW 11/7/16 DOD 11/18/16 DX: CERVICAL RADICULOPATHY. UPDATED MEDICAL RECORDS RECEIVED FROM DR. TODD AND GEORGIA RENEW CLINIC. WHAT R/L'S ARE PRESENT AND FOR WHAT DURATION ONGOING?

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : RP
Text: [08/16/2019 - HENNESSY, MEGHAN]DCM ADVISED THAT A CHECK PAYMENT HAS BEEN PROCESSED TODAY FOR MED RECORDS FROM DR. TODD

**ote**

Claim/Event/Leave: 7259041
NoteSubject : Called Other
Other Subject : DR. TODD
Text: [08/15/2019 - HENNESSY, MEGHAN]DCM LEFT V/M FOR DR. TODD TO SEE IF INVOICE AND MED RECORDS CAN BE FAXED DIRECTLY TO DCM. DCM LEFT CONTACT INFORMATION AND REQUESTED RETURN PHONE CALL

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject :
Text: [08/15/2019 - HENNESSY, MEGHAN]DIRECT FAX SENT TO DR. TODD FOR MED RECORDS

**ote**

Claim/Event/Leave: 7259041
NoteSubject : EE Called
Other Subject :
Text: [08/15/2019 - HENNESSY, MEGHAN]EE CALLED LOOKING TO CHECK ON STATUS OF MEDICAL RECORDS. DCM ADVISED THAT SHE HAS NOT RCVD A RESPONSE FROM RELEASEPOINT REGARDING THE INVOICE FOR MEDICAL RECORDS. EE EXPRESSED FRUSTRATION THAT THIS IS HOLDING UP HIS BENEFITS AND IT IS NOT HIS FAULT. DCM EXPLAINED THAT SHE UNDERSTOOD HIS FRUSTRATION AND WILL SEND A DIRECT FAX TO DR. TODD AS WELL AS CALL THEM TO SEE IF THEY CAN FAX INVOICE DIRECTLY TO DCM. DCM ADVISED SHE WILL CALL EE BACK ONCE SHE HEARS FROM DR. TODD,

RELEASEPOINT OR RCVS THE INVOICE. EE DID TON HAVE ANY ADDITIONAL QUESTIONS. DCM THANKED EE AND THEN ENDED PHONE CALL.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject :
Text: [08/13/2019 - HENNESSY, MEGHAN]EMAIL TO ER TO CHECK ON RP REQUEST FOR DR. TODD

**ote**
Claim/Event/Leave: 7259041
NoteSubject : EE Called
Other Subject :
Text: [08/13/2019 - HENNESSY, MEGHAN]EE CALLED STATING HE HAS SPOKE WITH DR. TODD'S OFFICE AND THAT AN INVOICE WAS SENT TO RELEASEPOINT AND THAT THE MEDICAL RECORDS CANT BE RELEASE UNTIL THAT INVOICE IS PAID. DCM ADVISED WILL REQUEST UPDATE FROM RELEASEPOINT REGARDING STATUS OF RECORDS. EE EXPRESSED FRUSTRATION THAT THIS IS NOT HIS FAULT THAT THE INVOICE HAS NOT BEEN PAID AND THAT HIS PAYMENTS ARE BEING HELD FROM HIM DUE TO THIS. DCM EXPLAINED SHE UNDERSTOOD FRUSTRATION AND WILL CONTACT EE ONCE UPDATEIS RCD REGARDING RP STATUS.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Med Records Rcvd
Other Subject : GA RENEW
Text: [08/13/2019 - HENNESSY, MEGHAN]EE PROVIDED OVN FOR GEORGIA RENEW CLINIC

**ote**
Claim/Event/Leave: 7259041
NoteSubject : EE Called
Other Subject :
Text: [08/12/2019 - HENNESSY, MEGHAN]EE CALLED TO SEE IF MED INFORMATION HAS BEEN RCVD FROM DR. TODD. DCM ADVISED THAT INFORMATION HAS NOT YET BEEN RCVD. EE EXPLAINED THAT HE HAS INFORMATION FROM GEORGIA RENEW AND CAN FAX TO EE. EE ALSO ADVISED HE WILL GOTO DR. TODD'S OFFICE TO SEE IF HE CAN GET THE RECORDS AND SEND TO EE. DCM CONFIRMED THAT EE HAD FAX NUMBER AND EXPLAINED WILL LOOK FOR INCOMING FAX. EE DID NTO HAVE ANY ADDITIONAL QUESTIONS AT THIS TIME. DCM THANKED EE AND THEN ENDED PHONE CALL.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : FORM
Text: [08/08/2019 - HENNESSY, MEGHAN]CIF FORM RVD

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : AUTH FORM
Text: [08/08/2019 - HENNESSY, MEGHAN]SIGNED AUTH FORM FOR DR. TODD RCVD AND UPLOADED TO RP REQUEST

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Action Plan
Other Subject : RTW OO AUG 2019
Text: [08/06/2019 - HENNESSY, MEGHAN]40 YOM PRODUCTION SUPERVISOR (LIGHT OCC)- LDW 11/7/16, DOD 11/8/16, LTD BBD 5/9/17, CID 5/6/20 (36 MOS) DXS PER PEER: CERVICAL RADICULOPATHY (M54.12); CERVICAL DEGENERATIVE DISC DISEASE (M50.30); CONGENITAL LUMBAR STENOSIS (Q76.49); LUMBAR DEGENERATIVE DISC DISEASE (M51.36); COMPLEX REGIONAL PAIN SYNDROME OF THE RIGHT UPPER LIMB (G90.511); FUNCTIONAL HYPERKINESIA CAUSING LOWER EXTREMITY TREMORS (R25.1); AND PERIPHERAL NEUROPATHY (G64), PSYCH CO-MORBIDS** SEE PM&R W/PAIN PEER REVIEW OUTLINED R&L'S THAT SUPPORT EE'S IMPAIRMENTS FROM HIS OWN OCC, SPEC FOR LIFTING CARRYING PUSHING STANDING WALKING AND CRAWLING FOR 2 MOS (JUNE 2019) ACTION PLAN: CLAIM ON N&P FOR MED RECORDS. CLOSE CLAIM ON 8/20/19 IF MED RECORDS NOT RCVD. UPDATE ACTION PLAN AS NEEDED

**ote**
Claim/Event/Leave: 7259041
NoteSubject : EE Called
Other Subject :
Text: [08/01/2019 - HENNESSY, MEGHAN]EE CALLED TO SEE IF PAPERWORK WAS RCVD. DCM ADVISED THAT PAPERWORK WAS RCVD AND SIGNED AUTH FORM WAS UPLOADED TO REQUEST FOR DR. TODD. EE ASKED IF HE SHOULD REACH OUT TO DR AS WELL. DCM EXPLAINED THAT HE COULD JUST TO CONFIRM THAT REQUEST WAS RCVD. EE DID NOT HAVE ANY ADDITIONAL QUESTIONS. DCM THANKED EE AND THEN ENDED PHONE CALL.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : FORMS
Text: [08/01/2019 - HENNESSY, MEGHAN]CIF FORM AND SIGNED AUTH FORM FOR DR. TODD RCVD. AUTH FORM UPLOADED

Text: [08/01/2019 - HENNESSY, MEGHAN]CIF FORM AND SIGNED AUTH FORM FOR DR. TODD RCVD. AUTH FORM UPLOADED TO RP REQEUST

**ote**
Claim/Event/Leave: 7259041
NoteSubject : EE Called
Other Subject :
Text: [07/25/2019 - HENNESSY, MEGHAN]EE RETURNED CALL. DCM ADVISED THAT SHE CALLED TO INFORM EE THAT HIS BENEFITS HAVE BEEN SUSPENDED AS OF 7/23/19. DCM ADVISED THAT MEDICAL RECORDS HAVE NOT BEEN RCVD FROM DR. TODD, AS WELL AS THE CIF FORM THAT WAS SENT OUT ON SEVERAL OCCASIONS HAS NOT BEEN RCVD. DCM ADVISED THAT SHE WAS AWARE THAT EE WAS GOING TO NEW FACILITY BUT GIVEN THE CONTACT NUMBER AND NAME OF THE FACILITY, DCM WAS UNABLE TO LOCATE THE FACILITY IN ORDER TO REQUEST UPDATED RECORDS. EE EXPLAINEDTHAT HE ONLY SAW THE DAY 75 DEADLINE ON THE LETTER AND DID NOT SEE THAT ON DAY 45 THE BENEFITS WOULD BE SUSPENDED. EE ADVISED THAT AS SOON AS ALL OF THIS UPDATED INFORMATION IS RCVD, BENEFITS CAN BE REINSTATED. EE DID NOT HAVE ANY ADDITIONAL QUESTIONS. DCM THANKED EE AND THEN ENDED PHONE CALL.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : LTR to EE
Other Subject : AUTH FORM
Text: [07/24/2019 - HENNESSY, MEGHAN]BLANK AUTH FORM FOR DR. TODD RCVD AND SENT TO EE

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject :
Text: [07/23/2019 - HENNESSY, MEGHAN]DCM MADE ATTEMPT TO SPEAK WITH EE REGARDING SUSPENSION OF BENEFITS. NO ANSWER AT THIS TIME. DCM PROVIDED CONTACT INFORMATION AND REQUESTED RETURN PHONE CALL.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : MGR REVIEW
Text: [07/23/2019 - SULLIVAN, BRIAN]AGREE WITH SUSPENSION AT THIS TIME.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : MENTOR REVIEW
Text: [07/22/2019 - THOMAS, JASON]AGREE WITH SUSPENSION AS MEDICAL RECORDS STILL MISSING FROM AP TODD AND INFO PROVIDED FOR SECOND PROVIDER OF GA RENEW HAS NOT BEEN ABLE TO BE CONTACTED AS INFO PROVIDED IS INCORRECT FROM EE.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Closed
Other Subject : REFER TO MANAGER
Text: [07/22/2019 - HENNESSY, MEGHAN]CLAIM RECOMMEND FOR SUSPENSION ON DAY 45: MED RECORDS REQUESTED FROM DR. TODD BUT ONLY RESTRICTIONS FORM RCVD. DCM SENT EE CIF FORM PN 6/8/19 AND 7/11/19 AND IT HAS NOT YET BEEN RCVD. EE EXPLAINED GOING TO NEW FACILITYFOR TREATMENT BUT WITH INFO EE PROVIDED, DCM UNABLE TO LOCAL FACILITY TO REQUEST MED RECORDS.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : LTR to EE
Other Subject : SUBSEQUENT
Text: [07/10/2019 - HENNESSY, MEGHAN]SUBSEQUENT LETTER SENT TO EE WITH CIF FORM ATTACHED.

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject :
Text: [07/10/2019 - HENNESSY, MEGHAN]DCM MADE PHONE CONTACT WITH EE REGARDING CLAIM. DCM ADVISED THAT MED RECS ARE STILL OUTSTANDING FROM DR. TODD. EE EXPLAINED HAS NOT MET WITH DR. TODD IN A WHILE BUT DID GO B THE MEDICAL FACILITY TO UPDATE AN AUTH FORM IN ORDER FOR THEM TO RELEASE RECORDS TO EE. EE EXPLAINED THAT HE HAS NOT RTW YET BUT HAS BEEN DOING MUCHBETTER AFTER RECVING INFUSIONS THROUGH GEORGIA RENEW/GEORGIA KETTERING. EE PROVIDED CONTACT INFORMATION AS 678-769-7008. EE EXPLAINED THAT HE HAS TWO UPCOMING APPOINTMENTS FOR INFUSIONS TOMORROW AND THURSDAY. EE EXPLAINED THAT THERE IS NO UPDATE ON HIS SSDI APPLICATION. DCM ADVISED THAT SHE WILL REMAIN IN CONTACT WITH EE IN THE NEXT COUPLE OF WEEKS TO SEE HOW RECENT OV WENT AND IF EE WILL RTW.EE DID NOT HAVE ANY ADDITIONAL QUESTIONS. DCM THANKED EE AND THEN ENDED PHONE CALL.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Med Records Rcvd

Other Subject : DR. TODD
Text: [07/02/2019 - HENNESSY, MEGHAN]RESTRICTIONS FORM RCVD FROM DR. TODD OUTLINING THAT LOV 4/23/19 NOV 7/23/19. EE IS CAPABLE OF PERFORMING SEDENTARY CAPACITY ONLY ON A FULL-TIME BASIS DUE TO CHRONIC INTRACTABLE PAIN AND RESTRICTIONS IMPOSED FROM 2/2/18TO INDEFINITE. THERE ARE ONGOING REFERRAL TO SPECIALIST TO TRY AND CONTROL SYMPTOMS. RELEASEPOINT STILL WAITING ON FULL MEDICAL RECORDS

**ote**

Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject :
Text: [06/27/2019 - HENNESSY, MEGHAN]DCM MADE ATTEMPT TO SPEAK WITH EE REGARDING RTW STATUS, AS EE WAS HOPEFUL THAT HE WAS GOIG TO RTW AFTER A FEW MORE APPTS WITH GEORGIA RENEW. DCM PROVIDED CONTACT INFORMATION AND REQUESTED A RETURN PHONE CALL.

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : LTR to EE
Other Subject :
Text: [06/24/2019 - HENNESSY, MEGHAN]LETTER WITH BLANK AUTH FORM MAILED TO EE

**ote**

Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject :
Text: [06/07/2019 - HENNESSY, MEGHAN]DCM MADE PHONE CONTACT WITH EE TO OBTAIN THE CONTACT INFORMATION FOR GEORGIA RENEW. 678-769-7008. DCM ADVISED EE THAT SHE WILL BE REQUESTING UPDATED MEDICAL RECORDS FROM DR. TODD AND GEORGIA RENEW TODAY. EE EXPLAINED THAT HE UNDERSTOOD. DCM THANKED EE AND THEN ENDED PHONE CALL.

**ote**

Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject :
Text: [06/06/2019 - HENNESSY, MEGHAN]DCM LEFT V/M FOR EE AND REQUESTED A RETURN PHONE CALL FOR EE TO PROVDE CONTACT INFORMATION FOR GA RENEW.

**ote**

Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : UPDATE
Text: [06/04/2019 - HENNESSY, MEGHAN]DCM RECVD CALL FROM EE REGARDING CIDM LETTER HE RECEIVED. DCM ADVISED EE THAT CLAIM WAS TRANSFERRED TO NEW DCM AND THAT THE LETTER WAS JUST INFORMING HIM OF THAT AND TO PROVIDE UPDATED CONTACT INFO. DCM ASKED IF EE HASANY ADDITIONAL QUESTIONS REGARDING HIS CLAIM AT THIS TIME. DCM EXPLAINED THAT HIS PREVIOUS DCM WAS LOOKING FOR INFORMATION. DCM EXPLAINED THAT UPDATED MEDICAL RECORDS ARE GOING TO BE REQUESTED FROM HIS TREATING DOCTORS. EE EXPLAINED THAT HE MET WITHHIS PCP - DR. TODD ABOUT 6 WEEKS AGO AND DR. TODD SENT HIM TO A SPECIALIST GEORGIA RENEW. EE EXPLAINED THAT HE HAS BEEN TO GA RENEW ABOUT 4 TIMES AND HAS A FEW MORE UPCOMING APPOINTMENTS. EE EXPLAINED THAT GA RENEW IS HELPING HIM AND HE HOPES TO BE CLEARED TO RTW FOLLOWING A FEW MORE APPOINTMENTS. DCM ADVISED EE TO PROVIDE UPDATE IF HE IS CLEARED TO RTW AND THAT WILL BE HIS PLAN. DCM ADVISED THAT A LETTER WILL BE SENT TO EE OUTLINING THE REQUEST FOR UPDATED MEDICAL RECORDS. DCM ADVISED THAT UPONRECEIPT OF MED RECORDS, THEY WILL BE REVIEWED TO DETERMINE HIS ONGOING R&L'S. EE EXPLAINED THAT HE UNDERSTOOD AND DID NOT HAVE ANY ADDITIONAL QUESTIONS OR CONCERNS. DCM THANKED EE AND THEN ENDED PHONE CALL.

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : VNDR PMT
Text: [05/24/2019 - THEOFRASTOU, ELIZABETH]INVOICE RECEIVED ON 5/4/19 FROM RELEASEPOINT. INV #709759, IN THE AMOUNT OF $8 FOR MEDICAL RECORDS. INVOICE PAID IN FULL.

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [04/30/2019 - NEAULT, TAMIE]INVOICE RECEIVED ON 4/24/2019, FROM RRS, DATED 4/17/2019, INVOICE #36193-1, IN THE AMOUNT OF $420.00, FOR PEER REVIEW. INVOICE PAID IN FULL.

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Action Plan
Other Subject : RTW OO JUN 2019
Text: [04/23/2019 - PUTTOCK, LUCILIA]40 YOM PRODUCTION SUPERVISOR (LIGHT OCC)- LDW 11/7/16, DOD 11/8/16, LTD BBD 5/9/17, CID 5/6/20 (36 MOS) DXS PER PEER: CERVICAL RADICULOPATHY (M54.12); CERVICAL DEGENERATIVE DISC DISEASE

(M50.30); CONGENITAL LUMBAR STENOSIS (Q76.49); LUMBAR DEGENERATIVE DISC DISEASE (M51.36); COMPLEX REGIONAL PAIN SYNDROME OF THE RIGHT UPPER LIMB (G90.511); FUNCTIONAL HYPERKINESIA CAUSING LOWER EXTREMITY TREMORS (R25.1); AND PERIPHERAL NEUROPATHY (G64), PSYCH CO-MORBIDS** SEE PM&R W/PAIN PEER REVIEW OUTLINED R&L'S THAT SUPPORT EE'S IMPAIRMENTS FROM HIS OWN OCC, SPEC FOR LIFTING CARRYING PUSHING STANDING WALKING AND CRAWLING FOR 2 MOS (JUNE 2019) - UPDATED EE FORMS ON FILE - SS PENDING W/ OWN ATTY -- CURRENTLY PLAN: CONTACT EE FOR UPDATE /NOV INFO TO REQ MEDS PROB IN JUNE 2019 FOR ONGOING LTD REVIEW AND ACTION PLANNING. -- F/UP FOR PENDING SS

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Peer Review
Other Subject : PM&R W/ PAIN
Text: [04/23/2019 - PUTTOCK, LUCILIA]PM&R W/PAIN PEER REVIEW OPINED: CURRENTLY AND UP TO TWO MONTHS FROM THE DATE OF THIS REPORT, THE FOLLOWING RESTRICTIONS/LIMITATIONS ARE SUPPORTED: SITTING UP TO 2 HOURS AT A TIME AND UP TO A TOTAL OF 6 HOURS IN AN EIGHT HOUR DAY. STANDING UP TO 1 HOUR AT A TIME AND UP TO A TOTAL OF 2 HOURS IN AN EIGHT HOUR DAY. WALKING UP TO 1 HOUR AT A TIME AND UP TO A TOTAL OF 2 HOURS IN AN EIGHT HOUR DAY. THE CLAIMANT SHOULD BE ALLOWED 5-MINUTE BREAKS EVERY 2 HOURS OF SITTING AND NEEDED FOR COMFORT, AND EVERY 1 HOUR OF STANDING, AND WALKING TO STRETCH AND CHANGE POSITIONS AS NEEDED FOR COMFORT. OCCASIONAL NECK FLEXION, EXTENSION, LATERAL BENDING, AND ROTATION. CARRYING, LIFTING, PUSHING, AND/OR PULLING NO GREATER THAN 10 POUNDS OF WEIGHT OCCASIONALLY, AND 5 POUNDS FREQUENTLY. OCCASIONAL REACHING OVERHEAD, ABOVE THE SHOULDERS, AND BELOW THE WAIST LEVEL, AND FREQUENT REACHING AT WAIST/DESK LEVEL USING THE RIGHT UPPER EXTREMITY. NO RESTRICTIONS IN REACHING OVERHEAD, ABOVE THE SHOULDERS, AND AT WAIST/DESK LEVEL USING THE LEFT UPPER EXTREMITY. OCCASIONAL REACHING BELOW THE WAIST LEVEL. OCCASIONAL HANDLING, FINGERING, FEELING, GRASPING, PINCHING, GRIPPING, AND USE OF HAND CONTROL USING THE RIGHT HAND. NORESTRICTIONS FOR HANDLING, FINGERING, GRASPING, PINCHING, GRIPPING AND USE OF HAND CONTROLS USING THE LEFT HAND. OCCASIONAL TWISTING, CRAWLING, CROUCHING, BENDING/STOOPING, KNEELING, SQUATTING, STAIR CLIMBING, AND USE OF FOOT CONTROL. NO CRAWLING, WORKING AT UNPROTECTED HEIGHTS, DRIVING COMMERCIAL VEHICLE, CLIMBING LADDERS, AND OPERATING HEAVY EQUIPMENT OR SAFETY SENSITIVE MACHINERY. THE CLAIMANT IS ABLE TO PERFORM FULL-TIME DUTY (8 HOURS/DAY, 5 DAYS/WEEK) WITHIN THE INDICATED RESTRICTIONS/LIMITATIONS.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Ref to Other
Other Subject : SCORE REFERRAL
Text: 4/4/2019 - REFERRED TO RELIABLE REVIEW SERVICES FOR PEER REVIEW.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Social Security
Other Subject : ATTY
Text: [04/04/2019 - PUTTOCK, LUCILIA]SS ATTY P ANDREW LOWMAN REPLIED THAT NO DECISION ON SS YET.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Ref to Managed Care
Other Subject : PM&R W/PAIN
Text: [04/01/2019 - PUTTOCK, LUCILIA]REFERRED THRU CRT FOR PM&R W/PAIN PHYSICIAN REVIEW[04/16/2019 - PUTTOCK, LUCILIA]4/5/19 REFERRED TO RELIABLERS REVIEWS ERVICES AND SENT SECURE EMAIL W/ RECS.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Social Security
Other Subject : LTR TO ATTY
Text: [04/01/2019 - PUTTOCK, LUCILIA]FAXED REQ TO ATTY LOWMAN FOR SS CLAIM STATUS.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Med Records Rcvd
Other Subject : DR TODD
Text: [04/01/2019 - PUTTOCK, LUCILIA]RECD MED RECS FROM DR TODD DATED 2/2/218 THRU 2/6/19- DXS INCLUDE ANXIETY, HTN, INSOMNIA, STOMATITIS, CLEILITIS, GERD, CONSTIPATION

**ote**
Claim/Event/Leave: 7259041
NoteSubject : EE Called
Other Subject : INFO REC'D/ SS PROOF
Text: [03/27/2019 - PUTTOCK, LUCILIA]EE LEFT VMX AND CALLED TODAY ASKING IF INFO WAS REC'D AND IF ANYTHING ELSE NEEDED, INFORMED THAT DR TODD SUBMITTED INFO TODAY HOWEVER NOT REVIEWED YET, INFORMED THAT PROOF OF HIS APPLIC FOR SSDI BENES ARE NEEDED, A LTR WILL BE SENT TO HIM, HE CONFIRMED HIS USING HIS OWN SS ATTY AND IS SCHEDULED TO SEE A DR ON 4/4, REPLIED THAT A COPY OF ANY CORRESPONDENCE HE REC'D RE PENDING SS CLAIM IS NEEDED, HE CAN FAX TO ADCM- ADVISED IF ANYTHING ELSE IS NEEDED HE WILL BE NOTIFIED, NFQ.

**C ote**
Claim/Event/Leave: 7259041

Claim/Event/Leave: 7259041
NoteSubject : Voc Rehab
Other Subject : OA
Text: [03/20/2019 - PUTTOCK, LUCILIA]PRODUCTION SUPERVISOR -- STRENGTH: LIGHT -- LIFTING, CARRYING, PUSHING, PULLING 20 LBS. OCCASIONALLY, FREQUENTLY UP TO 10 LBS., OR NEGLIGIBLE AMOUNT CONSTANTLY. CAN INCLUDE WALKING AND OR STANDING FREQUENTLY EVEN THOUGH WEIGHT IS NEGLIGIBLE. CAN INCLUDE PUSHING AND OR PULLING OF ARM AND OR LEG CONTROLS.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Voc Rehab
Other Subject : CLAIM/EVENT TO VCM
Text: 3/18/2019-REFERRAL RECEIVED BY VCM AND ASSIGNED TO PROVOST, MEGAN. CLAIM/AS EVENT IS PENDING REVIEW.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Voc Rehab
Other Subject : OA
Text: [03/18/2019 - PROVOST, MEGAN]OA COMPLETED AND UPLOADED. NO FURTHER VCM ACTIVITY. SUMMARY: THE EMPLOYER REQUIREMENTS OF THE JOB ARE GREATER THAN THAT OF THE NATIONAL REQUIREMENTS OF THE OCCUPATION. THE OCCUPATION IS MOST OFTEN PERFORMED AT THE LIGHTLEVEL IN THE NATIONAL ECONOMY, PER THE DOT WITH FREQUENT REACHING, HANDLING, FINGERING; AND OCCASIONAL CROUCHING. PER ONET, FREQUENT STANDING, WALKING; AND OCCASIONAL SITTING. I HAVE NOT MET WITH MR. RUSSELL FOR THE PURPOSE OF THIS REVIEW. ALL OPINIONS ARE BASED ON A REVIEW OF MEDICAL RECORDS AND RESOURCES LISTED ONLY.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Ref to Voc Rehab
Other Subject : SCORE REFERRAL
Text: 3/14/2019 - REFERRED TO THE VOC UNIT FOR OCCUPATIONAL ANALYSIS.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Action Plan
Other Subject : RTW OO MAY 2019
Text: [03/14/2019 - PUTTOCK, LUCILIA]40 YOM PRODUCTION SUPERVISOR (REFERRED FOR OA)- LDW 11/7/16, DOD 11/8/16, LTD BBD 5/9/17, CID 5/6/20 (36 MOS) DX: NEUROPATHIC PAIN RIGHT CHEST WALL, RIGHT UPPER EXTREMITY PAIN (CRPS), PM&R/PAIN PEER COMPLETED 4/27/17FINDING RESTRICTIONS THAT INCLUDE RESTRICTING REACHING/FINGERING/HANDLING W/RT HAND TO OCCAS AND RESTRICTS LIFTING/CARRYING TO 10LBS OCCAS , MS CC IN 7/2018 SUPPORTS EE W'LESS THAN MEDIUM THROUGH SPINE STIM TRIAL AND LIKELY AFTER-- UPDATED EE FORMS ON FILE BUT REQ'D NEW AUTH -- SS PENDING W/ OWN ATTY -- CURRENTLY ON N&P FOR UPDATED MED INFO DUE 3/28 TO SUSP RO 4/27/19 TO CLOSE-- PLAN: ONCE MEDS REC'D WILL REVIEW TO DETERMINE SUPPORTED R&L'S TO COMPARE W/OCC DUTIES AND IF EE IS IN APPROP TX FORONGOING LTD LIAB AND ACTION PLANNING. -- F/UP FOR PENDING SS

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : LTR to EE
Other Subject : AUTH NEEDED/N&P
Text: [03/14/2019 - PUTTOCK, LUCILIA]RECD' RESPONSE FROM DR TODD'S OFFICE STATING EE'S AUTH IS EXPIRED (2017)-- NEWEST AUTH DOES NOT HAVE A CLEAR YEAR-- SENT AUTH AND AP LTR TO EE.[03/14/2019 - PUTTOCK, LUCILIA]ALSO ADVISED EE TO CONTACT DR. TODD'S OFFICE DIRECTLY TO SUBMIT YOUR UPDATED MEDICAL RECORDS BY 3/28/19 OR LTD BENEFITS WILL BE SUSPENDED AND IF NOT REC'D BY 4/27/19 THE CLAIM WILL CLOSE.

**ote**
Claim/Event/Leave: 7259041
NoteSubject : EE Called
Other Subject : MED INFO/BENES
Text: [03/08/2019 - PUTTOCK, LUCILIA]EE LEFT LEFT VMX ON 3/5 STATING DR TODD'S OFFICE SHOULD BE SENDING INFO, HE ASKED WHAT DAY WILL HE GET PAID -- SYSTEM OUTGAGE 3/7 -- CALLED HIM TODAY AND INFORMED THAT BENES PROCESSED ON 3/4 AND ALLOW 3 DAYS FOR DD, HECONFIRMED BENES PMT WAS REC'D, NFQ TODAY.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : LTR to AP
Other Subject : DR TODD
Text: [03/05/2019 - PUTTOCK, LUCILIA]SENT ADDT REQ FOR MED REQ TO DR TODD

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : EE FORMS
Text: [03/05/2019 - PUTTOCK, LUCILIA]EE SUBMITTED AUTH, ACT, CSS, AND CIF FORMS: USES CANE/WALKER, RARELY RUNS ERRANDS, WIFE/KIDS DO HOUSEHOLD CHORES, LIMITED RT ARM DUE TO SEVERE PAIN, DIFF FOCUSING, LEGS ARE SHAKEY

**ote**
Claim/Event/Leave: 7259041
NoteSubject : EE Called
Other Subject : INFO RECD?
Text: [03/05/2019 - PUTTOCK, LUCILIA]EE CALLED TO CK IF REQ'D INFO WAS REC'D, REV'D FAXED AND INFORMED THAT HIS FORMS WERE RECD AND RESPONSE FROM REQ TO DR TODD DATED 2/27 IS JUST A FAX COVERSHEET THAT ONLY STATES "404-303-3342 FOR STATUS" NO CONTACT NAME PROVIDED OR WHAT TO DO WITH THE REQUEST, SUGGESTED HE CALLED DR TODD'S OFFICE AND ASK THEM TO FAX HIS UPDATED RECS TO ADCM'S F#, HE HAD NFQ.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : SOCIAL MEDIA
Text: [03/01/2019 - PUTTOCK, LUCILIA]REC'D SOCIAL MEDIA/DATATBASE REPORT, MATCHES FOR FACEBOOK FOR EE AND HIS WIFE

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : SIU
Text: [02/28/2019 - MOORE, CURTIS]DATABASE = ISG

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Ref to Special Invest
Other Subject : SCORE REFERRAL
Text: 2/27/2019 - REFERRED TO SIU FOR DATABASE SEARCH. TYPE OF SERVICE(S) REQUESTED: - SOCIAL MEDIA.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Ref to Special Invest
Other Subject : SOCIAL MEDIA
Text: [02/27/2019 - PUTTOCK, LUCILIA]REFERRED FOR SOCIAL MEDIA/DATABASE SEARCH

**ote**
Claim/Event/Leave: 7259041
NoteSubject : EE Called
Other Subject : VMX- MED RECS
Text: [02/27/2019 - PUTTOCK, LUCILIA]EE LEFT SATING HE CALLED AP OFFICE AND THEY DID NOT GET MED REQ, NEED TO FAX TO 720-737-2406 ATTN. SUSAN AND THEY WILL SEND INFO -- (EE CALLED RIGHT BACK AFTER LEAVING THIS VMX AND SPOKE W/ANOTHER DCM WHO IS FAXING REQTO AP.)

**ote**
Claim/Event/Leave: 7259041
NoteSubject : EE Called
Other Subject : UPDATE
Text: [02/27/2019 - CAMPOS, FELIX]EE CALLED TO CONFIRM THAT HE MAILED FORM MONDAY AND REQUEST THAT WE REFAX REQUEST TO DR. TODD. CONFIRMED THAT I WILL RE FAX. EE THANKED ME AND CALL ENDED.

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : MED INFO AND FORMS
Text: [02/27/2019 - PUTTOCK, LUCILIA]CALLED EE TO DISCUSS LTD CLAIM AND REQ'D INFO FOR ONGOING DISABILITY REVIEW, PRIOR DCM REQ'D UPDATED FORMS FROM EE AND MED INFO, ON 2/6 EE CONFIRMED PCP IS DR TODD AND REQ SENT TO THEM FOR MED RECS, NOT REC'D YET, SUGGESTED EE F/UP W/THEM TO SUBMIT MED INFO BY MON OR BENES MAY BE SUBMITTED, PROVIDED CURRENT ADCM CONTACT INFO/F# TO PROVIDE TO AP, ALSO ASKED ABOUT FORMS AND EE REPORTED HE DID GET THEM AND MAILED ON MONDAY, HE BECAME IRATE RE POSS SUSP OF BENES AS HEDID NOT GET THE ORIG 1/10/19 LTR, REPLIED THAT HE DID GET THE LTR AFTER IT WAS RE-SENT TO HIM BY PRIOR DCM AT PHONE CALL ON 2/6, AS HE STATED HE COMPLETED THE FORMS, ADVISED HIM TO REV THE LTR THAT INDICATES MED INFO IS NEEDED OR BENES SUSP, CALL BECAME UNPRODUCTIVE AND EE AGREED TO D/C DISCUSSION.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : LTR to EE
Other Subject : CHANGE IN DCM
Text: [02/25/2019 - MASSARO, TIFFANY]CHANGE IN DCM LTR TO EE

**ote**
Claim/Event/Leave: 7259041
NoteSubject : EE Called
Other Subject : PAYMENT
Text: [02/07/2019 - OBRIEN, QUINN]EE CALLED, ADCM ADVISED THAT THERE IS A KNOWN ISSUE WITH PAYMENTS ISSUED ON 2/4/9 AND THAT IS LOOKING TO GET RESOLVED

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : LTR to EE
Other Subject : FORMS
Text: [02/06/2019 - OBRIEN, QUINN]MANUALLY PRINTED AND RE-MAILED N&P LETTER AND FORMS TO EE

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : LTR to AP
Other Subject : TODD
Text: [02/06/2019 - OBRIEN, QUINN]SENT REQUEST, VIA RP, TO MEDICAL ASSOC OF NORTH GEORGIA FOR RECORDS 5/1/18 - PRESENT

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : STATUS
Text: [02/06/2019 - OBRIEN, QUINN]RECEIVED VM FROM EE, CALLED EE BACK, EE STATED NEVER GOT PREVIOUS 3 VM'S THAT ADCM LEFT AND DID NOT GET ANY LETTERS ADCM MAILED, ADMC EXPLAINED N&P AND APPROPRIATE CARE CLAUSE, WILL RE-MAIL TO EE TODAY, STATED THAT ADCM UNABLE TO GET AP PATEL RECORDS AS PATEL OFFICE SAYS NO RECORDS ON FILE, EE WILL TRY TO GET THOSE, EE HAS NOT SEE AP REUBEN, STATED THAT HAS SEEN PCP TODD AND TODD IS LOOKING AT A SPECIALIST IN NC FOR EE, EE WAITING FOR REFERRAL INFORMATION[02/06/2019 -OBRIEN, QUINN]THIS WILL SERVE AS DAY 30 CALL

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Med Records Rcvd
Other Subject : ATLANTA GASTRO
Text: [01/10/2019 - OBRIEN, QUINN]FACILITY INFORMED US THAT THEY HAVE NO RECORDS ON FILE FOR THIS PATIENT PLEASE BE ADVISED, PER ERICA, THERE ARE NO RECORDS FOUND FOR PATIENT DARRELL RUSSELL

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Notice/Proof Review
Other Subject : DUE 2/22/19
Text: [01/09/2019 - OBRIEN, QUINN]MAILED N&P LETTER WITH FORMS

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : STATUS
Text: [01/09/2019 - OBRIEN, QUINN]CALLED EE, LVM, REQUESTING CALL BACK

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : LTR to EE
Other Subject : UTC
Text: [12/24/2018 - OBRIEN, QUINN]MAILED UNABLE TO CONTACT LETTER TO EE

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : STATUS
Text: [12/24/2018 - OBRIEN, QUINN]CALLED EE, LVM, REQUESTING CALL BACK TO CONFIRM IF HE HAS SCHEDULED AN OV WITH AP REUBEN

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : STATUS
Text: [12/17/2018 - OBRIEN, QUINN]CALLED EE, LVM, REQUESTING CALL BACK, HAS HE SCHEDULED OV WITH AP REUBEN?

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : LTR to AP
Other Subject : DR. PATEL
Text: [11/30/2018 - OBRIEN, QUINN]SENT REQUEST TO RP TO RE-OPEN DR. PATEL REQUEST AS EE STATES HE HAS NOW SEEN AP AFTER 11/7/18

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : STATUS
Text: [11/30/2018 - OBRIEN, QUINN]CALLED AND SPOKE WITH EE, EE STATED THAT HE DID SEE AP PATEL AND WAS

Text: [11/30/2018 - OBRIEN, QUINN]CALLED AND SPOKE WITH EE, EE STATED THAT HE DID SEE AP PATEL AND WAS CLEARED, HAS NOT HOWEVER CALLED AP REUBEN TO RESCHEDULE, ADCM ADVISED THAT AP PATEL'S OFFICE STATED ON 11/7/18 THAT THEY HAD NO RECORDS FOR THIS PATIENT,EE STATED HE CANCELLED HIS 10/31/18 OV AND MOVED IT AND IT WAS PROBABLY AFTER 11/7/18, ADCM ASKED EE TO CONTACT ADCM WHEN HE RESCHEDULES WITH AP REUBEN, ALSO ASKED ABOUT ALLSUP, EE STATED HE IS WAITING TO HEAR FROM HIS OWN LAWYER FIRST ABOUT SS STATUS BEFORE DECIDING ON USING ALLSUP

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : ALLSUP
Text: [11/26/2018 - OBRIEN, QUINN]EE HAS NOT RETURNED REPRESENTATION PAPERWORK

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : LTR to EE
Other Subject : UTC
Text: [11/08/2018 - OBRIEN, QUINN]MAILED UNABLE TO CONTACT LETTER TO EE

**ote**

Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : STATUS
Text: [11/08/2018 - OBRIEN, QUINN]CALLED EE, LVM, REQUESTING CALL BACK TO DISCUSS OV WITH AP PATEL (NEED CONTACT INFO AS THEY SAID NO RECORDS ON FILE FOR EE SO MAY HAVE SENT TO WRONG OFFICE), IF CLEARED BY AP PATEL, DID EE SCHEDULE OV WITH AP REUBEN

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Med Records Rcvd
Other Subject : ATLANTA GASTROENTERO
Text: [11/07/2018 - OBRIEN, QUINN]FACILITY INFORMED US THAT THEY HAVE NO RECORDS ON FILE FOR THIS PATIENT

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : LTR to AP
Other Subject : DR. PATEL
Text: [11/01/2018 - OBRIEN, QUINN]SENT REQUEST, VIA RP, TO AP PATEL (ATLANTA GASTROENTEROLOGY) FOR RECORDS 10/1/18 - PRESENT

**ote**

Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : STATUS
Text: [11/01/2018 - OBRIEN, QUINN]CALLED EE, LVM, REQUESTING CALL BACK TO DISCUSS HOW OV WITH AP PATEL WENT YESTERDAY, IF NO FURTHER TX WITH AP, WILL EE SCHEDULE OV WITH AP REUBEN?

**ote**

Claim/Event/Leave: 7259041
NoteSubject : EE Called
Other Subject : STATUS
Text: [10/29/2018 - OBRIEN, QUINN]EE CALLED, STATUS HAS BEEN VERY SICK RECENTLY, NAUSEOUS, THINKS IT MIGHT BE REACTION TO MEDICATION, CANCELLED OV WITH AP REUBEN AS A RESULT, GOING TO SEE GASTRO AP PATEL THIS WEEK (10/31/18) AND THEN, ONCE RESOLVED, WILL RESCHEDULE WITH AP REUBEN

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : LTR to EE
Other Subject : UTC
Text: [10/18/2018 - OBRIEN, QUINN]MAILED UNABLE TO CONTACT LETTER TO EE

**ote**

Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : 2X STATUS
Text: [10/18/2018 - OBRIEN, QUINN]CALLED EE, LVM, REQUESTING CALL BACK TO DETERMINE HOW OV WITH AP REUBEN AND IF EE COMPLETED ALLSUP PAPERWORK

**ote**

Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : STATUS
Text: [10/09/2018 - OBRIEN, QUINN]CALLED EE, LVM, REQUESTING CALL BACK TO CONFIRM IF HE HAD OV WITH AP REUBEN, STATUS AFTER OV, CONTACT INFO FOR AP, DID HE COMPLETE ALLSUP PAPERWORK?

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : STATUS
Text: [09/26/2018 - OBRIEN, QUINN]CALLED AND SPOKE WITH EE, EE STATED DID GET MED RECORDS FROM AP GAYLE, SENT TO AP REUBEN, HAS OV WITH AP REUBEN 1ST WEEK OF OCTOBER (COULD NOT RECALL DATE), ADCM WILL F/U AFTER OV, ASKED ABOUT ALLSUP, THEY DID REACH OUT TOEE AND EE GOT FORMS IN MAIL BUT HAS NOT COMPLETED THEM

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [09/21/2018 - MITCHELL, CATHERINE]INVOICE RECEIVED ON 09/07/2018 FROM RELEASEPOINT. INV #708628, IN THE AMOUNT OF $ 47.04 FOR MEDICAL RECORDS. INVOICE PAID IN FULL.

**R ote**
Claim/Event/Leave: 7259041
NoteSubject : OP/SS
Other Subject : MANUAL PAYMENT
Text: [08/30/2018 - CARMICHAEL, CHERYL]ISSUED MANUAL PAYMENT IN THE AMOUNT OF $1,554.00 DUE TO REFUND THE ESTIMATED SOCIAL SECURITY OFFSET TAKEN FOR THE TIME PERIOD OF 07/09/18 THRU 08/08/18.

**R ote**
Claim/Event/Leave: 7259041
NoteSubject : OP/SS
Other Subject : REFERRAL DETAILS
Text: [08/30/2018 - CARMICHAEL, CHERYL]REFERRAL RECD TO REFUND SSET OFFSET TAKEN. FOLLOW UP SET FOR RECALCULATION.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Ref to Other
Other Subject : FRS
Text: THE SCORE REFERRAL FOR FINANCIAL REVIEW SERVICES REFERRAL AND OTHER HAS BEEN RECEIVED AND ASSIGNED TO CHERYL CARMICHAEL.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Ref to Other
Other Subject : FRS
Text: FOR OTHER.WITH A REASON OF UNDERPAYMENT.COMMENTS: EE HAS SUBMITTED PROOF OF SS FILING. SS ESTIMATE CAN BE TAKEN DOWN AND FUNDS RETURNED TO EE

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : STATUS
Text: [08/29/2018 - OBRIEN, QUINN]CALLED AND SPOKE WITH EE, ADVISED OF RECEIPT OF LETTER FROM LAWYER SHOWING EE FILED FOR SS AND APPEALING, LET FRS KNOW TO TAKE DOWN OFFSET AND CALC UNDERPAYMENT DUE TO EE

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Social Security
Other Subject : FILED
Text: [08/29/2018 - OBRIEN, QUINN]RECEIVED LETTER FROM LAWYER WILLIAM MCCURDY, EE HAS FILED FOR SS, IT WAS DENIED, LAWYER HELPING EE APPEAL

**ote**
Claim/Event/Leave: 7259041
NoteSubject : EE Called
Other Subject : SS LETTER
Text: [08/29/2018 - OBRIEN, QUINN]EE CALLED AND LVM, ADVISED THAT LAWYER HAS SENT IN SS PROOF OF FILING, REQUESTS ADCM CONTACT ONCE RECEIVED

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Ref to SS Vendor
Other Subject : SCORE REFERRAL
Text: 8/27/2018 - REFERRED TO ALLSUP INC. AS SS ADVOCATE.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other

NoteSubject : Other
Other Subject : ALLSUP
Text: [08/27/2018 - OBRIEN, QUINN]REFERRED FILE TO ALLSUP

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : STATUS
Text: [08/27/2018 - OBRIEN, QUINN]RECEIVED VM FROM EE, CALLED EE BACK, EE WONDERING HOW TO GET SS ESTIMATE OFFSET REMOVED, ADCM EXPLAINED THAT NEED PROOF THAT EE HAS FILED FOR SS ON FILE, ADCM HAS SPOKE WITH LAWYER WESLEY WEAVER A FEW TIMES AND WAS TOLD ITWOULD BE FAXED TO ADCM, IT NEVER WAS, EE STATED HE FIRED WESLEY WEAVER AND MAY END UP SUING HIM, WENT TO NEW LAWYER WHEN HE HEARD BACK FROM SSA THAT APPLICATION WAS DENIED, NEW LAWYER DID NOT FILE APPEAL IN TIME SO SS CASE WAS CLOSED, STILL WORKINGWITH LAWYER TO TRY AND GET IT RE-OPENED TO FILE APPEAL, ADCM OFFERED SERVICES OF ALLSUP, EE ACCEPTED, WILL CONTACT LAWYER TO HAVE LAWYER SEND IN EMAIL PROVING EE HAS FILED, BEEN DENIED, AND WORKING ON APPEAL, ONCE EMAIL RECEIVED, ADCM WILL TAKE OFF THE OFFSET AND REFUND THE MONEY, EE ALSO STATED IS GOING TO GET MED RECORDS FROM AP GAYLE AND THEN SCHEDULE 2ND OPINION RE: SPIN STIM TRIAL WITH AN AP JEFFERY REUBEN, ADCM WILL CHECK BACK IN IN 30 DAYS RE: IF EE HAS 2ND OPINION SCHEDULED YET, EE THANKED, NO FURTHER QUESTIONS

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : RETURN CALL
Text: [08/13/2018 - OBRIEN, QUINN]RECEIVED VM FROM EE ON 8/9/18 AND WIFE ON 8/10/18 (ADCM WAS OUT OF OFFICE), VM FROM WIFE STATING THEY HAVE CALLED ADCM MULTIPLE TIMES AND NOT RECEIVED RETURN CALL, ADCM CALLED EE BACK, LVM, APOLOGIZED IF CALLS WERE NOT RETURNED BUT ADCM DOES NOT HAVE RECORD OF PREVIOUS VM'S, REQUESTING CALL BACK

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Ref to Other
Other Subject : FINANCIAL SERVICES
Text: [07/20/2018 - KEEFER, JESSICA]ADDED SSET OFFSET IN THE AMOUNT OF $1554.00 PER THE DOC IN THE DOC LIST AS REQUESTED BY DCM EFFECTIVE 7/9/18.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Ref to Other
Other Subject : PMNT
Text: THE SCORE REFERRAL FOR PAYMENT SERVICES REFERRAL AND PAYMENT ADJUSTMENT AND A REASON OF OFFSETS HAS BEEN RECEIVED AND ASSIGNED TO JESSICA KEEFER.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Ref to Other
Other Subject : PMT SVC
Text: FOR OFFSETS. COMMENTS: PLEASE PLACE AN ESTIMATED OFFSET FOR SSD ON THE CLAIM, EFFECTIVE TODAY, OF $1,554 PER MONTH.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Ref to Other
Other Subject : SCORE REFERRAL
Text: 7/19/2018 - REFERRED TO CONSULTING PHYSICIAN FOR CLAIM CONSULT - MEETING ATTENDANCE ONLY.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Social Security
Other Subject : ESTIMATE
Text: [07/19/2018 - OBRIEN, QUINN]PLACED ESTIMATE OF $1,554.00/MONTH

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : STATUS
Text: [07/19/2018 - OBRIEN, QUINN]CALLED EE, LVM, REQUESTING CALL BACK, WANTING TO INFORM EE THAT N&P IS UP AND NO SS NOA ON FILE SO OFFSET PUT IN PLACE AND WANTING TO KNOW IF EE HAS SEEN AP TARK OR IF EE WILL BE SEEING ANOTHER SPECIALIST?

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Action Plan
Other Subject : RTW OO JAN 2019
Text: [07/17/2018 - OBRIEN, QUINN]40 YOM, LDW 11/7/16, DOD 11/8/16, DOH 9/12/11, LTD EDOC 12/1/11, PRE X N/A, WC N/A,

LTD BBD 5/9/16, CID 5/6/20, OWN OCC: PRODUCTION SUPERVISOR (LIKELY MEDIUM), DX: NEUROPATHIC PAIN IN THE RIGHT CHEST WALL, RIGHT UPPER EXTREMITY PAIN (CRPS), PM&R/PAIN PEER COMPLETED 4/27/17 FINDING RESTRICTIONS THAT INCLUDE RESTRICTING REACHING/FINGERING/HANDLING WITH RIGHT HAND TO OCCASIONAL AND RESTRICTS LIFTING/CARRYING TO 10LBS OCCASIONALLY , MS CC IN 7/2018 SUPPORTS EE WITH LESS THAN MEDIUM THROUGH SPINE STIM TRIAL AND LIKELY AFTER, PLAN: 1) MAINTAIN 60 DAY CONTACTS, 2) CONFIRM SPINE STIM TRIAL PLANS, 3) PLACE SS ESTIMATE, 4) REQUEST MEDS AFTER NOV WITH AP TARK (OV NOT SCHEDULED YET)[07/17/2018 - OBRIEN, QUINN].

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : MS CC
Text: [07/17/2018 - WOOD, KELLY]CLAIM REVIEWED IN MS CC, DR. TILTON ATTENDED. CLAIMANT OOW FOR CPRS OF RIGHT UPPER LIMB. LESS THAN MEDIUM RLS CONTINUE TO BE REASONABLY SUPPORTED. DR TARK RECOMMENDING SPINAL CORD STIMULATOR BUT DID NOT HAVE INSURANCE. NOW HAS INSURANCE AND REPORTS DESIURE FOR TRIAL FOR STIMULATOR. RECOMMEND UPDATE RECORDS FOLLOWING TRIAL OR FOLLOWING IMPLANT OF ACTUAL SPINAL CORD STIMULATOR.

**ote**

Claim/Event/Leave: 7259041
NoteSubject : Called AP
Other Subject : DR. TODD
Text: [07/11/2018 - OBRIEN, QUINN]CALLED AP OFFICE, CONFIRMED LAST OV WAS 4/11/18, THERE WAS A SCHEDULED OV 'A FEW DAYS AGO' THAT EE DID NOT SHOW FOR AND HAS NOT BEEN RESCHEDULED

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Med Records Rcvd
Other Subject : DR. TODD
Text: [07/11/2018 - OBRIEN, QUINN]RECEIVED MED RECORDS FOR 2/2/18 - 4/11/18

**ote**

Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : DAY 30
Text: [07/05/2018 - OBRIEN, QUINN]CALLED AND SPOKE WITH EE, ADVISED EE THAT STILL NEED MED RECORDS FROM AP TODD, EE STATED WILL BE SEEING AP ON 7/9/18 AS NEEDS REFERRAL TO NEW SPECIALIST SINCE NOT HAVING ANY LUCK WITH AP TARK, EE WILL TRY TO GET RECORDS ATOV AND SEND TO ADCM, ADCM ALSO NEEDS SS DENIAL LETTER AND WESLEY WEAVER HAS STILL NOT FAXED IT OVER, REMINDED EE OF 7/18/18 DEADLINE

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Med Records Rcvd
Other Subject : ALLIANCE SPINE AND P
Text: [06/27/2018 - OBRIEN, QUINN]MEDICAL FACILITY IS UNABLE TO LOCATE RECORDS FOR TIME FRAME REQ AND/OR PROVIDER LISTED PER FACILITY, THEY DO NOT HAVE ANY RECORDS FOR TIME FRAME REQUESTED. LAST SEEN 01/31/2018

**ote**

Claim/Event/Leave: 7259041
NoteSubject : Called Other
Other Subject : LAWYER
Text: [06/19/2018 - OBRIEN, QUINN]CALLED AND SPOKE WITH LAWYER, WESLEY WEAVER, ASKED AGAIN FOR LETTER INFORMING ADCM OF SSD STATUS, LAWYER AGREED TO FAX TOMORROW AND TOOK DOWN ADCM FAX NUMBER

**ote**

Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : DAY 15
Text: [06/19/2018 - OBRIEN, QUINN]CALLED AND SPOKE WITH EE, EE ADVISED HE STILL HAS NOT HAD SPINE STIM PROCEDURE YET AS HAS HAD CONSTANT CALLS WITH AP TARK AND INSURANCE COMPANY AND GETTING IT APPROVED, EE HASN'T HEARD ANYTHING IN WEEKS AND DOES NOT KNOW STATUS AT THIS TIME, EE HAS SEEN PCP AP TODD RECENTLY, ADCM ADVISED EE OF RECORD REQUESTS AND WAITING ON RESPONSE FROM AP TODD, ALSO NEED DENIAL LETTER FROM WESLEY WEAVER

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Med Records Rcvd
Other Subject : ALLIANCE SPINE AND P
Text: [06/12/2018 - OBRIEN, QUINN]MEDICAL FACILITY IS UNABLE TO LOCATE RECORDS FOR TIME FRAME REQ AND/OR PROVIDER LISTED

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Other

Other Subject : VENDOR PAYMENT
Text: [06/04/2018 - NEAULT, TAMIE]RECEIVED INVOICE ON 6/4/2018 FROM VENDOR COVENT BRIDGE USA INC, INVOICE #CBR553682, IN THE AMOUNT OF $180.00, FOR SERVICE TYPE INVESTIGATION FEES. INVOICE PAID IN FULL.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Notice/Proof Review
Other Subject : DUE 7/18/18
Text: [06/04/2018 - OBRIEN, QUINN]MAILED N&P LETTER TO EE REQUESTING MED RECORDS 2/1/18 - PRESENT AND PROOF OF SSD FILING

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : LTR to AP
Other Subject : MULTIPLE
Text: [06/04/2018 - OBRIEN, QUINN]SENT REQUESTS FOR MED RECORDS 2/1/18 - PRESENT TO ALLIANCE SPINE AND PAIN CENTER (DR. TODD AND DR. TARK), MEDICAL ASSOC. OF NORTH GEORGIA (DR. GALE) VIA RELEASE POINT[06/04/2018 - OBRIEN, QUINN]**ALLIANCE SPINE AND PAIN CENTER (DR. GALE AND DR. TARK) AND NORTH GEORGIA (DR. TODD)

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : COVENTBRIDGE
Text: [06/04/2018 - OBRIEN, QUINN]RECEIVED UNANNOUNCED VISIT RECAP AND UPDATED FORMS

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Ref to Special Invest
Other Subject : SCORE REFERRAL
Text: 5/8/2018 - REFERRED FOR FIELD VISIT. TYPE OF SERVICE(S) REQUESTED: - UNANNOUNCED VISIT.

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called Other
Other Subject : ATTORNEY
Text: [05/08/2018 - OBRIEN, QUINN]CALLED ATTORNEY WESLEY WEAVER TO AGAIN REQUEST WRITTEN STATUS OF SSD APPLICATION, NO ANSWER AND VM WAS FULL

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : STATUS
Text: [05/08/2018 - OBRIEN, QUINN]CALLED EE, LVM, REQUESTING CALL BACK

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Ref to Special Invest
Other Subject : SCORE REFERRAL
Text: 4/27/2018 - REFERRED TO SIU FOR DATABASE SEARCH. TYPE OF SERVICE(S) REQUESTED: - SOCIAL MEDIA.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : SIU DATABASE INFO
Text: [04/27/2018 - LOTO, FRANK]DATABASE REQUEST FORWARDED TO COVENTBRIDGE, THEIR REPORT WILL BE LOADED TO EDM WHEN COMPLETED.

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called AP
Other Subject : DR. TARK
Text: [04/27/2018 - OBRIEN, QUINN]CALLED AP OFFICE, SPOKE WITH LYNETTE, NO OV'S SINCE 1/31/18 (NOTE ON FILE) AND NO OV'S SCHEDULED IN FUTURE

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : STATUS
Text: [04/27/2018 - OBRIEN, QUINN]CALLED EE, LVM, REQUESTING CALL BACK, DOES EE HAVE OV WITH AP TARK YET? STATUS ON SPINAL STIM PROCEDURE?

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called Other
Other Subject : ATTORNEY

Other Subject : ATTORNEY
Text: [04/27/2018 - OBRIEN, QUINN]CALLED AND SPOKE WITH ATTORNEY WESLEY WEAVER, LAWYER CONFIRMED THAT THEY ARE HELPING EE APPLY FOR SSD, EE HAS APPLIED, BEEN DENIED TWICE, AND IS NOW WAITING ON A HEARING DATE, ADCM ASKED FOR CONFIRMATION OF THIS INFO TO BEFAXED TO ADCM, ATTORNEY AGREED AND TOOK DOWN ADCM FAX NUMBER

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : LTR to EE
Other Subject : UTC
Text: [03/28/2018 - OBRIEN, QUINN]MAILED UNABLE TO CONTACT LETTER TO EE

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called AP
Other Subject : TARK
Text: [03/28/2018 - OBRIEN, QUINN]CALLED AP OFFICE, CONFIRMED NO OV'S SCHEDULED, SPINAL IMPLANT PROCEDURE NOT SCHEDULED

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : 2X STATUS
Text: [03/28/2018 - OBRIEN, QUINN]CALLED EE, LVM REQUESTING CALL BACK, HOPING TO DISCUSS IF EE HAS HEARD FROM AP TARK, HAS SPINAL STIM PROCEDURE DATE, SSD STATUS UPDATES

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called Other
Other Subject : LAWYER
Text: [03/20/2018 - OBRIEN, QUINN]CALLED LAW OFFICES OF WESLEY WEAVER, NO ANSWER AND VM BOX WAS FULL, MAILED LETTER TO LAWYER TO CONFIRM THAT LAWYER IS REPRESENTING EE IN FILING FOR SSD AND TO GET LATEST SSD STATUS

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : STATUS
Text: [03/20/2018 - OBRIEN, QUINN]CALLED EE, LVM, REQUESTING CALL BACK TO DISCUSS IF SX DATE HAS BEEN SCHEDULED WITH AP TARK YET, DID EE RECEIVE AUTH FORM TO DR. TODD YET AND SEND BACK TO ADCM, ALSO REQUESTING SSD UPDATE

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : STATUS
Text: [03/06/2018 - OBRIEN, QUINN]CALLED AND SPOKE WITH EE, ADVISED THAT ADCM IS AWARE THAT EE IS WAITING ON DR. TARK TO CALL BACK WITH SPIN STIM PROCEDURE DATE, LATEST NOTES THOUGH FROM AP TARK INDICATE EE IS SUPPOSED TO BE GOING THROUGH A TRIAL WITH DR.GALE FIRST, EE SAID HE WAS UNAWARE OF THAT, WILL CALL AP TARK'S OFFICE TO CLARIFY

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : LTR to AP
Other Subject : DR. GALE
Text: [03/06/2018 - OBRIEN, QUINN]FAXED MED REQUEST FOR RECORDS 1/1/18 - PRESENT

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Med Records Rcvd
Other Subject : DR. TARK
Text: [03/06/2018 - OBRIEN, QUINN]RECEIVED OVN FROM 1/31/18, EE HAS COMPLEX REGIONAL PAIN SYNDROME OF RIGHT UPPER LIMB, NEEDS SPINAL CORD STIMULATOR TRIAL, PLAN IS THAT EE TO F/U AFTER 'MEDTRONIC CERV SCS TIRAL WITH DR. GALE,' PERM IMPLANT PENDING RESULTS,ASSESS AT NEXT VISIT, ORDER PLACED, EE TO BE CALLED TO SCHEDULE ONCE APPROVED

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Action Plan
Other Subject : RTW OO MAY 2018
Text: [03/06/2018 - OBRIEN, QUINN]39 YOM, LDW 11/7/16, DOD 11/8/16, DOH 9/12/11, LTD EDOC 12/1/11, PRE X N/A, WC N/A, LTD BBD 5/9/16, CID 5/6/20, OWN OCC: PRODUCTION SUPERVISOR (LIKELY MEDIUM), DX: NEUROPATHIC PAIN IN THE RIGHT CHEST WALL, RIGHT UPPER EXTREMITY PAIN, PM&R/PAIN PEER COMPLETED 4/27/17 FINDING RESTRICTIONS THAT INCLUDE RESTRICTING REACHING/FINGERING/HANDLING WITH RIGHT HAND TO OCCASIONAL AND RESTRICTS LIFTING/CARRYING TO 10LBS OCCASIONALLY , ANTICIPATED DURATION IS 6/7/17, EE LOST INSURANCE IN 2017 AND NOW

HAVE COVERAGE IN 2018, IS WAITING FOR SCHEDULED OV WITH AP TARK TO DISCUSS SPINAL STIM IMPLANTATION, PLAN: 1) F/U WITH EE RE: SPIN STIM PROCEDURE DATE, 2) REQUEST MEDS AFTER NOV, 3) DISCUSS SSD, 4) CONSIDER VOC

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : 9MOS QCM
Text: [03/06/2018 - MASSARO, TIFFANY]D. RUSSELL JOB: PRODUCTION SUPERVISOR LDW: 11/07/16 DOD:11/08/16 BBD:05/09/17 DX: COMPLEX REGIONAL PAIN SYNDROME, NEUROPATHIC PAIN IN THE RIGHT CHEST WALL AND RIGHT UPPER EXTREMITY OF UNCERTAIN ETIOLOGY, THE SEVERERIGHT FORAMINAL STENOSIS AT C6-7 LAST MEDS ON FILE:04/2017 UPDATED MEDS REQD. DCM TO SET NP IF NOT RECD PER TASK SET (OF NOTE, EE LOST INSURANCE UNTIL 1/1/18) LAST REVIEW:05/0217 LAST FORMS ON FILE: 06/2017 SS STATUS:NOT FILED DCM MUST REQUIREFILING AT THIS TIME OTHER INCOME:NONE NOTED VOC: NOT INDICATED AT THIS TIME BUT SHOULD BE CONSIDERED AFTER UPDATED MED/REVIEWS IF CAPACITY SIU:SHOULD BE CONSIDERED ACTION PLAN: UPDATED ACTION PLAN NEEDED (>6MOS)

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : LTR to AP
Other Subject : DR. TARK
Text: [03/05/2018 - OBRIEN, QUINN]FAXED SUB MED RECORD REQUEST TO AP

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : LTR to AP
Other Subject : DR. TARK
Text: [03/05/2018 - OBRIEN, QUINN]FAXED SUB MED RECORD REQUEST TO AP

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : STATUS
Text: [03/05/2018 - OBRIEN, QUINN]CALLED AND SPOKE WITH EE, EE STATED STILL HAS NOT HEARD FROM AP TARK REGARDING SCHEDULING SPINAL STIM PROCEDURE, DID HAVE ANOTHER VISIT WITH AP TODD YESTERDAY AND ASKED AP TODD TO CALL AP TARK BUT HAS NOT HEARD ANYTHING, ADCM EXPLAINED THAT AP TODD'S OFFICE HAS REQUESTED A NEWLY SIGNED AUTH, MAILED TO EE ON 3/2/18, ONCE EE RECEIVES, PLEASE COMPLETE AND SEND BACK, EE AGREED, ADCM WILL CHECK IN AGAIN IN 2 WEEKS FOR PROCEDURE STATUS WITH AP TARK

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : LTR to EE
Other Subject : AUTH
Text: [03/01/2018 - OBRIEN, QUINN]MAILED NEW AUTH FORM TO EE

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Med Records Rcvd
Other Subject : DR. TODD
Text: [03/01/2018 - OBRIEN, QUINN]RECEIVED NOTICE THAT AP REQUIRES NEWLY SIGNED AUTH

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : LTR to AP
Other Subject : MULTIPLE
Text: [02/16/2018 - OBRIEN, QUINN]FAXED REQUEST FOR MED RECORDS 1/1/18 - PRESENT FROM AP TARK AND TODD

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : LTR to AP
Other Subject : MEDICAL REQUEST
Text: [02/16/2018 - O'BRIEN, QUINN] CONTACTED DR. TARK, AND DR. TODD FOR MEDICAL RECORDS. - REQUEST - PROVIDER - MEDICAL

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : STATUS
Text: [02/16/2018 - OBRIEN, QUINN]CALLED AND SPOKE WITH EE, EE STATED HE DOES HAVE INSURANCE NOW EFFECTIVE 1/1/18, HAS SEEN AP TARK AND NEW PCP (AP TODD), JUST WAITING TO HEAR BACK FROM AP TARK'S OFFICE THAT INSURANCE HAS CLEARED SPINAL STIM IMPLANT PROCEDURE AND THEN EE WILL BE SCHEDULED FOR THAT PROCEDURE, ADCM WILL CHECK BACK IN 2 WEEKS FOR STATUS

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE

Other Subject : RETURN CALL
Text: [02/08/2018 - OBRIEN, QUINN]RECEIVED 2 RETURN VM'S FROM EE, CALLED EE BACK, LVM, ADVISED THAT REQUESTING RETURN CALL TO DISCUSS IF EE HAS INSURANCE COVERAGE NOW AND IS SCHEDULING OV WITH AP TARK FOR SPIN STIM PROCEDURE

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : LTR to EE
Other Subject : UTC
Text: [01/25/2018 - OBRIEN, QUINN]MAILED UNABLE TO CONTACT LETTER TO EE

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : LTR to AP
Other Subject : DR. TARK
Text: [01/25/2018 - OBRIEN, QUINN]FAXED REQUEST FOR MED RECORDS 1/1/18 - PRESENT

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : 2X 60 DAY
Text: [01/25/2018 - OBRIEN, QUINN]CALLED EE, LVM, REQUESTING CALL BACK FOR STATUS, DID EE SCHEDULE OV WITH AP TARK YET?

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : 60 DAY
Text: [01/18/2018 - TWADDLE, DEBORAH]CALLED EE AT AND LMOM REQUESTING RETURN CALL WITH MEDICAL / OV STATUS AND TREATMENT PLAN

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : 60 DAY
Text: [11/17/2017 - OBRIEN, QUINN]CALLED AND SPOKE WITH EE, EE STATED NO CHANGES TO CONDITION AT ALL, NO OV'S AS EE HAS NO INSURANCE, EE HAS ENROLLED NOW THROUGH WIFE'S INSURANCE PLAN VIA OPEN ENROLLMENT, INSURANCE WILL TAKE EFFECT IN JANUARY 2018, AT THATTIME, EE WILL REACH OUT TO AP TARK TO SCHEDULE SPINAL STIM PROCEDURE, ADCM WILL CHECK IN WITH EE IN 2 MONTHS (MIDDLE OF JAN) TO SEE IF EE WAS ABLE TO SCHEDULE OV, EE THANKED, NO FURTHER QUESTIONS

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : 60 DAY
Text: [11/08/2017 - OBRIEN, QUINN]CALLED EE, LVM, REQUESTING CALL BACK TO DISCUSS IF ANY RECENT DEVELOPMENTS, IS EE STILL WAITING TO ENROLL IN BENEFITS THROUGH WIFE IN NOVEMBER AND THEN SEE AP TARK IN JAN FOR SPIN STIM PROCEDURE?

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Action Plan
Other Subject : RTW OO MAR 2018
Text: [09/05/2017 - OBRIEN, QUINN]LDW 11/7/16, DOD 11/8/16, DOH 9/12/11, LTD EDOC 12/1/11, PRE X N/A, WC N/A, LTD BBD 5/9/16, CID 5/6/20, OWN OCC: PRODUCTION SUPERVISOR (LIKELY MEDIUM), DX: NEUROPATHIC PAIN IN THE RIGHT CHEST WALL, RIGHT UPPER EXTREMITY PAIN, PM&R/PAIN PEER COMPLETED 4/27/17 FINDING RESTRICTIONS THAT INCLUDE RESTRICTING REACHING/FINGERING/HANDLING WITH RIGHT HAND TO OCCASIONAL AND RESTRICTS LIFTING/CARRYING TO 10LBS OCCASIONALLY , ANTICIPATED DURATION IS 6/7/17, EE HAS NOW LOST HIS JOB AND INSURANCE, WAITING TO GET COVERAGE THROUGH WIFE S INSURANCE PLAN BUT HAS TO WAIT UNTIL OPEN ENROLLMENT, COVERAGE NOT LIKELY TO BEGIN UNTIL 1/1/18, EE WILL THEN SCHEDULE A SPINAL STIMULATOR PROCEDURE WITH DR. TARK, PLAN: 1) MAINTAIN 60 DAY CALLS, 2) WAIT UNTIL EE GETS MED COVERAGE AND SCHEDULES SPINAL STIM PROCEDURE, 3) REQUESTS MEDS AT APPROPRIATE TIME

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : STATUS
Text: [09/05/2017 - OBRIEN, QUINN]CALLED AND SPOKE WITH EE, EE DID HAVE FOV WITH GOOD SAMARITAN LAST WEEK, THEY SIMPLY DISCUSSED HIS MEDICATIONS AND ORDERED A REFILL, THEY WILL SEE EE AGAIN IN 90 DAYS WHEN NEXT REFILL IS NEEDED, EE STATED THERE IS REALLY NOTHING ANYONE CAN DO FOR HIM UNTIL HE HAS SPINAL STIMULATOR PROCEDURE WITH AP TARK BUT EE CANNOT HAVE THAT PROCEDURE DONE UNTIL HE GETS INSURANCE IN NOVEMBER, ADCM CLARIFIED IF EE MEANT THAT NOVEMBER WAS HIS WIFE'S ER'S OPEN ENROLLMENT AND THAT THE INSURANCE WOULD NOT TAKE EFFECT UNTIL 1/1/18, EE STATED HE WAS NOT SURE, ADCM WILL F/U WITH EE IN 2 MONTHS, NO FURTHER QUESTIONS

**ote**
Claim/Event/Leave: 7259041
NoteSubject : EE Called
Other Subject : STATUS
Text: [08/29/2017 - OBRIEN, QUINN]EE CALLED BACK, SPOKE WITH EE, EE ADVISED THAT SINCE LAST CALL HE HAS NOT SEEN ANY OV'S, CANNOT GET ON WIFE'S INSURANCE UNTIL NOVEMBER (MOST LIKELY THIS IS OPEN ENROLLMENT AND HE WOULD NOT HAVE COVERAGE UNTIL JANUARY), EEHAS SIGNED UP WITH A CLINIC CALLED GOOD SAMARITAN AND HAS FINALLY COMPLETED THEIR INCOME PAPERWORK AS PRICES ARE MEANS TESTED, WILL HAVE FOV LATER THIS WEEK, ADCM WILL F/U WITH EE AFTER OV FOR STATUS AND TX PLAN, ALSO CONFIRMED EE IS USING WESLEY WEAVER FOR SSD FILING BUT ADCM HAS NOT BEEN ABLE TO CONTACT, EE WILL ASK LAWYER TO CONTACT ADCM

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : STATUS
Text: [08/29/2017 - OBRIEN, QUINN]RECEIVED VM FROM EE, CALLED EE BACK, LVM, REQUESTING RETURN CALL

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called AP
Other Subject : DR. TARK
Text: [08/11/2017 - O'BRIEN, QUINN]CALLED AP OFFICE, EE HAS NOT SCHEDULED ANY OTHER OV'S

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called Other
Other Subject : WESLEY WEAVER
Text: [08/11/2017 - O'BRIEN, QUINN]CALLED LAWYER OFFICE, LVM, REQUESTING RESPONSE TO VM OR LETTERS TO CONFIRM IF LAWYER IS REPRESENTING EE FOR SSD FILING

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : STATUS
Text: [08/11/2017 - O'BRIEN, QUINN]CALLED EE, LVM, REQUESTING CALL BACK

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : LTR to Atty
Other Subject : WESLEY WEAVER
Text: [07/27/2017 - O'BRIEN, QUINN]MAILED LETTER OF REPRESENTATION FOR SSD TO LAWYER

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : LTR to EE
Other Subject : UNABLE TO CONTACT
Text: [07/27/2017 - O'BRIEN, QUINN]MAILED UNABLE TO CONTACT LETTER TO EE

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : 2X 60 DAY
Text: [07/27/2017 - O'BRIEN, QUINN]CALLED EE, LVM, REQUESTING CALL BACK FOR UPDATES

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : LTR to Other
Other Subject : ATTORNEY
Text: [07/20/2017 - O'BRIEN, QUINN]MAILED SUBSEQUENT LETTER TO LAWYER WESLEY WEAVER FOR SSD CONFIRMATION

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called AP
Other Subject : DR. TARK
Text: [07/20/2017 - O'BRIEN, QUINN]CALLED AP OFFICE, EE'S LOV WAS SCHEDULED FOR 6/2/17, EE NO SHOWED, NO NOV SCHEDULED

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : 60 DAY
Text: [07/20/2017 - O'BRIEN, QUINN]CALLED EE, LVM, REQUESTING CALL BACK, HOPING TO CONFIRM IF EE GOT INSURANCE COVERAGE THROUGH WIFE AND, IF SO, DID HE SCHEDULE SPIN STIM PROCEDURE WITH AP TARK?

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : LTR to Atty
Other Subject : WESLEY WEAVER
Text: [06/21/2017 - O'BRIEN, QUINN]MAILED LETTER TO ATTORNEY WESLEY WEAVER TO GET CONFIRMATION THAT ATTORNEY WILL BE REPRESENTING EE FOR SSD APPEAL

**ote**
Claim/Event/Leave: 7259041
NoteSubject : EE Called
Other Subject : RETURN CALL
Text: [06/21/2017 - O'BRIEN, QUINN]EE RETURNED ADCM CALL (UNABLE TO CONTACT LETTER HAS BEEN CANCELLED), EE STATED HE DOES NOT HAVE INSURANCE AT THIS TIME, HIS WIFE IS EMPLOYED AND HE IS TRYING TO GET ONTO HER INSURANCE, IS AWAITING APPROVAL FOR THAT, ONCEAPPROVED, HE WILL SCHEDULE AND GO THROUGH SPINAL STIM PROCEDURE WITH DR. TARK, AP IS READY TO PERFORM PROCEDURE AS EE HAS PASSED EVAL NEEDED TO GET CLEARANCE FOR PROCEDURE, EE ALSO STATED HE HEARD BACK FROM SSD AND WAS DENIED, AT THAT TIME HE HIRED ALAWYER (WESLEY WEAVER) TO HELP HIM APPEAL, ADCM WILL REACH OUT TO LAWYER TO GET COPY OF DENIAL LETTER AND WILL F/U WITH EE IN 30 DAYS FOR INSURANCE STATUS/SPINAL STIM STATUS

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : LTR to EE
Other Subject : UNABLE TO CONTACT
Text: [06/21/2017 - O'BRIEN, QUINN]MAILED UNABLE TO CONTACT LETTER TO EE

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : 2X 60 DAY
Text: [06/21/2017 - O'BRIEN, QUINN]CALLED EE, LVM, REQUESTING CALL BACK TO DISCUSS CURRENT STATUS (DID EE GET PROOF OF SSD FILING, DID HE SCHEDULE SPINAL STIM IMPLANT?)

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called AP
Other Subject : DR. TARK
Text: [06/14/2017 - O'BRIEN, QUINN]CALLED AP OFFICE, EE HAS NO OV'S SCHEDULED AND HAS NOT HAS SPINAL STIMULATOR IMPLANTED YET

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : 60 DAY
Text: [06/14/2017 - O'BRIEN, QUINN]CALLED EE, LVM, REQUESTING CALL BACK, WANTING TO KNOW IF EE HAS HAD SPINAL STIMULATOR IMPLANTED YET WITH DR. TARK OR IF IT IS A LEAST SCHEDULED, ALSO HOPING TO GET ANY UPDATES ON SSD (DOES EE HAVE PROOF HE APPLIED)?

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : FORMS REC'D
Text: [06/06/2017 - REASONER, NORA]REC'D AQ, CIF, CSS, TEE, SURVIVOR, FAM

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : AUTH
Text: [06/06/2017 - REASONER, NORA]REC'D SIGNED AUTH FROM EE

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : FORMS REC'D
Text: [06/06/2017 - REASONER, NORA]REC'D DUPLICATE DD/W4S, SS REIMB

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : ADD DD
Text: [06/05/2017 - HOLTZ, JORDAN]ACCT 2054123738 ROUTING 061112843

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : PAYMENT

Other Subject : PAYMENT
Text: [06/02/2017 - BEAUPAIN, LOIS]REFERRAL REC D TO UPDATE FED TAX SCREEN UPDATED AND CLOSED REFERRAL.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Ref to Other
Other Subject : PMNT
Text: THE SCORE REFERRAL FOR PAYMENT SERVICES REFERRAL AND PAYMENT ADJUSTMENT AND A REASON OF TAX WITHHOLDINGS HAS BEEN RECEIVED AND ASSIGNED TO LOIS BEAUPAIN.

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Ref to Other
Other Subject : PMT SVC
Text: FOR REQUEST FOR TAX WITHHOLDINGS. COMMENTS: EE SUBMITTED W4S REQUESTING $88 BE WITHHELD

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : FORMS
Text: [06/01/2017 - O'BRIEN, QUINN]RECEIVED DD, W4S, AND AQ, FORWARDED DD TO P. WRIGHT AND INFORMED FRS ABOUT W4S

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called AP
Other Subject : DR. TARK
Text: [05/03/2017 - O'BRIEN, QUINN]CALLED AP, NO APPOINTMENTS SCHEDULED YET

**ote**
Claim/Event/Leave: 7259041
NoteSubject : EE Called
Other Subject : RETURN CALL
Text: [05/03/2017 - O'BRIEN, QUINN]EE CALLED, RECEIVED VM EXPLAINING APPROVAL, HAD QUESTIONS, WANTED TO KNOW IF ANY OTHER INCOME AVAILABLE TO HIM AS EE IS GOING TO BE TERMED ON 5/8/17 AND NEEDS INCOME FOR MED INSURANCE, ADCM DISCUSSED SSD, EE STATED APPLIED IN LAST COUPLE DAYS, DOES NOT HAVE ACKNOWLEDGMENT FROM SSA THAT THEY RECEIVED APPLICATION YET, ONCE ACKNOWLEDGED, EE WILL SEND TO ADCM, ALSO DISCUSSED HOW SSD AND ANY OTHER INCOME WOULD BE OFFSET TO LTD, ASKED ABOUT CURRENT TREATMENT, EE SAID DR. JEFFORDS ADVISED EE AGAINST SURGERY AS EE HAS PREVIOUSLY REACTED POORLY TO SURGERY, EE GOT SECOND OPINION FROM DR. TARK (ADDED TO FILE) AND WILL BE GOING THROUGH WITH A SPINAL STIMULATOR IMPLANTATION, NOT SCHEDULED YET, ADCM REQUESTED EE CALL WHEN HEKNOWS WHEN SURGERY WILL OCCUR

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [05/02/2017 - MICHAUD, ROBIN]INVOICE RECEIVED 5/1/2017 FROM R3 CONTINUUM INV# 604010-1 IN THE AMOUNT OF $ 1019.00 FOR PEER REVIEW COMPLETED BY LUCIA MCPHEE SPECIALTY PMR & PAIN MEDICINE INVOICE PAID 5/2/2017

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Med Records Rcvd
Other Subject : DR. JEFFORDS
Text: [05/02/2017 - O'BRIEN, QUINN]RECEIVED OV FROM 4/20, PER NOTES, AP STATES THAT EE IS A CANDIDATE FOR 2-LEVEL ANTERIOR CERVICAL DISCECTOMY AND FUSION AT C5-6 AND C6-7. EE HAS BEEN ASKED TO OBTAIN MRI IMAGES TAKEN BY DR. DIMBERG SO AP CAN REVIEW, AP WILL THEN REVIEW AND CALL EE TO FURTHER DISCUSS CERVICAL FUSION OPTION

**ote**
Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : APPROVAL
Text: [05/01/2017 - O'BRIEN, QUINN]CALLED EE, LVM, ADVISED OF LTD APPROVAL, BBD 5/9, PAYS MONTHLY 1ST PAYMENT AROUND 6/9

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : LTR to EE
Other Subject : APPROVAL
Text: [05/01/2017 - O'BRIEN, QUINN]MAILED APPROVAL LETTER TO EE

**C ote**
Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : MGR REVIEW

Other Subject : MGR REVIEW
Text: [05/01/2017 - MASSARO, TIFFANY]MANAGER AGREES W/ THE DECISION TO APPROVE CLAIM AS OUTLINED BY DCM DX: NEUROPATHIC PAIN IN THE RIGHT CHEST WALL AND RIGHT UPPER EXTREMITY OF UNCERTAIN ETIOLOGY, THE SEVERE RIGHT FORAMINAL STENOSIS AT C6-7, AND EMG/NCSFINDINGS ON 2/16/17 CONSISTENT WITH CHRONIC POSSIBLY ACTIVE RIGHT C8 RADICULOPATHY --- DEPRESSION JOB:. PRODUCTION SUPERVISOR EDOC: 12/1/11 MEETS ALL CONTRACTUAL REQUIREMENTS/ NO EXCLUSIONS APPLY/MN LIMIT SHOULD BE APPLIED AT APPROVAL/ PRE-EX NOT APPLICABLE/ CLAIM NOT SUCCESSIVE. CLAIM TO BE REFERRED TO PSU. CLASS, TAXABILITY, LDW, DOD, AND BBD ARE CORRECT. WC/SUBRO/SIU/VOC ARE ALL N/A AT THIS TIME. INTERVIEW COMPLETE: YES MANAGER AGREES W/ THE OUTLINED ACTION PLAN IN PLACE. F/UTASKS ARE IN PLACE AND ARE APPROPRIATE. DCM TO PROCEED W/ APPROVAL LETTER TO EE AND ANY APPLICABLE NOTIFICATION (S) TO ER.

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : LTR to AP
Other Subject : DR. JEFFORDS
Text: [04/28/2017 - O'BRIEN, QUINN]FAXED REQ FOR MED RECORDS TO AP FOR PERIOD OF 3/1/17 - PRESENT

**ote**

Claim/Event/Leave: 7259041
NoteSubject : Called AP
Other Subject : DR. JEFFORDS
Text: [04/28/2017 - O'BRIEN, QUINN]CALL AP OFFICE, CONFIRMED EE LAST SEEN 4/20, GOT AP FAX NUMBER

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Action Plan
Other Subject : RTW OO SEPT 2017
Text: [04/28/2017 - O'BRIEN, QUINN]LDW 11/7/16, DOD 11/8/16, DOH 9/12/11, LTD EDOC 12/1/11, PRE X N/A, WC N/A, LTD BBD 5/9/16, CID 5/6/20, OWN OCC: PRODUCTION SUPERVISOR (LIKELY MEDIUM), DX: NEUROPATHIC PAIN IN THE RIGHT CHEST WALL, RIGHT UPPER EXTREMITY PAIN, PM&R/PAIN PEER COMPLETED 4/27/17 FINDING RESTRICTIONS THAT INCLUDE RESTRICTING REACHING/FINGERING/HANDLING WITH RIGHT HAND TO OCCASIONAL AND RESTRICTS LIFTING/CARRYING TO 10LBS OCCASIONALLY , ANTICIPATED DURATION IS 6/7/17, PENDING REVIEW FROM NEUROSURGEON (DR. JEFFERS). PLAN: 1) FOLLOW-UP FOR RESULTS OF CONSULT WITH NEUROSURGEON, 2) MAINTAIN 60 DAY CALLS, 3) COMPLETE FORMS, 4) REQUEST MEDICAL AS APPROPRIATE (POSSIBLY JULY OR AUGUST)

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Approved
Other Subject : RTW OO SEPT 2017
Text: [04/28/2017 - O'BRIEN, QUINN]RECOMMEND APPROVAL OWN OCC, DOH: 9/12/11, EE CONTRIB (NO), EDOC: 12/1/11, PRE-X (N/A), LDW: 11/7/16, DOD: 11/8/16, BBD: 5/8/17 (END OF STD), DX: NEUROPATHIC PAIN IN THE RIGHT CHEST WALL, RIGHT UPPER EXTREMITY PAIN,COMORBIDS: NONE, OCC: PRODUCTION SUPERVISOR (LIKELY MEDIUM), REASONABLE TO APPROVE PER PM&R/PAIN PEER COMPLETED 4/27/17 FINDING RESTRICTIONS THAT INCLUDE RESTRICTING REACHING/FINGERING/HANDLING WITH RIGHT HAND TO OCCASIONAL AND RESTRICTS LIFTING/CARRYING TO 10LBS OCCASSIONALLY, FINANCIAL: (NONE), REFERRED TO PSU), DEPENDENTS: 3, DCM TO SEND LTR TO EE AND CALL EE *** REFERRED TO MGR FOR REVIEW[04/28/2017 - O'BRIEN, QUINN]ANTICIPATED DURATION IS 6/7/17, PENDING REVIEW FROM NEUROSURGEON

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Peer Review
Other Subject : PM&R/PAIN
Text: [04/28/2017 - O'BRIEN, QUINN]RECEIVED PM&R/PAIN PEER REVIEW, 'THE MAIN ISSUES RESULTING IN IMPAIRMENT INCLUDE THE NEUROPATHIC PAIN IN THE RIGHT CHEST WALL AND RIGHT UPPER EXTREMITY OF UNCERTAIN ETIOLOGY, THE SEVERE RIGHT FORAMINAL STENOSIS AT C6-7, AND EMG/NCS FINDINGS ON 2/16/17 CONSISTENT WITH CHRONIC POSSIBLY ACTIVE RIGHT C8 RADICULOPATHY, WITH ASSOCIATED RESTRICTIONS/LIMITATIONS SUPPORTED THROUGH THE ENTIRE ELIMINATION PERIOD OF 11/8/16 THROUGH 5/7/17.......IT WOULD BE REASONABLE TO RESTRICTREACHING AND THE USE OF THE RIGHT HAND (FOR FINGERING AND HANDLING COMBINED) TO AN OCCASIONAL BASIS. IT WOULD ALSO BE REASONABLE TO RESTRICT LIFTING/CARRYING UP TO 10 POUNDS ON AN OCCASIONAL BASIS. THERE WERE NO FINDINGS ON WHICH TO RESTRICT USE OFTHE LEFT UPPER EXTREMITY/HAND FOR REACHING, GROSS HANDLING, OR FINGERING. REGARDING STANDING/WALKING, ALTHOUGH THE CLAIMANT WAS REPORTEDLY USING A CANE AT TIMES, I DID NOT SEE SUPPORT IN THE FILE FOR THIS, WITH IT NOTED THAT HIS ABNORMAL MOVEMENT WASEVALUATED AT MAYO CLINIC AND FOUND TO BE FUNCTIONAL (VOLUNTARY) RATHER THAN ORGANIC IN NATURE. THUS, THE FILE DOES NOT SUPPORT RESTRICTIONS/LIMITATIONS FOR STANDING, WALKING, SITTING, BENDING/ STOOPING, OR CROUCHING. HE SHOULD AVOID CRAWLING DUE TOTHE RIGHT UPPER EXTREMITY. THIS WOULD BE ON A FULL-TIME BASIS THROUGH AN EIGHT HOUR DAY, 5 DAYS A WEEK ON A RELIABLE, SUSTAINED BASIS, ALTHOUGH OFF WORK WOULD BE SUPPORTED FOR THE DAYS HE HAD INJECTIONS OR HAD TO TRAVEL OUT OF TOWN FOR MEDICAL VISITSSUCH AS TO THE MAYO CLINIC. PRIOR TO DETERMINING DURATION AND PROGNOSIS, IT WOULD BE HELPFUL TO REVIEW THE NEUROSURGICAL CONSULTATION FROM WITHIN THE PAST WEEK. IT IS ANTICIPATED THAT DURATION WILL BE THROUGH 6/7/17 TO ALLOW FURTHER TREATMENT AS RECOMMENDED BY THE NEUROSURGEON, WHICH MAY INCLUDE SURGERY.'

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : LTR to Other
Other Subject : BMI

Text: [04/19/2017 - O'BRIEN, QUINN]EMAILED COPY OF SIGNED AUTHS TO MOLLY AT BMI (R3 CONTINUUM)

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : AUTH FORMS
Text: [04/19/2017 - O'BRIEN, QUINN]RECEIVED SIGNED AUTH FORMS FROM EE

**ote**

Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : AUTH FORMS
Text: [04/19/2017 - O'BRIEN, QUINN]CALLED AND SPOKE WITH EE, ASKED EE IF HE RECEIVED AUTH FORMS THAT WERE EMAILED TO HIM, HE PLACED WIFE ON PHONE, WIFE STATED THEY DID RECEIVE AUTH FORMS BUT WERE UNABLE TO OPEN THEM, ASKED IF THEY COULD BE FAXED, ADCM AGREED, FAX AUTH FORMS TO EE

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : BENEFIT CALCULATION
Text: [04/14/2017 - CLAUS, STEFANIE]SET UP SCHEDULED PAYMENT BASED ON ELIGIBILITY - ANNUAL SALARY $48,276.80 / 12 = $4,023.07 MONTHLY THE BENEFIT IS 60% OR $2413.84. THE INITIAL PAYMENT WORKSHEET HAS BEEN SAVED TO THE DOC LIST.

**ote**

Claim/Event/Leave: 7259041
NoteSubject : Called EE
Other Subject : FORMS
Text: [04/14/2017 - O'BRIEN, QUINN]CALLED AND SPOKE WITH EE, EE STATED THAT HE DID MAIL FORMS BACK BEFORE ADCM TOOK OVER CASE (MORE THAN A MONTH AGO), ADCM NEVER RECEIVED THEM, ADCM ASKED IF IT WAS OK TO EMAIL AUTH FORM TO EE TO HAVE HIM COMPLETE AND FAX BACK, EE AGREED, CONFIRMED EMAIL ADDRESS, FAXED AUTH FORM

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Other
Other Subject : BMI
Text: [04/14/2017 - O'BRIEN, QUINN]RECEIVED EMAIL FROM BMI RE: PEER, THEY WOULD LIKE AUTH ON FILE TO SPEAK WITH AP'S

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Ref to Other
Other Subject : SCORE REFERRAL
Text: 4/13/2017 - REFERRED TO BEHAVIORAL MANAGEMENT, INC. FOR PEER REVIEW.

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Peer Review
Other Subject : REFERRAL
Text: [04/13/2017 - O'BRIEN, QUINN]REFERRED CLAIM TO BMI FOR PMR/PAIN PEER

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Ref to Other
Other Subject : PMNT
Text: THE SCORE REFERRAL FOR PAYMENT SERVICES REFERRAL AND INITIAL PAYMENT CALCULATION HAS BEEN RECEIVED AND ASSIGNED TO STEFANIE CLAUS.

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Ref to Other
Other Subject : PMT SVC
Text: FOR INITIAL PAYMENT CALCULATION. COMMENTS: 30 DAYS TO BBD (5/7/17)

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : Action Plan
Other Subject : DETERMINE LIABILITY
Text: [03/13/2017 - O'BRIEN, QUINN]LDW 11/7/16, DOD 11/8/16, DOH 9/12/11, LTD EDOC 12/1/11, PRE X N/A, WC N/A, LTD BBD 5/9/16, CID 5/6/20, OWN OCC: SUPERVISOR (LIKELY LIGHT), DX: UNSPECIFIED NERVE DISORDER, PLAN: 1) HAS FOLLOW-UP 3/24 TO HOPEFULLY GET FULLDIAGNOSIS AND TREATMENT PLAN, 2) FOLLOW-UP WITH EE AT THAT TIME ON STD CLAIM, 3) IF NECESSARY, WILL REQUEST MEDS AND REVIEW FOR ONGOING STD AND INITIAL LTD LIABILITY

**ote**

Claim/Event/Leave: 7259041
NoteSubject : Initial EE Interview
Other Subject : COMPLETE
Text: [03/13/2017 - O'BRIEN, QUINN]CALLED AND SPOKE WITH EE, EE CONFIRMED LDW 11/7/16, DOD 11/8/16, EE WENT OUT OF WORK WITH EXCRUCIATING PAIN UNDER HIS RIGHT ARM (IN ARMPIT), EE HAS HISTORY OF CANCER AND HAS HAD SURGERY IN THAT AREA TO REMOVE LYMPH NODES,EE ASSUMED PAIN WAS RELATED TO THAT AND POSSIBLY A MISSED LYMPH NODE THAT NEEDED TO BE REMOVED, HE WENT TO CANCER SURGEON AND WAS TOLD IT WAS NOT RELATED TO LYMPH NODES OR PRIOR SURGERY, WAS THEN SENT TO PAIN MANAGEMENT AP WHO EE DID NOT LIKE, ONLYWANTED TO PRESCRIBE MEDS AND NOT SOLVE PROBLEM, EE THEN WENT TO NEUROLOGIST WHO DID MULTIPLE TESTS AND THOUGHT EE HAS RSD, NERVE DISORDER, BUT UNABLE TO KNOW FOR SURE, REFERRED EE TO MAYO CLINIC (DR. DIMBERG), EE HAS UNDERGONE A VARIETY OF TESTS ANDPROCEDURES, LAST TESTS WERE 3/11/17, EE FOLLOW-UP SCHEDULED FOR 3/24 (DATE STD IS APPROVED THROUGH AT THIS TIME), EE HOPING AT THAT TIME HE CAN GET FIRM DIAGNOSIS, TREATMENT PLAN, ETC AS HE IS GETTING WORSE, NERVE PROBLEM HAS SPREAD TO LEGS, NO PAININ LEGS BUT VERY WEAK ON RIGHT-SIDE, CAN ONLY WALK ON FLAT, STABLE GROUND, HIS JOB TITLE AT WORK IS SUPERVISOR (INVOLVES BEING ON FEET ALL DAY), HAS NO OTHER INCOME OTHER THAN STD, RIGHT-HANDED, 6'4" 225LBS, MARRIED, 3 DEPENDENTS (2 CHILDREN, 2 STEP-CHILDREN, ONLY CLAIMS 1 STEP CHILD AS A DEPENDENT), GED, ADCM EXPLAINED WOULD FOLLOW-UP WITH EE AFTER 3/24 VISIT AT MAYO CLINIC FOR UPDATES AND IF EE NEEDS TO CONTINUE ON STD

**C ote**

Claim/Event/Leave: 7259041
NoteSubject : STD Trans. LTD
Other Subject : STD
Text: [03/13/2017 - O'BRIEN, QUINN]CONVERTED FROM STD 3719712

**ote Report**

Report | Clear | Print | Help

AS Accom AS Event Add Note Appeal Claim Coord Claim Note Correspond Doc List Employee Leave Life Claim Lve Addtl Info Lve Correspondence Lve Program Lve Work Sched Medical Medical History Note SPELL Letters Scheduled Pmt Task Print Task Rpt Tasks

Claim

**Claim ve t eave m er** 3719712 **ommo atio m er**

**ote t pe**

Primary Sort Order: Note Type / Note Number / ● Note Date/Time / Accm. No.

Sec ●

**C ote**

Claim/Event/Leave: 3719712
NoteSubject : Other
Other Subject : DISREGARD
Text: [03/06/2018 - MASSARO, TIFFANY]D. RUSSELL JOB: PRODUCTION SUPERVISOR LDW: 11/07/16 DOD:11/08/16 BBD:05/09/17 DX: COMPLEX REGIONAL PAIN SYNDROME, NEUROPATHIC PAIN IN THE RIGHT CHEST WALL AND RIGHT UPPER EXTREMITY OF UNCERTAIN ETIOLOGY, THE SEVERERIGHT FORAMINAL STENOSIS AT C6-7 LAST MEDS ON FILE:04/2017 UPDATED MEDS REQD. DCM TO SET NP IF NOT RECD PER TASK SET (OF NOTE, EE LOST INSURANCE UNTIL 1/1/18) LAST REVIEW:05/0217 LAST FORMS ON FILE: 06/2017 SS STATUS:NOT FILED DCM MUST REQUIREFILING AT THIS TIME OTHER INCOME:NONE NOTED VOC: NOT INDICATED AT THIS TIME BUT SHOULD BE CONSIDERED AFTER UPDATED MED/REVIEWS IF CAPACITY SIU:SHOULD BE CONSIDERED ACTION PLAN: UPDATED ACTION PLAN NEEDED (>6MOS) [03/06/2018 - MASSARO, TIFFANY]DISREGARD

**C ote**

Claim/Event/Leave: 3719712
NoteSubject : Status Report
Other Subject : CLOSED
Text: CLAIM CLOSED FOR MAX BEN, TRANSFERRED TO LTD

**C ote**

Claim/Event/Leave: 3719712
NoteSubject : Closed
Other Subject : MAX DUR/LTD
Text: [04/28/2017 - O'BRIEN, QUINN]CLAIM CLOSED FOR MAX DUR/LTD, REASONABLE TO CLOSE AND MOVE TO LTD PER PM&R/PAIN PEER REVIEW COMPLETED IN LTD CLAIM INDICATING R&L'S THAT WOULD PROHIBIT EE FROM PERFORMING OWN JOB THROUGH AN ANTICIPATED DURATION OF 6/7/17,BEYOND MAX BEN

**C ote**

Claim/Event/Leave: 3719712
NoteSubject : Other
Other Subject : VENDOR PMT
Text: [04/17/2017 - WADE, CATHERINE]REC'D INV# 278568 DATED 4/12/17 FROM NOBLE RESOURCE CORPORATION - ALPHARETTA, GA. PAID INVOICE IN FULL ON 4/17/2017 FOR $37.52 TO TAX ID 810583779.

**C ote**

Claim/Event/Leave: 3719712
NoteSubject : Med Records Rcvd
Other Subject : MCCASLAND
Text: [04/14/2017 - O'BRIEN, QUINN]RECEIVED INVOICE AND MED RECORDS, MED RECORDS ARE DUPLICATE RECORDS FROM THOSE RECEIVED FROM DR. DIMBERG, INVOICE FORWARDED TO R. MICHAUD

**ote**

Claim/Event/Leave: 3719712
NoteSubject : Called EE
Other Subject : STATUS
Text: [04/13/2017 - O'BRIEN, QUINN]CALLED EE, ADVISED OF RECEIPT OF RECORDS FROM DR. DIMBERG, HAVE SENT OVER FOR REVIEW, EE UNDERSTOOD, ALSO STATED THAT AP MCCASSLAND REACHED OUT TO HIM, THINKS THAT EE NEEDS SPINAL SURGERY, AP WILL FOLLOW-UP WITH EE ONCE HE CAN CONFIRM

**C ote**

Claim/Event/Leave: 3719712
NoteSubject : Med Records Rcvd
Other Subiect : DR. DIMBERG

Text: [04/13/2017 - O'BRIEN, QUINN]RECEIVED MED RECORDS FOR 2/16/17 - 3/23/17

**ote**
Claim/Event/Leave: 3719712
NoteSubject : Called EE
Other Subject : DAY 7
Text: [04/12/2017 - O'BRIEN, QUINN]CALLED AND SPOKE WITH EE, EE STATED THAT HE HAS ALL THE RECORDS FROM DR. DIMBERG, HE HAS ACCESS TO THEM THROUGH A PATIENT PORTAL, HE HAS SPOKEN WITH DR. MCCASSLAND WHO STATED THAT HE HAS NOT RECEIVED DR. DIMBERG RECORDS YET, AS A RESULT, EE HAS NOT SEEN DR. MCCASSLAND YET, THERE ARE NO RECORDS FOR THAT AP, EE GAVE PERMISSION TO SPEAK WITH WIFE, JESSICA, ADCM SPOKE WITH JESSICA, ADCM EXPLAINED THAT STD CLAIM ONLY APPROVED THROUGH 4/7/17 AT THIS TIME, ONCE MED RECORDSRECEIVED, CAN HAVE THEM REVIEWED TO EXTEND CLAIM AND POSSIBLY MAKE DECISION ON LTD CLAIM, EXPLAINED LTD BENEFITS AND OWN/ANY OCC DEFINITIONS, JESSICA TOOK DOWN ADCM FAX NUMBER, WILL FAX DR. DIMBERG RECORDS TO ADCM

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : LTR to AP
Other Subject : MULTIPLE
Text: [04/12/2017 - O'BRIEN, QUINN]FAXED SUB MED REQUESTS TO DR. DIMBERG AND DR. MCCASLAND

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : Status Report
Other Subject : MEDICAL REQUESTED
Text: MEDICAL RECORDS HAVE BEEN REQUESTED BY 5/20/17

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : Notice/Proof Review
Other Subject : DUE 5/19
Text: [04/05/2017 - O'BRIEN, QUINN]MAILED EE N&P LETTER, REQUESTED MEDICAL RECORDS FROM DR. DIMBERG (3/24) AND DR. MCCASSLAND (3/1/17 - PRESENT)

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : LTR to AP
Other Subject : MULTIPLE
Text: [04/05/2017 - O'BRIEN, QUINN]FAXED REQUEST FOR MED RECORDS TO DR. DIMBERG (3/24 OVN) AND DR. MCCASLAND (3/1/17 - PRESENT)

**ote**
Claim/Event/Leave: 3719712
NoteSubject : Called AP
Other Subject : DR. MCCASLAND
Text: [04/05/2017 - O'BRIEN, QUINN]CALLED AP OFFICE TO CONFIRM LOV, OFFICE WAS CLOSED FOR LUNCH

**ote**
Claim/Event/Leave: 3719712
NoteSubject : Called EE
Other Subject : STATUS
Text: [04/05/2017 - O'BRIEN, QUINN]CALLED EE, RECEIVED MESSAGE THAT VM BOX WAS FULL, COULD NOT LEAVE MESSAGE

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : Other
Other Subject : VENDOR PMT
Text: [04/05/2017 - LANDRY, KATHLEEN]INVOICE RCVD 4/4/17- INVOICE 278063 DATED 4/3/17 FROM NOBLE RESCOURCE CORP FOR MEDICAL RECORDS FROM ALLIANCE SPINE AND PAIN IN THE AMT OF $49.43. PAID IN FULL TO TAX ID 810583779

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : Med Records Rcvd
Other Subject : DR. GALE
Text: [04/04/2017 - O'BRIEN, QUINN]RECEIVED MED NOTES FROM DR. GALE FOR 12/14/16 - 1/5/17

**ote**
Claim/Event/Leave: 3719712
NoteSubject : Called EE
Other Subject : STATUS
Text: [04/03/2017 - O'BRIEN, QUINN]CALLED EE FOR STATUS, LVM, REQUESTING CALL BACK FOR DATE OF LOV OR NOV WITH AP MCCASLUND

**ote**
Claim/Event/Leave: 3719712
NoteSubject : Called AP
Other Subject : DR. MACCASLAND
Text: [04/03/2017 - O'BRIEN, QUINN]CALLED AP OFFICE, OFFICE STATED NO FUTURE APPOINTMENTS SCHEDULED, ASKED ABOUT LOV, AP OFFICE STATED WOULD NEED FAXED REQUEST AS THEY DON'T KNOW WHO THEY ARE SPEAKING WITH

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : LTR to AP
Other Subject : DR. DIMBERG
Text: [04/03/2017 - O'BRIEN, QUINN]FAXED SUB MED REQUEST TO AP

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : Status Report
Other Subject : EXTENDED THROUGH 4/7
Text: EXTENDED CLAIM THROUGH 4/7

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : Extended Benefits
Other Subject : THROUGH 4/7/17
Text: [03/29/2017 - O'BRIEN, QUINN]CLAIM EXTENDED THROUGH 4/7/17 TO ALLOW TIME FOR EE TO SCHEDULE NEXT APPOINTMENT WITH AP MCCASLAND, HAVE APPOINTMENT, AND DISCUSS TX PLAN

**ote**
Claim/Event/Leave: 3719712
NoteSubject : Called EE
Other Subject : STATUS
Text: [03/29/2017 - O'BRIEN, QUINN]CALLED AND SPOKE WITH EE, EE ADVISED HE DID MEET WITH DR. DIMBERG AT MAYO CLINIC ON 3/24, AP OFFERED NUMEROUS SUGGESTIONS ON WHAT MAY BE CAUSE AND ADVISED THAT EE CONTINUE AT THIS TIME TO TREAT PRIMARILY WITH DR. MCCASLAND, DR. DIMBERG FORWARDED ALL MED RECORDS TO AP MACCASLAND, EE IS WAITING TO HEAR FROM AP MACCASLAND TO SCHEDULE NEXT APPOINTMENT, DEPENDING ON AP OPINION AFTER REVIEW RECORDS, SURGERY MAY BE NEEDED AND/OR DRUG TREATMENTS, ADCM ADVISED THAT STD CLAIMWILL BE EXTENDED A WEEK TO ALLOW TIME FOR EE TO SCHEDULE APPOINTMENT WITH AP AND CALL ADCM BACK WITH APPOINTMENT DATE

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : LTR to AP
Other Subject : DR. DIMBERG
Text: [03/27/2017 - O'BRIEN, QUINN]FAXED REQUEST FOR MED RECORD FOR 3/24/17 TO AP

**ote**
Claim/Event/Leave: 3719712
NoteSubject : Called EE
Other Subject : STATUS
Text: [03/27/2017 - O'BRIEN, QUINN]CALLED EE, LVM, REQUESTING CALL BACK FOR STATUS UPDATES

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : STD Trans. LTD
Other Subject : LTD 7259041
Text: [03/13/2017 - O'BRIEN, QUINN]CONVERTED TO LTD 7259041

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : Escalation
Other Subject : TO LTD
Text: [03/13/2017 - STALVEY, AMBER]AGREE WITH ESCALATION - COVERAGE CONFIRMED PER ELIGIBILITY, EDOC 01/01/12. CLAIM FORMS REQUESTED JOB DESCRIPTION ON FILE. PROVIDERS LINKED TO CLAIM AND DOC PROPERTIES ARE UPDATED. ACTION PLAN IS APPROPRIATE. NO ISSUESIDENTIFIED WITH CODING OR FINANCIALS. REASSIGNED FOR LTD CM REVIEW.

**ote**
Claim/Event/Leave: 3719712
NoteSubject : Called EE
Other Subject : EXT
Text: [03/10/2017 - GILMORE-DIAZ, KARLYN]CALLED EE, LEFT VMX TO ADVISE OF EXT AND PLAN TO ESC TO LTD

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : Ref to Other
Other Subject : LTD

Other Subject : LTD
Text: [03/10/2017 - GILMORE-DIAZ, KARLYN]RECOMMENDING ESCALATION TO LTD-NO GAP IN LDW/DOD; CLAIM FORMS SENT (NOT RECD) JD ON FILE. LTD EFF 1/1/12. REFERRED TO SENIOR

**C ote**

Claim/Event/Leave: 3719712
NoteSubject : Status Report
Other Subject : EXTENDED
Text: EXTENDED THRU 3/24/17 ERTW UNKNOWN

**C ote**

Claim/Event/Leave: 3719712
NoteSubject : Extended Benefits
Other Subject : THRU 3/24/17
Text: [03/10/2017 - GILMORE-DIAZ, KARLYN]BENS EXTENDED THRU 3/24/17 GIVEN MDS REVIEW AND R/LS OF NO LIFT/PUSH/UPLL OVER 10LBS AND LESS THAN OCCASIONAL USE OF RIGHT ARM, WALKING STANDING TO ALLOW FOR ONGOING WORKUP AN DF/U AT OV -DCM TO CONFIRM UPDATED MEDICAL AT OV FOR ONGOING ERTW PLANS AND TXMNT. CALL TO EE, LTR TO EE. NOD TO ER

**ote**

Claim/Leave: 3719712
Episode #: 2
Nurse Name: HILINSKI, JENNIFER
Service #: 16378014
Service Date: 03/08/2017
Activity: NURSE REVIEW, MEDICAL RECORDS REVIEW
Contact Information: CLAIMS, KARLYN, GILMORE-DIAZ
Note Type: INFORMATION OBTAINED DESC
Text: NURSE DESK CONSULT .SEE PREVIOUS MDS REVIEW FOR FULL HISTORY. IN BRIEF THE CLMT HAS PAIN IN THE RIGHT ARM AFTER REMOVAL OF LYMPH NODES FROM THE UNDERARM FOR STAGING OF MELANOMA. HE IS CURRENTLY TREATING FOR REFLEX SYMPATHETIC DYSTROPHY DISORDER {G90.511 RSD OR CHRONIC REGIONAL PAIN SYNDROME, CHRONIC ARM PAIN AS A RESULT OF SURGERY AND ABNORMAL INFLAMMATION OR NERVE DYSFUNCTION}. DR. MCCASLAND HAS REFERRED THE CLMT FOR A SECOND OPINION TO HELP DIAGNOSE THROUGH THE MAYO CLINIC. OV 2/14/17 WITH DR. DIMBERG {NEUROLOGY} THE CLMT REPORTS A SUNBURN FEELING DOWN THE CHEST AND HAND WITH PRESSURE PAIN IN THE RIGHT UNDERARM AND ELBOW, THE ARM GETS HOT AND RED AT TIMES WITH NO WEAKNESS. HE ALSO REPORTS DIFFICULTY WITH HIS LEGS NOT WORKING, TROUBLE GOING DOWNINCLINES OR STAIRS AND GETTING UP TO WALK. ON EXAM HE HAS INCREASED TONE IN HIS LEGS, REDUCED COLD SENSATION TO THE KNEE LEVEL, SHAKING WHEN HEEL TO SHIN TOUCHING, GAIT IS WIDE BASED AND TENTATIVE STRIDE AND SHAKES WITH STANDING. THE AP OPINES WITH A NORMAL BONE SCAN AND NO RESPONSE TO PREVIOUS BLOCK MAKES RSD LESS LIKELY. THERE ARE NO EXAM FINDINGS ALONG WITH A NORMAL EMG TO SUGGEST PERIPHERAL ISSUES. THE CLMT IS TO HAVE A CERVICAL, LUMBAR, AND THORACIC MRI, LAB STUDIES, AND EMG OF RIGHT UPPER AND LOWER LIMB IN ADDITION TO A TREMOR STUDY. PER S1 THE CLMTS NOV IS 3/24/17. BASED ON THE ONGOING SYMPTOMS, ESCALATION IN CARE WITH EXAM FINDINGS OF INCREASED TONE IN LEGS, DECREASED COLD SENSATION, WIDE BASED TENTATIVE GAIT AND TREMORS WHEN STANDING IT ISREASONABLE TO SUPPORT R/L S OF NO LIFT/PUSH/PULL/CARRY GREATER THAN 10LBS, LESS THAN OCCASIONAL USE OF THE RIGHT ARM/WALKING/STANDING, NO LADDERS/STAIRS OR WORKING FROM HEIGHTS THROUGH AT LEAST 3/24/17 TO ALLOW FOR ONGOING WORK UP AND FOLLOW UP OV. AT WHICH TIME RECOMMEND DCM SECURE UPDATED OVN FROM AP DIMBERG, ALL DIAGNOSTIC TEST AND LABORATORY RESULTS AND IF R/L S REMAIN UNCLEAR REFER TO MDS AS NEEDED. CONSULT COMPLETE.

**ote**

Claim/Event/Leave: 3719712
NoteSubject : Called EE
Other Subject : UPDATES
Text: [03/07/2017 - GILMORE-DIAZ, KARLYN]CALLED EE, ADVISED INFO RECD FROM AP DIMBERG WHO IS AP AT MAYO -NOV SAT W/ HIM, DID EMG, BLOOD WORK. LOTS OF TESTING, THEN WILL F/U IN ABOUT 1 WK FROM SAT TO GET ALL RESULTS AND COME UP WITH A PLAN, OV ON 3/24/17-ADVISED OF MDS REVIEW AND ESCALATION TO LTD EE ADVISED HAS LTD FORMS AND WILL BE MAILING. NO ADD'TL QUESTIONS

**C ote**

Claim/Event/Leave: 3719712
NoteSubject : Ref to Managed Care
Other Subject : LA
Text: [03/07/2017 - GILMORE-DIAZ, KARLYN]REFERRED FOR LA REVIEW-PLEASE REVIEW AVAILABLE MEDICAL AND COMMENT ON ONGOING R/LS

**C ote**

Claim/Event/Leave: 3719712
NoteSubject : Med Records Rcvd
Other Subject : DIMBERG
Text: [03/07/2017 - GILMORE-DIAZ, KARLYN]RECD OV NOTES 2/15/17 SEE DOC LIST

**C ote**

Claim/Event/Leave: 3719712
NoteSubject : Other
Other Subject : VENDOR PMT

Text: [03/06/2017 - CAMPBELL, CHERYL]PD INV # 276762 DATED 3/3/17 TO NOBLE RESOURCE CORPORATION FOR $30.73 FOR MEDICAL RECORDS

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : Status Report
Other Subject : PENDED
Text: MED INFO DUE 4/12/17

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : Notice/Proof Review
Other Subject :
Text: [02/27/2017 - GILMORE-DIAZ, KARLYN]LTR TO EE TO NOTIFY; FAXED REQUEST TO AP GALE AND AP MCCASLAND FOR ALL OV NOTES, TEST RESULTS, TXT PLANS 11/16-PRESENT DUE 4/12/17

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : Status Report
Other Subject : EXTENDED
Text: BENS EXTENDED THRU 2/15/17 ERTW UNKNOWN

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : Extended Benefits
Other Subject : THRU 2/15
Text: [02/27/2017 - GILMORE-DIAZ, KARLYN]BENS EXTENDED THRU 2/15/17 GIVEN ONGOING EVIDENCE OF PAIN AND UNKNOWN ETIOLOGY; REFERRAL OUT TO MAYO CLINIC FOR ONGOING EVALUATION; GIVEN EE USE OF CANE, RISK OF FALLING AND BUCKLING, ONGOING TREMORS, SOME RELIEF BYNERVE BLOCK BUT THEN NOT 2ND NERVE BLOCK, DCM FINDS EXT THRU F/U EVAL W/ MAYO CLINIC REASONABLE TO ALLOW FOR ONGOING TESTING AND SXS TO SUBSIDE; DCM TO OBTAIN MAYO CLINIC INFO AND REQUEST UPDATED INFORMATION; N&P FOR ONGOING MEDICAL. LTR TO EE/NOD TO ER

**ote**
Claim/Event/Leave: 3719712
NoteSubject : Called EE
Other Subject : UPDATES
Text: [02/27/2017 - GILMORE-DIAZ, KARLYN]CALLED EE, LEFT VMX REQUESTING RTC NEED UPDATES ON TMXNT AND ONGOING PROVIDER AND MAYO CLINIC INFO-WILL EXT

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : Med Records Rcvd
Other Subject : MCCASLAND
Text: [02/27/2017 - GILMORE-DIAZ, KARLYN]RECD MRI 12/6/16, NERVE STUDIES 2/7/17, OV NOTE 2/8. SEE DOC LIST

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : Other
Other Subject : VENDOR PMT
Text: [02/23/2017 - CAMPBELL, CHERYL]PD INV # 276250 DATED 2/22/17 TO NOBLE RESOURCE CORPORATION FOR $33.64 FOR MEDICAL RECORDS

**ote**
Claim/Event/Leave: 3719712
NoteSubject : Called EE
Other Subject : 7 DAY CALL
Text: [02/15/2017 - VALERI, CHELSEY]CALLED EE AT AND SPOKE TO A WOMAN WHO SAID EE IS IN OV AT MAYO CLINIC RIGHT NOW. ASKED FOR CONTACT INFO SO MED REQUEST CAN BE MADE. ADVISED SHE WILL CALL BACK WITH NAME OF AP AND WHERE TO SEND MED REQUEST[02/15/2017 - VALERI, CHELSEY].

**ote**
Claim/Event/Leave: 3719712
NoteSubject : Called AP
Other Subject : MCCASLAND
Text: [02/14/2017 - MARION, MAYA]CALLED DR. MCCASLAND S OFFICE TO FOLLOW UP ON MEDICAL RECORDS REQUEST. SPOKE WITH KIM (FROM COPY SERVICE, NOBLE SERVICES) WHO ADVISED THE MEDICAL RECORDS REQUEST WAS NOT RECEIVED. MODIFIED FAX NUMBER IN SYSTEM 1.

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : LTR to AP
Other Subject : MCCASLAND
Text: [02/14/2017 - MARION, MAYA]FAXED SUBSEQUENT MEDICAL REQUEST TO DR. COPY SERVICE (FOR DR BARRY MCCASLAND)

MCCASLAND)

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : LTR to EE
Other Subject : WARNING LETTER
Text: [02/14/2017 - MARION, MAYA]SENT N&P WARNING LETTER TO CLAIMANT 03-12-2017

**ote**
Claim/Event/Leave: 3719712
NoteSubject : Prior Claim
Other Subject :
Text: [02/13/2017 - GILMORE-DIAZ, KARLYN]CLOSED ONGOING FOR FTPP-RELEATED

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : Other
Other Subject : 90 DAY
Text: [02/13/2017 - GILMORE-DIAZ, KARLYN]REVIEWED CLAIM; NO GAP IN LDW/DOD; JD ON FILE; LTD EFF 1/1/12; SENT CLAIM FORMS TODAY

**ote**
Claim/Event/Leave: 3719712
NoteSubject : Called EE
Other Subject : RTC
Text: [02/03/2017 - GILMORE-DIAZ, KARLYN]RECD VMX FROM EE AT 1223P RTC-RTC TODAY AND LEFT VMX TO ADVISE OF OUTSTANDING MEDICAL

**ote**
Claim/Event/Leave: 3719712
NoteSubject : Called EE
Other Subject : DAY 7
Text: [02/02/2017 - COX, LYNDSEY]LEFT VMX FOR EE ADVISING OF THE MISSING MEDS AND REQ REFAXED

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : LTR to AP
Other Subject : MCCASLAND
Text: [01/31/2017 - LANDRY, KATHLEEN]FAXED MED REQ

**ote**
Claim/Event/Leave: 3719712
NoteSubject : Called AP
Other Subject : MCCASLAND
Text: [01/31/2017 - LANDRY, KATHLEEN]LVM W DCM CONTACT INFO. RE MED REQ

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : Status Report
Other Subject : PENDED
Text: CLAIM PENDED.MED INFO NEEDED. DUE 03/11

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : Notice/Proof Review
Other Subject : DUE 03/11
Text: [01/26/2017 - OUELLETTE, BRIAN]MED INFO NEEDED TO MAKE ONGOING DTERMINATION. FAXED MED REQ TO AP MCCASLAND FOR ALL MED INFO FROM 12/01 THRU THE PRESENT. LTR TO EE. EMAIL TO ER. DUE 03/11

**ote**
Claim/Event/Leave: 3719712
NoteSubject : Called AP
Other Subject : AP MCCASLAND
Text: [01/26/2017 - OUELLETTE, BRIAN]CALLED AP MCCASLAND @ (404) 531-0334, S/W NURSE AND REQ IDF EE HAD BEEN RELEASED TO RTW OR NOV SCHEDULED. NURSE ADVISED THAT DCM WOULD NEED TO FAX OVER THAT REQ .DCM THANKED AND HAD NO OTHER QUESTIONS.

**ote**
Claim/Event/Leave: 3719712
NoteSubject : Called AP
Other Subject : AP GALE
Text: [01/26/2017 - OUELLETTE, BRIAN]CALLED AP GALE @ (770) 590-1078, S/W ROBERT WHO CONFIRMED THAT EE HAD LOV 1/5 AND NO NOV SCHEDULED. DCM THANKED AND HAD NO OTHER QUESTIONS.

**ote**

ote
Claim/Event/Leave: 3719712
NoteSubject : Called EE
Other Subject : UPDATES FROM LOV
Text: [01/26/2017 - OUELLETTE, BRIAN]CALLED EE @ LEFT VMX TO RTC FO RUPDATES FROM LOV WITH NEUROLOGIST.

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : Status Report
Other Subject : APPROVED
Text: DOD 11/8/16 BBD 11/15/16 APPROVED THROUGH 1/23/17 ERTW UNKNOWN

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : Approved
Other Subject : THRU 1/23/17
Text: [01/16/2017 - GILMORE-DIAZ, KARLYN]LDW 11/7/16 DOD 11/8/16 BBD 11/15/16 (7 DAY EP SICKNESS) DX: CHRONIC REGIONAL PAIN SYNDROME-BASED ON MDS REVIEW AND R/LS OF NO USE OF RIGHT ARM SUPPORTED THRU OV F/U W/ AP GALE-EE'S V. HEAVY JOB REQUIRES FREQUENT LIFTING UP TO 50LBS,PUSH, PULL AND CARRYING THEREFORE REASONABLE. GIVEN EE REPORT THAT AP GALE DEFERRING BACK TO NEURO, REASONABLE TO APPROVE UP TO OV W/ NEURO TO ALLOW FOR INJECTIONS TO TAKE AFFECT AND FOR F/U W/ AP TO DISCUSS ONGOING TXTMNT PLAN. DCMTO CONFIRM UPDATES AT NOV FOR ONGOING TXTMNT AND ERTW PLANS. EE HAS BEEN ADVISED; EMAIL NOD TO ER, LTR TO EE

**ote**
Claim/Event/Leave: 3719712
NoteSubject : Called EE
Other Subject : LDW /DOD
Text: [01/16/2017 - GILMORE-DIAZ, KARLYN]CALLED EE, CONFIRMED LDW 11/7 AND DOD WAS DAY AFTER LDW. ADVISED THAT HE HAS HAD SOME INJECTIONS, 2ND ON HELPED AND HAS REFERRED BACK TO NEUROLOGIST 1/23; WILL KNOW MORE AT OV W/ NEURO, MAY NEED MORE INJECTIONS OR MAY NEED TO GO DIRECTLY THRU NEURO; EXPLAINED APPROVAL AND PLANS- NO ADD'LT QUESTIONS

**ote**
Claim/Event/Leave: 3719712
NoteSubject : Called EE
Other Subject : UPDATES, DOD
Text: [01/06/2017 - GILMORE-DIAZ, KARLYN]LEFT VMX FOR EE REQUESTING RTC TO CONFIRM DOD ALSO TO OBTAIN MED UPDATES AND ERTW

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : Job Description
Other Subject :
Text: [01/06/2017 - GILMORE-DIAZ, KARLYN]RECVD FROM PRIOR CLAIM

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : Status Report
Other Subject : EXTENDED
Text: EXTENDED THROUGH 1/18/17 **DISREGARD*

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : Approved
Other Subject : THRU 1/18/17
Text: [01/06/2017 - GILMORE-DIAZ, KARLYN]BENS EXTENDED HTRU 1/18/17 GIVEN NCM REVIEW AND SUPPORT OF NO USE OF RT ARM THRU AT LEAST 2 WKS POST INJECTIONS W PAIN MANAGEMENT REASONABLE TO EXTEND GIVEN EE'S HEAVY JOB REQS AND NEED TO LIFT UP TO 50LBS. DCMTO CONFIRM UPDATED MEDS AT NOV AND ONGOING ERTW PLANS. CALL TO EE. LTR TO EE, NOD TO ER.[01/06/2017 - GILMORE-DIAZ, KARLYN]************DISREGARD NEED TO CONFIRM DOD***********

**ote**
Claim/Event/Leave: 3719712
NoteSubject : Called AP
Other Subject : GALE
Text: [01/06/2017 - GILMORE-DIAZ, KARLYN]CALLED AP AT 770-590-1078 CONFIRMED FOV 12/14/16, SINCE THEN SEEN 2X; LOV WAS 1/5/17; RECD 2 INJECTIONS, FIRST ON 12/22, 2ND ONE 1/5/17-NO FUTURE OV AT THIS TIME; POST PROCEDURE F/U SHOULD BE ABOUT 3WKS -INJECTIONSWERE FOR STELITE GANGLION BLOCK (SGB) FAX: 770-929-9092

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : Other
Other Subject : REASSIGNED
Text: [01/04/2017 - DELPO, GAYLE]M1 REVIEWED CLAIM AND REASSIGNED TO COMPLEX BASED ON DX.

**C ote**

Claim/Event/Leave: 3719712
NoteSubject : Ref to Other
Other Subject : SENIOR
Text: [01/03/2017 - FERRETTI, CHRISTINE]FILE REFERRED TO SENIOR FOR ESCALATION TO COMPLEX GIVEN COMPLEX DX

**ote**

Claim/Leave: 3719712
Episode #: 1
Nurse Name: HILINSKI, JENNIFER
Service #: 16342422
Service Date: 12/27/2016
Activity: NURSE REVIEW, FILE REVIEW
Contact Information: NO CONTACT, ,
Note Type: INFORMATION OBTAINED DESC
Text: ***CONTINUED*** IF NO RTW OR NO ESCALATION IN CARE RECOMMEND DCM SECURE OVN FROM AP GALE AND MCCASLAND, MRI RESULTS, AND REFER BACK TO MDS AS NEEDED. DISCUSSED WITH ADCM, ASSIGNMENT COMPLETE.

**ote**

Claim/Leave: 3719712
Episode #: 1
Nurse Name: HILINSKI, JENNIFER
Service #: 16342421
Service Date: 12/27/2016
Activity: NURSE REVIEW, FILE REVIEW
Contact Information: CLAIMS, CHRISTINE, FERRETTI
Note Type: INFORMATION OBTAINED DESC
Text: THE CLMT HAS A HISTORY OF PAIN IN THE RIGHT AXILLA 7 MONTHS AFTER REMOVAL OF LYMPH NODES FOR STAGING OF MELANOMA. HE IS CURRENTLY TREATING FOR REFLEX SYMPATHETIC DYSTROPHY DISORDER {G90.511 OR CHRONIC REGIONAL PAIN SYNDROME, CHRONIC ARM PAIN AS A RESULTOF SURGERY AND ABNORMAL INFLAMMATION OR NERVE DYSFUNCTION}. HE TREATS WITH DR. MCCASLAND {PSYCHIATRY AND NEUROLOGY} OV PREDATING THE CLAIM ON 11/4/16 THE EXAM OF THE RIGHT ARM SHOWS SWELLING OBVIOUS AT THE HAND AND ARM PIT, INTERMITTENT TREMOR , EXCESSIVE SENSITIVITY TO TOUCH, PAIN TO PINPRICK TEST, NORMAL STRENGTH AND SYMMETRICAL REFLEXES. THE CLMT REPORTS FEELINGS OF SUNBURNED RIGHT ARM AND UPPER CHEST, PERIODIC SWELLING, PURPLE DISCOLORATION, RASH, AND TREMOR. HE HAS SEEN A PAIN SPECIALIST AND IS UNABLE TO TAKE LYRICA OR GABAPENTIN {BOTH CAN TREAT NERVE PAIN} DUE TO REACTIONS SO IS MAINTAINED ON LOW DOSE PERCOCET FOR THE PAIN. THE AP ORDERS A BONE SCAN AND MRI OF THE RIGHT ARM. BONE SCAN ON 11/22/16 SHOWS NO EVIDENCE OF REGIONAL PAIN SYNDROME WITH POSSIBLE BONE DISORDER IN WHICH SCAR-LIKE TISSUE DEVELOPS IN PLACE OF NORMAL BONE. THIS CAN WEAKEN THE AFFECTED BONE AND CAUSE IT TO DEFORM OR FRACTURE, USUALLY IN THE LONG BONES OF THE ARM. HE IS REFERRED TO DR. GALE {PAIN MANAGEMENT} AND IT IS INDICATED HE IS UNABLE TO USE HIS RIGHT ARM DUE TO SEVERE HYPERSENSITIVITY. PER S1 THE CLMT IS TO HAVE THE MRI 12/2016 AND FOLLOW WITH PAIN INJECTIONS. BASED ON THE EXAM FINDINGS OF RIGHT ARM SWELLING, INTERMITTENT TREMOR, EXCESSIVE SENSITIVITY TO TOUCH, ANDPAIN TO PINPRICK TEST WITH THE NEED FOR AN MRI AND POSSIBLE INJECTIONS WITH REFERRAL TO DR. GALE {PAIN MANAGEMENT} IT IS REASONABLE TO SUPPORT R/L S OF NO USE OF THE RIGHT ARM THROUGH OV WITH AP GALE {DATE UNKNOWN}. IF THE CLMT IS TO UNDERGO INJECTIONS IT WOULD BE REASONABLE TO SUPPORT R/L S THROUGH 2 WEEKS POST INJECTION {SOMETIMES GIVEN IN A SERIES OF 3 EACH 2 WEEKS APART} TO ALLOW FOR AP FOLLOW UP. ***CONTINUED***

**C ote**

Claim/Event/Leave: 3719712
NoteSubject : Med Records Rcvd
Other Subject : MCCASLAND
Text: [12/23/2016 - FERRETTI, CHRISTINE]RECEIVED MED RECORDS FROM DR MCCASLAND. SEE DOC LIST

**C ote**

Claim/Event/Leave: 3719712
NoteSubject : Other
Other Subject : INVOICE-PAID
Text: [12/23/2016 - FERRETTI, CHRISTINE]PAID INVOICE TO NOBLE RESOURCE CORPORATION FOR $33.64

**C ote**

Claim/Event/Leave: 3719712
NoteSubject : Ref to Managed Care
Other Subject : LA REVIEW
Text: [12/23/2016 - FERRETTI, CHRISTINE]CLAIM IS PENDED. PLEASE COMMENT ON R&L'S AND REASONABLE DURATION

**ote**

Claim/Event/Leave: 3719712
NoteSubject : Called AP
Other Subject : MCCASLAND
Text: [12/20/2016 - LANE, BRYCE]CALLED APO 4045310334, PROMPT FOR RECORDS SAID TO CALL 8004905007. DID SO, TALKED TO KIM. WAS TOLD THEY HAVE NO RECORD OF ANY RECORDS REQUEST. THEIR FAX IS 678 513 0073, THE ONE IN S1 MAY BE FOR AP OFFICE DIRECTLY. AUTHFORM WILL BE NEEDED

**ote**

Claim/Event/Leave: 3719712
NoteSubject : Called AP
Other Subject : MCCASLAND- DAY 7
Text: [12/08/2016 - FERRETTI, CHRISTINE]CALLED AP OFFICE FOR DAY 7- S/W STACY. EXPLAINED THAT WE DID RECEIVE FMLA PAPERWORK BACK BUT NEEDED ACTUAL OVNS AND MEDICAL RECORDS IN ORDER TO PROCESS CLAIM. STACY LOOKED IN FILE AND SAID SHE COULD NOT FIND ANY OF THAT AND ASKED TO RE-FAX REQUEST AND SHE WOULD TAKE CARE OF IT. ADCM AGREED AND SENT SUBSEQUENT REQUEST TO AP AND CALLED EE TO ADVISE, LEFT VMX W/ INFORMATION

**C ote**

Claim/Event/Leave: 3719712
NoteSubject : Other
Other Subject : LTR FROM AP
Text: [12/07/2016 - FERRETTI, CHRISTINE]RECEIVED RESPONSE TO FAX FROM ER, ERTW UNKNOWN, POSSIBLY 1-3 MONTHS AND STATING WE ALREADY HAVE OVNS AND TX PLANS. (REFERRING TO FMLA PAPERWORK THEY SENT US)

**C ote**

Claim/Event/Leave: 3719712
NoteSubject : Notice/Proof Review
Other Subject :
Text: [11/30/2016 - FERRETTI, CHRISTINE]CLAIM PLACED ON N&P FOR MEDICAL RECORDS LTR MAILED TO EE AND MED REQ MAILED TO DR MCCASLAND FOR ALL OVNS, TEST RESULTS AND PROCEDURE REPORTS FROM 11/1/16 TO THE PRESENT. N&P DUE 1/13/17

**ote**

Claim/Event/Leave: 3719712
NoteSubject : Called EE
Other Subject : QUESTION/UPDATES
Text: [11/30/2016 - FERRETTI, CHRISTINE]CALLED EE AND LEFT VMX TO CONFIRM DOD, IF EE IS CLAIMING DISABILITY AS OF 11/8 OR 11/10 DUE TO NEW CONFIRMATION OF LDW, ALSO ADVISED THAT CLAIM WOULD BE ABLE TO BE APPROVED INITIALLY FOR 2 WEEKS BUT THAT ADCM WOULD NEED RECORDS BEYOND THAT TIME, ADVISED OF RECORDS REQUEST AND N&P TIMELINE

**C ote**

Claim/Event/Leave: 3719712
NoteSubject : Other
Other Subject : LTR FROM ER
Text: [11/30/2016 - FERRETTI, CHRISTINE]RECEIVED EMAIL FROM ER. ON 11/7 EE WORKED ALMOST 7 HOURS, WAS LATE DUE TO ILLNESS. HE CALLED IN SICK BUT TOOK VACATION TIME FOR 11/8 AND 11/9 BEFORE REFILING CLAIM

**C ote**

Claim/Event/Leave: 3719712
NoteSubject : FMLA
Other Subject : REQUEST END DATE CHG
Text: THE REQUESTED LEAVE END DATE WAS ADJUSTED TO REFLECT A CHANGE TO THE DISABILITY CLAIM'S APPROVED THROUGH DATE. THE ACTUAL LEAVE END DATE MAY HAVE CHANGED AS A RESULT OF THIS ACTION.

**C ote**

Claim/Event/Leave: 3719712
NoteSubject : Med Records Rcvd
Other Subject : MCCASLAND
Text: [11/30/2016 - FERRETTI, CHRISTINE]RECEIVED FMLA PAPERWORK FROM AP OFFICE. SYMPTOMS: EE HAS EXTREME PAIN AND SWELLING AND PURPLISH DISCOLORATION OF HIS RIGHT ARM FOLLOWING SX FOR CANCER. CONDITION DURATION: INDEFINITE. JOB FUNCTIONS UNABLE TO PERFORM:ANY WORK AT ALL, NO USE OF RIGHT ARM DUE TO SEVERE HYPERSENSITIVITY. LEAVE BEGIN DATE 1/10/16 LEAVE END DATE ESTIMATE 1/31/17. EE CANNOT WORK PART TIME, CANNOT WORK AT ALL

**C ote**

Claim/Event/Leave: 3719712
NoteSubject : LTR to ER
Other Subject : LDW CONFIRMATION
Text: [11/30/2016 - FERRETTI, CHRISTINE]EMAILED ER TO CONFIRM LDW AS ADCM RECEIVED AN EMAIL CONFIRMING 11/7, BUT ANOTHER DCM S/W ER ON THE PHONE AND THEY CONFIRMED LDW AS 11/9. SEE DOC LIST

**ote**

Claim/Event/Leave: 3719712
NoteSubject : Called AP
Other Subject : MCCASLAND
Text: [11/29/2016 - FERRETTI, CHRISTINE]CALLED AP OFFICE TO CONFIRM INFORMATION. S/W TANEEL. CONFIRMED DX: REFLEX SYMPATHETIC DYSTROPHY. TANEEL SAID INFORMATION WAS FAXED OVER FROM AP OFFICE. ADCM ADVISED THEY DID NOT GET ANYTHING. TANEEL OFFERED TO RE-FAX. ADCM PROVIDED W/ FAX NUMBER AND THANKED/NOTHING FURTHER

**ote**
Claim/Event/Leave: 3719712
NoteSubject : Initial EE Interview
Other Subject : COMPLETE
Text: [11/29/2016 - FERRETTI, CHRISTINE]CALLED EE FOR INT. LDW 11/9/16. OOW DUE TO RSE. EE HAD A BONE SCAN DONE 11/13/16 TO SEE WHAT STAGE ITS IN. EE HAS TO HAVE AN MRI, PROBABLY 12/5 OR 12/6 THEN GET INJECTIONS TO TREAT IT IN HIS NECK. RARE DISEASE. REFLEX SYMPATHETIC DYSTROPHY/DISORDER. EE WILL NEED INJECTIONS HIS WHOLE LIFE, NOT CURABLE. EE HOPES TO RTW ONCE HE RECEIVES INJECTIONS, MAYBE IN 2 WEEKS FROM NOW? EE BELIEVES SIGNED AUTH IS ON FILE. ASKED EE ABOUT PRIOR CLALIM, EE SAID IT IS RELATED TO PRIOR CLAIM, EE HAD CANCER AND HAD SX TO REMOVE THE CANCER, THEY REMOVED HIS LYMPH NODES. HIS NERVES HAVE NOT GONE BACK CORRECTLY, NOW HIS CELLS ARE ATTACKED, INJECTIONS SHOULD HELP THAT PART OF HIS NERVOUS SYSTEM.

**ote**
Claim/Event/Leave: 3719712
NoteSubject : Called AP
Other Subject : MCCASLAND
Text: [11/22/2016 - FERRETTI, CHRISTINE]CALLED AP OFFICE TO CONFIRM DX AND OV. WAS ADVISED THAT A REQUEST HAD TO BE FAXED OVER TO 404-531-0494 FOR ANY INFORMATION REQUESTS.

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : Other
Other Subject : LTR FROM ER
Text: [11/22/2016 - FERRETTI, CHRISTINE]RECEIVED EMAIL FROM ER INFORMING THAT EE'S LDW WAS 11/7. SEE DOC LIST

**ote**
Claim/Event/Leave: 3719712
NoteSubject : ER Called
Other Subject : STATUS
Text: [11/22/2016 - GILMORE-DIAZ, KARLYN]RECD CALL FROM STAR GARGULIO ER ... REQUESTED WHY CLAIM DENIED; EXPLAINED DENIAL FOR PRIOR CLAIM FROM JUNE-OCT, ADVISED CURRENTLY REVIEWING CLAIM FOR NOVEMBER ABSENCE. CONFIRMED LDW 11/9. NO ADDLT QUESTIONS.

**ote**
Claim/Event/Leave: 3719712
NoteSubject : Initial EE Interview
Other Subject : 1ST ATTEMPT
Text: [11/22/2016 - GILMORE-DIAZ, KARLYN]CALLED EE, LEFT VMX REQUESTING RTC TO ADVISE OF CLOSURE AND OBTAIN INTERVIEW FOR NEW CLAIM.

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : LTR to ER
Other Subject : LDW?
Text: [11/22/2016 - FERRETTI, CHRISTINE]EMAILED ER TO CONFIRM LDW. SEE DOC LIST

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : Initial Entry
Other Subject :
Text: [11/21/2016 - HOLLIS, CYNTHIA]POSSIBLE DUPLICATE TO CLAIM NUMBER 3651595 -- PENDED DUE TO DIFFERENT DATES -- PLEASE VERIFY

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : FMLA
Other Subject : ACKNOWLEDGMENT SENT
Text: THIS LEAVE ACKNOWLEDGEMENT LETTER WAS SENT. THE LEAVE BEGIN DATE IS 11/10/2016 AND THE LEAVE END DATE IS 11/29/2016.

**C ote**
Claim/Event/Leave: 3719712
NoteSubject : Telephonic Intake
Other Subject : REPORTED CLAIM NOTE
Text: AMORRISON, ERTW UNKNOWN

Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688

D. SETH HOLLIDAY
MCMAHAN LAW FIRM, LLC
700 S THORNTON AVENUE
PO BOX 1607
DALTON GA 30722

Lincoln Financial Group®

Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 427-1866

January 30, 2021

D. Seth Holliday
McMahan Law Firm, LLC
700 S THORNTON AVENUE
PO BOX 1607
DALTON, GA 30722

RE: Long Term Disability (LTD) Benefits
Chart Industries, Inc.
Claim #: 7259041
Claimant: Darrell Russell

Dear D. Seth Holliday:

Please see the attached letter that was originally faxed to your office on January 29, 2021.

If you have any questions regarding this matter, please contact me.

Sincerely,

Jennifer Dimaggio
Appeal Consultant
Phone No.: (888) 437-7611 Ext. 59238
Secure Fax No.: (603) 427-1866

Attachments: 7259041-ACKNOWLEDGE-FREEFORM-01.29.2021

Lincoln Financial Group®

Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 427-1866

| | |
|---|---|
| Date: | January 29, 2021 |
| To: | D. SETH HOLLIDAY<br>MCMAHAN LAW FIRM, LLC<br>700 S THORNTON AVENUE<br>PO BOX 1607<br>DALTON GA 30722 |
| Attn: | |
| Fax: | (706) 217-6880 |
| From: | Jennifer Dimaggio<br>Appeal Consultant<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 427-1866 |
| Total Pages<br>(Including Cover): | 11 |
| RE: | Claim #: 7259041<br>Claimant: Darrell Russell<br><br>Chart Industries, Inc. |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

Lincoln Financial Group®

Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 427-1866

January 29, 2021

D. Seth Holliday
McMahan Law Firm, LLC
700 S THORNTON AVENUE
PO BOX 1607
DALTON, GA 30722

RE: Long Term Disability (LTD) Benefits
Chart Industries, Inc.
Claim #: 7259041
Claimant: Darrell Russell

Dear D. Seth Holliday:

We have completed our review of Darrell Russell's appeal for Long Term Disability Benefits and the original determination to deny benefits beyond May 8, 2020 is being maintained.

***Initial Claim Decision***

Darrell Russell filed a claim for his absence from work as of November 8, 2016 as a result of back pain. LTD benefits were approved from November 8, 2016 through May 8, 2020. Benefits beyond May 8, 2020 were denied as the evaluation concluded Mr. Russell was no longer disabled as defined by the Policy.

The basis for the decision was outlined in a letter dated March 11, 2020. Mr. Russell was provided an opportunity to request an appeal review of the denial, stating the reasons why he felt that his claim should not have been denied, and submit additional information to support his claim. Specifically, Mr. Russell was advised to submit the following information: *Any and all office notes, phone notes, consultations/evaluations, diagnostic test results, operative/procedure reports, treatment plans, restrictions and limitations, out of work/return to work notes and/or prescribed medications from all of your treating providers.*

***Appeal***

In your letter dated August 20, 2020 you indicated you were appealing the decision to deny Darrell Russell's claim as of May 8, 2020.

In support of Mr. Russell's, you submitted the following information:

- Medical records from Georgia Pain and Wellness Center dated February 10, 2020 through May 26, 2020
- Medical records from Georgia Mountain Dermatology dated May 28, 2020 through June 17, 2020
- Medical records from Georgia Renew Clinic dated May 7, 2019 through February 6, 2020

We subsequently received the following information in support of Mr. Russell's claim:

- Medical records, MRI report, and new patient intake form from Georgia Pain and Wellness Center dated February 2, 2020 through May 26, 2020
- Physical Medical Source Statement from Dr. Anne Todd, MD, dated August 25, 2020
- Lincoln National Corporation Financial Conflict of Interest Report
- Request to Admit

In a telephone conversation on October 29, 2020 we spoke to your assistant, Julie, who confirmed Mr. Russell's appeal was complete.

***Appeal Evaluation***

During the claim evaluation of ongoing benefits, Mr. Russell's claim was reviewed by Dr. Arlen Green, DO, an independent physician who is Board Certified in Physical Medicine and Rehabilitation. Dr. Green indicated Mr. Russell was a forty-one-year-old male with a history of reflex sympathetic dystrophy of the arm. MRI of the cervical, lumbar and thoracic spine dated March 11, 2017 showed cervical spondylosis with advanced C5-C6 and C6-C7 diskovertebral degeneration, C5-C6 left sided mild spinal canal and moderate to severe neural foramina stenosis, and C6-C7 right-sided mild spinal canal and severe neural foramina stenosis. There was mild thoracic spondylosis with T9-T10 moderate spinal canal and severe right neural foramina stenosis. The imaging additionally documented L4-L5 disc degeneration without significant spinal canal or neural foramina stenosis. Dr. Green noted Mr. Russell was previously deemed a candidate for two-level anterior cervical discectomy and fusion at C5-6 and C6-7 for his right arm symptoms. Mr. Russell underwent a L4-5 microdiscectomy for cauda equina on September 5, 2019. In the office visit on December 19, 2019, Mr. Russell continued to have neuropathic pain in his right leg and foot with hypersensitivity in the right leg and foot. At that time, it was noted Mr. Russell was taking gabapentin and Cymbalta for chronic pain. On examination, Mr. Russell had right foot drop. Gait and station were normal. He had full motor strength in the upper extremities. Sensation was intact throughout all dermatomes. Dr. Weaver referred him to pain management and noted a trial of spinal cord stimulation was a considered treatment.

Dr. Green attempted to contact both Dr. Todd and Dr. Weaver to discuss Mr. Russell's case, however, contact was not established with either provider.

Taking into consideration the entire clinical picture, Dr. Green determined that based on Mr. Russell's lumbar surgery with ongoing pain and foot drop identified in the December 19, 2019 office visit, he should be capable of sustaining full-time employment within the following restrictions and limitations:

- Lifting, carrying, pushing and pulling 40 pounds occasionally--up to 1/3 of the day and 20 pounds frequently--1/3 to 2/3 of the day.

- Sitting is not restricted.
- Walking and standing combined 30 minutes at one time up to 5 hours out of an 8-hour day.
- The claimant would require a 5-10-minute break from standing and walking before resuming this activity again.
- Occasionally twisting, bending, kneeling, crouching, squatting, and climbing stairs.
- No climbing ladders or poles, working at heights or operating heavy machinery.
- No restrictions reaching overhead, at the waist/desk level and below the waist.
- Fingering, handling, feeling, and grasping is unrestricted.

Mr. Russell's claim was reviewed by a vocational consultant for a transferrable skills analysis based on his prior work history, educational background, and/or life experience and capacity within the restrictions and limitations outlined above. The analysis showed Mr. Russell had the following skills:

***Skills & Abilities:*** *Following oral and written instructions to set up and operate production-type machines; using hands, eyes, and fingers to adjust machine controls, manipulate hand tools, or assemble objects; directing work of others; staying within prescribed standards and guidelines; identifying variations in size, shape, and texture of objects; and working in hazardous or noisy conditions. Applying math skills to read and interpret business and statistical reports and records; analyzing and interpreting administrative policy and procedure; planning and organizing work of others; making decisions based on business reports or similar data; speaking and writing clearly; preparing budgets, keeping records, and inventorying stock and dealing tactfully and courteously with the public, employees, or government officials. Using common sense and basic language and math skills to carry out instructions, total costs, make change, and complete forms; moving hands, eyes, and fingers to handle items or drive vehicle; standing and walking for extended periods; and lifting and carrying items of varying weights.*

The transferrable skills analysis identified the following occupations that were within Mr. Russell's physical abilities and within his identified skill level:

| **Occupation** | **National Monthly Wage** |
|---|---|
| Manager, Machinery-or-Equipment, Rental | $3,302 |
| Order Caller | $2,727 |
| Supervisor, Order Takers | $4,650 |
| Supervisor, Customer Services | $4,650 |
| Surveillance System Monitor | $2,723 |

During the claim evaluation for Mr. Russell's appeal, the claim was reviewed by Dr. John Zheng, DO, an independent physician who is board certified in Physical Medicine and Rehabilitation and Pain Medicine. Two attempts were made to reach Dr. An Do, MD, however, no contact was established.

Based on his review of the medical records, Dr. Zheng supported the diagnoses of cervical radiculopathy, cervical and lumbar degenerative disc disease, congenital lumbar stenosis, complex regional pain syndrome of the right upper limb, functional hyperkinesia causing lower extremity tremors, peripheral neuropathy, right arm pain, post-laminectomy syndrome, and right foot drop. Dr. Zheng noted comorbid diagnoses of hypertension, anxiety, insomnia, and GERD.

Dr. Zheng noted on February 10, 2020 Mr. Russell treated with Dr. Amit Patel, MD, for right arm pain and bilateral leg pain. Exam of his right upper extremity showed 4/5 handgrip, 4/5 triceps, 4/5 biceps, 4/5 deltoid. Exam of his right lower extremity showed 4-/5 hip flexors, 4-/5 quadriceps, 4/5 hamstrings, 4/5 DF, and 4/5 PF. There was right greater than left lower extremity decreased sensation to light touch/pinprick along L4-S1 dermatomes, decreased range of motion of the lumbar spine, and TTP along the bilateral lowest three segments of the lumbar facet joints. Pain was reproduced with bilateral facet loading maneuvers and positive SLR was noted.

On March 31, 2020 Mr. Russell treated with Dr. Do for right arm pain, bilateral leg pain, and low back pain. Exam of his right lower extremity showed 4/5 hip flexors, 4/5 quadriceps, 4/5 hamstrings, 4-/5 DF, and decreased sensation to light touch along L5-S1 dermatomes. On examination of his right upper extremity, allodynia, edema, color changes, and decreased temperature compared to the contralateral extremity are noted. On lumbosacral exam there was positive facet loading, decreased range of motion, tenderness to palpation bilaterally along the lowest three segments of lumbar joints, and a positive SLR on the right.

An MRI of the lumbar spine on May 12, 2020 showed mild disc desiccation and degenerative disc space narrowing of L4-L5. There was mild disc bulge with superimposed left-sided disc protrusion which minimally extended along the posterior superior margin of L5. There was mild effacement of the ventral thecal sac as well as encroachment of the left lateral recess. The left neural foramen and right neural foramen demonstrated mild encroachment. There was a small right paracentral disc protrusion of L5-S1 without significant central canal encroachment.

On May 26, 2020 Dr. Do saw Mr. Russell for right arm pain, bilateral leg pain, and low back pain. Examination of his right lower extremity showed 4/5 hip flexors, 4/5 quadriceps, 4/5 hamstrings, and 4/5 DF. Decreased sensation to light touch/pinprick along L5-S1 was noted. Exam of his right upper extremity noted allodynia, edema, color changes, and decreased temperature compared to his contralateral extremity. A lumbosacral exam showed positive facet loading, decreased range of motion, tenderness to palpation bilaterally along the lowest three segments of the lumbar facet joints, and a positive SLR on the right.

On June 11, 2020 Mr. Russell was seen for a follow-up with Dr. Carlton Faulk, MD for neoplasm of uncertain behavior on the right proximal radial dorsal forearm. On May 28, 2020 a biopsy by shave method was performed. The pathology showed melanoma in situ on the right proximal radial dorsal forearm and Mr. Russell underwent an excision.

On June 25, 2020 Mr. Russell was seen for follow-up of a malignant melanoma in situ on his right proximal radial dorsal forearm. The pathology showed no residual melanoma.

On August 25, 2020 Dr. Anne Todd, MD completed a Physical Medical Source Statement that stated Mr. Russell's diagnoses included reflex sympathetic dystrophy, insomnia, HTN, and anxiety. Restrictions were listed and noted Mr. Russell would likely be off task twenty-five percent or more of the time.

Dr. Zheng concluded Mr. Russell had a long-standing history of right upper extremity pain since a melanoma resection in 2016 and associated with complex regional pain syndrome of his left upper limb. Mr. Russel also had chronic low back pain due to lumbar stenosis and lumbar degenerative disc disease and he is status post L4-5 microdiscectomy for cauda equina. There was an EMG/nerve

conduction study dated February 16, 2017 that revealed findings consistent with mild, probable, distal, axonal peripheral neuropathy, a chronic possibly active right C8 radiculopathy, and chronic probably inactive right L5-S1 radiculopathy. Mr. Russel also suffered from bilateral lower extremity pain, weakness, and right foot drop as well as lower limb tremulousness and functional hyperkinesia causing lower extremity tremors and peripheral neuropathy. Given Mr. Russell's medical history involving multiple musculoskeletal conditions impacting his functionality, Dr. Zheng opined Mr. Russell would require the following activity restrictions from May 8, 2020 with a re-assessment on or around May 8, 2021:

- Sitting: Constantly, up to 30 minutes at a time, up to 6 hours per day
- Standing: Occasionally, up to 20 minutes at a time, up to 2 hours per day
- Walking: Occasionally, up to 20 minutes at a time, up to 2 hours per day
- Lifting: Occasionally up to 10 lbs. BUE
- Carrying: Occasionally up to 10 lbs. BUE
- Pushing: Occasionally up to 10 lbs. BUE
- Pulling: Occasionally up to 10 lbs. BUE
- Stooping: Occasionally
- Kneeling: Occasionally
- Crouching: Occasionally
- Crawling: Never
- Climbing stairs: Occasionally
- Climbing ladders: Never
- Reaching: Occasionally overhead; constantly desk and waist levels BUE's
- Using lower extremity for foot controls: occasionally RLE; unrestricted LLE
- Fine manipulation: occasionally RUE; unrestricted LUE
- Simple and firm grasping: occasionally RUE; unrestricted LUE

A transferrable skills analysis addendum was completed by a vocational consultant with the above supported restrictions and limitations. It was determined that other than Surveillance System Monitor, the occupations identified in the initial analysis would be eliminated, however, the following top two occupations were added and identified as viable:

| Occupation | National Monthly Wage |
|---|---|
| Order Department Supervisor | $6,230 |
| Information Clerk | $2,505 |
| Surveillance System Monitor | $2,850 |

On November 20, 2020 we sent you a letter via e-mail and fax which included a copy of the clinical review performed in connection with your request for Mr. Russell's appeal. You were given an opportunity to review and respond with any additional information that you would like considered before a final determination was made on the appeal. A deadline for response was given of December 10, 2020.

On December 2, 2020 we received your letter dated December 1, 2020 requesting an extension to the December 10, 2020 deadline with a new deadline date of January 9, 2021. We agreed to grant the extension.

On December 16, 2020 we sent you a letter via e-mail which included a copy of the transferrable

skills analysis for your review.

We received your response to the transferrable skills analysis on December 29, 2020, dated December 21, 2020, and response to the clinical review on January 7, 2021, dated December 21, 2020.

In a telephone conversation on January 14, 2021, Julie confirmed the response was complete.

Regarding your argument that Dr. Zheng is not "independent" given his relationship with "Lincoln" and the disability insurance industry, we respectfully disagree. We utilize third party vendors to facilitate the selection of providers who produce the clinically supported and evidenced based assessments.

You additionally noted Dr. Zheng did not address Mr. Russell's work reliability, consistency, substantial capacity and steady attendance. Dr. Zheng did address these items as noted in his review as follows:

*...the medical documentation does not support that any medical condition alone, or in combination would preclude the claimant from sustained occupational functioning on a full-time basis. The claimant is capable of sustaining full-time employment within the restrictions and limitations outlined above.*

Regarding your response that Dr. Zheng's has a differing opinion from Mr. Russell's family practitioner, Dr. Todd, and that Dr. Zheng's opinion is not credible, we respectfully disagree. Dr. Zheng is a board-certified physician in Physical Medicine and Rehabilitation and Pain Management, and our position stands that a board-certified physician within this specialty and sub-specialty is the most qualified physician to review Mr. Russell's conditions. However, we do acknowledge Dr. Zheng did not specifically comment on the restrictions and limitations outlined by Dr. Todd and therefore, an addendum review was completed by Dr. Zheng who opined the following:

On August 25, 2020 Dr. Anne Todd completed a questionnaire noting the claimant's diagnoses included reflex sympathetic dystrophy, insomnia, hypertension, and anxiety. The claimant's prognosis was fair. Restrictions were listed and it was noted that the claimant would likely be off task twenty five percent or more of the time. Dr. Todd noted the claimant was incapable of even "low stress" work. Dr. Todd noted the claimant would likely be absent from work as a result of impairments more than four days per month;

In a letter from Mr. D. Seth Holliday dated December 21, 2020, it is noted that the claimant suffers from radiculopathy, low back pain, cervicalgia, pain radiating to his legs, CRPS, post-laminectomy syndrome, and myalgia. Mr. Holliday noted there had been no meaningful change in the claimant's condition from the period in which Lincoln paid him LTD benefits. Mr. Holliday noted his condition continued to deteriorate and the decision to deny benefits should be overturned and benefits reinstated.

In a letter from Mr. Holliday dated December 21, 2020 it is noted that the restrictions and limitations set forth in the TSA were not credible. Mr. Holliday stated Dr. Toddy's August 25, 2020 medical source statement was ignored as was the November 4, 2020 Social Security decision to grant benefits. Additionally, Mr. Holliday noted the TSA did not factor into the analysis the

claimant's chronic pain, fatigue, and diminished concentration and how this affects his work reliability.

Dr. Zheng concluded the additional information did not alter his prior assessment. Dr. Zheng respectfully disagreed with the restrictions listed by Dr. Todd and disagreed with your opinion that the Mr. Russell is unable to work due to his conditions described in your letter's. Despite repeated claims of chronic pain, fatigue, diminished concentration and listed conditions, the clinical evidence from various visits did not identify deficits of such a severity to preclude functionality completely. Therefore, the previous restrictions continued to apply.

Regarding the medical records that were submitted on appeal, Dr. Zheng did review the information received to include Exhibits 1-5.

Regarding your argument that Dr. Zheng did not review Exhibit 8, Lincoln Financial Group did fully consider the Social Security Administration's ruling to approve Mr. Russell's Social Security Disability Income benefits. It should be noted, however, that while we fully considered the Social Security Administration's ruling, the decision by the Social Security Administration does not determine entitlement to benefits under the terms and conditions of the Chart Industries, Inc.'s Group Disability Income Policy. Moreover, Lincoln Financial Group has obtained and considered medical and vocational assessments that were not considered by the Social Security Administration in its determination process.

In regards to your argument that there has been no change in Mr. Russell's condition from the period in time in which Lincoln paid him LTD benefits, we understand the supported restrictions and limitations precluded Mr. Russell from performing his Own Occupation (defined below), however, as of May 8, 2020 the definition of disability changed and we are evaluating whether or not Mr. Russell would be precluded from performing Any Occupation (defined below).

Regarding your argument that the transferrable skills analysis did not use credible restrictions or limitations we respectfully disagree. The restrictions and limitations used were those opined by Dr. Zheng. Regarding the analysis not considering the Social Security Administration's ruling, as noted above, the decision by SSA does not determine LTD benefit eligibility. The analysis did factor all of Mr. Russell's conditions as Dr. Zheng considered all conditions and was responsible for outlining the supported restrictions and limitations. We decline your request to have a transferrable skills analysis completed with the restrictions and limitations outlined by Dr. Todd, Mr. Russell's family physician, as they were not deemed supported by the medical evidence.

***Conclusion***

We conducted a thorough and independent review of Mr. Russell's entire claim. In summary, we acknowledge he may have continued to experience symptoms associated with his conditions beyond May 8, 2020. However, the information did not contain exam findings, diagnostic test results or other forms of medical documentation to support that his symptoms and impairments remained of such a severity, frequency and duration they resulted in restrictions or limitations that would have rendered him unable to perform the duties of the occupations identified as being within his functional capacity and vocational skills after that date.

Having carefully considered all the information submitted in support of Mr. Russell's claim, our

position remains that proof of his continued disability in accordance with the Policy provisions after May 8, 2020 has not been provided. Therefore, no further benefits are payable.

This claim determination reflects an evaluation of the claim facts and the Policy provisions.

***<u>Policy Provisions</u>***

In order to continue receiving benefits, you must satisfy the requirements of all Policy provisions that state, in part:

> ***"Disability"*** *or* ***"Disabled"*** *means:*
> *1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:*
> *i.* ***"Disability"*** *or* ***"Disabled"*** *means that during the Elimination Period and the next 36 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*
> *ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*
>
> ***"Own Occupation"*** *means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is normally performed in the national economy.*
>
> ***"Any Occupation"*** *means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.*
>
> ***"Material and Substantial Duties"*** *means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.*
>
> ***"Proof"*** *means the evidence in support of a claim for benefits and includes, but is not limited to, the following:*
> *1. a claim form completed and signed (or otherwise formally submitted) by the Covered Person claiming benefits;*
> *2. an attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending Physician; and*
> *3. the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits.*
>
> *Proof must be submitted in a form or format satisfactory to Liberty.*
>
> ***Discontinuation of the Long Term Disability Benefit***
> *The Monthly Benefit will cease on the earliest of:*
> *1. the date the Covered Person fails to provide Proof of continued Disability or Partial Disability and Regular Attendance of a Physician; …*
> *8. the date the Covered Person is no longer Disabled according to this policy; …*

***Mental Illness, Substance Abuse and/or Non-Verifiable Symptoms Limitation***
*The benefit for Disability due to Mental Illness, Substance Abuse and/or Non-Verifiable Symptoms will not exceed a combined period of 24 months of Monthly Benefit payments while the Covered Person is insured under this policy.*

*If the Covered Person is in a Hospital or Institution for Mental Illness and/or Substance Abuse at the end of the combined period of 24 months, the Monthly Benefit will be paid during the confinement.*

*If the Covered Person is not confined in a Hospital or Institution for Mental Illness and/or Substance Abuse but is fully participating in an Extended Treatment Plan for the condition that caused Disability, the Monthly Benefit will be payable to a Covered Person for up to a combined period of 36 months.*

*In no event will the Monthly Benefit be payable beyond the Maximum Benefit Period shown in the Schedule of Benefits.*

Under the Employee Retirement Income Security Act (ERISA) Appeal guidelines, you were entitled to appeal the determination made by Lincoln Financial Group and to submit any additional information wished to be considered as part of the appeal. Lincoln Financial Group has conducted a full and fair review of Darrell Russell's appeal and accompanying materials and has determined that the denial of benefits will be maintained.

At this time, Mr. Russell's administrative right to review has been exhausted and no further review will be conducted by Lincoln Financial Group and his claim will remain closed. You may request to receive, free of charge, copies of all documents relevant to Mr. Russell's claim.

The Chart Industries, Inc.'s Group Disability Income Policy contains the below provision:

***Legal Proceedings***

*A claimant or the claimant's authorized representative cannot start any legal action:*
*1. until 60 days after Proof of claim has been given; or*
*2. more than three years after the time Proof of claim is required.*

If Mr. Russell's plan is subject to ERISA, he may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact his local U.S. Department of Labor Office or his state insurance regulatory agency. In addition, once all required reviews of his claim have been completed, he has the right to bring a civil action under applicable law. Mr. Russell's employer's plan has a contractual limitations period of three year(s), which means that a lawsuit must be brought within three year(s) after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is April 28, 2024.

This information is provided for purposes of this claim only, as the time proof of claim is required may differ based on claim specifics and applicable policy language.

Nothing in this letter should be construed as a waiver of any Lincoln Financial Group rights and

defenses under the above captioned policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Determinations made by Lincoln Financial Group are based on the provisions outlined in Chart Industries, Inc.'s Disability Policy. These provisions are not contingent on decisions made by either the Social Security Administration or the Workers' Compensation Carrier. No internal rules, guidelines, protocols, standards or other similar criteria were relied upon in rendering the claim determination.

If you require language translation assistance, please contact Lincoln Financial Group to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata' hane'go shíká a'doowoł nínízingo saad hosiniłį́į' dóó ná'ookąąh nííní'ą́ągo naaltsoos nííniltsoozigíí hazho'ó bik'idi'deeshtį́įł nínízingo doo bą́ąh ílínigóó níká a'doowoł éí biniiyé shił hodíílnih áko ákwe'égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If you have any questions regarding this matter, please contact me.

Sincerely,

Jennifer Dimaggio
Appeal Consultant
Phone No.: (888) 437-7611 Ext. 59238
Secure Fax No.: (603) 427-1866

| | |
|---|---|
| From: | LFGNotifications@LFG.com |
| Sent: | Thursday, January 28, 2021 9:50:50 AM |
| To: | SHOLLIDAY@MCMAHANFIRM.COM; |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Chart Industries, Inc. Claim No. 7259041 Darrell Russell |
| Attachments: | tkbde3cmslshzyypj5w7_9826505.pdf; |

---

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

Lincoln Financial Group®

Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 427-1866

January 28, 2021

D. Seth Holliday
McMahan Law Firm, LLC
700 S THORNTON AVENUE
PO BOX 1607
DALTON, GA 30722

RE: Long Term Disability (LTD) Benefits
Chart Industries, Inc.
Claim #: 7259041
Claimant: Darrell Russell

Dear D. Seth Holliday:

Lincoln Life Assurance Company of Boston (Lincoln) is responsible for managing claims for Long Term Disability (LTD) benefits under Chart Industries, Inc. s Long Term Disability Policy.

The purpose of this letter is to inform you that we require additional time to render a determination on Darrell Russell s LTD appeal. Under the Employee Retirement Income Security Act of 1974 (ERISA), an appeal determination should be rendered within 45 days of receipt of the appeal, unless there are special circumstances which require a delay in making an appeal determination. If additional time is needed, ERISA allows for a 45-day extension to evaluate and render an appeal decision.

Due to these special circumstances, an extension of time to process Mr. Russell s appeal is required and we are exercising our right to take such an extension under the Employee Retirement Income Security Act.

We are currently waiting for the competition of a medical review and assessment by a Board Certified Physician.

We will make every effort to render a determination as soon as possible, but no later than March 15, 2021. We anticipate that the clinical review will be completed within the next few weeks and will contact you once our final determination has been made.

If you have any questions regarding this matter, please contact me.

Sincerely,

Jennifer Dimaggio
Appeal Consultant
Phone No.: (888) 437-7611 Ext. 59238
Secure Fax No.: (603) 427-1866

# John Zheng, DO

***Board-Certified in Physical Medicine & Rehabilitation***
***Pain medicine***

**CLAIMANT NAME:** Russell, Darrell
**EXAMINER:** John Zheng, DO
**ECN #:** 161110-1
**CLAIM #:** 7259041
**DATE OF LOSS:** 11/8/2016

**1/27/21 ADDENDUM:**

8/25/20 Anne Todd, MD, Questionnaire, reflex sympathetic dystrophy, insomnia, HTN, anxiety. Prognosis is fair. Restrictions are listed as following: sitting 20 minutes at a time; standing 20 minutes at a time; sit, stand/walk less than 2 hours totally in an 8-hour working day; 10- minute walking in every 30 minutes; occasionally: lifting up to 10 lbs., twisting, bending, stooping, crouching/squatting, climbing stairs; rarely: lifting 20 lbs. and 50 lbs.; never: climbing ladders. The claimant is likely to be off task 25% or more of the time. The claimant is incapable of even “low stress” work. He is likely to be absent from work as a result of the impairments more than 4 days per month.

12/21/20 D. Seth Holliday, the claimant suffers from radiculopathy, low back pain, cervicalgia, pain radiating to his legs, CRPS, post-laminectomy syndrome, and myalgia. There has been no meaningful change in the claimant’s condition from the period of time in which Lincoln paid him LTD benefits. In fact, his condition has continued to deteriorate. Accordingly, the decision to deny benefits should be overturned and his benefits should be reinstated.

12/21/20 D. Seth Holliday, the restrictions and limitations set forth in the TSA are not credible. Dr. Todd’s August 25, 2020 medical source statement was ignored as was Social Security 11/4/20 decision to grant disability benefits. Additionally, the TSA did not factor into the analysis the claimant’s chronic pain, fatigue, and diminished concentration and how this affects his work reliability.

1. **Please review the attached response from the claimant`s attorney and indicate if it alters your prior assessment. Specifically, please address the restrictions and limitations outlined by Dr. Todd (also attached). Is Dr. Todd`s opinion of the claimant`s functional capacity supported? If not, please explain.**

The additional records do not alter my prior assessment. On 12/21/20, the claimant’s attorney, D. Seth Holiday noted that the claimant suffers from radiculopathy, low back pain, cervicalgia, pain radiating to his legs, CRPS, post-laminectomy syndrome, and

myalgia. There has been no meaningful change in the claimant's condition from the period of time in which Lincoln paid him LTD benefits. In fact, his condition has continued to deteriorate. Accordingly, the decision to deny benefits should be overturned and his benefits should be reinstated. Also, D. Seth Holiday indicated that the restrictions and limitations set forth in the TSA are not credible. Dr. Todd's August 25, 2020 medical source statement was ignored as was the Social Security 11/4/20 decision to grant disability benefits. Additionally, the TSA did not factor into the analysis the claimant's chronic pain, fatigue, and diminished concentration and how this affects his work reliability. Additionally, there is a questionnaire from Dr. Todd dated 8/25/20 noting the diagnoses as reflex sympathetic dystrophy, insomnia, HTN, anxiety. Restrictions are listed as following: sitting 20 minutes at a time; standing 20 minutes at a time; sit, stand/walk less than 2 hours totally in an 8-hour working day; 10- minute walking in every 30 minutes; occasionally: lifting up to 10 lbs., twisting, bending, stooping, crouching/squatting, climbing stairs; rarely: lifting 20 lbs. and 50 lbs.; never: climbing ladders. The claimant is likely to be off task 25% or more of the time. The claimant is incapable of even "low stress" work. He is likely to be absent from work as a result of the impairments more than 4 days per month. Dr. Todd noted that the claimant's prognosis is fair. I respectfully disagree with the restrictions listed by Dr. Todd and disagree with the attorney noting the claimant is unable to work attributed to his conditions described above. Despite repeated claims of chronic pain, fatigue, diminished concentration and listed conditions, clinical evidence from various visits did not identify deficits of such severity to preclude functionality completely. Previous restrictions continue to apply.

Sincerely,



John Z. Zheng, DO
Physical Medicine & Rehabilitation
Pain Medicine
Medical License CA 14602

**From:**Hollis, Tanasha <Tanasha.Hollis@genexservices.com>
**Sent:**Wed, 27 Jan 2021 22:02:57 +0000
**To:**VendorReferrals
**Subject:**D. Russell CL 7259041
**Attachments:**Addendum..pdf, Invoice.pdf

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Good afternoon,

Attached please find the Addendum and Invoice for the above referenced claimant.
Please advise if we can further assist you with this file.

Thanks you,

**Tanasha Hollis**
*MetLife Quality Assurance Specialist*
Exam Coordinators Network, a division of Genex Services
**T**: 561-948-6272
**F**: 561-886-6562

*****Please note my new email address: tanasha.hollis@genexservices.com***

**Access our portal at: View My Cases**

All electronic communications from ECN / Genex are confidential, unpublished property of Genex. Do not duplicate or distribute. Use and distribution limited solely to authorized personnel. This document is intended for the use of the individual(s) or entity to which it is addressed, and may contain information that is privileged and confidential, including personal health information, and applicable law may prohibit further disclosure of this information. If the recipient of the message is not the intended addressee, or the employee or agent responsible for delivering this message to the addressee, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this communication in error, please notify the sender. Please note the following from the HIPAA Privacy Rule Standards: A covered entity may disclose protected health information as authorized by and to the extent necessary to comply with laws relating to workers' compensation or other similar programs, established by law, that provide benefits for work-related injuries or illness without regard to fault. Refer to 45 CFR 164.512(l)

All electronic communications from Genex are confidential, unpublished property of Genex. Do not duplicate or distribute. Use and distribution limited solely to authorized personnel. This document is intended for the use of the individual(s) or entity to which it is addressed, and may contain information that is privileged and confidential, including personal health information, and applicable law may prohibit further disclosure of this information. If the recipient of the message is not the intended addressee, or the employee or agent responsible for delivering this message to the addressee, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this communication in error, please notify the sender. Please note the following from the HIPAA Privacy Rule Standards: A covered entity may disclose protected health information as authorized by and to the extent necessary to comply with laws relating to workers' compensation or other similar programs, established by

law, that provide benefits for work-related injuries or illness without regard to fault. Refer to 45 CFR 164.512(l)

ECN
Exam Coordinators Network A division of Genex Services, LLC

**Corporate Office**
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
**Toll Free: (877) 463-9463**
Local: (561) 922-5200
Fax: (561) 392-5881
E-mail: info@ecnime.com Web: www.ecnime.com

**Invoice:** **BOCA 100471**

**Date** **1/27/2021**

***Bill To:***

**Jennifer DiMaggio**
**Lincoln Financial-London, KY**
**P.O. Box 7207**
**London, KY 40742**

| | |
|---|---|
| **Claim #** | 7259041 |
| **Date of Loss:** | 11/8/2016 |
| **ECN #** | 161110-2 |
| **Account #** | |

**Claimant** Darrell Russell

| | | |
|---|---|---|
| 1/20/2021 | Addendum Peer - Long Term Disability: Addendum<br>Provider: John Z Zheng, DO<br>Specialty: PMR/Pain Management | $200.00 |
| | **SubTotal** | $200.00 |
| | **Final Invoice Total** | $200.00 |

***Remit To:***
Exam Coordinators Network
440 E. Swedesford Road
Suite 3000
Wayne, PA 19087

Terms: Net 30 days
Tax Id #: 95-3327434

THANK YOU FOR THE OPPORTUNITY TO PROVIDE THIS SERVICE FOR YOU. PLEASE REMIT PAYMENT PROMPTLY.

Barton C. Solomon
Licensed Georgia and Tennessee
bsolomon@mcmahanfirm.com

# MCMAHAN LAW FIRM, LLC

*Fighting for the Injured and Disabled*
700 S. Thornton Avenue
P.O. Box 1607
Dalton, GA 30722
706-217-6118 • Fax 706-217-6880

D. Seth Holliday
Licensed Georgia, Tennessee and Illinois
sholliday@mcmahanfirm.com

December 21, 2020

VIA FAX 603-427-1866

Jennifer Dinmaggio
Lincoln Life Assurance Company of Boston
PO Box 2578
Omaha, NE 68172-9688

Re: Darrell Russell
SSN:
Claim No. 7259041

Dear Ms. Hennessy:

We are in receipt of your November 20, 2020, letter attaching the November 11, 2020 peer review report by John Zheng, D.O.

Initially, please note that Dr. Zheng is not "independent." He has an extensive relationship with the Lincoln Life Assurance Company of Boston ("Lincoln") and the disability insurance industry. At base Dr. Zheng opined that Mr. Russell had minor impairments which had no meaningful impact on his functionality without addressing his work reliability, consistency, substantial capacity and steady attendance. His opinion conflicts with the opinion of Mr. Russell's treating physician. Dr. Zheng's opinion is not credible.

Dr. Zheng was hired directly by Lincoln, or through its vendors (e.g., MLS, Dane Street, Genex, ECN, MES, etc.) to provide reviews/examinations in a Lincoln disability case. If the case is litigated Lincoln or its vendors will have statistical data regarding the number of times Dr. Zheng rendered limitations that Lincoln found allowed the claimant to work. This information will be sought.

Mr Russell suffers from radiculopathy, low back pain, cervicalgia, pain radiating to his legs, CRPS, post laminectomy syndrome, and myalgia. Exhibit 1 contains medical records from Dr. Todd dated 2/10/20 through 5/26/20. Mr. Russell was treated for right arm pain, bilateral leg pain, and chronic low back pain. His paid was rated 6 out of 10 with pain medication. Mr. Russell described his pain as aching. His pain is worse with prolonged sitting.

Exhibit 2 covers medical records from Georgia Ketamine dated 5/7/19 through 2/6/20. Mr. Russell was treated for CRPS and chronic pain.

Exhibit 3 consists of medical records from Georgia Mountain Dermatology dated 5/28/20 through 6/17/20. Mr. Russell was treated for skir. cancer.

Exhibit 4 has medical records from Summit Spine dated 2/10/20 through 5/12/20. An MRI shows mild desiccation and degenerative disc space narrowing of L4-5. There is a mild disc bulge with a superimposed left sided disc protrusion which minimally extends along the posterior superior margin of L5. There is mild effacement of the left ventral thecal sac as well as encroachment of the left lateral recess. The left neural foramen and right neural foramen demonstrate mild encroachment. There is also a small right paracentral disc protrusion of L5-S1 without significant central canal encroachment. Mr. Russell was treated for right arm pain, bilateral leg pain, and low back pain. His pain was rated at a 6 out of 10 with pain medication. He described pain as aching. His pain is worse with prolonged sitting.

Exhibit 5 contains a medical source statement from Dr. Todd dated 8/25/20. Dr. Todd opined Mr. Russell would be able to walk one city block without rest or severe pain, sit or stand for 20 minutes at one time, sit or stand for less than 2 hours, would need a job that shifts positions, would need to have periods of walking around during an 8 hour working day, for 30 minutes 10 times, would require unscheduled breaks, 3 times per day, would be able to rarely lift and carry 20-50 lbs., never be able to climb ladders, would have limitations in reaching, handling, and fingering, would be absent 25% of the time, would be incapable of even low stress work, and would be absent more than 4 days per month.

Exhibit 8 consists of a favorable decision from the Social Security Administration dated 11/4/20 granting disability benefits. Dr. Zheng did not review this information.

There has been no meaningful change in Mr. Russell's condition from the period of time in which Lincoln paid him LTD benefits. In fact, his condition has continued to deteriorate. Accordingly, the decision to deny benefits should be overturned and his benefits should be reinstated.

Very truly yours,

D. Seth Holliday

D. Seth Holliday

Barton C. Solomon
Licensed Georgia and Tennessee
bsolomon@mcmahanfirm.com

# McMahan Law Firm, LLC

*Fighting for the Injured and Disabled*
700 S. Thornton Avenue
P.O. Box 1607
Dalton, GA 30722
706-217-6118 • Fax 706-217-6880

D. Seth Holliday
Licensed Georgia, Tennessee and Illinois
sholliday@mcmahanfirm.com

December 21, 2020

VIA CERTIFIED MAIL RETURN RECEIPT
REQUESTED NO. 7018 1130 0002 0676 5586

Meghan Hennessy
Lincoln Life Assurance Company of Boston
PO Box 7207
London, KY 40742-7207

Re: Darrell Russell
SSN:
Claim No. 7259041

Dear Ms. Hennessy:

We are in receipt of your December 18, 2020 letter with Jason Miller's attached transferable skills analysis (TSA). The restrictions and limitations set forth in the TSA are not credible. Dr. Todd's August 25, 2020 medical source statement was ignored as was Social Security November 4, 2020 decision to grant disability benefits. Additionally, the TSA did not factor into the analysis Mr. Russell's chronic pain, fatigue and diminished concentration and how this affects his work reliability. Accordingly, the TSA is not a valid reflection of employability. Please have Dr. Miller do a TSA with Dr. Todd's limitations and restrictions.

If you would like to discuss this claim or have any questions, please do not hesitate to contact my office.

Sincerely,

D. Seth Holliday

D. Seth Holliday

McMAHAN LAW FIRM, LLC
*Fighting for the Injured and Disabled*
700 S. Thornton Avenue
P.O. Box 1607
Dalton, GA 30722

7018 1130 0002 0676 5586

$6.90 0
US POSTAGE
FIRST-CLASS
062S0009564984
FROM 30720

Meghan Hennessy
Lincoln Life Assurance Company of Boston
PO Box 7207
London, KY 40742-7207

40742-720707

| | |
|---|---|
| From: | LFGNotifications@LFG.com |
| Sent: | Friday, December 18, 2020 1:41:18 PM |
| To: | SHOLLIDAY@MCMAHANFIRM.COM; |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Chart Industries, Inc. Claim No. 7259041 Darrell Russell |
| Attachments: | tavi2kejdsaaixk2fk2h_9601425.pdf; |

---

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 427-1866

December 18, 2020

D. Seth Holliday
McMahan Law Firm, LLC
700 S THORNTON AVENUE
PO BOX 1607
DALTON, GA 30722

RE: Long Term Disability (LTD) Benefits
Chart Industries, Inc.
Claim #: 7259041
Claimant: Darrell Russell

Dear D. Seth Holliday:

Please see the attached vocational assessment should you wish to additionally review and respond to this report as well as the clinical review that was forwarded to you on November 20, 2020. Please contact me prior to the January 9, 2021 should additional time be required to submit your response.

If you have any questions regarding this matter, please contact me.

Sincerely,

Jennifer Dimaggio
Appeal Consultant
Phone No.: (888) 437-7611 Ext. 59238
Secure Fax No.: (603) 427-1866

Attachments: 7259041-VOC-TRANSFERRABLE SKILLS ASSESSMENT-11.19.2020

**Lincoln Financial Group**
Group Protection

Jason E. Miller, Ed.M., CRC, F/ABVE
Senior Vocational Case Manager

# TRANSFERABLE SKILLS ANALYSIS

| | |
|---|---|
| **Claimant Name:** | Darrell Russell |
| **Claim Number:** | 7259041 |
| **Appeals Review Consultant:** | Jennifer DiMaggio |
| **Employer:** | Chart Industries, Inc. |
| **Date of Report:** | 11/19/20 |

A Transferable Skills Analysis utilizing the Occupational Access System (OASYS) was completed to assess the claimant's transferable skills to determine if alternative occupations exist in the national economy.

## RESOURCES / DOCUMENTATION UTILIZED:

- Job Description
- 03/18/19 Occupational Analysis
- Training, Education & Experience (TE&E) Form
- 03/05/20 Transferable Skills Analysis
- Dictionary of Occupational Titles (DOT)
- Economic Research Institute (ERI) Occupational Assessor

## RESTRICTIONS / LIMITATIONS:

I have been asked to base this review on the claimant's restrictions and limitations per a peer review completed on 11/11/20 by John Zheng, DO (Physiatry/Pain). They include:

> "Sitting: Constantly, up to 30 minutes at a time, up to 6 hours per day
> Standing: Occasionally, up to 20 minutes at a time, up to 2 hours per day
> Walking: Occasionally, up to 20 minutes at a time, up to 2 hours per day
> Lifting: Occasionally up to 10 lbs. BUE
> Carrying: Occasionally up to 10 lbs. BUE
> Pushing: Occasionally up to 10 lbs. BUE
> Pulling: Occasionally up to 10 lbs. BUE
> Stooping: Occasionally
> Kneeling: Occasionally
> Crouching: Occasionally
> Crawling: Never
> Climbing stairs: Occasionally

Climbing ladders: Never
Reaching: Occasionally overhead; constantly desk and waist levels BUE's
Using lower extremity for foot controls: occasionally RLE; unrestricted LLE
Fine manipulation: occasionally RUE; unrestricted LUE
Simple and firm grasping: occasionally RUE; unrestricted LUE"

**EDUCATION & TRAINING:**

| | |
|---|---|
| • Education: | GED |
| • Certifications / Licensure: | None |
| • Computer Skills: | E-mail; Internet |

**WORK HISTORY:**

| DOT Code | Occupation Title | Specific Vocational Preparation (SVP) | Years Performed | Strength Level |
|---|---|---|---|---|
| 699.130-010 | Production Supervisor | 7 | 5 | Light |
| 185.167-046 | Manager, Retail Store | 7 | 13 | Light |
| 299.677-014 | Sales Attendant, Building Materials | 3 | 13 | Heavy |

**TRANSFERABLE SKILLS:**

Following oral and written instructions to set up and operate production-type machines; using hands, eyes, and fingers to adjust machine controls, manipulate hand tools, or assemble objects; directing work of others; staying within prescribed standards and guidelines; identifying variations in size, shape, and texture of objects; and working in hazardous or noisy conditions.
Applying math skills to read and interpret business and statistical reports and records; analyzing and interpreting administrative policy and procedure; planning and organizing work of others; making decisions based on business reports or similar data; speaking and writing clearly; preparing budgets, keeping records, and inventorying stock and dealing tactfully and courteously with the public, employees, or government officials.
Using common sense and basic language and math skills to carry out instructions, total costs, make change, and complete forms; moving hands, eyes, and fingers to handle items or drive vehicle; standing and walking for extended periods; and lifting and carrying items of varying weights.

**PROFILE ADJUSTMENTS:**

| | |
|---|---|
| • General Educational Development: | No adjustments performed. |
| • Strength: | Adjusted to sedentary based on restrictions/limitations. Post-hoc analysis was conducted to factor in overall sitting, standing, walking times, as well as position changes. |
| • Physical: | Adjusted to match restrictions and limitations above. Where no restrictions or limitations are provided, adjusted to unknown. Post-hoc analysis was conducted to factor in planar reaching restrictions and limitations. |

| | |
|---|---|
| • Environmental: | Adjusted to match restrictions and limitations above. Where no restrictions or limitations are provided, adjusted to unknown. |
| • Noise: | Adjusted to match restrictions and limitations above. Where no restrictions or limitations are provided, adjusted to very loud. |
| • Aptitudes: | No adjustments performed. |
| • Situations: | Performing repetitive or short-cycle work, influencing people in their opinions, attitudes, judgements and work under specific instructions adjusted to yes as will follow production instructions and decisions on production and work with plant workers and others to implement changes. Also, as a salesperson will influence people to buy using sales techniques. |
| • Data: | Analyzing, compiling, computing and copying were adjusted to yes as these are required as a production supervisor and store manager. |
| • People: | Instructing, persuading and taking instructions-helping adjusted to yes as completed when supervising others, when selling to customers and when servicing customers. |
| • Things: | Operating-controlling, manipulating, tending adjusted to yes in production setting. |

**EXAMPLES OF ALTERNATIVE OCCUPATIONS:**
Based on the insured's ability profile and information in the national economy, the following occupations were identified:

| DOT Code | Occupation Title | Specific Vocational Preparation (SVP) | Strength Level | Monthly Wage* |
|---|---|---|---|---|
| 169.167-038 | Order Department Supervisor | 7 | Sedentary | $6,230 |
| 379.367-010 | Surveillance System Monitor | 2 | Sedentary | $2,850 |
| 237.367-022 | Information Clerk | 4 | Sedentary | $2,505 |

** Wage information is based on median 2019 national data from the Bureau of Labor Statistics*

*Note: all occupations eliminated from the prior analysis were done so due to physical demand level and/or limitations in dominant upper extremity functions. All occupations that remained, including the additions above, were verified with ERI for upper extremity and reaching requirements.*

**SUMMARY:**
This Transferable Skills Analysis identified occupations within the insured's physical abilities and their identified skill level. The occupations meet the insured's gainful amount of $2,413.84 per month in the national economy.

I have not met with the insured for the purpose of this review. All opinions are based on a review of medical records and resources listed only. Thank you for the opportunity to review this file. Please contact me if you have any questions regarding this report or if I can be of further assistance with this file.

Respectfully submitted,

*Electronically Signed*

Jason E. Miller, Ed.M., CRC, F/ABVE
Board Certified Vocational Expert
Certified Rehabilitation Counselor
Certified ADA Administrator
Senior Vocational Case Manager
Group Protection
Lincoln Financial Group

| DOT Code | Occupation Title | SVP | Yrs | Mos | Inc | Has CWF | Uses CWF | Str | GOE Code |
|---|---|---|---|---|---|---|---|---|---|
| 699.130-010 | Production Supervisor | 7 | 5 | 0 | Y | Y | Y | L | 06.02.01 |
| 185.167-046 | Manager, Retail Store | 7 | 13 | 0 | Y | N | N | L | 11.11.05 |
| 299.677-014 | Sales Attendant, Building Materials | 3 | 13 | 0 | Y | N | N | H | 09.04.02 |

**ADJUSTED VARIABLES SUMMARY**
This report summarizes the changes made to the person's ability profile.

| | | Changed From | Changed To |
|---|---|---|---|
| **Specific Vocational Preparation** | | | |
| Maximum | | 7 (2 to 4 years) | No Change |
| Minimum | | 3 (1 to 3 months) | 1 (Short demo only) |
| **General Educational Development** | | | |
| Reasoning | | 4 Grades 9-12 | No Change |
| Mathematics | | 4 Grades 9-12 | No Change |
| Language | | 4 Grades 9-12 | No Change |
| **Physical Demands** | | | |
| Strength | Maximum | H Heavy | S Sedentary |
| | Minimum | L Light | S Sedentary |
| Climbing | | Never | No Change |
| Balancing | | Occasionally | Unknown |
| Stooping | | Frequently | Occasionally |
| Kneeling | | Never | Occasionally |
| Crouching | | Frequently | Occasionally |
| Crawling | | Never | No Change |
| Reaching | | Frequently | Unknown |
| Handling | | Frequently | Occasionally |
| Fingering | | Frequently | Occasionally |
| Feeling | | Never | Occasionally |
| Talking | | Frequently | Unknown |
| Hearing | | Frequently | Unknown |
| Tasting/Smelling | | Never | Unknown |
| Near Acuity | | Frequently | Unknown |
| Far Acuity | | Occasionally | Unknown |
| Depth Perception | | Occasionally | Unknown |
| Accommodation | | Frequently | Unknown |
| Color Vision | | Never | Unknown |
| Field of Vision | | Frequently | Unknown |
| **Environmental Conditions** | | | |
| Exposure to Weather | | Occasionally | Unknown |
| Extreme Cold | | Never | Unknown |
| Extreme Heat | | Never | Unknown |
| Wet and/or Humid | | Never | Unknown |
| Vibration | | Never | Unknown |
| Atmospheric Conditions | | Never | Unknown |
| Proximity to Moving Mechanical Parts | | Occasionally | Unknown |
| Exposure to Electrical Shock | | Never | Unknown |
| Working in High Exposed Places | | Never | No Change |
| Exposure to Radiation | | Never | Unknown |
| Working with Explosives | | Never | Unknown |
| Exposure to Toxic or Caustic Chemicals | | Never | Unknown |
| Other Environmental Conditions | | Never | Unknown |
| Noise Intensity Level | | Loud | Very Loud |

| | | |
|---|---|---|
| **DOT Aptitudes** | | |
| General Learning Ability | 2 (67-89 Percentile) | No Change |
| Verbal Aptitude | 2 (67-89 Percentile) | No Change |
| Numerical Aptitude | 3 (34-66 Percentile) | No Change |
| Spatial Aptitude | 3 (34-66 Percentile) | No Change |
| Form Perception | 3 (34-66 Percentile) | No Change |
| Clerical Aptitude | 3 (34-66 Percentile) | No Change |
| Motor Coordination | 4 (11-33 Percentile) | No Change |
| Finger Dexterity | 4 (11-33 Percentile) | No Change |
| Manual Dexterity | 4 (11-33 Percentile) | No Change |
| Eye-Hand-Foot Coordination | 4 (11-33 Percentile) | No Change |
| Color Discrimination | 5 (Below 11 Percentile) | No Change |
| **Work Situations (Temperaments)** | | |
| Directing, Controlling, Planning | Yes | No Change |
| Performing Repetitive Work | No | Yes |
| Influencing People | No | Yes |
| Performing a Variety of Duties | Yes | No Change |
| Expressing Personal Feelings | No | No Change |
| Working Alone or in Isolation | No | No Change |
| Performing Under Stress | No | No Change |
| Attaining Precise Limits/Tolerances | No | No Change |
| Following Specific Instructions | No | Yes |
| Dealing with People | Yes | No Change |
| Making Judgments and Decisions | Yes | No Change |
| **Work Functions - Data** | | |
| 0 Synthesizing | No | No Change |
| 1 Coordinating | Yes | No Change |
| 2 Analyzing | No | Yes |
| 3 Compiling | No | Yes |
| 4 Computing | No | Yes |
| 5 Copying | No | Yes |
| 6 Comparing | Yes | No Change |
| **Work Functions - People** | | |
| 0 Mentoring | No | No Change |
| 1 Negotiating | No | No Change |
| 2 Instructing | No | Yes |
| 3 Supervising | Yes | No Change |
| 4 Diverting | No | No Change |
| 5 Persuading | No | Yes |
| 6 Speaking-Signaling | Yes | No Change |
| 7 Serving | Yes | No Change |
| 8 Taking Instructions-Helping | No | Yes |
| **Work Functions - Things** | | |
| 0 Setting Up | Yes | No Change |
| 1 Precision Working | No | No Change |
| 2 Operating-Controlling | No | Yes |
| 3 Driving-Operating | No | No Change |
| 4 Manipulating | No | Yes |
| 5 Tending | No | Yes |
| 6 Feeding-Offbearing | No | No Change |
| 7 Handling | Yes | No Change |

Barton C. Solomon
Licensed Georgia and Tennessee
bsolomon@mcmahanfirm.com

# McMAHAN LAW FIRM, LLC

*Fighting for the Injured and Disabled*

700 S. Thornton Avenue
P.O. Box 1607
Dalton, GA 30722
706-217-6118 • Fax 706-217-6880

D. Seth Holliday
Licensed Georgia, Tennessee and Illinois
sholliday@mcmahanfirm.com

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO: Jennifer Dimaggio | FROM: Julie Howard |
| COMPANY: Lincoln Life Assurance Company of Boston | DATE: 12/1/2020 |
| FAX NUMBER: 603-427-1866 | TOTAL NO. OF PAGES INCLUDING COVER: |
| PHONE NUMBER: | SENDER'S REFERENCE NUMBER: |
| RE: Darrell Russell 7259041 | YOUR REFERENCE NUMBER: |

☐ URGENT X FOR REVIEW ☐ PLEASE COMMENT ☐ PLEASE REPLY ☐ PLEASE RECYCLE

NOTES/COMMENTS:

We are in receipt of your letter requesting a response to the medical review. Due to the holidays, I respectfully request 30 days from December 10, 2020 to submit a response. The new deadline would be January 9, 2021. Please let our office know if this will not be granted.

*CONFIDENTIALITY:*
*The information contained in this facsimile is privileged and confidential intended only for the use of the address listed above. If you are neither the intended recipient nor the employee or agent responsible for delivering this information, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance of the contents of this information is strictly prohibited. If you have received this information in error, please notify us immediately.*

Lincoln Financial Group®

Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 427-1866

| | |
|---|---|
| Date: | December 2, 2020 |
| To: | D. SETH HOLLIDAY<br>MCMAHAN LAW FIRM, LLC<br>700 S THORNTON AVENUE<br>PO BOX 1607<br>DALTON GA 30722 |
| Attn: | |
| Fax: | (706) 217-6880 |
| From: | Jennifer Dimaggio<br>Appeal Consultant<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 427-1866 |
| Total Pages<br>(Including Cover): | 3 |
| RE:<br><br>Claim #: 7259041<br>Claimant: Darrell Russell<br><br>Chart Industries, Inc. | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

Lincoln Financial Group®

Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 427-1866

December 2, 2020

D. Seth Holliday
McMahan Law Firm, LLC
700 S THORNTON AVENUE
PO BOX 1607
DALTON, GA 30722

RE: Long Term Disability (LTD) Benefits
Chart Industries, Inc.
Claim #: 7259041
Claimant: Darrell Russell

Dear D. Seth Holliday:

Lincoln Life Assurance Company of Boston (Lincoln) is responsible for managing claims for Long Term Disability (LTD) benefits under The Chart Industries, Inc s Group Disability Policy.

We are in process of reviewing your client s appeal of the above-referenced claim.

On November 20, 2020 we notified you of your opportunity to review the completed clinical review and provide a response to us by December 10, 2020 which we will consider in making our decision on your appeal.

We have received your request for extension, and we have extended the deadline to January 9, 2021 accordingly.

Upon receipt of your response, we will promptly complete our review and render a determination on your client s appeal. If your response is not received by the end of the business day on January 9, 2021, we will render a determination based on the information contained in your client s file.

Due to these special circumstances, an extension of time to process your appeal is required and we are exercising our right to take such an extension under the Employee Retirement Income Security Act. Under the Employee Retirement Income Security Act (ERISA), an appeal determination should be rendered within 45 days of receipt of appeal, unless there are special circumstances beyond Lincoln s control, which require a delay in making a determination. If additional time is needed, ERISA allows for a 45-day extension to evaluate and render an appeal decision. [Pursuant to ERISA Regulations, additional time for a final decision may exceed 90 days to the extent that the timeframe is tolled while Lincoln is awaiting receipt of requested documentation needed to fully evaluate your claim. (Tolled: accumulation of time is suspended.)]

If you have any questions regarding this matter, please contact me.

Sincerely,

Jennifer Dimaggio
Appeal Consultant
Phone No.: (888) 437-7611 Ext. 59238
Secure Fax No.: (603) 427-1866

| | |
|---|---|
| From: | LFGNotifications@LFG.com |
| Sent: | Friday, November 20, 2020 7:44:46 AM |
| To: | SHOLLIDAY@MCMAHANFIRM.COM; |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Chart Industries, Inc. Claim No. 7259041 Darrell Russell |
| Attachments: | hvcxjnd5wvbnps0vl4av_9434214.pdf; |

---

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 427-1866

November 20, 2020

D. Seth Holliday
McMahan Law Firm, LLC
700 S THORNTON AVENUE
PO BOX 1607
DALTON, GA 30722

RE: Long Term Disability (LTD) Benefits
Chart Industries, Inc.
Claim #: 7259041
Claimant: Darrell Russell

Dear D. Seth Holliday:

Lincoln Life Assurance Company of Boston is responsible for managing claims for Long Term Disability (LTD) benefits under the Chart Industries, Inc. s Group Disability Policy. We are writing regarding Darrell Russell s claim for LTD benefits under the Policy.

We are in process of reviewing your client s appeal of our denial determination regarding the above-referenced claim. The purpose of this letter and enclosure(s) is to provide you with an opportunity to review and comment on new/ additional evidence that has been received before a decision is rendered on your client s appeal. You may send any additional information to disabilitydocuments@lfg.com or to the fax number below.

Please find attached a copy of the peer review which is new or additional evidence in connection with your client s appeal. You may review the peer review and provide a response to us, which we will consider in making our decision on your client s appeal. If we do not receive your response within 21 days of the date of this letter or December 10, 2020, we will proceed with making a determination on your client s appeal.

Upon receipt of your response, we will promptly complete our review and render a determination on your client s appeal. If your response is not received by December 10, 2020 (21 days from the date of this letter), we will render a determination based on the information contained in your client s file.

Due to these special circumstances, an extension of time to process your appeal is required and we are exercising our right to take such an extension under the Employee Retirement Income Security Act.

Under the Employee Retirement Income Security Act (ERISA), an appeal determination should be rendered within 45 days of receipt of appeal, unless there are special circumstances beyond Lincoln s control, which require a delay in making a determination. If additional time is needed, ERISA allows for a 45-day extension to evaluate and render an appeal decision. [Pursuant to ERISA Regulations, additional time for a final decision may exceed 90 days to the extent that the timeframe is tolled while Lincoln is awaiting receipt of requested documentation needed to fully evaluate your client s claim. (Tolled: accumulation of time is suspended.)]

If you have any questions regarding this matter, please contact me.

Sincerely,

Jennifer Dimaggio
Appeal Consultant
Phone No.: (888) 437-7611 Ext. 59238
Secure Fax No.: (603) 427-1866

Attachments: 7259041-MEDICAL-CP/PEER REVIEW-11.11.2020

# John Zheng, DO

***Board-Certified in Physical Medicine & Rehabilitation***
***Pain medicine***

**CLAIMANT NAME:** Russell, Darrell
**EXAMINER:** John Zheng, DO
**ECN #:** 161110-1
**CLAIM #:** 7259041
**DATE OF LOSS:** 11/8/2016
**DATE OF SERVICE:** 11/11/2020

**Peer Review**

I have been asked to review the medical records on behalf of ECN. This is a peer review regarding Russell, Darrell. I reviewed records from 11/4/2016 through 8/25/2020 including: Barry McCasland, MD / Neurology, extending from 11/4/2016 to 11/23/2016; Paul Harkey, MD / Radiology, on 11/22/2016; David Owens, MD / Radiology, extending from 12/6/2016 to 5/12/2020; David Gale, MD / Pain Medicine, extending from 12/14/2016 to 1/5/2017; Nichole Daniels, CRNA / Nurse Anesthetist, on 12/22/2016; Kathleen Gangl, CRNA / Nurse Anesthetist, on 1/5/2017; Barry McCasland, MD / Neurology, extending from 2/7/2017 to 2/8/2017; Mayo Clinic Laboratories, on 2/16/2017; Jay Van Gerpen, MD / Neurology, extending from 2/16/2017 to 3/23/2017; Elliot Dimberg, MD / Neurology, extending from 2/17/2017 to 3/12/2017; Prasanna Vibhute, MD / Radiology, on 3/11/2017; Paul Jeffords, MD, on 4/20/2017; Lucia McPhee, MD / Physical Medicine & Rehabilitation, on 4/26/2017; Marvin Tark, MD / Pain Medicine, on 1/31/2018; Anne Todd, MD / Family Medicine, extending from 2/2/2018 to 8/25/2020; Kimberly Lamoureux, CMA / Certified Medical Assistant, on 7/17/2018; LabCorp, on 8/1/2018; Kim Stover, MA / Medical Assistant, on 2/6/2019; Unknown provider, extending from 5/7/2019 to 2/6/2020; Tashia G, RN / Nurse Disability Consultant, on 8/27/2019; Jonathan Beck, PA / Physician Assistant, on 9/16/2019; Charles Weaver, Jr., MD / Neurosurgery, extending from 12/12/2019 to 1/9/2020; Amit Patel, MD / Pain Medicine, extending from 2/10/2020 to 2/25/2020; An Do, MD / Pain Medicine, extending from 3/31/2020 to 5/26/2020; Carlton Faulk, MD / Dermatology, extending from 5/28/2020 to 6/25/2020; Dipti Anand, MD / Pathology, on 5/28/2020; Emily Erstine, MD / Pathology, on 6/11/2020.

The claimant is a 42-year-old male with a medical history significant for neuralgia and neuritis.

11/4/16 Barry McCasland, MD, the claimant is seen for right arm pain. In 9/2015, he underwent excision of a right chest wall melanoma associated with axillary node dissection. On 2/2016, he underwent excision of a left forehead melanoma, again associated with clear surgical margins. In the spring of 2016, he developed pain along the right axillary incision. Physical exam was remarkable for obvious swelling of the right upper extremity that was best demonstrated in the dorsum of the hand as well as swelling

along the right anterior axillary fold. Impression indicates reflex sympathetic dystrophy, right upper limb.

11/22/16 Bone Scan, no evidence of three-phase bone uptake or findings concerning for complex regional pain syndrome. There is focal delayed uptake within the posterior left calvarium which correlates to a 1 cm ovoid nonaggressive intradiploic lesion on CT of the head dated 06/24/16 probably reflecting a small hemangioma or small fibro-osseous lesion such as fibrous dysplasia.

12/8/16 MRI Right Brachial Plexus, no evidence of focal mass lesion or adenopathy. Brachial plexus is grossly normal.

12/22/16 David Gale, MD, the claimant underwent a right stellate ganglion block.

1/5/17 David Gale, MD, the claimant underwent a right stellate ganglion block.

2/7/17 EMG/NCS, normal right upper extremity.

2/8/17 Barry McCasland, MD, the claimant is seen for right upper limp regional pain syndrome with tremors, status post excision of melanoma x2 with lymph node dissection. Dr McCasland noted that on 11/4/16, at the initial appointment, he was completely convinced that the claimant had complex regional pain syndrome; however, his triple phase bone scan was negative, and he received no benefit whatsoever from a stellate ganglion block. He received significant benefit from a second procedure described as a C7 nerve block. This led Dr. Gale to suspect that the claimant may have some type of radiculopathy. However, his pain spreads far beyond the limits of the C7 dermatome, he has sunburn allodynia, and he has no neck pain.

2/16/17 EMG, findings consistent with mild, probable, distal, axonal peripheral neuropathy, a chronic possibly active right C8 radiculopathy, and chronic probably inactive right L5-S1 radiculopathy.

3/11/17 MRI of the Spine, cervical spondylosis with advanced C5-6 and C6-7 discovertebral degeneration; C5-6 left-sided mild spinal canal and moderate to severe neural foramina stenosis; C6-7 right-sided mild spinal canal and severe neural foramina stenosis. There is mild thoracic spondylosis with T9-10 moderate spinal canal and severe right neural foraminal stenosis. There is L4-5-disc degeneration without significant spinal canal or neural foramina stenosis.

3/23/17 Jay Gerpen, MD, the claimant is seen for tremor. The tremor is evident in the claimant's right lower extremity at rest is associated with electrophysiological findings diagnostic of a functional tremor and observed while the claimant is standing is most consistent with voluntary motor activity.

4/20/17 Paul Jeffords, MD, the claimant is seen for right arm pain. The pain gradually progressed to a burning type of hypersensitivity that involved the right shoulder and chest and radiates down the right arm into the hand. He is having some pain now on both sides of the upper chest and across the trapezial areas of the beck of his neck. He also has other symptoms that are associated with his right arm pain. He notes that he has issues where his legs do not seem to work properly. He has noted difficulty going up and down stairs and rising from a chair to walk at times. On exam, the claimant ambulates with a mildly wide-based gait with somewhat of a tentative stride; he displays some tremulousness with standing and walking. There is diffuse tenderness throughout the cervical, thoracic and lumbar spine with slight hypersensitivity to light touch. Cervical ROM is full in all directions; lumbar flexion is to 70 degrees; he can extend to 10 degrees. There is full active and passive ROM of the upper and lower extremities. X-rays of the cervical spine showed degenerative disc disease that was moderate to severe at C5-C6 and C6-C7. The claimant was diagnosed with right arm cervical radiculopathy; moderate to severe left/severe right C6-C7 foraminal stenosis; C5-C6 and C6-C7 disc degeneration; T9-T10 spondylosis with moderate central stenosis with very mild myelopathy; congenital lumbar stenosis; L4-L5 degenerative disc disease with annular tear/disc bulging; mild right L4-L5 foraminal stenosis; mild distal peripheral neuropathy; functional hyperkinesia causing lower extremity tremors. The claimant is having right arm symptoms that are most likely due to cervical radiculopathy; however, he has a multitude of other symptoms that are not explained by the cervical radiculopathy including burning sensation across the chest, tremulousness, headaches. The claimant is a candidate for a two-level anterior cervical discectomy and fusion at C5-6 and C6-7 for his right arm symptoms.

1/31/18 Marvin Tark, MD, the claimant is seen for right upper extremity and bilateral foot pain. The claimant rated his pain as 7-10/10. Examination noted redness and edema in the right upper extremity; and diffuse hypersensitivity in the right upper extremity. The claimant was diagnosed with CRPS of right upper limb and generalized anxiety disorder. A spinal cord stimulator (SCS) trial was discussed.

7/11/19 Unknown provider, the claimant reported his pain is much better but not completely gone.

9/16/19 Jonathan Beck, PA, the claimant is seen for post-op visit, he underwent L4-5 microdiscectomy for cauda equina. He has some lingering soreness and occasional pain to his low back around the incision, but his biggest issue continues to be weakness in his bilateral feet as well as weakness in his hips and knees. On exam, there is decreased sensation to touch in bilateral lower extremities, worse distally and improving proximally. The claimant is ambulating with a walker.

12/12/19 Charles Weaver, Jr., MD, the claimant continues to struggle with neuropathic pain in his right leg and foot with hypersensitivity in the right leg and foot likely related to nerve injury. On exam, motor strength in the upper extremities is full and symmetric with no pronator drift; motor strength in the lower extremities is notable for continued right foot drop. Sensation is intact throughout all dermatomes.

2/10/20 Amit Patel, MD, the claimant is seen for right arm pain and bilateral leg pain. On exam, right UE: 4/5 handgrip, 4/5 triceps, 4/5 biceps, 4/5 deltoid; right LE: 4-/5 hip flexors, 4-/5 quadriceps, 4/5 hamstrings, 4/5 DF, 4/5 PF; right greater than left LE decreased sensation to light touch/pinprick along L4-S1 dermatomes; decreased ROM of the lumbar spine, TTP along bilateral lowest three segments of lumbar facet joints, pain is reproduced with bilateral facet loading maneuvers, positive SLR.

3/31/20 An Do, MD, the claimant is seen for right arm pain, bilateral leg pain, low back pain. On exam, right LE 4/5 hip flexors, 4/5 quadriceps, 4/5 hamstrings, 4-/5 DF, decreased sensation to light touch along L5-S1 dermatomes. On the right UE, allodynia, edema, color changes noted, decreased temperature compared to contralateral extremity. On lumbosacral exam, there is positive facet loading, decreased ROM, tenderness to palpation bilaterally along lowest three segments of lumbar facet joints; positive SLR on right.

5/12/20 MRI of the Lumbar Spine, mild disc desiccation and degenerative disc space narrowing of L4-5. There is mild disc bulge with superimposed left-sided disc protrusion which minimally extends along the posterior superior margin of L5. There is mild effacement of the ventral thecal sac as well as encroachment of the left lateral recess. The left neural foramen and right neural foramen demonstrate mild encroachment. There is small right paracentral disc protrusion of L5-S1 without significant central canal encroachment.

5/26/20 An Do, MD, the claimant is seen for right arm pain, bilateral leg pain, and low back pain. On exam, right LE: 4/5 hip flexors, 4/5 quadriceps, 4/5 hamstrings, 4/5 DF; right LE: decreased sensation to light touch/pinprick along L5-S1 dermatome. Right upper extremity allodynia, edema, color changes noted, decreased temperature compared to contralateral extremity. Lumbosacral exam shows positive facet loading, decreased ROM, tenderness to palpation bilaterally along lowest three segments of lumbar facet joints; positive SLR on right.

6/11/20 Carlton Faulk, MD, the claimant is seen for follow-up for neoplasm of uncertain behavior on the right proximal radial dorsal forearm. On 5/28/20, Biopsy by Shave Method was performed. The pathology shows melanoma in situ on the right proximal radial dorsal forearm. The claimant underwent excision.

6/25/20 Carlton Faulk, MD the claimant is seen for malignant melanoma in situ on the right proximal radial dorsal forearm. The claimant underwent excision on 6/11/20, the pathology shows no residual melanoma on the right proximal radial dorsal forearm.

8/25/20 Anne Todd, MD, Questionnaire, reflex sympathetic dystrophy, insomnia, HTN, anxiety. Restrictions are listed as following: sitting 20 minutes at a time; standing 20 minutes at a time; sit, stand/walk less than 2 hours totally in an 8-hour working day; 10-minute walking in every 30 minutes; occasionally: lifting up to 10 lbs., twisting, bending,

stooping, crouching/squatting, climbing stairs; rarely: lifting 20 lbs. and 50 lbs.; never: climbing ladders. The claimant is likely to be off task 25% or more of the time.

**DIAGNOSES:**

Neuralgia and neuritis, unspecified.

**CALL ATTEMPTS:**

Dr. Do's office Mon 11/2; 2:39 PM; unable to leave a message as the office is closed for the day with no option provided to leave a voicemail.

Dr. Do's office Tue 11/3; 12:07 PM; left a voicemail message on the physician line.

**RESPONSE TO QUESTIONS:**

1. **Please identify the primary impairing Diagnosis(es) with ICD 10 code(s).**

The primary impairing diagnoses are cervical radiculopathy (M54.12); cervical degenerative disc disease (M50.30); congenital lumbar stenosis (Q76.49); lumbar degenerative disc disease (M51.36); complex regional pain syndrome of the right upper limb (G90.511); functional hyperkinesia causing lower extremity tremors (R25.1); peripheral neuropathy (G64); right arm pain (M79.601), post-laminectomy syndrome (M96.1); right foot drop (M21.371).

2. **If applicable, please identify clinically significant comorbid Diagnosis(es) with ICD 10 code(s).**

Clinically significant comorbid diagnoses are hypertension (I10), anxiety (F41. 9), insomnia (G47.00), and GERD (K21. 9).

3. **Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine, and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from - 5/8/2020 to - present and ongoing, and comment on the expected duration.**

**a. If the medical records in the file do not support impairment and the need for restrictions and/or limitations during the above timeframe(s), provide a detailed explanation.**

The medical records reflect that the claimant, Mr. Russell, is a 42-year-old male with a medical history significant for neuralgia and neuritis. On 11/4/16, Dr. McCasland saw the claimant for right arm pain. In 9/2015, he underwent excision of a right chest wall melanoma associated with axillary node dissection. In 2/2016, he underwent excision of a

left forehead melanoma, again associated with clear surgical margins. In the spring of 2016, he developed pain along the right axillary incision. Physical exam was remarkable for obvious swelling of the right upper extremity that was best demonstrated in the dorsum of the hand as well as swelling along the right anterior axillary fold. Impression indicates reflex sympathetic dystrophy, right upper limb. A bone scan dated 11/22/16 revealed no evidence of three-phase bone uptake or findings concerning for complex regional pain syndrome. There is focal delayed uptake within the posterior left calvarium which correlates to a 1 cm ovoid nonaggressive intradiploic lesion on CT of the head dated 06/24/16 probably reflecting a small hemangioma or small fibro-osseous lesion such as fibrous dysplasia. An MRI study of the right brachial plexus dated 12/8/16 revealed no evidence of focal mass lesion or adenopathy. Brachial plexus is grossly normal. On 12/22/16, the claimant underwent a right stellate ganglion block. On 1/5/17, the claimant underwent a right stellate ganglion block. An EMG/NCS dated 2/7/17 revealed normal right upper extremity. On 2/8/17, Dr. McCasland saw the claimant for right upper limp regional pain syndrome with tremors, status post excision of melanoma x2 with lymph node dissection. Dr McCasland noted that on 11/4/16, at the initial appointment, he was completely convinced that the claimant had complex regional pain syndrome; however, his triple phase bone scan was negative, and he received no benefit whatsoever from a stellate ganglion block. He received significant benefit from a second procedure described as a C7 nerve block. This led Dr. Gale to suspect that the claimant may have some type of radiculopathy. However, his pain spreads far beyond the limits of the C7 dermatome, he has sunburn allodynia, and he has no neck pain. An EMG/NCS dated 2/16/17 revealed findings consistent with mild, probable, distal, axonal peripheral neuropathy, a chronic possibly active right C8 radiculopathy, and chronic probably inactive right L5-S1 radiculopathy. An MRI study of the spine dated 3/11/17 revealed cervical spondylosis with advanced C5-6 and C6-7 discovertebral degeneration; C5-6 left-sided mild spinal canal and moderate to severe neural foramina stenosis; C6-7 right-sided mild spinal canal and severe neural foramina stenosis. There is mild thoracic spondylosis with T9-10 moderate spinal canal and severe right neural foraminal stenosis. There is L4-5-disc degeneration without significant spinal canal or neural foramina stenosis. On 3/23/17, Dr. Gerpen saw the claimant for tremor. The tremor is evident in the claimant's right lower extremity at rest is associated with electrophysiological findings diagnostic of a functional tremor and observed while the claimant is standing is most consistent with voluntary motor activity. On 4/20/17, Dr. Jeffords saw the claimant for right arm pain. The pain gradually progressed to a burning type of hypersensitivity that involved the right shoulder and chest and radiates down the right arm into the hand. He is having some pain now on both sides of the upper chest and across the trapezial areas of the beck of his neck. He also has other symptoms that are associated with his right arm pain. He notes that he has issues where his legs do not seem to work properly. He has noted difficulty going up and down stairs and rising from a chair to walk at times. On exam, the claimant ambulates with a mildly wide-based gait with somewhat of a tentative stride; he displays some tremulousness with standing and walking. There is diffuse tenderness throughout the cervical, thoracic and lumbar spine with slight hypersensitivity to light touch. Cervical ROM is full in all directions; lumbar flexion is to 70 degrees; he can extend to 10 degrees. There is full active and passive ROM of the

upper and lower extremities. X-rays of the cervical spine showed degenerative disc disease that was moderate to severe at C5-C6 and C6-C7. The claimant was diagnosed with right arm cervical radiculopathy; moderate to severe left/severe right C6-C7 foraminal stenosis; C5-C6 and C6-C7 disc degeneration; T9-T10 spondylosis with moderate central stenosis with very mild myelopathy; congenital lumbar stenosis; L4-L5 degenerative disc disease with annular tear/disc bulging; mild right L4-L5 foraminal stenosis; mild distal peripheral neuropathy; functional hyperkinesia causing lower extremity tremors. The claimant is having right arm symptoms that are most likely due to cervical radiculopathy; however, he has a multitude of other symptoms that are not explained by the cervical radiculopathy including burning sensation across the chest, tremulousness, headaches. The claimant is a candidate for a two-level anterior cervical discectomy and fusion at C5-6 and C6-7 for his right arm symptoms. On 1/31/18, Dr. Tark saw the claimant for right upper extremity and bilateral foot pain. The claimant rated his pain as 7-10/10. Examination noted redness and edema in the right upper extremity; and diffuse hypersensitivity in the right upper extremity. The claimant was diagnosed with CRPS of right upper limb and generalized anxiety disorder. A spinal cord stimulator (SCS) trial was discussed. On 9/16/19, PA. Jonathan Beck saw the claimant for post-op visit, he underwent L4-5 microdiscectomy for cauda equina. He has some lingering soreness and occasional pain to his low back around the incision, but his biggest issue continues to be weakness in his bilateral feet as well as weakness in his hips and knees. On exam, there is decreased sensation to touch in bilateral lower extremities, worse distally and improving proximally. The claimant is ambulating with a walker. On 12/12/19, Dr. Weaver noted that the claimant continues to struggle with neuropathic pain in his right leg and foot with hypersensitivity in the right leg and foot likely related to nerve injury. On exam, motor strength in the upper extremities is full and symmetric with no pronator drift; motor strength in the lower extremities is notable for continued right foot drop. Sensation is intact throughout all dermatomes. On 2/10/20, Dr. Patel saw the claimant for right arm pain and bilateral leg pain. On exam, right UE: 4/5 handgrip, 4/5 triceps, 4/5 biceps, 4/5 deltoid; right LE: 4-/5 hip flexors, 4-/5 quadriceps, 4/5 hamstrings, 4/5 DF, 4/5 PF; right greater than left LE decreased sensation to light touch/pinprick along L4-S1 dermatomes; decreased ROM of the lumbar spine, TTP along bilateral lowest three segments of lumbar facet joints, pain is reproduced with bilateral facet loading maneuvers, positive SLR. On 3/31/20, Dr. Do saw the claimant for right arm pain, bilateral leg pain, low back pain. On exam, right LE 4/5 hip flexors, 4/5 quadriceps, 4/5 hamstrings, 4-/5 DF, decreased sensation to light touch along L5-S1 dermatomes. On the right UE, allodynia, edema, color changes noted, decreased temperature compared to contralateral extremity. On lumbosacral exam, there is positive facet loading, decreased ROM, tenderness to palpation bilaterally along the lowest three segments of lumbar facet joints; positive SLR on right. An MRI study of the lumbar spine dated 5/12/20 revealed mild disc desiccation and degenerative disc space narrowing of L4-5. There is mild disc bulge with superimposed left-sided disc protrusion which minimally extends along the posterior superior margin of L5. There is mild effacement of the ventral thecal sac as well as encroachment of the left lateral recess. The left neural foramen and right neural foramen demonstrate mild encroachment. There is small right paracentral disc protrusion of L5-S1 without significant central canal encroachment. On 5/26/20, Dr. Do saw the

claimant for right arm pain, bilateral leg pain, and low back pain. On exam, right LE: 4/5 hip flexors, 4/5 quadriceps, 4/5 hamstrings, 4/5 DF; right LE: decreased sensation to light touch/pinprick along L5-S1 dermatome. Right upper extremity allodynia, edema, color changes noted, decreased temperature compared to contralateral extremity. Lumbosacral exam shows positive facet loading, decreased ROM, tenderness to palpation bilaterally along lowest three segments of lumbar facet joints; positive SLR on right. On 6/11/20, Dr. Faulk saw the claimant for follow-up for neoplasm of uncertain behavior on the right proximal radial dorsal forearm. On 5/28/20, Biopsy by Shave Method was performed. The pathology shows melanoma in situ on the right proximal radial dorsal forearm. The claimant underwent excision. On 6/25/20, Dr. Faulk saw the claimant for malignant melanoma in situ on the right proximal radial dorsal forearm. The claimant underwent excision on 6/11/20, the pathology shows no residual melanoma on the right proximal radial dorsal forearm. In a questionnaire dated 8/25/20, Dr. Todd noted the diagnoses as reflex sympathetic dystrophy, insomnia, HTN, anxiety. Restrictions are listed as following: sitting 20 minutes at a time; standing 20 minutes at a time; sit, stand/walk less than 2 hours totally in an 8-hour working day; 10- minute walking in every 30 minutes; occasionally: lifting up to 10 lbs., twisting, bending, stooping, crouching/squatting, climbing stairs; rarely: lifting 20 lbs. and 50 lbs.; never: climbing ladders. The claimant is likely to be off task 25% or more of the time. In conclusion, the claimant has a long-standing history of right upper extremity pain since a melanoma resection in 2016 and associated with complex regional pain syndrome of right upper limb; and also has chronic low back pain due to lumbar stenosis and lumbar DDD and he is s/p underwent L4-5 microdiscectomy for cauda equina; and there is an EMG/NCS study dated 2/16/17 revealed findings consistent with mild, probable, distal, axonal peripheral neuropathy, a chronic possibly active right C8 radiculopathy, and chronic probably inactive right L5-S1 radiculopathy; the claimant also suffers from bilateral lower extremity pain, weakness, and right foot drop as well as lower limb tremulousness and functional hyperkinesia causing lower extremity tremors, peripheral neuropathy; therefore, the claimant's medical history involving multiple musculoskeletal conditions impact the claimant's functionality, and he requires activity restrictions and limitations below.

Sitting: Constantly, up to 30 minutes at a time, up to 6 hours per day
Standing: Occasionally, up to 20 minutes at a time, up to 2 hours per day
Walking: Occasionally, up to 20 minutes at a time, up to 2 hours per day
Lifting: Occasionally up to 10 lbs. BUE
Carrying: Occasionally up to 10 lbs. BUE
Pushing: Occasionally up to 10 lbs. BUE
Pulling: Occasionally up to 10 lbs. BUE
Stooping: Occasionally
Kneeling: Occasionally
Crouching: Occasionally
Crawling: Never
Climbing stairs: Occasionally
Climbing ladders: Never
Reaching: Occasionally overhead; constantly desk and waist levels BUE's

Using lower extremity for foot controls: occasionally RLE; unrestricted LLE
Fine manipulation: occasionally RUE; unrestricted LUE
Simple and firm grasping: occasionally RUE; unrestricted LUE

The listed R&L's apply from 5/8/20 and beyond with re-assessment on or around 5/8/21.

4. **Treatment Opportunities: Is the treatment provided consistent with the standard of care for the apparent level of severity of the condition(s)? Is there any evidence that the claimant is not compliant with treatment that meets the standard of care?**

The treatment provided is consistent with the standard of care for the apparent level of severity of the conditions. The claimant is compliant with treatment that meets the standard of care.

5. **Are there any non-medical circumstances identified in the medical records that may interfere with work-related activities (e.g. workplace conflicts, child or elder care issues, or legal issues)?**

None identified.

6. **Does the medical documentation support that any medical condition alone, or in combination would preclude the claimant from sustained occupational functioning on a full-time basis? Please explain why or why not.**

No, the medical documentation does not support that any medical condition alone, or in combination would preclude the claimant from sustained occupational functioning on a full-time basis. The claimant is capable of sustaining full-time employment within the restrictions and limitations outlined above.

7. **Does the medical evidence support any side effects from the prescribed medications? If yes, please describe the supported impairments and outline how any impairment affects functional capacity.**

No, the medical evidence does not support any side effects from the prescribed medications.

Sincerely,

John Z. Zheng, DO
Physical Medicine & Rehabilitation

Pain Medicine
Medical License CA 14602

ECN
Exam Coordinators Network A division of Genex Services, LLC
Corporate Office

Claimant Name: Darrell Russell
Claim Number: 7259041
Case Number: 161110-1

"I, John Z Zheng, DO, am a physician duly licensed to practice medicine in the State of CA. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

Signature of Physician

November 11, 2020
Date

Medical/Professional License # CA 14602

Lincoln Financial Group®

Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 427-1866

| | |
|---|---|
| Date: | November 20, 2020 |
| To: | D. SETH HOLLIDAY<br>MCMAHAN LAW FIRM, LLC<br>700 S THORNTON AVENUE<br>PO BOX 1607<br>DALTON GA 30722 |
| Attn: | |
| Fax: | (706) 217-6880 |
| From: | Jennifer Dimaggio<br>Appeal Consultant<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 427-1866 |
| Total Pages<br>(Including Cover): | 16 |
| RE: | Claim #: 7259041<br>Claimant: Darrell Russell<br><br>Chart Industries, Inc. |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 427-1866

November 20, 2020

D. Seth Holliday
McMahan Law Firm, LLC
700 S THORNTON AVENUE
PO BOX 1607
DALTON, GA 30722

RE: Long Term Disability (LTD) Benefits
Chart Industries, Inc.
Claim #: 7259041
Claimant: Darrell Russell

Dear D. Seth Holliday:

Please see the attached letter that was additionally e-mailed to you this morning.

If you have any questions regarding this matter, please contact me.

Sincerely,

Jennifer Dimaggio
Appeal Consultant
Phone No.: (888) 437-7611 Ext. 59238
Secure Fax No.: (603) 427-1866

Attachments: 7259041-ACKNOWLEDGE-FREEFORM-11.20.2020

| | |
|---|---|
| From: | LFGNotifications@LFG.com |
| Sent: | Friday, November 20, 2020 7:44:46 AM |
| To: | SHOLLIDAY@MCMAHANFIRM.COM; |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Chart Industries, Inc. Claim No. 7259041 Darrell Russell |
| Attachments: | hvcxjnd5wvbnps0vl4av_9434214.pdf; |

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

Lincoln Financial Group®

Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 427-1866

November 20, 2020

D. Seth Holliday
McMahan Law Firm, LLC
700 S THORNTON AVENUE
PO BOX 1607
DALTON, GA 30722

RE: Long Term Disability (LTD) Benefits
Chart Industries, Inc.
Claim #: 7259041
Claimant: Darrell Russell

Dear D. Seth Holliday:

Lincoln Life Assurance Company of Boston is responsible for managing claims for Long Term Disability (LTD) benefits under the Chart Industries, Inc.'s Group Disability Policy. We are writing regarding Darrell Russell's claim for LTD benefits under the Policy.

We are in process of reviewing your client's appeal of our denial determination regarding the above-referenced claim. The purpose of this letter and enclosure(s) is to provide you with an opportunity to review and comment on new/ additional evidence that has been received before a decision is rendered on your client's appeal. You may send any additional information to disabilitydocuments@lfg.com or to the fax number below.

Please find attached a copy of the peer review which is new or additional evidence in connection with your client's appeal. You may review the peer review and provide a response to us, which we will consider in making our decision on your client's appeal. If we do not receive your response within 21 days of the date of this letter or December 10, 2020, we will proceed with making a determination on your client's appeal.

Upon receipt of your response, we will promptly complete our review and render a determination on your client's appeal. If your response is not received by December 10, 2020 (21 days from the date of this letter), we will render a determination based on the information contained in your client's file.

Due to these special circumstances, an extension of time to process your appeal is required and we are exercising our right to take such an extension under the Employee Retirement Income Security Act.

Under the Employee Retirement Income Security Act (ERISA), an appeal determination should be rendered within 45 days of receipt of appeal, unless there are special circumstances beyond Lincoln's control, which require a delay in making a determination. If additional time is needed, ERISA allows for a 45-day extension to evaluate and render an appeal decision. [Pursuant to ERISA Regulations, additional time for a final decision may exceed 90 days to the extent that the timeframe is tolled while Lincoln is awaiting receipt of requested documentation needed to fully evaluate your client's claim. (Tolled: accumulation of time is suspended.)]

If you have any questions regarding this matter, please contact me.

Sincerely,

Jennifer Dimaggio
Appeal Consultant
Phone No.: (888) 437-7611 Ext. 59238
Secure Fax No.: (603) 427-1866

Attachments: 7259041-MEDICAL-CP/PEER REVIEW-11.11.2020

# John Zheng, DO

***Board-Certified in Physical Medicine & Rehabilitation***
***Pain medicine***

**CLAIMANT NAME:** Russell, Darrell
**EXAMINER:** John Zheng, DO
**ECN #:** 161110-1
**CLAIM #:** 7259041
**DATE OF LOSS:** 11/8/2016
**DATE OF SERVICE:** 11/11/2020

**Peer Review**

I have been asked to review the medical records on behalf of ECN. This is a peer review regarding Russell, Darrell. I reviewed records from 11/4/2016 through 8/25/2020 including: Barry McCasland, MD / Neurology, extending from 11/4/2016 to 11/23/2016; Paul Harkey, MD / Radiology, on 11/22/2016; David Owens, MD / Radiology, extending from 12/6/2016 to 5/12/2020; David Gale, MD / Pain Medicine, extending from 12/14/2016 to 1/5/2017; Nichole Daniels, CRNA / Nurse Anesthetist, on 12/22/2016; Kathleen Gangl, CRNA / Nurse Anesthetist, on 1/5/2017; Barry McCasland, MD / Neurology, extending from 2/7/2017 to 2/8/2017; Mayo Clinic Laboratories, on 2/16/2017; Jay Van Gerpen, MD / Neurology, extending from 2/16/2017 to 3/23/2017; Elliot Dimberg, MD / Neurology, extending from 2/17/2017 to 3/12/2017; Prasanna Vibhute, MD / Radiology, on 3/11/2017; Paul Jeffords, MD, on 4/20/2017; Lucia McPhee, MD / Physical Medicine & Rehabilitation, on 4/26/2017; Marvin Tark, MD / Pain Medicine, on 1/31/2018; Anne Todd, MD / Family Medicine, extending from 2/2/2018 to 8/25/2020; Kimberly Lamoureux, CMA / Certified Medical Assistant, on 7/17/2018; LabCorp, on 8/1/2018; Kim Stover, MA / Medical Assistant, on 2/6/2019; Unknown provider, extending from 5/7/2019 to 2/6/2020; Tashia G, RN / Nurse Disability Consultant, on 8/27/2019; Jonathan Beck, PA / Physician Assistant, on 9/16/2019; Charles Weaver, Jr., MD / Neurosurgery, extending from 12/12/2019 to 1/9/2020; Amit Patel, MD / Pain Medicine, extending from 2/10/2020 to 2/25/2020; An Do, MD / Pain Medicine, extending from 3/31/2020 to 5/26/2020; Carlton Faulk, MD / Dermatology, extending from 5/28/2020 to 6/25/2020; Dipti Anand, MD / Pathology, on 5/28/2020; Emily Erstine, MD / Pathology, on 6/11/2020.

The claimant is a 42-year-old male with a medical history significant for neuralgia and neuritis.

11/4/16 Barry McCasland, MD, the claimant is seen for right arm pain. In 9/2015, he underwent excision of a right chest wall melanoma associated with axillary node dissection. On 2/2016, he underwent excision of a left forehead melanoma, again associated with clear surgical margins. In the spring of 2016, he developed pain along the right axillary incision. Physical exam was remarkable for obvious swelling of the right upper extremity that was best demonstrated in the dorsum of the hand as well as swelling

along the right anterior axillary fold. Impression indicates reflex sympathetic dystrophy, right upper limb.

11/22/16 Bone Scan, no evidence of three-phase bone uptake or findings concerning for complex regional pain syndrome. There is focal delayed uptake within the posterior left calvarium which correlates to a 1 cm ovoid nonaggressive intradiploic lesion on CT of the head dated 06/24/16 probably reflecting a small hemangioma or small fibro-osseous lesion such as fibrous dysplasia.

12/8/16 MRI Right Brachial Plexus, no evidence of focal mass lesion or adenopathy. Brachial plexus is grossly normal.

12/22/16 David Gale, MD, the claimant underwent a right stellate ganglion block.

1/5/17 David Gale, MD, the claimant underwent a right stellate ganglion block.

2/7/17 EMG/NCS, normal right upper extremity.

2/8/17 Barry McCasland, MD, the claimant is seen for right upper limp regional pain syndrome with tremors, status post excision of melanoma x2 with lymph node dissection. Dr McCasland noted that on 11/4/16, at the initial appointment, he was completely convinced that the claimant had complex regional pain syndrome; however, his triple phase bone scan was negative, and he received no benefit whatsoever from a stellate ganglion block. He received significant benefit from a second procedure described as a C7 nerve block. This led Dr. Gale to suspect that the claimant may have some type of radiculopathy. However, his pain spreads far beyond the limits of the C7 dermatome, he has sunburn allodynia, and he has no neck pain.

2/16/17 EMG, findings consistent with mild, probable, distal, axonal peripheral neuropathy, a chronic possibly active right C8 radiculopathy, and chronic probably inactive right L5-S1 radiculopathy.

3/11/17 MRI of the Spine, cervical spondylosis with advanced C5-6 and C6-7 discovertebral degeneration; C5-6 left-sided mild spinal canal and moderate to severe neural foramina stenosis; C6-7 right-sided mild spinal canal and severe neural foramina stenosis. There is mild thoracic spondylosis with T9-10 moderate spinal canal and severe right neural foraminal stenosis. There is L4-5-disc degeneration without significant spinal canal or neural foramina stenosis.

3/23/17 Jay Gerpen, MD, the claimant is seen for tremor. The tremor is evident in the claimant's right lower extremity at rest is associated with electrophysiological findings diagnostic of a functional tremor and observed while the claimant is standing is most consistent with voluntary motor activity.

4/20/17 Paul Jeffords, MD, the claimant is seen for right arm pain. The pain gradually progressed to a burning type of hypersensitivity that involved the right shoulder and chest and radiates down the right arm into the hand. He is having some pain now on both sides of the upper chest and across the trapezial areas of the beck of his neck. He also has other symptoms that are associated with his right arm pain. He notes that he has issues where his legs do not seem to work properly. He has noted difficulty going up and down stairs and rising from a chair to walk at times. On exam, the claimant ambulates with a mildly wide-based gait with somewhat of a tentative stride; he displays some tremulousness with standing and walking. There is diffuse tenderness throughout the cervical, thoracic and lumbar spine with slight hypersensitivity to light touch. Cervical ROM is full in all directions; lumbar flexion is to 70 degrees; he can extend to 10 degrees. There is full active and passive ROM of the upper and lower extremities. X-rays of the cervical spine showed degenerative disc disease that was moderate to severe at C5-C6 and C6-C7. The claimant was diagnosed with right arm cervical radiculopathy; moderate to severe left/severe right C6-C7 foraminal stenosis; C5-C6 and C6-C7 disc degeneration; T9-T10 spondylosis with moderate central stenosis with very mild myelopathy; congenital lumbar stenosis; L4-L5 degenerative disc disease with annular tear/disc bulging; mild right L4-L5 foraminal stenosis; mild distal peripheral neuropathy; functional hyperkinesia causing lower extremity tremors. The claimant is having right arm symptoms that are most likely due to cervical radiculopathy; however, he has a multitude of other symptoms that are not explained by the cervical radiculopathy including burning sensation across the chest, tremulousness, headaches. The claimant is a candidate for a two-level anterior cervical discectomy and fusion at C5-6 and C6-7 for his right arm symptoms.

1/31/18 Marvin Tark, MD, the claimant is seen for right upper extremity and bilateral foot pain. The claimant rated his pain as 7-10/10. Examination noted redness and edema in the right upper extremity; and diffuse hypersensitivity in the right upper extremity. The claimant was diagnosed with CRPS of right upper limb and generalized anxiety disorder. A spinal cord stimulator (SCS) trial was discussed.

7/11/19 Unknown provider, the claimant reported his pain is much better but not completely gone.

9/16/19 Jonathan Beck, PA, the claimant is seen for post-op visit, he underwent L4-5 microdiscectomy for cauda equina. He has some lingering soreness and occasional pain to his low back around the incision, but his biggest issue continues to be weakness in his bilateral feet as well as weakness in his hips and knees. On exam, there is decreased sensation to touch in bilateral lower extremities, worse distally and improving proximally. The claimant is ambulating with a walker.

12/12/19 Charles Weaver, Jr., MD, the claimant continues to struggle with neuropathic pain in his right leg and foot with hypersensitivity in the right leg and foot likely related to nerve injury. On exam, motor strength in the upper extremities is full and symmetric with no pronator drift; motor strength in the lower extremities is notable for continued right foot drop. Sensation is intact throughout all dermatomes.

2/10/20 Amit Patel, MD, the claimant is seen for right arm pain and bilateral leg pain. On exam, right UE: 4/5 handgrip, 4/5 triceps, 4/5 biceps, 4/5 deltoid; right LE: 4-/5 hip flexors, 4-/5 quadriceps, 4/5 hamstrings, 4/5 DF, 4/5 PF; right greater than left LE decreased sensation to light touch/pinprick along L4-S1 dermatomes; decreased ROM of the lumbar spine, TTP along bilateral lowest three segments of lumbar facet joints, pain is reproduced with bilateral facet loading maneuvers, positive SLR.

3/31/20 An Do, MD, the claimant is seen for right arm pain, bilateral leg pain, low back pain. On exam, right LE 4/5 hip flexors, 4/5 quadriceps, 4/5 hamstrings, 4-/5 DF, decreased sensation to light touch along L5-S1 dermatomes. On the right UE, allodynia, edema, color changes noted, decreased temperature compared to contralateral extremity. On lumbosacral exam, there is positive facet loading, decreased ROM, tenderness to palpation bilaterally along lowest three segments of lumbar facet joints; positive SLR on right.

5/12/20 MRI of the Lumbar Spine, mild disc desiccation and degenerative disc space narrowing of L4-5. There is mild disc bulge with superimposed left-sided disc protrusion which minimally extends along the posterior superior margin of L5. There is mild effacement of the ventral thecal sac as well as encroachment of the left lateral recess. The left neural foramen and right neural foramen demonstrate mild encroachment. There is small right paracentral disc protrusion of L5-S1 without significant central canal encroachment.

5/26/20 An Do, MD, the claimant is seen for right arm pain, bilateral leg pain, and low back pain. On exam, right LE: 4/5 hip flexors, 4/5 quadriceps, 4/5 hamstrings, 4/5 DF; right LE: decreased sensation to light touch/pinprick along L5-S1 dermatome. Right upper extremity allodynia, edema, color changes noted, decreased temperature compared to contralateral extremity. Lumbosacral exam shows positive facet loading, decreased ROM, tenderness to palpation bilaterally along lowest three segments of lumbar facet joints; positive SLR on right.

6/11/20 Carlton Faulk, MD, the claimant is seen for follow-up for neoplasm of uncertain behavior on the right proximal radial dorsal forearm. On 5/28/20, Biopsy by Shave Method was performed. The pathology shows melanoma in situ on the right proximal radial dorsal forearm. The claimant underwent excision.

6/25/20 Carlton Faulk, MD the claimant is seen for malignant melanoma in situ on the right proximal radial dorsal forearm. The claimant underwent excision on 6/11/20, the pathology shows no residual melanoma on the right proximal radial dorsal forearm.

8/25/20 Anne Todd, MD, Questionnaire, reflex sympathetic dystrophy, insomnia, HTN, anxiety. Restrictions are listed as following: sitting 20 minutes at a time; standing 20 minutes at a time; sit, stand/walk less than 2 hours totally in an 8-hour working day; 10-minute walking in every 30 minutes; occasionally: lifting up to 10 lbs., twisting, bending,

stooping, crouching/squatting, climbing stairs; rarely: lifting 20 lbs. and 50 lbs.; never: climbing ladders. The claimant is likely to be off task 25% or more of the time.

**DIAGNOSES:**

Neuralgia and neuritis, unspecified.

**CALL ATTEMPTS:**

Dr. Do's office Mon 11/2; 2:39 PM; unable to leave a message as the office is closed for the day with no option provided to leave a voicemail.

Dr. Do's office Tue 11/3; 12:07 PM; left a voicemail message on the physician line.

**RESPONSE TO QUESTIONS:**

**1. Please identify the primary impairing Diagnosis(es) with ICD 10 code(s).**

The primary impairing diagnoses are cervical radiculopathy (M54.12); cervical degenerative disc disease (M50.30); congenital lumbar stenosis (Q76.49); lumbar degenerative disc disease (M51.36); complex regional pain syndrome of the right upper limb (G90.511); functional hyperkinesia causing lower extremity tremors (R25.1); peripheral neuropathy (G64); right arm pain (M79.601), post-laminectomy syndrome (M96.1); right foot drop (M21.371).

**2. If applicable, please identify clinically significant comorbid Diagnosis(es) with ICD 10 code(s).**

Clinically significant comorbid diagnoses are hypertension (I10), anxiety (F41. 9), insomnia (G47.00), and GERD (K21. 9).

**3. Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine, and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from - 5/8/2020 to - present and ongoing, and comment on the expected duration.**

**a. If the medical records in the file do not support impairment and the need for restrictions and/or limitations during the above timeframe(s), provide a detailed explanation.**

The medical records reflect that the claimant, Mr. Russell, is a 42-year-old male with a medical history significant for neuralgia and neuritis. On 11/4/16, Dr. McCasland saw the claimant for right arm pain. In 9/2015, he underwent excision of a right chest wall melanoma associated with axillary node dissection. In 2/2016, he underwent excision of a

left forehead melanoma, again associated with clear surgical margins. In the spring of 2016, he developed pain along the right axillary incision. Physical exam was remarkable for obvious swelling of the right upper extremity that was best demonstrated in the dorsum of the hand as well as swelling along the right anterior axillary fold. Impression indicates reflex sympathetic dystrophy, right upper limb. A bone scan dated 11/22/16 revealed no evidence of three-phase bone uptake or findings concerning for complex regional pain syndrome. There is focal delayed uptake within the posterior left calvarium which correlates to a 1 cm ovoid nonaggressive intradiploic lesion on CT of the head dated 06/24/16 probably reflecting a small hemangioma or small fibro-osseous lesion such as fibrous dysplasia. An MRI study of the right brachial plexus dated 12/8/16 revealed no evidence of focal mass lesion or adenopathy. Brachial plexus is grossly normal. On 12/22/16, the claimant underwent a right stellate ganglion block. On 1/5/17, the claimant underwent a right stellate ganglion block. An EMG/NCS dated 2/7/17 revealed normal right upper extremity. On 2/8/17, Dr. McCasland saw the claimant for right upper limp regional pain syndrome with tremors, status post excision of melanoma x2 with lymph node dissection. Dr McCasland noted that on 11/4/16, at the initial appointment, he was completely convinced that the claimant had complex regional pain syndrome; however, his triple phase bone scan was negative, and he received no benefit whatsoever from a stellate ganglion block. He received significant benefit from a second procedure described as a C7 nerve block. This led Dr. Gale to suspect that the claimant may have some type of radiculopathy. However, his pain spreads far beyond the limits of the C7 dermatome, he has sunburn allodynia, and he has no neck pain. An EMG/NCS dated 2/16/17 revealed findings consistent with mild, probable, distal, axonal peripheral neuropathy, a chronic possibly active right C8 radiculopathy, and chronic probably inactive right L5-S1 radiculopathy. An MRI study of the spine dated 3/11/17 revealed cervical spondylosis with advanced C5-6 and C6-7 discovertebral degeneration; C5-6 left-sided mild spinal canal and moderate to severe neural foramina stenosis; C6-7 right-sided mild spinal canal and severe neural foramina stenosis. There is mild thoracic spondylosis with T9-10 moderate spinal canal and severe right neural foraminal stenosis. There is L4-5-disc degeneration without significant spinal canal or neural foramina stenosis. On 3/23/17, Dr. Gerpen saw the claimant for tremor. The tremor is evident in the claimant's right lower extremity at rest is associated with electrophysiological findings diagnostic of a functional tremor and observed while the claimant is standing is most consistent with voluntary motor activity. On 4/20/17, Dr. Jeffords saw the claimant for right arm pain. The pain gradually progressed to a burning type of hypersensitivity that involved the right shoulder and chest and radiates down the right arm into the hand. He is having some pain now on both sides of the upper chest and across the trapezial areas of the beck of his neck. He also has other symptoms that are associated with his right arm pain. He notes that he has issues where his legs do not seem to work properly. He has noted difficulty going up and down stairs and rising from a chair to walk at times. On exam, the claimant ambulates with a mildly wide-based gait with somewhat of a tentative stride; he displays some tremulousness with standing and walking. There is diffuse tenderness throughout the cervical, thoracic and lumbar spine with slight hypersensitivity to light touch. Cervical ROM is full in all directions; lumbar flexion is to 70 degrees; he can extend to 10 degrees. There is full active and passive ROM of the

upper and lower extremities. X-rays of the cervical spine showed degenerative disc disease that was moderate to severe at C5-C6 and C6-C7. The claimant was diagnosed with right arm cervical radiculopathy; moderate to severe left/severe right C6-C7 foraminal stenosis; C5-C6 and C6-C7 disc degeneration; T9-T10 spondylosis with moderate central stenosis with very mild myelopathy; congenital lumbar stenosis; L4-L5 degenerative disc disease with annular tear/disc bulging; mild right L4-L5 foraminal stenosis; mild distal peripheral neuropathy; functional hyperkinesia causing lower extremity tremors. The claimant is having right arm symptoms that are most likely due to cervical radiculopathy; however, he has a multitude of other symptoms that are not explained by the cervical radiculopathy including burning sensation across the chest, tremulousness, headaches. The claimant is a candidate for a two-level anterior cervical discectomy and fusion at C5-6 and C6-7 for his right arm symptoms. On 1/31/18, Dr. Tark saw the claimant for right upper extremity and bilateral foot pain. The claimant rated his pain as 7-10/10. Examination noted redness and edema in the right upper extremity; and diffuse hypersensitivity in the right upper extremity. The claimant was diagnosed with CRPS of right upper limb and generalized anxiety disorder. A spinal cord stimulator (SCS) trial was discussed. On 9/16/19, PA. Jonathan Beck saw the claimant for post-op visit, he underwent L4-5 microdiscectomy for cauda equina. He has some lingering soreness and occasional pain to his low back around the incision, but his biggest issue continues to be weakness in his bilateral feet as well as weakness in his hips and knees. On exam, there is decreased sensation to touch in bilateral lower extremities, worse distally and improving proximally. The claimant is ambulating with a walker. On 12/12/19, Dr. Weaver noted that the claimant continues to struggle with neuropathic pain in his right leg and foot with hypersensitivity in the right leg and foot likely related to nerve injury. On exam, motor strength in the upper extremities is full and symmetric with no pronator drift; motor strength in the lower extremities is notable for continued right foot drop. Sensation is intact throughout all dermatomes. On 2/10/20, Dr. Patel saw the claimant for right arm pain and bilateral leg pain. On exam, right UE: 4/5 handgrip, 4/5 triceps, 4/5 biceps, 4/5 deltoid; right LE: 4-/5 hip flexors, 4-/5 quadriceps, 4/5 hamstrings, 4/5 DF, 4/5 PF; right greater than left LE decreased sensation to light touch/pinprick along L4-S1 dermatomes; decreased ROM of the lumbar spine, TTP along bilateral lowest three segments of lumbar facet joints, pain is reproduced with bilateral facet loading maneuvers, positive SLR. On 3/31/20, Dr. Do saw the claimant for right arm pain, bilateral leg pain, low back pain. On exam, right LE 4/5 hip flexors, 4/5 quadriceps, 4/5 hamstrings, 4-/5 DF, decreased sensation to light touch along L5-S1 dermatomes. On the right UE, allodynia, edema, color changes noted, decreased temperature compared to contralateral extremity. On lumbosacral exam, there is positive facet loading, decreased ROM, tenderness to palpation bilaterally along the lowest three segments of lumbar facet joints; positive SLR on right. An MRI study of the lumbar spine dated 5/12/20 revealed mild disc desiccation and degenerative disc space narrowing of L4-5. There is mild disc bulge with superimposed left-sided disc protrusion which minimally extends along the posterior superior margin of L5. There is mild effacement of the ventral thecal sac as well as encroachment of the left lateral recess. The left neural foramen and right neural foramen demonstrate mild encroachment. There is small right paracentral disc protrusion of L5-S1 without significant central canal encroachment. On 5/26/20, Dr. Do saw the

claimant for right arm pain, bilateral leg pain, and low back pain. On exam, right LE: 4/5 hip flexors, 4/5 quadriceps, 4/5 hamstrings, 4/5 DF; right LE: decreased sensation to light touch/pinprick along L5-S1 dermatome. Right upper extremity allodynia, edema, color changes noted, decreased temperature compared to contralateral extremity. Lumbosacral exam shows positive facet loading, decreased ROM, tenderness to palpation bilaterally along lowest three segments of lumbar facet joints; positive SLR on right. On 6/11/20, Dr. Faulk saw the claimant for follow-up for neoplasm of uncertain behavior on the right proximal radial dorsal forearm. On 5/28/20, Biopsy by Shave Method was performed. The pathology shows melanoma in situ on the right proximal radial dorsal forearm. The claimant underwent excision. On 6/25/20, Dr. Faulk saw the claimant for malignant melanoma in situ on the right proximal radial dorsal forearm. The claimant underwent excision on 6/11/20, the pathology shows no residual melanoma on the right proximal radial dorsal forearm. In a questionnaire dated 8/25/20, Dr. Todd noted the diagnoses as reflex sympathetic dystrophy, insomnia, HTN, anxiety. Restrictions are listed as following: sitting 20 minutes at a time; standing 20 minutes at a time; sit, stand/walk less than 2 hours totally in an 8-hour working day; 10- minute walking in every 30 minutes; occasionally: lifting up to 10 lbs., twisting, bending, stooping, crouching/squatting, climbing stairs; rarely: lifting 20 lbs. and 50 lbs.; never: climbing ladders. The claimant is likely to be off task 25% or more of the time. In conclusion, the claimant has a long-standing history of right upper extremity pain since a melanoma resection in 2016 and associated with complex regional pain syndrome of right upper limb; and also has chronic low back pain due to lumbar stenosis and lumbar DDD and he is s/p underwent L4-5 microdiscectomy for cauda equina; and there is an EMG/NCS study dated 2/16/17 revealed findings consistent with mild, probable, distal, axonal peripheral neuropathy, a chronic possibly active right C8 radiculopathy, and chronic probably inactive right L5-S1 radiculopathy; the claimant also suffers from bilateral lower extremity pain, weakness, and right foot drop as well as lower limb tremulousness and functional hyperkinesia causing lower extremity tremors, peripheral neuropathy; therefore, the claimant's medical history involving multiple musculoskeletal conditions impact the claimant's functionality, and he requires activity restrictions and limitations below.

Sitting: Constantly, up to 30 minutes at a time, up to 6 hours per day
Standing: Occasionally, up to 20 minutes at a time, up to 2 hours per day
Walking: Occasionally, up to 20 minutes at a time, up to 2 hours per day
Lifting: Occasionally up to 10 lbs. BUE
Carrying: Occasionally up to 10 lbs. BUE
Pushing: Occasionally up to 10 lbs. BUE
Pulling: Occasionally up to 10 lbs. BUE
Stooping: Occasionally
Kneeling: Occasionally
Crouching: Occasionally
Crawling: Never
Climbing stairs: Occasionally
Climbing ladders: Never
Reaching: Occasionally overhead; constantly desk and waist levels BUE's

Using lower extremity for foot controls: occasionally RLE; unrestricted LLE
Fine manipulation: occasionally RUE; unrestricted LUE
Simple and firm grasping: occasionally RUE; unrestricted LUE

The listed R&L's apply from 5/8/20 and beyond with re-assessment on or around 5/8/21.

4. **Treatment Opportunities: Is the treatment provided consistent with the standard of care for the apparent level of severity of the condition(s)? Is there any evidence that the claimant is not compliant with treatment that meets the standard of care?**

The treatment provided is consistent with the standard of care for the apparent level of severity of the conditions. The claimant is compliant with treatment that meets the standard of care.

5. **Are there any non-medical circumstances identified in the medical records that may interfere with work-related activities (e.g. workplace conflicts, child or elder care issues, or legal issues)?**

None identified.

6. **Does the medical documentation support that any medical condition alone, or in combination would preclude the claimant from sustained occupational functioning on a full-time basis? Please explain why or why not.**

No, the medical documentation does not support that any medical condition alone, or in combination would preclude the claimant from sustained occupational functioning on a full-time basis. The claimant is capable of sustaining full-time employment within the restrictions and limitations outlined above.

7. **Does the medical evidence support any side effects from the prescribed medications? If yes, please describe the supported impairments and outline how any impairment affects functional capacity.**

No, the medical evidence does not support any side effects from the prescribed medications.

Sincerely,

John Z. Zheng, DO
Physical Medicine & Rehabilitation

Pain Medicine
Medical License CA 14602

ECN
Corporate Office
Exam Coordinators Network A division of Genex Services, LLC

Claimant Name: Darrell Russell
Claim Number: 7259041
Case Number: 161110-1

"I, John Z Zheng, DO, am a physician duly licensed to practice medicine in the State of CA. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

Signature of Physician — November 11, 2020 (Date)

Medical/Professional License # CA 14602

**Lincoln Financial Group**
Group Protection

Jason E. Miller, Ed.M., CRC, F/ABVE
Senior Vocational Case Manager

# TRANSFERABLE SKILLS ANALYSIS

| | |
|---|---|
| **Claimant Name:** | Darrell Russell |
| **Claim Number:** | 7259041 |
| **Appeals Review Consultant:** | Jennifer DiMaggio |
| **Employer:** | Chart Industries, Inc. |
| **Date of Report:** | 11/19/20 |

A Transferable Skills Analysis utilizing the Occupational Access System (OASYS) was completed to assess the claimant's transferable skills to determine if alternative occupations exist in the national economy.

**RESOURCES / DOCUMENTATION UTILIZED**:

- Job Description
- 03/18/19 Occupational Analysis
- Training, Education & Experience (TE&E) Form
- 03/05/20 Transferable Skills Analysis
- Dictionary of Occupational Titles (DOT)
- Economic Research Institute (ERI) Occupational Assessor

**RESTRICTIONS / LIMITATIONS:**

I have been asked to base this review on the claimant's restrictions and limitations per a peer review completed on 11/11/20 by John Zheng, DO (Physiatry/Pain). They include:

> "Sitting: Constantly, up to 30 minutes at a time, up to 6 hours per day
> Standing: Occasionally, up to 20 minutes at a time, up to 2 hours per day
> Walking: Occasionally, up to 20 minutes at a time, up to 2 hours per day
> Lifting: Occasionally up to 10 lbs. BUE
> Carrying: Occasionally up to 10 lbs. BUE
> Pushing: Occasionally up to 10 lbs. BUE
> Pulling: Occasionally up to 10 lbs. BUE
> Stooping: Occasionally
> Kneeling: Occasionally
> Crouching: Occasionally
> Crawling: Never
> Climbing stairs: Occasionally

Climbing ladders: Never
Reaching: Occasionally overhead; constantly desk and waist levels BUE's
Using lower extremity for foot controls: occasionally RLE; unrestricted LLE
Fine manipulation: occasionally RUE; unrestricted LUE
Simple and firm grasping: occasionally RUE; unrestricted LUE"

**EDUCATION & TRAINING:**

| | |
|---|---|
| • Education: | GED |
| • Certifications / Licensure: | None |
| • Computer Skills: | E-mail; Internet |

**WORK HISTORY:**

| DOT Code | Occupation Title | Specific Vocational Preparation (SVP) | Years Performed | Strength Level |
|---|---|---|---|---|
| 699.130-010 | Production Supervisor | 7 | 5 | Light |
| 185.167-046 | Manager, Retail Store | 7 | 13 | Light |
| 299.677-014 | Sales Attendant, Building Materials | 3 | 13 | Heavy |

**TRANSFERABLE SKILLS:**

Following oral and written instructions to set up and operate production-type machines; using hands, eyes, and fingers to adjust machine controls, manipulate hand tools, or assemble objects; directing work of others; staying within prescribed standards and guidelines; identifying variations in size, shape, and texture of objects; and working in hazardous or noisy conditions.
Applying math skills to read and interpret business and statistical reports and records; analyzing and interpreting administrative policy and procedure; planning and organizing work of others; making decisions based on business reports or similar data; speaking and writing clearly; preparing budgets, keeping records, and inventorying stock and dealing tactfully and courteously with the public, employees, or government officials.
Using common sense and basic language and math skills to carry out instructions, total costs, make change, and complete forms; moving hands, eyes, and fingers to handle items or drive vehicle; standing and walking for extended periods; and lifting and carrying items of varying weights.

**PROFILE ADJUSTMENTS:**

| | |
|---|---|
| • General Educational Development: | No adjustments performed. |
| • Strength: | Adjusted to sedentary based on restrictions/limitations. Post-hoc analysis was conducted to factor in overall sitting, standing, walking times, as well as position changes. |
| • Physical: | Adjusted to match restrictions and limitations above. Where no restrictions or limitations are provided, adjusted to unknown. Post-hoc analysis was conducted to factor in planar reaching restrictions and limitations. |

| | |
|---|---|
| • Environmental: | Adjusted to match restrictions and limitations above. Where no restrictions or limitations are provided, adjusted to unknown. |
| • Noise: | Adjusted to match restrictions and limitations above. Where no restrictions or limitations are provided, adjusted to very loud. |
| • Aptitudes: | No adjustments performed. |
| • Situations: | Performing repetitive or short-cycle work, influencing people in their opinions, attitudes, judgements and work under specific instructions adjusted to yes as will follow production instructions and decisions on production and work with plant workers and others to implement changes. Also, as a salesperson will influence people to buy using sales techniques. |
| • Data: | Analyzing, compiling, computing and copying were adjusted to yes as these are required as a production supervisor and store manager. |
| • People: | Instructing, persuading and taking instructions-helping adjusted to yes as completed when supervising others, when selling to customers and when servicing customers. |
| • Things: | Operating-controlling, manipulating, tending adjusted to yes in production setting. |

**EXAMPLES OF ALTERNATIVE OCCUPATIONS:**
Based on the insured's ability profile and information in the national economy, the following occupations were identified:

| DOT Code | Occupation Title | Specific Vocational Preparation (SVP) | Strength Level | Monthly Wage* |
|---|---|---|---|---|
| 169.167-038 | Order Department Supervisor | 7 | Sedentary | $6,230 |
| 379.367-010 | Surveillance System Monitor | 2 | Sedentary | $2,850 |
| 237.367-022 | Information Clerk | 4 | Sedentary | $2,505 |

** Wage information is based on median 2019 national data from the Bureau of Labor Statistics*

*Note: all occupations eliminated from the prior analysis were done so due to physical demand level and/or limitations in dominant upper extremity functions. All occupations that remained, including the additions above, were verified with ERI for upper extremity and reaching requirements.*

**SUMMARY:**
This Transferable Skills Analysis identified occupations within the insured's physical abilities and their identified skill level. The occupations meet the insured's gainful amount of $2,413.84 per month in the national economy.

I have not met with the insured for the purpose of this review. All opinions are based on a review of medical records and resources listed only. Thank you for the opportunity to review this file. Please contact me if you have any questions regarding this report or if I can be of further assistance with this file.

Respectfully submitted,

*Electronically Signed*

Jason E. Miller, Ed.M., CRC, F/ABVE
Board Certified Vocational Expert
Certified Rehabilitation Counselor
Certified ADA Administrator
Senior Vocational Case Manager
Group Protection
Lincoln Financial Group

| DOT Code | Occupation Title | SVP | Yrs | Mos | Inc | Has CWF | Uses CWF | Str | GOE Code |
|---|---|---|---|---|---|---|---|---|---|
| 699.130-010 | Production Supervisor | 7 | 5 | 0 | Y | Y | Y | L | 06.02.01 |
| 185.167-046 | Manager, Retail Store | 7 | 13 | 0 | Y | N | N | L | 11.11.05 |
| 299.677-014 | Sales Attendant, Building Materials | 3 | 13 | 0 | Y | N | N | H | 09.04.02 |

**ADJUSTED VARIABLES SUMMARY**
This report summarizes the changes made to the person's ability profile.

| | | Changed From | Changed To |
|---|---|---|---|
| **Specific Vocational Preparation** | | | |
| Maximum | | 7 (2 to 4 years) | No Change |
| Minimum | | 3 (1 to 3 months) | 1 (Short demo only) |
| **General Educational Development** | | | |
| Reasoning | | 4 Grades 9-12 | No Change |
| Mathematics | | 4 Grades 9-12 | No Change |
| Language | | 4 Grades 9-12 | No Change |
| **Physical Demands** | | | |
| Strength | Maximum | H Heavy | S Sedentary |
| | Minimum | L Light | S Sedentary |
| Climbing | | Never | No Change |
| Balancing | | Occasionally | Unknown |
| Stooping | | Frequently | Occasionally |
| Kneeling | | Never | Occasionally |
| Crouching | | Frequently | Occasionally |
| Crawling | | Never | No Change |
| Reaching | | Frequently | Unknown |
| Handling | | Frequently | Occasionally |
| Fingering | | Frequently | Occasionally |
| Feeling | | Never | Occasionally |
| Talking | | Frequently | Unknown |
| Hearing | | Frequently | Unknown |
| Tasting/Smelling | | Never | Unknown |
| Near Acuity | | Frequently | Unknown |
| Far Acuity | | Occasionally | Unknown |
| Depth Perception | | Occasionally | Unknown |
| Accommodation | | Frequently | Unknown |
| Color Vision | | Never | Unknown |
| Field of Vision | | Frequently | Unknown |
| **Environmental Conditions** | | | |
| Exposure to Weather | | Occasionally | Unknown |
| Extreme Cold | | Never | Unknown |
| Extreme Heat | | Never | Unknown |
| Wet and/or Humid | | Never | Unknown |
| Vibration | | Never | Unknown |
| Atmospheric Conditions | | Never | Unknown |
| Proximity to Moving Mechanical Parts | | Occasionally | Unknown |
| Exposure to Electrical Shock | | Never | Unknown |
| Working in High Exposed Places | | Never | No Change |
| Exposure to Radiation | | Never | Unknown |
| Working with Explosives | | Never | Unknown |
| Exposure to Toxic or Caustic Chemicals | | Never | Unknown |
| Other Environmental Conditions | | Never | Unknown |
| Noise Intensity Level | | Loud | Very Loud |

| | | |
|---|---|---|
| **DOT Aptitudes** | | |
| General Learning Ability | 2 (67-89 Percentile) | No Change |
| Verbal Aptitude | 2 (67-89 Percentile) | No Change |
| Numerical Aptitude | 3 (34-66 Percentile) | No Change |
| Spatial Aptitude | 3 (34-66 Percentile) | No Change |
| Form Perception | 3 (34-66 Percentile) | No Change |
| Clerical Aptitude | 3 (34-66 Percentile) | No Change |
| Motor Coordination | 4 (11-33 Percentile) | No Change |
| Finger Dexterity | 4 (11-33 Percentile) | No Change |
| Manual Dexterity | 4 (11-33 Percentile) | No Change |
| Eye-Hand-Foot Coordination | 4 (11-33 Percentile) | No Change |
| Color Discrimination | 5 (Below 11 Percentile) | No Change |
| **Work Situations (Temperaments)** | | |
| Directing, Controlling, Planning | Yes | No Change |
| Performing Repetitive Work | No | Yes |
| Influencing People | No | Yes |
| Performing a Variety of Duties | Yes | No Change |
| Expressing Personal Feelings | No | No Change |
| Working Alone or in Isolation | No | No Change |
| Performing Under Stress | No | No Change |
| Attaining Precise Limits/Tolerances | No | No Change |
| Following Specific Instructions | No | Yes |
| Dealing with People | Yes | No Change |
| Making Judgments and Decisions | Yes | No Change |
| **Work Functions - Data** | | |
| 0 Synthesizing | No | No Change |
| 1 Coordinating | Yes | No Change |
| 2 Analyzing | No | Yes |
| 3 Compiling | No | Yes |
| 4 Computing | No | Yes |
| 5 Copying | No | Yes |
| 6 Comparing | Yes | No Change |
| **Work Functions - People** | | |
| 0 Mentoring | No | No Change |
| 1 Negotiating | No | No Change |
| 2 Instructing | No | Yes |
| 3 Supervising | Yes | No Change |
| 4 Diverting | No | No Change |
| 5 Persuading | No | Yes |
| 6 Speaking-Signaling | Yes | No Change |
| 7 Serving | Yes | No Change |
| 8 Taking Instructions-Helping | No | Yes |
| **Work Functions - Things** | | |
| 0 Setting Up | Yes | No Change |
| 1 Precision Working | No | No Change |
| 2 Operating-Controlling | No | Yes |
| 3 Driving-Operating | No | No Change |
| 4 Manipulating | No | Yes |
| 5 Tending | No | Yes |
| 6 Feeding-Offbearing | No | No Change |
| 7 Handling | Yes | No Change |



Lincoln/Russell 0233

VOC Suite

# VOCATIONAL CASE MANAGEMENT

## Transferable Skills Analysis

**PLEASE HAVE THE FOLLOWING IN THE CLAIM FILE BEFORE REFERRING**

- [x] JOB DESCRIPTION (if cannot obtain in writing, must have phone doc from discussions with EE/ER detailing job duties)
- [ ] PHYSICAL JOB EVALUATION FORM (if available)
- [x] UPDATED MEDICAL WITH CLEAR R&L'S
- [x] TRAINING-EDUCATION-EXPERIENCE FORM
- [ ] MANAGER APPROVAL (if required)
- [ ] ATTORNEY INFO (if applicable)

FROM: Jennifer DiMaggio DATE: Thursday, November 12, 2020

## CLAIM BACKGROUND

Claimant Name: DARRELL RUSSELL Claim Number: 7259041

☐ STD ☑ FULLY INSURED ( THRESHOLD $ )

☑ LTD ☐ ASO ☐ LIFE Has MDS worked the claim? ☑ YES ☐ NO

Employer: CHART INDUSTRIES, INC.

Change In DEF. Date: 05/08/2020

Pre-Disability Earnings: $4,023.07 / M (mode) Claim Service Type: ADOP

**Document Locations**

☑ Document List ☑ Correspondence ☐ Paper File

**Case Manager's Recommendations / Reason For Referral:**

Addendum TSA requested with r/ls outlined in 11/11/2020 pmr/pm peer. No contract specifics. Gross benefit amount 2413.84

DP 512

# John Zheng, DO

## *Board-Certified in Physical Medicine & Rehabilitation*
## *Pain medicine*

**CLAIMANT NAME:** Russell, Darrell
**EXAMINER:** John Zheng, DO
**ECN #:** 161110-1
**CLAIM #:** 7259041
**DATE OF LOSS:** 11/8/2016
**DATE OF SERVICE:** 11/11/2020

**Peer Review**

I have been asked to review the medical records on behalf of ECN. This is a peer review regarding Russell, Darrell. I reviewed records from 11/4/2016 through 8/25/2020 including: Barry McCasland, MD / Neurology, extending from 11/4/2016 to 11/23/2016; Paul Harkey, MD / Radiology, on 11/22/2016; David Owens, MD / Radiology, extending from 12/6/2016 to 5/12/2020; David Gale, MD / Pain Medicine, extending from 12/14/2016 to 1/5/2017; Nichole Daniels, CRNA / Nurse Anesthetist, on 12/22/2016; Kathleen Gangl, CRNA / Nurse Anesthetist, on 1/5/2017; Barry McCasland, MD / Neurology, extending from 2/7/2017 to 2/8/2017; Mayo Clinic Laboratories, on 2/16/2017; Jay Van Gerpen, MD / Neurology, extending from 2/16/2017 to 3/23/2017; Elliot Dimberg, MD / Neurology, extending from 2/17/2017 to 3/12/2017; Prasanna Vibhute, MD / Radiology, on 3/11/2017; Paul Jeffords, MD, on 4/20/2017; Lucia McPhee, MD / Physical Medicine & Rehabilitation, on 4/26/2017; Marvin Tark, MD / Pain Medicine, on 1/31/2018; Anne Todd, MD / Family Medicine, extending from 2/2/2018 to 8/25/2020; Kimberly Lamoureux, CMA / Certified Medical Assistant, on 7/17/2018; LabCorp, on 8/1/2018; Kim Stover, MA / Medical Assistant, on 2/6/2019; Unknown provider, extending from 5/7/2019 to 2/6/2020; Tashia G, RN / Nurse Disability Consultant, on 8/27/2019; Jonathan Beck, PA / Physician Assistant, on 9/16/2019; Charles Weaver, Jr., MD / Neurosurgery, extending from 12/12/2019 to 1/9/2020; Amit Patel, MD / Pain Medicine, extending from 2/10/2020 to 2/25/2020; An Do, MD / Pain Medicine, extending from 3/31/2020 to 5/26/2020; Carlton Faulk, MD / Dermatology, extending from 5/28/2020 to 6/25/2020; Dipti Anand, MD / Pathology, on 5/28/2020; Emily Erstine, MD / Pathology, on 6/11/2020.

The claimant is a 42-year-old male with a medical history significant for neuralgia and neuritis.

11/4/16 Barry McCasland, MD, the claimant is seen for right arm pain. In 9/2015, he underwent excision of a right chest wall melanoma associated with axillary node dissection. On 2/2016, he underwent excision of a left forehead melanoma, again associated with clear surgical margins. In the spring of 2016, he developed pain along the right axillary incision. Physical exam was remarkable for obvious swelling of the right upper extremity that was best demonstrated in the dorsum of the hand as well as swelling

along the right anterior axillary fold. Impression indicates reflex sympathetic dystrophy, right upper limb.

11/22/16 Bone Scan, no evidence of three-phase bone uptake or findings concerning for complex regional pain syndrome. There is focal delayed uptake within the posterior left calvarium which correlates to a 1 cm ovoid nonaggressive intradiploic lesion on CT of the head dated 06/24/16 probably reflecting a small hemangioma or small fibro-osseous lesion such as fibrous dysplasia.

12/8/16 MRI Right Brachial Plexus, no evidence of focal mass lesion or adenopathy. Brachial plexus is grossly normal.

12/22/16 David Gale, MD, the claimant underwent a right stellate ganglion block.

1/5/17 David Gale, MD, the claimant underwent a right stellate ganglion block.

2/7/17 EMG/NCS, normal right upper extremity.

2/8/17 Barry McCasland, MD, the claimant is seen for right upper limp regional pain syndrome with tremors, status post excision of melanoma x2 with lymph node dissection. Dr McCasland noted that on 11/4/16, at the initial appointment, he was completely convinced that the claimant had complex regional pain syndrome; however, his triple phase bone scan was negative, and he received no benefit whatsoever from a stellate ganglion block. He received significant benefit from a second procedure described as a C7 nerve block. This led Dr. Gale to suspect that the claimant may have some type of radiculopathy. However, his pain spreads far beyond the limits of the C7 dermatome, he has sunburn allodynia, and he has no neck pain.

2/16/17 EMG, findings consistent with mild, probable, distal, axonal peripheral neuropathy, a chronic possibly active right C8 radiculopathy, and chronic probably inactive right L5-S1 radiculopathy.

3/11/17 MRI of the Spine, cervical spondylosis with advanced C5-6 and C6-7 discovertebral degeneration; C5-6 left-sided mild spinal canal and moderate to severe neural foramina stenosis; C6-7 right-sided mild spinal canal and severe neural foramina stenosis. There is mild thoracic spondylosis with T9-10 moderate spinal canal and severe right neural foraminal stenosis. There is L4-5-disc degeneration without significant spinal canal or neural foramina stenosis.

3/23/17 Jay Gerpen, MD, the claimant is seen for tremor. The tremor is evident in the claimant's right lower extremity at rest is associated with electrophysiological findings diagnostic of a functional tremor and observed while the claimant is standing is most consistent with voluntary motor activity.

4/20/17 Paul Jeffords, MD, the claimant is seen for right arm pain. The pain gradually progressed to a burning type of hypersensitivity that involved the right shoulder and chest and radiates down the right arm into the hand. He is having some pain now on both sides of the upper chest and across the trapezial areas of the beck of his neck. He also has other symptoms that are associated with his right arm pain. He notes that he has issues where his legs do not seem to work properly. He has noted difficulty going up and down stairs and rising from a chair to walk at times. On exam, the claimant ambulates with a mildly wide-based gait with somewhat of a tentative stride; he displays some tremulousness with standing and walking. There is diffuse tenderness throughout the cervical, thoracic and lumbar spine with slight hypersensitivity to light touch. Cervical ROM is full in all directions; lumbar flexion is to 70 degrees; he can extend to 10 degrees. There is full active and passive ROM of the upper and lower extremities. X-rays of the cervical spine showed degenerative disc disease that was moderate to severe at C5-C6 and C6-C7. The claimant was diagnosed with right arm cervical radiculopathy; moderate to severe left/severe right C6-C7 foraminal stenosis; C5-C6 and C6-C7 disc degeneration; T9-T10 spondylosis with moderate central stenosis with very mild myelopathy; congenital lumbar stenosis; L4-L5 degenerative disc disease with annular tear/disc bulging; mild right L4-L5 foraminal stenosis; mild distal peripheral neuropathy; functional hyperkinesia causing lower extremity tremors. The claimant is having right arm symptoms that are most likely due to cervical radiculopathy; however, he has a multitude of other symptoms that are not explained by the cervical radiculopathy including burning sensation across the chest, tremulousness, headaches. The claimant is a candidate for a two-level anterior cervical discectomy and fusion at C5-6 and C6-7 for his right arm symptoms.

1/31/18 Marvin Tark, MD, the claimant is seen for right upper extremity and bilateral foot pain. The claimant rated his pain as 7-10/10. Examination noted redness and edema in the right upper extremity; and diffuse hypersensitivity in the right upper extremity. The claimant was diagnosed with CRPS of right upper limb and generalized anxiety disorder. A spinal cord stimulator (SCS) trial was discussed.

7/11/19 Unknown provider, the claimant reported his pain is much better but not completely gone.

9/16/19 Jonathan Beck, PA, the claimant is seen for post-op visit, he underwent L4-5 microdiscectomy for cauda equina. He has some lingering soreness and occasional pain to his low back around the incision, but his biggest issue continues to be weakness in his bilateral feet as well as weakness in his hips and knees. On exam, there is decreased sensation to touch in bilateral lower extremities, worse distally and improving proximally. The claimant is ambulating with a walker.

12/12/19 Charles Weaver, Jr., MD, the claimant continues to struggle with neuropathic pain in his right leg and foot with hypersensitivity in the right leg and foot likely related to nerve injury. On exam, motor strength in the upper extremities is full and symmetric with no pronator drift; motor strength in the lower extremities is notable for continued right foot drop. Sensation is intact throughout all dermatomes.

2/10/20 Amit Patel, MD, the claimant is seen for right arm pain and bilateral leg pain. On exam, right UE: 4/5 handgrip, 4/5 triceps, 4/5 biceps, 4/5 deltoid; right LE: 4-/5 hip flexors, 4-/5 quadriceps, 4/5 hamstrings, 4/5 DF, 4/5 PF; right greater than left LE decreased sensation to light touch/pinprick along L4-S1 dermatomes; decreased ROM of the lumbar spine, TTP along bilateral lowest three segments of lumbar facet joints, pain is reproduced with bilateral facet loading maneuvers, positive SLR.

3/31/20 An Do, MD, the claimant is seen for right arm pain, bilateral leg pain, low back pain. On exam, right LE 4/5 hip flexors, 4/5 quadriceps, 4/5 hamstrings, 4-/5 DF, decreased sensation to light touch along L5-S1 dermatomes. On the right UE, allodynia, edema, color changes noted, decreased temperature compared to contralateral extremity. On lumbosacral exam, there is positive facet loading, decreased ROM, tenderness to palpation bilaterally along lowest three segments of lumbar facet joints; positive SLR on right.

5/12/20 MRI of the Lumbar Spine, mild disc desiccation and degenerative disc space narrowing of L4-5. There is mild disc bulge with superimposed left-sided disc protrusion which minimally extends along the posterior superior margin of L5. There is mild effacement of the ventral thecal sac as well as encroachment of the left lateral recess. The left neural foramen and right neural foramen demonstrate mild encroachment. There is small right paracentral disc protrusion of L5-S1 without significant central canal encroachment.

5/26/20 An Do, MD, the claimant is seen for right arm pain, bilateral leg pain, and low back pain. On exam, right LE: 4/5 hip flexors, 4/5 quadriceps, 4/5 hamstrings, 4/5 DF; right LE: decreased sensation to light touch/pinprick along L5-S1 dermatome. Right upper extremity allodynia, edema, color changes noted, decreased temperature compared to contralateral extremity. Lumbosacral exam shows positive facet loading, decreased ROM, tenderness to palpation bilaterally along lowest three segments of lumbar facet joints; positive SLR on right.

6/11/20 Carlton Faulk, MD, the claimant is seen for follow-up for neoplasm of uncertain behavior on the right proximal radial dorsal forearm. On 5/28/20, Biopsy by Shave Method was performed. The pathology shows melanoma in situ on the right proximal radial dorsal forearm. The claimant underwent excision.

6/25/20 Carlton Faulk, MD the claimant is seen for malignant melanoma in situ on the right proximal radial dorsal forearm. The claimant underwent excision on 6/11/20, the pathology shows no residual melanoma on the right proximal radial dorsal forearm.

8/25/20 Anne Todd, MD, Questionnaire, reflex sympathetic dystrophy, insomnia, HTN, anxiety. Restrictions are listed as following: sitting 20 minutes at a time; standing 20 minutes at a time; sit, stand/walk less than 2 hours totally in an 8-hour working day; 10-minute walking in every 30 minutes; occasionally: lifting up to 10 lbs., twisting, bending,

stooping, crouching/squatting, climbing stairs; rarely: lifting 20 lbs. and 50 lbs.; never: climbing ladders. The claimant is likely to be off task 25% or more of the time.

**DIAGNOSES:**

Neuralgia and neuritis, unspecified.

**CALL ATTEMPTS:**

Dr. Do's office Mon 11/2; 2:39 PM; unable to leave a message as the office is closed for the day with no option provided to leave a voicemail.

Dr. Do's office Tue 11/3; 12:07 PM; left a voicemail message on the physician line.

**RESPONSE TO QUESTIONS:**

1. **Please identify the primary impairing Diagnosis(es) with ICD 10 code(s).**

The primary impairing diagnoses are cervical radiculopathy (M54.12); cervical degenerative disc disease (M50.30); congenital lumbar stenosis (Q76.49); lumbar degenerative disc disease (M51.36); complex regional pain syndrome of the right upper limb (G90.511); functional hyperkinesia causing lower extremity tremors (R25.1); peripheral neuropathy (G64); right arm pain (M79.601), post-laminectomy syndrome (M96.1); right foot drop (M21.371).

2. **If applicable, please identify clinically significant comorbid Diagnosis(es) with ICD 10 code(s).**

Clinically significant comorbid diagnoses are hypertension (I10), anxiety (F41. 9), insomnia (G47.00), and GERD (K21. 9).

3. **Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine, and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from - 5/8/2020 to - present and ongoing, and comment on the expected duration.**

**a. If the medical records in the file do not support impairment and the need for restrictions and/or limitations during the above timeframe(s), provide a detailed explanation.**

The medical records reflect that the claimant, Mr. Russell, is a 42-year-old male with a medical history significant for neuralgia and neuritis. On 11/4/16, Dr. McCasland saw the claimant for right arm pain. In 9/2015, he underwent excision of a right chest wall melanoma associated with axillary node dissection. In 2/2016, he underwent excision of a

left forehead melanoma, again associated with clear surgical margins. In the spring of 2016, he developed pain along the right axillary incision. Physical exam was remarkable for obvious swelling of the right upper extremity that was best demonstrated in the dorsum of the hand as well as swelling along the right anterior axillary fold. Impression indicates reflex sympathetic dystrophy, right upper limb. A bone scan dated 11/22/16 revealed no evidence of three-phase bone uptake or findings concerning for complex regional pain syndrome. There is focal delayed uptake within the posterior left calvarium which correlates to a 1 cm ovoid nonaggressive intradiploic lesion on CT of the head dated 06/24/16 probably reflecting a small hemangioma or small fibro-osseous lesion such as fibrous dysplasia. An MRI study of the right brachial plexus dated 12/8/16 revealed no evidence of focal mass lesion or adenopathy. Brachial plexus is grossly normal. On 12/22/16, the claimant underwent a right stellate ganglion block. On 1/5/17, the claimant underwent a right stellate ganglion block. An EMG/NCS dated 2/7/17 revealed normal right upper extremity. On 2/8/17, Dr. McCasland saw the claimant for right upper limp regional pain syndrome with tremors, status post excision of melanoma x2 with lymph node dissection. Dr McCasland noted that on 11/4/16, at the initial appointment, he was completely convinced that the claimant had complex regional pain syndrome; however, his triple phase bone scan was negative, and he received no benefit whatsoever from a stellate ganglion block. He received significant benefit from a second procedure described as a C7 nerve block. This led Dr. Gale to suspect that the claimant may have some type of radiculopathy. However, his pain spreads far beyond the limits of the C7 dermatome, he has sunburn allodynia, and he has no neck pain. An EMG/NCS dated 2/16/17 revealed findings consistent with mild, probable, distal, axonal peripheral neuropathy, a chronic possibly active right C8 radiculopathy, and chronic probably inactive right L5-S1 radiculopathy. An MRI study of the spine dated 3/11/17 revealed cervical spondylosis with advanced C5-6 and C6-7 discovertebral degeneration; C5-6 left-sided mild spinal canal and moderate to severe neural foramina stenosis; C6-7 right-sided mild spinal canal and severe neural foramina stenosis. There is mild thoracic spondylosis with T9-10 moderate spinal canal and severe right neural foraminal stenosis. There is L4-5-disc degeneration without significant spinal canal or neural foramina stenosis. On 3/23/17, Dr. Gerpen saw the claimant for tremor. The tremor is evident in the claimant's right lower extremity at rest is associated with electrophysiological findings diagnostic of a functional tremor and observed while the claimant is standing is most consistent with voluntary motor activity. On 4/20/17, Dr. Jeffords saw the claimant for right arm pain. The pain gradually progressed to a burning type of hypersensitivity that involved the right shoulder and chest and radiates down the right arm into the hand. He is having some pain now on both sides of the upper chest and across the trapezial areas of the beck of his neck. He also has other symptoms that are associated with his right arm pain. He notes that he has issues where his legs do not seem to work properly. He has noted difficulty going up and down stairs and rising from a chair to walk at times. On exam, the claimant ambulates with a mildly wide-based gait with somewhat of a tentative stride; he displays some tremulousness with standing and walking. There is diffuse tenderness throughout the cervical, thoracic and lumbar spine with slight hypersensitivity to light touch. Cervical ROM is full in all directions; lumbar flexion is to 70 degrees; he can extend to 10 degrees. There is full active and passive ROM of the

upper and lower extremities. X-rays of the cervical spine showed degenerative disc disease that was moderate to severe at C5-C6 and C6-C7. The claimant was diagnosed with right arm cervical radiculopathy; moderate to severe left/severe right C6-C7 foraminal stenosis; C5-C6 and C6-C7 disc degeneration; T9-T10 spondylosis with moderate central stenosis with very mild myelopathy; congenital lumbar stenosis; L4-L5 degenerative disc disease with annular tear/disc bulging; mild right L4-L5 foraminal stenosis; mild distal peripheral neuropathy; functional hyperkinesia causing lower extremity tremors. The claimant is having right arm symptoms that are most likely due to cervical radiculopathy; however, he has a multitude of other symptoms that are not explained by the cervical radiculopathy including burning sensation across the chest, tremulousness, headaches. The claimant is a candidate for a two-level anterior cervical discectomy and fusion at C5-6 and C6-7 for his right arm symptoms. On 1/31/18, Dr. Tark saw the claimant for right upper extremity and bilateral foot pain. The claimant rated his pain as 7-10/10. Examination noted redness and edema in the right upper extremity; and diffuse hypersensitivity in the right upper extremity. The claimant was diagnosed with CRPS of right upper limb and generalized anxiety disorder. A spinal cord stimulator (SCS) trial was discussed. On 9/16/19, PA. Jonathan Beck saw the claimant for post-op visit, he underwent L4-5 microdiscectomy for cauda equina. He has some lingering soreness and occasional pain to his low back around the incision, but his biggest issue continues to be weakness in his bilateral feet as well as weakness in his hips and knees. On exam, there is decreased sensation to touch in bilateral lower extremities, worse distally and improving proximally. The claimant is ambulating with a walker. On 12/12/19, Dr. Weaver noted that the claimant continues to struggle with neuropathic pain in his right leg and foot with hypersensitivity in the right leg and foot likely related to nerve injury. On exam, motor strength in the upper extremities is full and symmetric with no pronator drift; motor strength in the lower extremities is notable for continued right foot drop. Sensation is intact throughout all dermatomes. On 2/10/20, Dr. Patel saw the claimant for right arm pain and bilateral leg pain. On exam, right UE: 4/5 handgrip, 4/5 triceps, 4/5 biceps, 4/5 deltoid; right LE: 4-/5 hip flexors, 4-/5 quadriceps, 4/5 hamstrings, 4/5 DF, 4/5 PF; right greater than left LE decreased sensation to light touch/pinprick along L4-S1 dermatomes; decreased ROM of the lumbar spine, TTP along bilateral lowest three segments of lumbar facet joints, pain is reproduced with bilateral facet loading maneuvers, positive SLR. On 3/31/20, Dr. Do saw the claimant for right arm pain, bilateral leg pain, low back pain. On exam, right LE 4/5 hip flexors, 4/5 quadriceps, 4/5 hamstrings, 4-/5 DF, decreased sensation to light touch along L5-S1 dermatomes. On the right UE, allodynia, edema, color changes noted, decreased temperature compared to contralateral extremity. On lumbosacral exam, there is positive facet loading, decreased ROM, tenderness to palpation bilaterally along the lowest three segments of lumbar facet joints; positive SLR on right. An MRI study of the lumbar spine dated 5/12/20 revealed mild disc desiccation and degenerative disc space narrowing of L4-5. There is mild disc bulge with superimposed left-sided disc protrusion which minimally extends along the posterior superior margin of L5. There is mild effacement of the ventral thecal sac as well as encroachment of the left lateral recess. The left neural foramen and right neural foramen demonstrate mild encroachment. There is small right paracentral disc protrusion of L5-S1 without significant central canal encroachment. On 5/26/20, Dr. Do saw the

claimant for right arm pain, bilateral leg pain, and low back pain. On exam, right LE: 4/5 hip flexors, 4/5 quadriceps, 4/5 hamstrings, 4/5 DF; right LE: decreased sensation to light touch/pinprick along L5-S1 dermatome. Right upper extremity allodynia, edema, color changes noted, decreased temperature compared to contralateral extremity. Lumbosacral exam shows positive facet loading, decreased ROM, tenderness to palpation bilaterally along lowest three segments of lumbar facet joints; positive SLR on right. On 6/11/20, Dr. Faulk saw the claimant for follow-up for neoplasm of uncertain behavior on the right proximal radial dorsal forearm. On 5/28/20, Biopsy by Shave Method was performed. The pathology shows melanoma in situ on the right proximal radial dorsal forearm. The claimant underwent excision. On 6/25/20, Dr. Faulk saw the claimant for malignant melanoma in situ on the right proximal radial dorsal forearm. The claimant underwent excision on 6/11/20, the pathology shows no residual melanoma on the right proximal radial dorsal forearm. In a questionnaire dated 8/25/20, Dr. Todd noted the diagnoses as reflex sympathetic dystrophy, insomnia, HTN, anxiety. Restrictions are listed as following: sitting 20 minutes at a time; standing 20 minutes at a time; sit, stand/walk less than 2 hours totally in an 8-hour working day; 10- minute walking in every 30 minutes; occasionally: lifting up to 10 lbs., twisting, bending, stooping, crouching/squatting, climbing stairs; rarely: lifting 20 lbs. and 50 lbs.; never: climbing ladders. The claimant is likely to be off task 25% or more of the time. In conclusion, the claimant has a long-standing history of right upper extremity pain since a melanoma resection in 2016 and associated with complex regional pain syndrome of right upper limb; and also has chronic low back pain due to lumbar stenosis and lumbar DDD and he is s/p underwent L4-5 microdiscectomy for cauda equina; and there is an EMG/NCS study dated 2/16/17 revealed findings consistent with mild, probable, distal, axonal peripheral neuropathy, a chronic possibly active right C8 radiculopathy, and chronic probably inactive right L5-S1 radiculopathy; the claimant also suffers from bilateral lower extremity pain, weakness, and right foot drop as well as lower limb tremulousness and functional hyperkinesia causing lower extremity tremors, peripheral neuropathy; therefore, the claimant's medical history involving multiple musculoskeletal conditions impact the claimant's functionality, and he requires activity restrictions and limitations below.

Sitting: Constantly, up to 30 minutes at a time, up to 6 hours per day
Standing: Occasionally, up to 20 minutes at a time, up to 2 hours per day
Walking: Occasionally, up to 20 minutes at a time, up to 2 hours per day
Lifting: Occasionally up to 10 lbs. BUE
Carrying: Occasionally up to 10 lbs. BUE
Pushing: Occasionally up to 10 lbs. BUE
Pulling: Occasionally up to 10 lbs. BUE
Stooping: Occasionally
Kneeling: Occasionally
Crouching: Occasionally
Crawling: Never
Climbing stairs: Occasionally
Climbing ladders: Never
Reaching: Occasionally overhead; constantly desk and waist levels BUE's

Using lower extremity for foot controls: occasionally RLE; unrestricted LLE
Fine manipulation: occasionally RUE; unrestricted LUE
Simple and firm grasping: occasionally RUE; unrestricted LUE

The listed R&L's apply from 5/8/20 and beyond with re-assessment on or around 5/8/21.

4. **Treatment Opportunities: Is the treatment provided consistent with the standard of care for the apparent level of severity of the condition(s)? Is there any evidence that the claimant is not compliant with treatment that meets the standard of care?**

The treatment provided is consistent with the standard of care for the apparent level of severity of the conditions. The claimant is compliant with treatment that meets the standard of care.

5. **Are there any non-medical circumstances identified in the medical records that may interfere with work-related activities (e.g. workplace conflicts, child or elder care issues, or legal issues)?**

None identified.

6. **Does the medical documentation support that any medical condition alone, or in combination would preclude the claimant from sustained occupational functioning on a full-time basis? Please explain why or why not.**

No, the medical documentation does not support that any medical condition alone, or in combination would preclude the claimant from sustained occupational functioning on a full-time basis. The claimant is capable of sustaining full-time employment within the restrictions and limitations outlined above.

7. **Does the medical evidence support any side effects from the prescribed medications? If yes, please describe the supported impairments and outline how any impairment affects functional capacity.**

No, the medical evidence does not support any side effects from the prescribed medications.

Sincerely,

John Z. Zheng, DO
Physical Medicine & Rehabilitation

Pain Medicine
Medical License CA 14602

ECN
Exam Coordinators Network A division of Genex Services, LLC

**Corporate Office**
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
**Toll Free:** (877) 463-9463
Local: (561) 922-5200
Fax: (561) 392-5881

E-mail: info@ecnime.com • Web: www.ecnime.com

Claimant Name: Darrell Russell
Claim Number: 7259041
Case Number: 161110-1

"I, John Z Zheng, DO, am a physician duly licensed to practice medicine in the State of CA. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

[signature] November 11, 2020

Signature of Physician Date

Medical/Professional License # CA 14602

**From:**Raudales, Karla <Karla.Raudales@genexservices.com>
**Sent:**Wed, 11 Nov 2020 16:01:34 +0000
**To:**VendorReferrals
**Subject:**D. Russell Claim 7259041
**Attachments:**Peer Review.pdf, Invoice.pdf

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Good Morning,

Attached please find the Peer Review and Invoice for the above referenced claimant. Please advise if we can further assist you with this file.

Thank you,

**Karla Raudales**
*Quality Assurance Coordinator*
Exam Coordinators Network, a division of Genex Services
**T**: 877-463-9463
**F**: 561-392-5881

*****Please note my email address has changed to Karla.Raudales@genexservices.com**

**Access our portal at: View My Cases**

All electronic communications from ECN / Genex are confidential, unpublished property of Genex. Do not duplicate or distribute. Use and distribution limited solely to authorized personnel. This document is intended for the use of the individual(s) or entity to which it is addressed, and may contain information that is privileged and confidential, including personal health information, and applicable law may prohibit further disclosure of this information. If the recipient of the message is not the intended addressee, or the employee or agent responsible for delivering this message to the addressee, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this communication in error, please notify the sender. Please note the following from the HIPAA Privacy Rule Standards: A covered entity may disclose protected health information as authorized by and to the extent necessary to comply with laws relating to workers' compensation or other similar programs, established by law, that provide benefits for work-related injuries or illness without regard to fault. Refer to 45 CFR 164.512(l)

All electronic communications from Genex are confidential, unpublished property of Genex. Do not duplicate or distribute. Use and distribution limited solely to authorized personnel. This document is intended for the use of the individual(s) or entity to which it is addressed, and may contain information that is privileged and confidential, including personal health information, and applicable law may prohibit further disclosure of this information. If the recipient of the message is not the intended addressee, or the employee or agent responsible for delivering this message to the addressee, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this communication in error, please notify the sender. Please note the following from the HIPAA Privacy Rule Standards: A covered entity may disclose protected health information as authorized by and to the extent necessary to comply with laws relating to workers' compensation or other similar programs, established by

law, that provide benefits for work-related injuries or illness without regard to fault. Refer to 45 CFR 164.512(l)

**ECN**
Exam Coordinators Network A division of Genex Services, LLC

**Corporate Office**
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
**Toll Free: (877) 463-9463**
Local: (561) 922-5200
Fax: (561) 392-5881
E-mail: info@ecnime.com Web: www.ecnime.com

**Invoice:** **BOCA 95365**

**Date** **11/11/2020**

***Bill To:***

**Jennifer DiMaggio**
**Lincoln Financial-London, KY**
**P.O. Box 7207**
**London, KY 40742**

**Claim #** 7259041
**Date of Loss:** 11/8/2016
**ECN #** 161110-1
**Account #**

**Claimant** Darrell Russell

| | | |
|---|---|---|
| 11/1/2020 | Peer Review - Long Term Disability: Service<br>Provider: John Z Zheng, DO<br>Specialty: PMR/Pain Management | $660.00 |
| | **SubTotal** | $660.00 |
| | **Final Invoice Total** | $660.00 |

***Remit To:***
Exam Coordinators Network
440 E. Swedesford Road
Suite 3000
Wayne, PA 19087

Terms: Net 30 days
Tax Id #: 95-3327434

THANK YOU FOR THE OPPORTUNITY TO PROVIDE THIS SERVICE FOR YOU. PLEASE REMIT PAYMENT PROMPTLY.

Barton C. Solomon
Licensed Georgia and Tennessee
bsolomon@mcmahanfirm.com

# McMAHAN LAW FIRM, LLC

*Fighting for the Injured and Disabled*

700 S. Thornton Avenue
P.O. Box 1607
Dalton, GA 30722
706-217-6118 • 800-317-7723
Fax 706-217-6880

D. Seth Holliday
Licensed Georgia, Tennessee and Illinois
sholliday@mcmahanfirm.com

November 5, 2020

VIA CERTIFIED MAIL RETURN RECEIPT
REQUESTED NO. 7018 1130 0002 0677 7633

Meghan Hennessy
Lincoln Life Assurance Company of Boston
PO Box 7207
London, KY 40742-7207

Re: Darrell Russell
SSN:
Claim No. 7259041

Dear Ms. Hennessy:

Enclosed please find the following exhibits:

Exhibit 8: Partially favorable decision from Social Security Administration dated 11/4/20.

**I respectfully request you make a favorable decision on Mr. Russell's claim.**

If you would like to discuss this claim or have any questions, please do not hesitate to contact my office.

Sincerely,

D. Seth Holliday

List Of Records Subm tted In The Case Of
Darrell Russell
claim number:

| Ex. No. | Contents | No. Pgs. |
|---|---|---|

**Medical records submitted via letter dated August 30, 2020**

Exhibit 1: Medical records from Dr. Todd dated 2/10/20 through 5/26/20. 19

Exhibit 2: Medical records from Georgia Ketamine dated 5/7/19 through 2/6/20. 8

Exhibit 3: Medical records from Georgia Mountain Dermatology dated 5/28/20 through 6/17/20. 22

**Exhibits submitted via letter dated October 21, 2020**

Exhibit 4: Medical records from Summ.t Spine dated 2/10/20 through 5/12/20. 33

Exhibit 5: Medical Assessment Form from Dr. Todd dated 8/25/20. 3

Exhibit 6: Request to Admit. 101

Exhibit 7: Report of Conflict. 112

**Exhibits submitted via letter dated November 5, 2020**

Exhibit 8: Partially favorable decision from Social Security Administration dated 11/4/20. 26

SOCIAL SECURITY ADMINISTRATION

Office of Hearings Operations
National Hearing Center
6th Floor
600 West Madison St
Chicago, IL 60661-2406

Date: November 4, 2020

Darrell Wayne Russell

## Notice of Decision – Partially Favorable

I carefully reviewed the facts of your case and made the enclosed partially favorable decision. Please read this notice and my decision.

Another office will process my decision. That office may ask you for more information. If you do not hear anything within 60 days of the date of this notice, please contact your local office. The contact information for your local office is at the end of this notice.

**If You Disagree With My Decision**

If you disagree with my decision, you may file an appeal with the Appeals Council.

**How To File An Appeal**

To file an appeal, you or your representative must ask in writing that the Appeals Council review my decision. The preferred method for filing your appeal is by using our secure online process available at https://www.ssa.gov/benefits/disability/appeal.html.

You may also use our Request for Review form (HA-520) or write a letter. The form is available at https://www.ssa.gov/forms/ha-520.html. Please put the Social Security number shown above on any appeal you file. You may call (800) 772-1213 with questions.

Please send your request to:

**Appeals Council**
**5107 Leesburg Pike**
**Falls Church, VA 22041-3255**

Form HA-L76-OP1 (03-2010)

**Suspect Social Security Fraud?**
**Please visit http://oig.ssa.gov/r or call · he Inspector General's Fraud Hotline at 1-800-269-0271 (T ΓY 1-866-501-2101).**

See Next Page

**Time Limit To File An Appeal**

You must file your written appeal **within 60 days** of the date you get this notice. The Appeals Council assumes you got this notice 5 days after the date of the notice unless you show you did not get it within the 5-day period.

The Appeals Council will dismiss a late request unless you show you had a good reason for not filing it on time.

**What Else You May Send Us**

You or your representative may send us a written statement about your case. You may also send us new evidence. You should send your written statement and any new evidence **with your appeal**. Sending your written statement and any new evidence with your appeal may help us review your case sooner.

**How An Appeal Works**

The Appeals Council will consider your entire ca e. It will consider all of my decision, even the parts with which you agree. Review can make any part of my decision more or less favorable or unfavorable to you. The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 404 (Subpart J).

The Appeals Council may:

- Deny your appeal,
- Return your case to me or another administrative law judge for a new decision,
- Issue its own decision, or
- Dismiss your case.

The Appeals Council will send you a notice telling you what it decides to do. If the Appeals Council denies your appeal, my decision will become the final decision.

**The Appeals Council May Review My Decision On Its Own**

The Appeals Council may review my decision even if you do not appeal. They may decide to review my decision within 60 days after the date of the decision. The Appeals Council will mail you a notice of review if they decide to review m ' decision.

**When There Is No Appeals Council Review**

If you do not appeal and the Appeals Council does not review my decision on its own, my decision will become final. A final decision can be changed only under special circumstances. You will not have the right to Federal court review.

Form HA-L76-OP1 (03-2010)

See Next Page

**New Application**

You have the right to file a new application at any time, but filing a new application is not the same as appealing this decision. If you disagree with my decision and you file a new application instead of appealing, you might lose some benefits or not qualify for benefits at all. My decision could also be used to deny a new application for benefits if the facts and issues are the same. If you disagree with my decision, you should file an appeal within 60 days.

**If You Have Any Questions**

We invite you to visit our website located at www.socialsecurity.gov to find answers to general questions about social security. You may also ca'l (800) 772-1213 with questions. If you are deaf or hard of hearing, please use our TTY numl er (800) 325-0778.

If you have any other questions, please call or write to any Social Security office. Please have this notice and decision with you. The telephone number of the local office that serves your area is (866) 964-4690. Its address is:

Social Security Administration
Suite 250
200 Chastain Ctr Blvd
Kennesaw, GA 30144-9801

**Please note that Social Security Offices are temporarily closed to the public during the COVID-19 pandemic. You can still get our help by using our online services, writing, or calling us as listed above.**

Denise M. Martin
Administrative Law Judge

Enclosures:
Form HA-L15 (Fee Agreement Approval)
Decision Rationale
Form HA-L39 (Exhibit List)

cc: Andrew Lowman
12 North Main St
Jasper, GA 30143

# SOCIAL SECURITY ADMINISTRATION
## Office of Hearings Operations

## ORDER OF ADMINISTRATIVE LAW JUDGE

| IN THE CASE OF | CLAIM FOR |
|---|---|
| Darrell Wayne Russell (Claimant) | Period of Disability and Disability Insurance Benefits |
| (Wage Earner) | (Social Security Number) |

I approve the fee agreement between the claimant and his representative subject to the condition that the claim results in past-due benefits. My determination is limited to whether the fee agreement meets the statutory conditions for approval and is not otherwise excepted. I neither approve nor disapprove any other aspect of the agreement.

**YOU MAY REQUEST A REVIEW OF THIS ORDER AS INDICATED BELOW**

**Fee Agreement Approval:** You may ask us to review the approval of the fee agreement. If so, write us within 15 days from the day you get this order. Tell us that you disagree with the approval of the agreement and give your reasons. Your representative also has 15 days to write us if he or she does not agree with the approval of the fee agreement. Send your request to this address:

Sheila Lowther
Regional Chief Administrative Law Judge
Atlanta Regional Office – OHO
61 Forsyth Street, Suite 20T10
Atlanta, GA 30303

**Fee Agreement Amount:** You may also ask for a review of the amount of the fee due to the representative under this approved fee agreement. If so, please write directly to me as the deciding Administrative Law Judge within 15 days of the day you are notified of the amount of the fee due to the representative. Your representative also has 15 days to write me if he/she does not agree with the fee amount under the approved agreement.

You should include the social security number(s) shown on this order on any papers that you send us.

/s/ Denise M Martin
Denise M. Martin
Administrative Law Judge

November 4, 2020
Date

Form HA-L15 (03-2007)

Exhibit 8 MLF000004

**SOCIAL SECURITY ADMINISTRATION**
**Office of Hearings Operations**

**DECISION**

| **IN THE CASE OF** | **CLAIM FOR** |
| --- | --- |
| Darrell Wayne Russell (Claimant) | Period of Disability and Disability Insurance Benefits |
| (Wage Earner) | (Social Security Number) |

## JURISDICTION AND PROCEDURAL HISTORY

On December 22, 2016, the claimant filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning June 23, 2016. The claim was denied initially on May 25, 2017, and upon reconsideration on October 10, 2019 (see Exhibit 5F/10-11). Thereafter, the claimant filed a written request fo hearing on October 24, 2019 (20 CFR 404.929 *et seq.*). In accordance with 20 CFR 404.936(c), I recommended that all parties to the hearing appear by telephone due to the extraordinary circumstance of the novel coronavirus pandemic. Due to the pandemic, in-person hearing appearances were not possible, hearing office facilities were closed, and video teleconferencing was not available. All parties agreed to appear at the hearing by telephone (Exhibit 18E).

On September 3, 2020, I held a hearing via telephone (20 CFR 404.936(c)). The claimant appeared and testified by telephone, and I presided over the hearing via telephone. Jacquelyn Schabacker, an impartial vocational expert, also appeared at the hearing. The claimant is represented by Andrew Lowman, an attorney.

The claimant or representative submitted or informed me about all written evidence at least five business days before the date of the claimant's scheduled hearing (20 CFR 404.935(a)).

## ISSUES

The issue is whether the claimant is disabled under sections 216(i) and 223(d) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in dea h or that has lasted or can be expected to last for a continuous period of not less than 12 months.

There is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2022. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

See Next Page

After careful consideration of all the evidence, I conclude that the claimant was not disabled prior to September 4, 2019, but became disabled on that date and has continued to be disabled through the date of this decision. I also find that the insured status requirements of the Social Security Act were met as of the date disability is established.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, I must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574 and 404.1575). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, I must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1522; Social Security Rulings (SSRs) 85-28, and 16-3p). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, I must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 404.1509), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, I must first determine the claimant's residual functional capacity (20 CFR 404.1520(e)). An individual's residual

See Next Page

functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, I must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e) and 404.1545; SSR 96-8p).

Next, I must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b) and 404.1565). If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g)), I must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that he claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512 and 404.1560(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, I make the following findings:

**1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.**

**2. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq.*).**

**3. Since the alleged onset date of disability, June 23, 2016, the claimant has had the following severe impairments: complex regional pain syndrome ("CRPS"); multilevel disc disease; obesity; probable distal axonal peripheral neuropathy; chronic possible active right C8 radiculopathy; chronic probably inactive right L5-S1 radiculopathy; hypertension; gastroesophageal reflux disease ("GERD"), and a history of melanoma (20 CFR 404.1520(c); and SSRs 03-2p & 19-2p). Since September 4, 2019, the claimant also had a severe impairment of lumbar postlaminectomy syndrome.**

The above medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28.

See Next Page

The claimant alleged that he could not work because he experienced depression. He testified that he had crying spells once weekly, was depressed, and isolated himself from people. He testified that he had no friends, and he did not leave his house.

Overall, the claimant had normal mental status examination signs (Exhibits 5F, 11F, 13F & 19F). His primary medical care providers prescribed medication, and before the claimant lost health insurance coverage, he did not report recurring mental symptoms or had abnormal mental status examination signs (Exhibits 5F, 11F, 13F & 19F). Moreover, the claimant reported improvement in his mood that was incidental to using ketamine to treat leg pain (Exhibits 13F & 19F).

In April 2019, the claimant attended a state agency psychological consultative examination. He again had normal mental status examination signs, including no observed impairment in his ability to remember or to concentrate (Exhibit 11F). He reported using cannabis, and the consultative examination assessed cannabis use disorder (Exhibit 11F). He rated the claimant's Global Assessment Functioning ("GAF") score at 80 (Exhibit 11F), indicating no more than transient symptoms, if any are present, that are e: pectable reactions to psychosocial stressors. This GAF score is persuasive as an assessment o. the claimant's mental functioning because it is supported by the mental status examination findings. This GAF score is consistent with the treatment records that show few recurring mental symptoms or abnormal mental status findings and the claimant's testimony indicating that he was able to perform activities of daily living. The claimant testified that he did some chores, cooks some meals, watched television, and shopped for groceries three times a month. His description of his activities of daily living indicate that they were limited because of his pain and other physical symptoms rather than because of allegedly disabling mental symptoms.

The claimant's medically determinable mental impairment of depressive disorder, anxiety disorder, and cannabis use disorder do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are, therefore, nonsevere impairments in this claim.

In making this finding, I considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or manage herself. The medical records, written reports, and testimony d :monstrate that the claimant had mild limitation with understanding, remembering, or applying i.formation; interacting with others; concentrating, persisting, or maintaining pace; and adapting or manage himself. Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas, neurocognitive disorder is a nonsevere impairment in this claim (20 CFR 404.1520a(d)(1)).

The opinions of the state agency psychological consultants that the claimant had mild degree of severity because of mental impairment and that he could perform simple and complex tasks

See Next Page

(Exhibits 1A, 3A & 11F) are persuasive in that the record as a whole supports and are consistent with these opinions.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects tl e degree of limitation I found in the "paragraph B" mental function analysis.

**4. Since June 23, 2016, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).**

The medical evidence of record fails to establish the requisite criteria necessary to meet or equal any one of the listings enumerated in (20 CFR, Subpart P, Appendix 1) (the Listings), whether considered singly or in combination. In reaching this conclusion, I considered all of the listings found in Appendix 1, including listings 1.04 (disorder of the spine) and 11.04 (peripheral neuropathy), even considering the claimant's body habitus (SSR 19-2p). In addition, no acceptable medical source has mentioned findings equivalent in severity to the criteria of these impairments, or any other listed impairment.

The medical records fail to meet or medically equal the criteria of Listing 1.04 because they do not satisfy the threshold criterion requiring evidence of compromise of a nerve root or the spinal cord. X-rays showed mild cervical and lumbar degenerative disc disease (Exhibits 4F-5F, 14F & 23F). The claimant had mixed signs of positive and negative straight leg raise tests, normal lower extremity sensory function, normal and antalgic gait, full strength rated at 5/5 in the lower extremities, limited spinal ranges of motion, and ntact reflexes (Exhibits 3F-8F, 12F & 25F). He underwent emergency micro-discectomy in September 2019, and he had improved lumbar clinical signs postoperatively (Exhibits 14F, 19F & 25F).

The claimant developed injury to his right arm after he underwent melanoma excision in 2015 (Exhibits 1F, 3F-8F, 12F-13F, 19F & 23F). He had decreased right arm strength rated at 4/5 and 5/5; hypersensitivity to touch; and normal and abnormal EMG reports with **findings most consistent with mild *probable* distal axonal peripheral neuropathy, chronic *possibly* active right C8 radiculopathy, and chronic *probably* inactive right L5-S1 radiculopathy (Exhibits 4F-5F). Clinically, record from the Mayo Clinic show that he had a tremor that appeared to be voluntary, but it increased the longer the claimant stood (Exhibits 4F-5F).**

The medical records of regarding CRPS and probable or possible neuropathies do not meet or medically equal the criteria of Listing 11.14 because there is no evidence of disorganization of motor function in two extremities that resulted in extreme limitation in his ability to stand up from a seated position, balance while standing or walking, or using the upper extremities. As discussed herein, the claimant had mixed gait signs, and he was able to arise from seated position

See Ne: t Page

(Exhibit 12F). He did not always have a cane when he was examined, and he sometime had antalgic gait. He had signs of intact sensation in the lower extremities despite testimony that he had abnormal sensation as if his right leg was dead. Moreover, as required for Section 11.14B of the listing, the medical records do not demonstrate marked limitation in physical functioning and in one of the following: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.

**5. After careful consideration of the entire record, I find that prior to September 4, 2019, the date the claimant became disabled, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with allowance to use a cane for ambulation and for a sit-stand option to alternate position every 60 minutes. He could have occasionally climbed ramps and stairs, balanced, stooped, kneeled, crouched, and crawled, but he should not have climbed ladders, ropes, or scaffolds. He should not have reached overhead with the right upper extremity, but he could have occasionally reached in front and laterally. He should have frequently but not repetitively handled and fingered objects with the right upper extremity. He could have occasionally pushed and pulled with the right upper extremity. He should have avoided exposure to unprotected heights and dangerous moving machinery.**

In making this finding, I considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527.

In considering the claimant's symptoms, I must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I considered other evidence in the record to determine if the claimant's symptoms limited the ability to do work-related activities.

The claimant alleged that he was unable to work because of the effects of surgery to remove melanoma and disc disease. The claimant testified that experienced chronic pain to the area around his right underarm after he underwent surgery to excise melanoma. He described the pain as a sunburn. As well as the skin, the claimant testified that he experienced pain inside his right arm, and he had difficulty extending his arm or reaching. He could reach overhead or grab items, and he stated he experienced pain from the moment of the action to the next day. The pain radiating down his arm into his fingers. He testified that he kept his arm against his body. He testified that he had poor grip compared to his left hand and that he could not handle small

See Next Page

items well with his right hand. The claimant stated that he dropped objects. He testified that sometimes, his arm swelled or turned purple.

The claimant stated that he experienced back pain related to disc disease. He testified that he underwent spinal surgery, and afterward, he developed right foot drop. He testified that since surgery, he lost feeling in both legs. He testified, though, that some sensation returned to the left leg. However, the claimant testified that he experienced the sensation of his leg falling asleep. He stated that he had no sensation in his right leg, and it seemed dead. The claimant testified that he could move the right leg, but he could not feel it. He testified that he had difficulty climbing steps, and he had fallen. The claimant thought he could stand up to 20 minutes at a time. The claimant testified that he used medication. He also testified that his health insurance provider denied coverage for a spinal cord stimulator.

The claimant testified that the experienced tremors that stopped when he underwent infusions in mid to late 2019.

The claimant testified that he experienced side effects of medications. For example, he testified that he thought his teeth fell out or that he had them removed because of the effect of his medications. He testified that he had dentures.

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully supported prior to September 4, 2019, for the reasons explained in this decision.

Years before the alleged onset date, in 2010, the claimant had a history of degenerative changes in his lumbar spine, for which his treatment provider considered radiofrequency ablation (Exhibit 18F).

In 2015, the claimant developed melanoma on his chest, and he underwent excision of the melanoma (Exhibits 1F, 21F-22F & 24F). In 2015, a biopsy showed residual melanoma, and he had the abnormal tissue removal (Exhibits 1F & 24F). In April 2016, he reported that he experienced right axilla pain that worsened when he lifted his arm (Exhibit 1F). An ultrasound of the right upper extremity performed in July 2016 was normal. A bone scan performed in November 2016 was normal (Exhibit 15F). The claimant also had a normal MRI of his brain (Exhibit 1F). Laboratory studies were negative for abnormality, and he was discharged from Winship Cancer Institute at Emory University with instruction to return as needed (Exhibit 1F).

The claimant reported in September 2019 to staff at Highlands Rivers Community Service Board that he experienced anxiety and depression around the time that he had treatment for melanoma (Exhibit 2F). He had one psychiatric session with Yogesh Goswami, M.D., who noted that the claimant had depressed mood. However, Dr. Goswami reported otherwise normal mental status examination signs regarding the claimant's thought process, thought content, memory, concentration, insight, judgment, and perception. He noted that the claimant used Neurontin for

See Next Page

his nerve pain, and he advised that the claimant use Cymbalta 60 mg, (increased from 30 mg) (Exhibit 2F, duplicated in Exhibit 19F).

In November 2016, the claimant sought treatment from neurologist Barry MacCasland, M.D., regarding his right arm pain (Exhibit 3F). On examination, Dr. MacCasland noted that the claimant had normal strength and intact reflexes, but the claimant reported hyperesthesia in response to rubbing over right arm. He had pinprick allodynia over multiple locations in right arm. He assessed reflex symptom dystrophy ("RSD") of the right upper extremity and hypertension. Dr. MacCasland ordered other studies, and he noted that an EMG reported dated February 8, 2017, showed no evidence of neuropathy (Exhibit 3F). That day, Dr. MacCasland saw the claimant a second and final time, and he reported that the claimant was convinced he had CRPS (Exhibit 3F). Dr. MacCasland noted that a bone scan was negative for abnormality, and a stellate ganglion block injection caused no effect. However, Dr. MacCasland noted that the second procedure strangely caused benefit of 80 percent relief as a C7 nerve root block injection. Dr. MacCasland considered another assessment of radiculopathy, but he also noted that pain spread beyond the C7 dermatome and that the claimant reported sunburn allodynia but no neck pain. Dr. MacCasland considered that an MRI study of the brachial plexus showed no nerve root problems (Exhibit 3F, see also Exhibit 23F). The MRI report also showed no focal mass lesion, adenopathy, normal right upper extremity, and cervical disc disease (Exhibit 23F). Dr. MacCasland considered that the claimant also reported worsening mysterious symptoms, such as a tremor in his legs that did not go away with distraction testing (Exhibit 3F). He noted that other motions suggested spasticity. The claimant reported that he used a cane because he had poor balance. Dr. MacCasland did not know does not know what was the cause of the claimant's symptoms. He noted that his initial assessment of RSD was not correct. He noted that the claimant's symptoms and signs did not match any phenomena of paraneoplastic syndrome. He advised medication management with clonazepam 1.0 mg twice daily to relax the tremor away, lisinopril, hydroxyzine, and oxycodone, and he referred the claimant to the physicians at the Mayo Clinic (Exhibit 3F).

A week later, the claimant stated treatment at the Mayo Clinic (Exhibits 4F-5F). An EMG performed on February 16, 2017, was abnormal and showed **findings most consistent with mild probable distal axonal peripheral neuropathy, chronic possibly active right C8 radiculopathy, and chronic probably inactive right L5-S1 radiculopathy (Exhibit 4F, duplicated in Exhibit 5F). In an addendum to the EMG report, Jay van Gerpen, M.D., noted that the claimant reported right arm pain and leg weakness, and symptoms described as "brain zaps," photophobia, and abnormal sounds (Exhibit 5F). On examination, he stood a couple of minutes and the amplitude of shaking in his lower extremities increased. The claimant also had tonic motor activity. He had** semi-rhythmical bursts that lasted hundreds of milliseconds. After standing seven minutes, he had tremors measured at 7 Hz in the left foot. With his eyes closed and while standing, the Romberg sign was absent, and more bursts were evident. The impression was signs or findings overall consistent with functional hyperkinesis, and unequivocally, he had no organic orthostatic hyperkinesis (Exhibit 5F).

On examination that day, the claimant had slightly increased tone in his legs (Exhibit 5F). He had reduced cold sensation in the knees. His arm reflexes were normal. He had trace reflexes in

See Next Page

his knees and ankles. He had no clonus or crosse l adduction. He was tremulous on heel-to-shin testing. He had a mild wide-based gait and tentative stride. He had normal arm swing. He was tremulous when standing. He had high aches. The exam had features of myelopathy, tremulousness, and headache. The examining neurologist noted a difficult scenario because the findings were difficult to localize to a single area or cause. Clinically, it seemed that he had CRPS or RSD, but as Dr. MacCasland noted, he had normal bone scan. The lack of response to stellate ganglion blocks made these assessments less likely. He had no abnormal EMG features to suggest peripheral etiology (Exhibit 5F). Consequently, more EMGs and an MRI were ordered. He also had an order for a tremor study because the claimant's tremors were responsive to clonazepam (Exhibit 5F).

Later, an EMG performed in March 2017 showed a **functional tremor in right lower extremity and** electromyographical activity while standing that consistent with voluntary motor activity (Exhibit 5F/9). **An MRI of the spinal column performed on March 11, 2017, showed cervical spondylosis with advanced C5-C7 degenerative disc disease, mild spondylosis at T9-T10, and L4-5 degenerative disc disease (Exhibit 4F, duplicated in Exhibit 5F). Disc decompression was not necessary or advised, and his treatment consisted of indomethacin for headaches and a proton pump inhibitior ("PPI") (Exhibits 5F/24 & 17F). He had no features consistent with** cervicogenic headaches, which were unusual symptoms for disc disease (Exhibit 5F/24).

In March 2017, the claimant sought treatment from Sanjay Serrao, D.O., and he reported that he experienced anxiety and right arm pain (Exhibits 6F & 23F). On examination, the skin on the claimant's right arm was mottled, but he had no scars or ulcers. He displayed anxious mood. He weighed 213 pounds. Dr. Serrao advised the claimant to follow up at the Mayo Clinic. Dr. Serrao noted that his hypertension was stable on medication. Dr. Serrao advised the claimant to resume Atarax for anxiety and to use the same dose of Cymbalta at 60 mg that he previously used (Exhibit 6F).

In April 2017, the claimant had a psychological evaluation with Andrea Elkon, Ph.D., for a spinal cord stimulator (Exhibit 7F). Dr. Elkon noted normal mental status examination signs and assessed generalized anxiety disorder, and she psychologically cleared the claimant for the stimulator (Exhibit 7F).

In May 2017, the claimant sought treatment at Pain Solutions Treatment Center for his right arm pain (Exhibits 7F & 8F). His treatment plan consisted of medication management, such as with weekly application of the Butrans patch. He had signs of normal gait and neurological function. He had right arm and hand pseudomotor changes, limb atrophy, shiny skin, allodynia, hair changes, and nail changes (Exhibits 7F & 8F). He also reported pain with shoulder abduction (Exhibits 7F & 8F).

The claimant followed up with Dr. Serrao in January 2018, 10 months after his last appointment with him (Exhibit 6F). He reported that he lost insurance coverage and instead sought treatment from Good Samaritan Clinic (Exhibit 6F). He reported that he had right arm pain and he had planned to have a spinal cord stimulator implanted. He reported using no medications at the time. His blood pressure was 119/88mmHg, and he weighed 226 pounds. Dr. Serrao did not

See Next Page

examine the claimant, and he referred the claimant to a pain management clinic. He renewed medications for hypertension. He prescribed Keflex for folliculitis on the claimant's arms (Exhibit 6F).

Similar to the gap in treatment with Dr. Serrao, the claimant resumed treatment at Pain Solutions Treatment in January 2018 after an absence of eight months (Exhibits 7F & 8F). The claimant explained his absence was because he had no health insurance coverage at that time. On examination in January 2018, his right arm was swollen, and he was hypersensitive to touch. Marvin Tark, M.D., recommended a trial of a spinal cord stimulator (Exhibit 7F & 8F).

The claimant changed primary care physicians in February 2018, and he began seeking treatment at Medical Associates of North Georgia (Exhibit 13F). He reported that he experienced anxiety and depression and that his prior medical care provider prescribed Cymbalta and Ambien (Exhibit 13F). He reported had he was supposed to get a spinal cord stimulator, and he used no medication to alleviate his pain. Anne Todd, M.D., noted no abnormal examination signs except the claimant's weight at 227 pounds. He had normal posture, normal mood and other psychological signs. Dr. Todd prescribed half a tablet of clonazepam 2 mg three times a day and paroxetine 10 mg. The claimant had appointments with Dr. Todd about once every three months, and Dr. Todd's office visit noted included mostly normal examination signs. In April 2018, the claimant reported good control of his symptoms and that gabapentin caused tiredness (Exhibit 13F). He reported no dental side effects to Dr. Todd similar to what he alleged at the hearing. The claimant reported in August 2018 that he could not get the spinal cord stimulator because of his insurance coverage. He reported worsening led symptoms. He reported in October 2018 that he had dentures because of a gum infection (Exhibit 13F). However, the medical records do not show that his dentures or reported gum infection were related to the claimant's use of medications. He reported no side effects from psychoactive medications, such as clonazepam and duloxetine (Exhibit 13F).

In April 2019, the claimant attended state agency psychological and medical consultative examinations. He had normal mental status examination signs, including no observed impairment in his ability to remember or to concentrate (Exhibit 11F). He reported using cannabis, and the consultative examination assessed cannabis use disorder (Exhibit 11F). He rated the claimant's Global Assessment Functioning ("GAF") score at 80 (Exhibit 11F), indicating no more than transient symptoms, if a: y are present, that are expectable reactions to psychosocial stressors. This GAF score is persuasive as an assessment of the claimant's mental functioning because it is supported by the mental status examination findings and consistent with the treatment records that show few recurring mental symptoms or abnormal mental status findings. The claimant had limited range of motion in his lumbar spine, right shoulder, and right arm (Exhibit 12F). X-rays showed no abnormal findings in the lumbar spine or right shoulder. His right arm strength was 4/5, but he had full strength in all other extremities. He had full pinch strength, too, rated at 5/5. His gross manipulative skills were intact. The claimant had intact sensation in all extremities. He had antalgic gait, and he slightly dragged his right foot diagonally. He used no assistive device, though. The claimant had no muscle atrophy and no edema. The consultative examiner assessed impairments of CRPS of the right upper extremity and GERD. He reported no mental status examination signs, but he assessed depression and

See Next Page

anxiety, apparently related to subjective reports rather than based on objective signs or findings (Exhibit 12F).

Through 2019, Dr. Todd noted that the claimant had normal examination signs, and she provided conservative treatment of prescribed or adjusting medications (Exhibit 19F). The claimant reported in July 2019 that ketamine infusions significantly helped his leg pain and mood, but the right upper extremity symptoms persisted (Exhib t 19F). He continued to have treatment for GERD (Exhibits 13F & 19F). He reported that he experienced constipation, too (Exhibit 19F). Records from Georgia Ketamine show that the claimant reported that his pain was much better (Exhibit 20F).

These medical records show that the claimant experienced right arm weakness and hypersensitivity to touch, and he reported pain in his right arm after he underwent excision of melanoma on his chest in 2016. He had muscle spasms, mixed (positive and negative) straight leg raise test tests, and limitation ranges of motion of the spine related to disc disease. The claimant had normal lower extremity strength, reflexes, and sensation, and he sometimes had antalgic gait. Neurological work up, including the records from the Mayo Clinic, show that the claimant had mixed signs and findings regarding his symptoms of leg tremors. In 2017, he had negative EMGs as well as an EMG that showed **findings most consistent with mild *probable* distal axonal peripheral neuropathy, chronic *possibly* active right C8 radiculopathy, and chronic *probably* inactive right L5-S1 radiculopathy (Exhibits 4F-5F). The neurology records from the Mayo Clinic show that the tremors were voluntary activity, and the records also indicate that the activity increased when he stood for increasing periods (Exhibits 4F-5F). The claimant's treatment before and after he lost his insurance coverage was conservative with medication management. He reported sporadic tiredness from medication, such as in April 2018, when he reported good control of symptoms with gabapentin, which caused tiredness (Exhibit 1 lF). However, the medical records do not support the claimant's testimony that his teeth were removed (or fell out) because of medications. Surgery was not recommended until September 4, 2019, when, as discussed herein, he underwent emergency lumbar micro-discectomy (Exhibits 14F & 19F). With these impairments and limiting signs, findings, and symptoms, the claimant was able to cook some meals, do some chores, and shop for groceries three times a month.**

**The medical records document signs, symptoms, and findings of difficulty walking and standing independently, lifting and carrying heavy objects, particularly with his right arm, and performing postural and manipulative activities. The medical records do not, however, support the claimant's allegations of lack of sensation in his legs, dragging of his right foot, or deficits in his right arm such that he dropped objects. Considering the objective signs and findings, the claimant's body habitus, the symptoms, the treatment modalities utilized, responses to treatment, and activities of daily living, the records show that the claimant could perform sedentary work, requiring him to stand and/or walk two of eight hours and sit the remainder of the work period (SSR 19-2p).** He should be allowed to use a cane for ambulation and have a sit-stand option to alternate position every 60 minutes. Because of the symptoms of right arm CRPS and disc disease, he should **lift no more than 10 pounds at a time and occasionally lift or carrying articles like docket files, ledgers, and small tools.**

See Next Page

**Likewise, the evidence surrounding these impairments demonstrate that** he should not reach overhead with the right upper extremity, but he could occasionally reach in front and laterally. He should frequently but not repetitively handle and finger objects with the right upper extremity. He could occasionally push and pull with the right upper extremity. The right arm strength signs rated at 4/5 and 5/5 do not support the imposition of manipulative limitations. He could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but he should not climb ladders, ropes, or scaffolds. He should avoid exposure to unprotected heights and dangerous moving machinery.

As for the medical opinions and prior administrative medical findings, pursuant to 20 CFR 404.1520c(a), I did not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, including those from the claimant's medical sources However, pursuant to 20 CFR 404.1520c, I fully considered the medical opinions and prior administrative medical findings in this claim.

The opinion of the state agency medical consultant that the claimant had limitation right arm reaching and prolonged walking and standing (Exhibit 11F) is persuasive. The records developed at the hearing level, such as EMG and MRI reports and the clinical signs in the extremity and spine, support and is consistent with this portion of the opinion. The remaining portion of his opinion that the claimant had no limitation with pushing, pulling, grasping, fingering, or sitting (Exhibit 11F) is not persuasive because they evidence developed at the hearing level shows that the claimant's right arm strength rated at 4/5 to 5/5, possible or probable neuropathies, and disc disease certainly did cause limitation with these activities. However, the record does not support greater functional limitation than provided in this residual functional capacity for the period from the alleged onset date to September 3, 2019.

The opinions of the state agency nonexamining medical consultants that the claimant could perform medium work with postural and manipulative limitations (Exhibits 1A & 3A) are not persuasive. Again, the right arm strength signs rated at 4/5 to 5/5, the EMG and MRI findings, and the clinical signs of disc disease, as well as obesity, support the residual functional capacity for sedentary work and do not support these nonexamining consultants' opinions (Exhibits 1A & 3A).

In August 2020, Dr. Todd, the claimant's primary care physician since 2018, opined that the claimant could not even complete a day (or eight hours) of sedentary work because he could not sit, stand, or walk more than two hours each, because he needed breaks every 30 minutes to walk for 10, minutes, because he needed three unscheduled breaks for an undetermined time, and because he had medication side effects (Exhibits 26F & 27F). Dr. Todd's opinion is not persuasive because her overall normal examination signs do not support her opinion (Exhibits 13F & 19F). Additionally, while they show that the claimant had functional limitations that relegated the claimant to a reduced range of sedentary work, the treatment records from the claimant's other physicians, such as those at the Mayo Clinic, Dr. Serrao, and Georgia Ketamine, for example, and the state agency consultative examiner's (Exhibits 4F-8F, 12F, 20F & 23F), are not consistent with the degree of limitation that Dr. Todd opined such that the claimant could not complete a work day prior to September 4, 2019.

See Next Page

Based on the foregoing, I find the claimant has the above residual functional capacity assessment, which is supported by the objective signs and findings, the documented symptoms, the treatment modalities utilized, the responses to treatment, activities of daily living, and persuasive opinions.

**6. After careful consideration of the entire record, I find that beginning on September 4, 2019, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with allowance to use a cane for ambulation and for a sit-stand option to alternate position every 60 minutes. He could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but he should not climb ladders, ropes, or scaffolds. He should not reached overhead with the right upper extremity, but he could occasionally reach in front and laterally. He should frequently but not repetitively handle and finger objects with the right upper extremity. He could occasionally push and pull with the right upper extremity. He should avoid exposure to unprotected heights and dangerous moving machinery. The claimant needed to take unscheduled work breaks in excess of the regular work breaks (of two 15-minute breaks and a 30-minute lunch period), and he would end up being off-task more than 20 percent of the work period.**

In reaching this conclusion, I find that beginning on September 4, 2019, the claimant's allegations regarding his symptoms and limitations are consistent with the evidence. On September 4, 2019, the claimant sought emergency department treatment for back pain and leg pain that caused difficulty walking (Exhibit 14F). He had used meloxicam and steroids, and he reported that his pain improved until the night before, when his back "locked" (Exhibit 14F). An MRI of the lumbar spine showed lumbar spondylosis that was most advanced at L4-5 with a large herniated extrusion contributing to spinal cord stenosis (Exhibit 14F). The claimant was transported to Northside Forsyth for an emergency microdiscectomy (Exhibit 14F). Postoperative notes from Medical Associates of North Georgia dated October 2019 show that the claimant was progressing as expected (Exhibit 19F). He did not have abnormal postoperative examination signs (Exhibit 19F).

The claimant resumed dermatological care in 2020 when he reported that he found moles on his back (Exhibit 21F). A June 2020 biopsy report shows that he had melanoma in situ on the right proximal radial dorsal forearm, and he underwen excision (Exhibit 21F). A subsequent biopsy showed no residual melanoma in situ (Exhibit 21F).

In July 2020, the claimant reported to Kamal Kabakibou, M.D., of Center for Pain Management that he was trying to get insurance approval for a spinal cord stimulator (Exhibit 25F). He was hypersensitive to touch in the right arm, but he had no instability. He had lumbar spinal spasms, and the surgical scar was tender. The straight leg raise tests were positive. The claimant had full strength rated at 5/5 in all extremities, including the right arm. Dr. Kabakibou suggested that the claimant use a dorsal column stimulator for his leg pain, and he prescribed Percocet while discontinuing Horizant and ropinirole (Exhibit 25F).

The claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are consistent with the objective medical evidence and other evidence. The medical records show that beginning September 4, 2019, in addition to the ongoing symptoms related to

See Next Page

CRPS of the right arm, multilevel disc disease, probably or possible neuropathies, and obesity, the claimant's lumbar disc disease progressed to the extent that overnight, his back locked, and he needed emergency micro-discectomy. His postoperative progress, but he had lumbar spinal spasms, positive straight leg raise tests, and leg pain, for which Dr. Kabakibou advised a dorsal column stimulator (Exhibit 25F).

The medical records show that beginning September 4, 2019, the claimant's signs and symptoms related to lumbar post laminectomy syndrome, combined with the limiting effects of his other ongoing impairments, produced greater limitations that diminished his ability to perform even the previously discussed reduced range of sedentary work. Starting September 4, 2019, the claimant needed to take unscheduled work breaks in excess of the regular work breaks (of two 15-minute breaks and a 30-minute lunch period) in order to alleviate pain, muscle spasms, right arm hypersensitivity. Because of the excessive work breaks, he would end up being off-task more than 20 percent of the work period as he stopped and resumed work.

The opinion of the state agency medical consultant that the claimant had limitation right arm reaching and prolonged walking and standing (Exhibit 11F) is still persuasive because the medical evidence developed after September 4, 2019, does not detract support from this opinion. Similarly, the evidence developed after September 4, 2019, still does not support the remaining portion of his opinion that the claimant had no limitation with pushing, pulling, grasping, fingering, or sitting (Exhibit 11F), and this portion of the opinion is not persuasive.

The opinions of the state agency nonexamining medical consultants that the claimant could perform medium work with postural and manipulative limitations (Exhibits 1A & 3A) are again not persuasive. The evidence of disc disease, such as muscle spasms after surgery, support that the claimant could perform no greater than the demands of the sedentary level of exertion and do not support these nonexamining consultants' opinions (Exhibits 1A & 3A).

Dr. Todd's medical statements have the similar effect as the residual functional capacity starting September 4, 2019 in that both this residual functional capacity and her opinions indicate that the claimant could not sustain a reduced range of sedentary work on a full-time basis throughout the day (Exhibits 26F & 27F). However, Dr. Todd's opinion is not persuasive because of apparent internal inconsistencies. For example, she opined that he did not need a cane or other assistive device even though she opined that he could not even stand or walk for as much as two hours each and that he could only stand 20 minutes at a time or walk only one block (Exhibits 26F & 27F). When asked to support opinions with findings, she responded "extensive medical record," but Dr. Todd's "extensive" medical records document normal examination signs that do not support her very own opinions (Exhibits 13F & 19F). As previously discussed, other medical source records (e.g., the Mayo Clinic, Dr. Serrao, Georgia Ketamine, Dr. Kabakibou, Medical Associates of North Georgia, and the state agency consultative examiner) (Exhibits 4F-8F, 12F, 19F-21F, 23F & 25F), are not consistent with the extreme degree of limitation that Dr. Todd opined. However, these records support the residual functional capacity and additional limitations he had starting September 4, 2019, requiring addition breaks.

Based on the foregoing, I find the claimant has the above residual functional capacity assessment, which is supported by the objective signs and findings, the documented symptoms,

See Next Page

the treatment modalities utilized, the responses to treatment, activities of daily living, and persuasive opinions.

**7. Since June 23, 2016, the claimant has been unable to perform any past relevant work (20 CFR 404.1565).**

The claimant has past relevant work as a production supervisor and a lumberyard supervisor. As required by SSR 82-62, this work was substantial gainful activity, was performed long enough for the claimant to achieve average performance, and was performed within the relevant period. The demands of the claimant's past relevant work exceed the residual functional capacity. Accordingly, the claimant is unable to perform past relevant work as actually or generally performed.

**8. Prior to the established disability onset date, the claimant was a younger individual age 18-44. The claimant's age category has not changed since the established disability onset date (20 CFR 404.1563).**

**9. The claimant has at least a high school education (20 CFR 404.1564).**

**10. Prior to September 4, 2019, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. Beginning on September 4, 2019, the claimant has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

I accept as reasonable the testimony of the vocational expert testified that the claimant acquired no skills from past relevant work that transferred to sedentary work.

**11. Prior to September 4, 2019, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).**

In determining whether a successful adjustment to other work can be made, I must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

See Next Page

Prior to September 4, 2019, if the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.28. However, the claimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations. To determine the extent to which these limitations eroded the unskilled sedentary occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would have been able to perform the job of surveillance system monitor (DOT No. 379.367-010), which is a unskilled, sedentary occupation with specific vocational preparation factor ("SVP") 2, with approximately 4,000 jobs in the national economy.[1]

Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. The vocational expert testified that the DOT does not contemplate limitations involving the difference between ladders, ropes, or scaffolds or ramps or scaffolds; the use of a cane; overhead reaching; use of just one upper extremity; or a sit-stand option. However, the vocational expert testified that she based her responses on her professional experience, research, education, and working with employees, employers, staffing agencies, temporary worker agencies, and from her work conducting market studies and job search studies on a regular basis. This explanation is acceptable.

Based on the testimony of the vocational expert, I conclude that, prior to the established onset date of disability, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. Prior to September 4, 2019, a finding of "not disabled" is, therefore, appropriate under the framework of the above-cited rule in the Medical-Vocational Guidelines.

**12. Beginning on September 4, 2019, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).**

Beginning on September 4, 2019, if the claimant had the residual functional capacity to perform the full range of sedentary work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.28. To determine the extent to which the claimant's additional limitations erode the unskilled sedentary occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors there are no jobs in the national economy that the individual could perform.

[1] The SVP of a job is the amount of time it takes to learn the techniques, acquire the information, and develop the facility for average performance in a specific job-worker situation.

See Next Page

Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, a finding of "disabled" is appropriate under the framework of the above-cited rule.

**13. The claimant was not disabled prior to September 4, 2019, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g)).**

## DECISION

Based on the application for a period of disability and disability insurance benefits filed on December 22, 2016, the claimant has been disabled under sections 216(i) and 223(d) of the Social Security Act beginning on September 4, 2019.

Medical improvement is expected with appropriate treatment. Consequently, a continuing disability review is recommended in 24 months.

/s/ Denise M Martin

Denise M. Martin
Administrative Law Judge

November 4, 2020
Date

# LIST OF EXHIBITS

## Payment Documents/Decisions

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO 1A | Disability Determination Explanation | | 04/08/2019 | 14 |
| HO 2A | Disability Determination Transmittal | | 05/02/2019 | 1 |
| HO 3A | Disability Determination Explanation | | 09/14/2019 | 18 |
| HO 4A | Disability Determination Transmittal | | 10/10/2019 | 1 |

## Jurisdictional Documents/Notices

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO 1B | Appointment of Representative | | 08/21/2018 | 2 |
| HO 2B | Representative Fee Agreement | | 08/21/2018 | 3 |
| HO 3B | Request for Reconsideration | | 05/13/2019 | 1 |
| HO 4B | T2 Disability Reconsideration Notice | | 10/10/2019 | 6 |
| HO 5B | Request for Hearing by ALJ | | 10/24/2019 | 2 |
| HO 6B | Request for Hearing Acknowledgement Letter | | 11/04/2019 | 15 |
| HO 7B | Transfer Request for Hearing | | 03/05/2020 | 7 |
| HO 8B | Hearing Notice | | 07/07/2020 | 25 |
| HO 9B | Waive Advance Notice of Hearing | | 08/28/2020 | 2 |

## Non-Disability Development

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO 1D | Misc Non-Disability Development | | 05/17/2017 | 2 |

HA-L39 (03-2007)

| | | | |
|---|---|---|---|
| HO 2D | Application for Disability Insurance Benefits | 12/10/2018 | 7 |
| HO 3D | Certified Earnings Records | 03/19/2020 | 2 |
| HO 4D | Detailed Earnings Query | 03/20/2020 | 5 |
| HO 5D | Summary Earnings Query | 03/20/2020 | 1 |
| HO 6D | New Hire, Quarter Wage, Unemployment Query (NDNH) | 03/20/2020 | 1 |
| HO 7D | DISCO DIB Insured Status Report | 08/27/2020 | 4 |
| HO 8D | New Hire, Quarter Wage, Unemployment Query (NDNH) | 08/27/2020 | 1 |
| HO 9D | Summary Earnings Query | 08/27/2020 | 1 |
| HO 10D | Detailed Earnings Query | 08/27/2020 | 5 |
| HO 11D | New Hire, Quarter Wage, Unemployment Query (NDNH) | 08/27/2020 | 1 |
| HO 12D | Certified Earnings Records | 08/27/2020 | 3 |
| HO 13D | DIBWIZ | 08/27/2020 | 2 |

**Disability Related Development**

| Component No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|
| HO 1E | Disability Report - Adult | | RUSSELL, DARRELL WAYNE | 12/08/2018 to 12/08/2018 | 13 |
| HO 2E | Disability Report - Field Office | | RUSSELL, DARRELL WAYNE | 12/08/2018 to 12/08/2018 | 2 |
| HO 3E | Function Report - Adult | | RUSSELL, DARRELL WAYNE | 01/07/2019 to 01/07/2019 | 9 |
| HO 4E | Work History Report | | P A LOWMAN | 01/07/2019 to 01/07/2019 | 6 |
| HO 5E | Disability Report - Field Office | | RUSSELL, DARRELL WAYNE | 05/14/2019 to 05/14/2019 | 2 |

| | | | | | |
|---|---|---|---|---|---|
| HO 6E | Disability Report - Appeals | | RUSSELL, DARRELL WAYNE | 05/14/2019 to 05/14/2019 | 7 |
| HO 7E | Disability Report - Field Office | | RUSSELL, DARRELL WAYNE | 10/25/2019 to 10/25/2019 | 2 |
| HO 8E | Disability Report - Appeals | | RUSSELL, DARRELL WAYNE | 10/25/2019 to 10/25/2019 | 8 |
| HO 9E | Exhibit List to Rep PH2E | | OHO | to 03/20/2020 | 11 |
| HO 10E | Report of Contact | | Representative/OHO | to 06/30/2020 | 1 |
| HO 11E | Resume of Vocational Expert | | | to 08/05/2020 | 3 |
| HO 12E | Vocational Consultant Case Analysis | | | to 08/06/2020 | 2 |
| HO 13E | Resume of Vocational Expert | | | to 08/19/2020 | 1 |

**Medical Records**

| Component No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|
| HO 1F | Hospital Records | | WINSHIP CANCER INSTITUTE AT EMORY U C | 07/05/2016 to 08/03/2016 | 21 |
| HO 2F | Office Treatment Records | | HIGHLAND RIVERS COMMUNITY SERVICE BD/ | 09/02/2016 to 09/02/2016 | 26 |
| HO 3F | Office Treatment Records | | BERNSTEIN AND MCCASLAND MD | 11/04/2016 to 02/08/2017 | 9 |
| HO 4F | HIT MER | | MAYO CLINIC | 02/16/2017 to 02/16/2017 | 82 |

| | | | | |
|---|---|---|---|---|
| HO 5F | Office Treatment Records | MAYO CLINIC | 02/16/2017 to 03/23/2017 | 33 |
| HO 6F | Progress Notes | DR KATHIRAE SEVERSON DO | 03/01/2017 to 01/12/2018 | 15 |
| HO 7F | Office Treatment Records | INTERVENTIO NAL SPINE&PAIN MANAGEMEN T | 04/26/2017 to 01/31/2018 | 20 |
| HO 8F | Office Treatment Records | PAIN SOLUTIONS TREATMENT CENTE | 05/05/2017 to 01/31/2018 | 20 |
| HO 9F | Medical Source - No MER Available | KAISER PERMANENTE | 12/08/2018 to 12/08/2018 | 3 |
| HO 10F | Medical Source - No MER Available | KAISER PERMANENTE | 03/20/2019 to 03/20/2019 | 3 |
| HO 11F | Consultative Examination Report | SCOTT A DUNCAN PSYD | 04/04/2019 to 04/04/2019 | 6 |
| HO 12F | Consultative Examination Report | PRIYA V BAYYAPURED DY MD | 04/17/2019 to 04/17/2019 | 12 |
| HO 13F | Office Treatment Records | MEDICAL ASSOCIATES OF NORTH GA | 02/02/2018 to 04/23/2019 | 30 |
| HO 14F | Hospital Records | Northside Hospital Cherokee | 09/04/2019 to 09/05/2019 | 118 |
| HO 15F | Office Treatment Records | Emory Clinic | 11/22/2016 to 11/22/2016 | 2 |
| HO 16F | Office Treatment Records | HIghland Rivers | 09/08/2016 to 09/08/2016 | 6 |
| HO 17F | Office Treatment Records | Mayo Clinic | 02/15/2017 to 04/11/2017 | 10 |

| | | | | |
|---|---|---|---|---|
| HO 18F | Hospital Records | Northside Hospital Forsyth | 08/19/2010 to 09/06/2019 | 27 |
| HO 19F | Office Treatment Records | Medical Associates of North Georgia | 04/23/2019 to 10/21/2019 | 11 |
| HO 20F | Laboratory Test Report | GA KETAMINE | 05/07/2019 to 02/06/2020 | 6 |
| HO 21F | Office Treatment Records | GA MTN DERMATOLOGY | 08/25/2015 to 06/25/2020 | 40 |
| HO 22F | Office Treatment Records | SKIN CANCER SPECIALISTS, P.C. | 02/03/2016 to 02/04/2016 | 16 |
| HO 23F | Progress Notes | GOOD SAMARITAN HEALTH AND WELLNESS | 09/11/2017 to 11/30/2017 | 21 |
| HO 24F | Office Treatment Records | NORTHSIDE MELANOMA AND SARCOMA | 09/11/2015 to 06/15/2016 | 18 |
| HO 25F | Progress Notes | THE CENTER FOR PAIN MANAGEMENT - KABAKIBOU | 07/02/2020 to 07/30/2020 | 5 |
| HO 26F | Office Treatment Records | MEDICAL ASSOCIATES OF NORTH GA - ANNE TODD, MD | to 08/25/2020 | 4 |
| HO 27F | Medical Opinion - Physical | MEDICAL ASSOCIATES OF NORTH GA - ANNE TODD, MD | to 08/25/2020 | 2 |

CERTIFIED MAIL

7018 1130 0002 0677 7633

$7.80
US POSTAGE
FIRST-CLASS
062S0009564977
FROM 30720

Chattanooga TN 374
FRI 06 NOV 2020

McMAHAN LAW FIRM, LLC
*Fighting for the Injured and Disabled*
700 S. Thornton Avenue
P.O. Box 1607
Dalton, GA 30722

Meghan Hennessy
Lincoln Life Assurance Company of Boston
PO Box 7207
London, KY 40742-7207

**ICP Memo**

| Customer Name | Claimant Name | Claim Number |
|---|---|---|
| CHART INDUSTRIES, INC. | DARRELL RUSSELL | 7259041 |

| | | | |
|---|---|---|---|
| **Referred By:** | Jennifer Dimaggio | **Claimant DOB:** | |
| **Referral Date:** | 10/29/2020 | **Job Title:** | PRODUCTION SUPERVISOR-- LIGHT OCC |
| **Due Date:** | 11/12/2020 | **Medical/ Surgical Condition:** | complex regional pain syndrome, chronic pain, postlaminectomy syndrome, low back pain |
| **Referral Type:** | Appeal Referral | **Disability Occupational Type:** | |
| **Reason for Priority Handling:** | | **Product Type:** | LTD |
| **Other Considerations** | TCMS Special Circumstance | **LDW:** | 11/07/2016 |
| **Report Date:** | | **DOD:** | 11/08/2016 |
| **Physical Demands:** | | **BBD:** | 05/09/2017 |
| **Non-Medical Issue:** | No | **Non-Medical Issue Details:** | |

## Core Questions

1. Please identify the primary impairing Diagnosis(es) with ICD 10 code(s).

2. If applicable, please identify clinically significant comorbid Diagnosis(es) with ICD 10 code(s).

3. Taking into consideration the entire clinical picture, including standards of care and evidence based medicine, and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 5/8/2020 to present and ongoing, and comment on the expected duration.
a. If the medical records in the file do not support impairment and the need for restrictions and/or limitations during the above timeframe(s), provide a detailed explanation.

4. Treatment Opportunities: Is the treatment provided consistent with the standard of care for the apparent level of severity of the condition(s)? Is there any evidence that the claimant is not compliant with treatment that meets the standard of care?

5. Are there any non-medical circumstances identified in the medical records that may interfere with work-related activities (e.g. workplace conflicts, child or elder care issues, or legal issues)?

6. If AP contact may clarify any significant areas such as diagnosis, R&L's, treatment opportunities, prognosis, or reason for work absence, the AP contact information is:

**Name: Dr. An Do, MDPhone Number: 1 (770) 962 3642 ex ----- Fax Number: 770-962-3643**
Document 2 attempts within 5 business days with initial and final memorandum as indicated, as well as AP letter

**Additional Questions**

Other Not COVID

Other 7.Does the medical documentation support that any medical condition alone, or in combination would preclude the claimant from sustained occupational functioning on a full-time basis? Please explain why or why not. 8. Does the medical evidence support any side effects from the prescribed medications? If yes, please describe the supported impairments and outline how any impairment affects functional capacity.

Other Do not assign to: Dr. Arlen D. Green, Dr. Behzad Emad, or Dr. Lucia McPhee

**Other Comments**
Other Comments - null

AMERICAN HEALTH Imaging

6590 Powers Ferry Road
Atlanta, GA 30339
Phone #: (770)953-0108
Fax #: (770)953-0109
www.americanhealthimaging.com

**Name:** Darrell Russell
**DOB:**
**Gender:** Male

**Exam Date:** 5/12/2020 12:50 PM
**Patient ID:** AHI-721595
**Accession #:** 2272709

**Ordering Physician:** An Do, MD
**Exam Name:** MRI Lumbar Spine With And Without Contrast | 72158

MRI LUMBAR SPINE WITH AND WITHOUT CONTRAST

HISTORY: Back pain with lower extremity numbness

CONTRAST:

FINDINGS:

Multiplanar images of the lumbar spine are submitted.

Today's study demonstrates mild degenerative disc space disease involving L4-L5 with disc desiccation and minimal degenerative endplate change. The remainder of the disc spaces are maintained. There is no fracture. The conus is grossly normal.

The axial sequences demonstrate:

The L1-L2 level demonstrates no significant central canal stenosis. The lateral recesses are preserved. The neural foramina are unremarkable.

The L2-L3 level demonstrates no significant central canal stenosis. The lateral recesses are preserved. The neural foramina are unremarkable.

The L3-L4 level demonstrates no significant central canal stenosis. The lateral recesses are preserved. The neural foramina are unremarkable.

The L4-L5 level is remarkable for a mild broad-based disc bulge. There is a superimposed minimal left-sided disc protrusion which is best appreciated on the sagittal images on image 8 of series 105. There is minimal left-sided disc protrusion extending along the posterior superior margin of L5 and results in mild effacement of the left ventral thecal sac as well as the left lateral recess. The left neural foramen demonstrates mild encroachment as does the right.

The L5-S1 level demonstrates no significant central canal stenosis. There is a small 2 mm right paracentral disc protrusion which demonstrates no significant encroachment of the ventral thecal sac nor of the S1 nerve root. Foramina are preserved.

Continued...

**Date of Birth:** **Gender:** Male
**Name:** Darrell Russell **Exam Date:** 5/12/2020 12:50 PM
**Exam Name:** MRI Lumbar Spine With And Without Contrast | 72158

The contrast-enhanced images demonstrate no abnormal enhancing lesion.

IMPRESSION:

1. Mild disc desiccation and degenerative disc space narrowing of L4-L5. There is a mild disc bulge with a superimposed left-sided disc protrusion which minimally extends along the posterior superior margin of L5. There is mild effacement of the left ventral thecal sac as well as encroachment of the left lateral recess. The left neural foramen and right neural foramen demonstrate mild encroachment.

2. Small right paracentral disc protrusion of L5-S1 without significant central canal encroachment.

Report Electronically Signed by: David Owens, M.D.
Report Electronically Signed on: 5/12/2020 04:18 PM

***Radiology Report from an ACR Accredited Facility***

RUSSELL, Darrell **DOB:** (42 yo M) **Acc No.** 40183 **DOS:** 05/26/2020



# Russell, Darrell

**41 Y old Male, DOB:**
**Account Number: 40183**

**Home:**
**Guarantor: Russell, Darrell Insurance: United Healthcare Payer ID: 87726**
**Referring: Amit M Patel**
**Appointment Facility: 15 Georgia Pain and Wellness Center**

**05/26/2020** **Appointment Provider: An Do, MD**

### Current Medications

Taking

- Baclofen 10 MG Tablet 1 tablet with food or milk Orally two times a day
- Gabapentin 600 MG Tablet 1 tablet Orally three times a day
- Percocet 5-325 MG Tablet 1 tablet as needed Orally every 12 hrs
- Cymbalta
- Protonix
- Relistor 150 MG Tablet 3 tablets 30 minutes before the first meal of the day Orally Once a day
- Percocet 7.5-325 MG Tablet 1 tablet as needed Orally every 8-12 hours
- Trazodone HCl 100 MG Tablet 1 tablet Orally once at bedtime
- Medication List reviewed and reconciled with the patient

### Past Medical History

Depression.
Cancer.
Panic Attacks.

### Surgical History

Back surgery (ruptured disc) 10/2019
Melanoma 2016
Lymphnode removal (right arm) 2016
Melanoma 2016-2017

### Family History

Non-Contributory

### Social History

Tobacco Use:
Tobacco Use/Smoking Are you a nonsmoker. Smoking Are you a: never smoker.
Drugs/Alcohol:
Drugs Have you used drugs other than those for medical reasons in the past 12 months? No. Alcohol Screen

### Reason for Appointment

1. Right Arm Pain
2. Bilateral Leg Pain (R>L)
3. Low Back Pain

### History of Present Illness

Pain Management:

The severity of the pain is 6/10 average. The severity of the pain without pain medication is 8/10. The severity of the pain with pain medication is 6/10.

New symptom(s):

Patient presents today for follow-up visit for management of their pain. Patient describes the pain as aching. The patient's pain is mostly in the low back and bilatteral leg. Pain is improved with rest and medication. Pain is worse with prolonged sitting. Patient states that the medication is helping manage their pain at this time. Patient denies any side effects from the medication. The functional benefits from the medications include: ability to perform daily functions.

Clinical encounter chaperoned by: Brittany

PATIENT HAS HAD MRI, CT, and/or X-RAY - YES

PAIN SCORE ON VISUAL ANALOG SCALE IS DOCUMENTED ABOVE.

Opioid Risk:

Risk Assessment & Stratification Risk Group Green, Risk Score 2, Panel Group Level B (2-3), Panel Score 2, ORT Date Completed 02/10/2020.

### Vital Signs

Ht 76 in, Wt 225 lbs, BMI 27.38 Index, RR 17 /min, Pain scale 6 1-10, Ht-cm 193.04 cm, Wt-kg 102.06 kg.

### Examination

PHYSICAL EXAM:

GENERAL APPEARANCE: NAD, appears stated age.

HEENT normocephalic, anicteric sclera, mucous membranes grossly intact, EOMI.

CV extremities appear to be grossly perfused, no obvious chest

Did you have a drink containing alcohol in the past year? Yes, How many drinks did you have on a typical day when you were drinking in the past year? 1 or 2 drinks (0 point), How often did you have a drink containing alcohol in the past year? Monthly or less (1 point), Points 1, Interpretation Negative.

### Allergies

Lyrica

### Hospitalization/Major Diagnostic Procedure

see surgical hx

### Review of Systems

Neurologic:
Admits Low back pain.
Admits Pain.
2 point ROS:
General/Constitutional denies Fever/Chills.
Musculoskeletal reports Pain .

deformity.

RESPIRATORY no dyspnea noted.

ABDOMEN: nondistended, no obvious ascites noted, no guarding noted.

EXTREMITIES:
no edema noted on gross inspection, acyanotic
.

SKIN: right upper extremity allodynia, edema, color changes noted, decreased temp compared to contralateral extremity.

PSYCH AAO x 3, nonpressured speech, no suicidal ideations, responds to commands, converses appropriately.

MUSCULOSKELETAL right LE: 4/5 hip flexors, 4/5 quadriceps, 4/5 hamstrings, 4/5 DF.

NEUROLOGICAL right LE: decreased sensation to light touch/pinprick along L5-S1 dermatomes, right UE: allodynia and hyperesthesia noticed..

CERVICAL good ROM.

LUMBOSACRAL + incision scar noted, POSITIVE facet loading noted
right lumbar paraspinal TTP, right gluteus TTP,
, tenderness to palpation bilaterally along lowest three segments of lumbar facet joints,+ right SLR.

### Assessments

1. Pain in right arm - M79.601 (Primary)
2. Radiculopathy, lumbosacral region - M54.17
3. Postlaminectomy syndrome, not elsewhere classified - M96.1
4. Long term (current) use of opiate analgesic - Z79.891
5. Chronic pain syndrome - G89.4

The patient will start or continue the prescribed opioid medication regimen as outlined below. They have failed non-opioid therapy including acetaminophen, NSAIDs, muscle relaxants, and neuropathic agents. The patient reports functional improvement and decreased pain with opioid pharmacotherapy. Risk regarding, pain medications and opiates with regards to non-compliance and interactions with other medications/substances including benzodiazepines/alcohol/illicit substances were discussed, the dangers of such action including but not limited to respiratory suppression and death; and the patient fully understood without additional concerns or questions. The patient has been instructed to call EMS and/or report to the nearest emergency department if a life-threatening emergency presents itself. A prescription was sent to the pharmacy for intramuscular injectable naloxone. We have also provided the patient with information regarding the use of OTC naloxone nasal spray. The patient (and family member) was counseled on the use of nalaxone as a life-saving measure for opioid overdose. The patient has also been instructed on proper disposal of unused pain medications including returning them to a participating pharmacy or sheriff / fire department. Medication refills will be provided as needed with appropriate fill dates marked on prescriptions as detailed below. I performed a Georgia Prescription

Drug Monitoring Program database query on this patient and found it to be consistent with medication history with no apparent evidence of opioid-related aberrant behaviors.

**Treatment**

**1. Long term (current) use of opiate analgesic**

LAB: Urine Drug Screen POC

05/26/2020 POC POSITIVE FOR OXY. BK.

LAB: SLS LCMS

**2. Chronic pain syndrome**

Refill Gabapentin Tablet, 600 MG, 1 tablet, Orally, three times a day, 30 day(s), 90, Refills 3
Refill Baclofen Tablet, 10 MG, 1 tablet with food or milk, Orally, two times a day, 30 day(s), 60, Refills 3
Stop Trazodone HCl Tablet, 100 MG, 1 tablet, Orally, once at bedtime, 30 day(s), 30 tablets
MDToolBox Percocet Tablet, 7.5-325 MG, 1 tablet as needed, Orally, every 8-12 hours, 30 days, 75, Refills 0
Stop Trazodone HCl Tablet, 100 MG, 1 tablet, Orally, once at bedtime, 30 day(s), 30 tablets
Start Trazodone HCl Tablet, 150 MG, 1 tablet, Orally, once at bedtime, 30 day(s), 30 Tablets, Refills 0

**3. Others**

Notes:

RATIONALE FOR DRUG TESTING: Urine drug testing (UDT) provides objective information to assist clinicians in identifying the presence or absence of drugs or drug classes in the body and making treatment decisions. Patients can be unreliable with regards to their medication compliance, history of drug addiction and substance abuse, overutilization of prescribed medications, use of non-prescribed medications, drug diversion and/or other aberrant behavior. For this reason, urine/sputum toxicology screens will be collected from our patients in order to accomplish the following: Identify a specific substance or metabolite that is inadequately detected by a presumptive UDT; Definitively identify specific drugs in a large family of drugs; Identify a specific substance or metabolite that is not detected by presumptive UDT such as fentanyl, meperidine, and other synthetic/analog drugs; Identify drugs when a definitive concentration of a drug is needed to guide management; Identify a negative, or confirm a positive, presumptive UDT result that is inconsistent with a patient's self-report, presentation, medical history, or current prescribed pain medication plan; Rule out an error as the cause of a presumptive UDT result; Identify non-prescribed medication or illicit use for ongoing safe prescribing of controlled substances; and Use in a differential assessment of medication efficacy, side effects, or drug-drug interactions, such as benzodiazepines and CNS.
OPIOID RISK ASSESSMENT TOOL: The Modified Opioid Risk Tool

(M-ORT) will be performed regularly on our patients and the results will be used in conjunction with other information to determine how much compliance monitoring each individual patient may require. The ORT is designed to help medical providers evaluate a patient's relative risk for developing problems when placed on long-term opioid therapy. An ORT score of 0 to 3 suggests low risk for opioid misuse/aberrant behavior, a score of 4 to 7 suggests moderate risk for opioid misuse/aberrant behavior and score of 8 or greater suggests high risk for opioid misuse/aberrant

OPIOID RISK STRATIFICATION: Each patient will be assigned to an opioid risk profile based on their medical history, compliance with medical therapy, history of aberrant behavior, toxicology screen results, pill counts, ORT scores, Georgia Prescription Drug Monitoring Program database results as well as the discretion of their treating physician and any other pertinent data; the opioid risk profile will dictate how the level of compliance monitoring each patient will require, the elements of the screening tests, and approximately how often they will undergo toxicology screens even though additional or less frequent testing may be justified and performed at the discretion of the treating provider when unforeseen or unusual circumstances arise. A patient's opioid risk profile may be changed in the future at the discretion of the treating provider based on improvement or deterioration in the variables described above that are used to determine the risk category. Aberrant behavior includes but is not limited to the following: 1) misusing, abusing and/or developing an addiction to opioids, controlled substances and illicit drugs; 2) non-compliance with medical therapy or medication regimen; 3) obtaining pain medications from other medical providers or individuals and/or using outdated prescriptions; and 4) diversion of prescribed medications.

All new patients will undergo an extensive new patient toxicology screen panel.

Green risk profile patients are predicted to have a low risk for aberrant drug-related behavior and will have less toxicology screens performed; approximately every 6-12 months when possible. Green risk profile patients are usually fully compliant with their treatment plans and do not have aberrant results on urine drug testing and/or pill counts. Green risk profile patients have the lowest ORT scores and the safest family/environmental circumstances.

Reference: Webster LR. Predicting abherrant behaviors in opioid-treated patients: Preliminary validation of opioid risk tool. *Pain Medicine*. 2005;6 (6):432-442.

.

Clinical Notes: For the purposes of Georgia Prescription Monitoring Program (PMP) database queries, the following cross covering physicians are employed by Georgia Pain & Wellness Center, with whom the above stated patient is subject

to a signed opioid agreement: Drs. Amit S. Patel, Srinand Mandyam, Steven Nguyen, Jose Mathew, An Do, Chad Lee, Amod Sureka, Gabriel Marrero, Celine Mathew, Amit M. Patel, Gerald Chai, and Naureen Adam. Filling opioid medication prescriptions from one these physicans does not suggest any opioid-related aberrant behaviors like doctor shopping on the part of the patient.

.

**Preventive Medicine**

Counseling: BMI Care goal follow-up plan: Above Normal BMI Follow-up Giving encouragement to exercise. pain Management Follow-up Plan documented: Yes.

**Procedure Codes**

80305 DRUG TEST PRSMV DIR OPT OBS, Modifiers: QW

**Follow Up**

Pt w/ Hx of melanoma s/p right axillary lymph node biopsy in 2017 resulted in right arm pain and diagnosed with CRPS. Also has lumbar radiculopathy s/p lumbar decompressive surgery w/ residual LBP and b/l leg pain R>L. Pain pattern remains unchanged since last visit. New LMRI reviewed with patient showing degen changes at L4/5 and L5/S1 with NFS affecting the NRs. Awaiting psych clearance for SCS trial. Would proceed with SCS trial for RUE CRPS and lumbar radiculopathy (lead in cervical and thoracic region) once approved. IN the meantime, will schedule him for RIGHT L4/5 and L5/S1 TFESI to help alleviate radicular lumbar pain and spinal inflammation. Stable on current regimen. Responded well to Trazodone added last visit, will uptitrate to 150mg QHS for insomnia. Continue compounding w/ Ketamine. Continue current medications as the patient reports functional benefit. Risks and benefits of opioid therapy have been discussed with the patient and/or family member. Opioid medication is being prescribed for the purpose of improved functionality and decreased pain. The patient is advised to continue home exercise/stretching at home. Pt. has failed conservative therapy including physical therapy, home exercise program, and NSAIDs.

**Appointment Provider: An Do, MD**



**Electronically signed by An Do on 06/15/2020 at 01:54 PM EDT**

**Sign off status: Completed**

---

**15 Georgia Pain and Wellness Center**
**100 LIBERTY BLVD**
**Ste 210**
**CANTON, GA 30114-2852**
**Tel: 770-962-3642**
**Fax: 770-962-3643**

---

**Progress Note: An Do, MD 05/26/2020**

*Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)*

RUSSELL, Darrell **DOB:** (41 yo M) **Acc No.** 40183 **DOS:** 04/28/2020



# Russell, Darrell

**41 Y old Male, DOB:**
**Account Number: 40183**

**Home:**
**Guarantor: Russell, Darrell Insurance: United Healthcare Payer ID: 87726**
**Referring: Amit M Patel**
**Appointment Facility: 15 Georgia Pain and Wellness Center**

**04/28/2020** **Appointment Provider: An Do, MD**

## Current Medications

Taking

- Baclofen 10 MG Tablet 1 tablet with food or milk Orally two times a day
- Gabapentin 600 MG Tablet 1 tablet Orally three times a day
- Percocet 5-325 MG Tablet 1 tablet as needed Orally every 12 hrs
- Cymbalta
- Protonix
- Relistor 150 MG Tablet 3 tablets 30 minutes before the first meal of the day Orally Once a day
- Medication List reviewed and reconciled with the patient

## Past Medical History

Depression.
Cancer.
Panic Attacks.

## Surgical History

Back surgery (ruptured disc) 10/2019
Melanoma 2016
Lymphnode removal (right arm) 2016
Melanoma 2016-2017

## Family History

Non-Contributory

## Social History

Tobacco Use:
Tobacco Use/Smoking Are you a nonsmoker. Smoking Are you a: never smoker.
Drugs/Alcohol:
Drugs Have you used drugs other than those for medical reasons in the past 12 months? No. Alcohol Screen Did you have a drink containing alcohol in the past year? Yes, How many drinks did you have on a typical day when you were drinking in the past year? 1 or 2 drinks (0

## Reason for Appointment

1. Right Arm Pain
2. Bilateral Leg Pain (R>L)
3. Low Back Pain

## History of Present Illness

Depression Screening:
PHQ-2 (2015 Edition) Little interest or pleasure in doing things? Declined to specify, Feeling down, depressed, or hopeless? Declined to specify, Total Score 0.
Pain Management:
The severity of the pain is 8/10 average. The severity of the pain without pain medication is 10/10. The severity of the pain with pain medication is 6/10.

New symptom(s):
Patient presents today for follow-up visit for management of their pain. The patient's pain is mostly in the right arm. Pain is improved with rest and medication. Pain is worse with movement and at night time. Patient states that the medication is helping manage their pain at this time. Patient denies any side effects from the medication. The functional benefits from the medications include: improved ability to perform daily functions.
Clinical encounter chaperoned by: Brittany
PATIENT HAS HAD MRI, CT, and/or X-RAY - NO
PAIN SCORE ON VISUAL ANALOG SCALE IS DOCUMENTED ABOVE.
Opioid Risk:
Risk Assessment & Stratification Risk Group Green, Risk Score 2, Panel Group Level B (2-3), Panel Score 2, ORT Date Completed 02/10/2020.

## Vital Signs

Ht 76 in, Wt 225 lbs, BMI 27.38 Index, RR 18 /min, Pain scale 8 1-10, Ht-cm 193.04 cm, Wt-kg 102.06 kg.

## Examination

PHYSICAL EXAM:
GENERAL APPEARANCE: NAD, appears stated age.

point), How often did you have a drink containing alcohol in the past year? Monthly or less (1 point), Points 1, Interpretation Negative.

### Allergies

Lyrica

### Hospitalization/Major Diagnostic Procedure

see surgical hx

### Review of Systems

Neurologic:

Admits Low back pain.

Admits Pain.

2 point ROS:

General/Constitutional denies Fever/Chills.

Musculoskeletal reports Pain .

HEENT normocephalic, anicteric sclera, mucous membranes grossly intact, EOMI.

CV extremities appear to be grossly perfused, no obvious chest deformity.

RESPIRATORY no dyspnea noted.

ABDOMEN: nondistended, no obvious ascites noted, no guarding noted.

EXTREMITIES:

no edema noted on gross inspection, acyanotic

.

SKIN: right upper extremity allodynia, edema, color changes noted, decreased temp compared to contralateral extremity.

PSYCH AAO x 3, nonpressured speech, no suicidal ideations, responds to commands, converses appropriately.

MUSCULOSKELETAL right LE: 4/5 hip flexors, 4/5 quadriceps, 4/5 hamstrings, 4/5 DF.

NEUROLOGICAL right LE: decreased sensation to light touch/pinprick along L5-S1 dermatomes, right UE: allodynia and hyperesthesia noticed..

CERVICAL good ROM.

LUMBOSACRAL + incision scar noted, POSITIVE facet loading noted

, decreased range of motion

, tenderness to palpation bilaterally along lowest three segments of lumbar facet joints,+ right SLR.

### Assessments

1. Complex regional pain syndrome I of right upper limb - G90.511 (Primary)
2. Pain in right arm - M79.601
3. Radiculopathy, lumbosacral region - M54.17
4. Postlaminectomy syndrome, not elsewhere classified - M96.1
5. Long term (current) use of opiate analgesic - Z79.891
6. Chronic pain syndrome - G89.4

The patient will start or continue the prescribed opioid medication regimen as outlined below. They have failed non-opioid therapy including acetaminophen, NSAIDs, muscle relaxants, and neuropathic agents. The patient reports functional improvement and decreased pain with opioid pharmacotherapy. Risk regarding, pain medications and opiates with regards to non-compliance and interactions with other medications/substances including benzodiazepines/alcohol/illicit substances were discussed, the dangers of such action including but not limited to respiratory suppression and death; and the patient fully understood without additional concerns or questions. The patient has been instructed to call EMS and/or report to the nearest emergency department if a life-threatening emergency presents itself. A prescription was sent to the pharmacy for intramuscular injectable naloxone. We have also provided the patient with information regarding the use of OTC naloxone nasal spray. The patient (and family member) was counseled on the use of nalaxone as a life-saving measure for opioid